1
**BRYAN CAVE LLP**
Katherine M. Windler, California Bar No. 158899
2   120 Broadway, Suite 300
Santa Monica, California 90401-2386
3   Telephone:    (310) 576-2100
Facsimile:    (310) 576-2200
4   Email:    katherine.windler@bryancave.com

5   Attorneys for Madison Realty Capital LP

6

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                    **LOS ANGELES DIVISION**

11

| | |
|---|---|
| 12 In re | Case No. 2:10-bk-26188-PC (Lead Case) |
| 13 | Administratively Consolidated with Case No. 2:10-bk-27683-PC |
| NEVADA STAR, LLC, | Hon. Peter Carroll |
| 14 | |
| 15 Debtor. | Chapter 11 |
| 16 Tax ID / EIN: 68-0658426 | **CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION** |

**Disclosure Statement Hearing**

Date:    December 15, 2010
Time:    9:30 a.m.
Ctrm:    1539
U.S. Bankruptcy Court
255 E. Temple Street, 15th Floor
Los Angeles, CA 90012

**Plan Confirmation Hearing**

Date:    January 15, 2011 (proposed)
Time:    9:30 a.m.
Ctrm:    1539
U.S. Bankruptcy Court
255 E. Temple Street, 15th Floor
Los Angeles, CA 90012

In re

CLAUDIA RAFFONE,

Debtor.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................... 1

    A.    Purpose of This Document. ............................................................................ 2

    B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing. ........... 3

        1.    Time and Place of the Confirmation Hearing. ...................................... 3

        2.    Deadline For Voting For or Against the Plan. ...................................... 3

        3.    Deadline For Objecting to the Confirmation of the Plan. ...................... 4

        4.    Identity of Person to Contact for More Information Regarding the Plan. ................................................................................................ 4

    C.    Disclaimer. .................................................................................................. 4

II.    BACKGROUND .................................................................................................... 5

    A.    Description and History of the Debtor's Business. ............................................ 5

        1.    History According to Raffone ............................................................ 5

        2.    History According to Campbell ........................................................ 11

    B.    Principals/Affiliates of Debtor's Business. ...................................................... 14

    C.    Management of the Debtor Before and After the Bankruptcy. ............................ 14

    D.    Events Leading to Chapter 11 Filing .............................................................. 16

    E.    Significant Events During the Bankruptcy. ...................................................... 25

        1.    Bankruptcy Proceedings. ................................................................ 25

            a.    Bankruptcy Case Matters: .................................................... 25

            b.    Other Legal Proceedings. ..................................................... 26

        2.    Actual and Projected Recovery of Preferential or Fraudulent Transfers. .................................................................................... 26

        3.    Procedures Implemented to Resolve Financial Problems. ...................... 26

        4.    Current and Historical Financial Conditions. ...................................... 26

III.    SUMMARY OF THE PLAN OF REORGANIZATION ............................................ 27

    A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan. .......................................................................................................... 27

    B.    Unclassified Claims. .................................................................................... 27

        1.    Administrative Expenses. ................................................................ 27

        2.    Priority Tax Claims. ...................................................................... 29

    C.    Classified Claims and Interests. .................................................................... 31

        1.    Classes of Secured Claims. .............................................................. 31

        2.    Classes of Priority Unsecured Claims. ............................................... 34

        3.    Classes of General Unsecured Claims. ............................................... 36

        4.    Class of Subordinated Claims .......................................................... 37

        5.    Class(es) of Interest Holders. .......................................................... 38

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

D.    Means of Effectuating the Plan. ................................................................. 38

    1.    Funding for the Plan. .................................................................. 38

    2.    Post Confirmation Authority of Administrator ............................ 38

    3.    Payment of Creditors.................................................................. 43

    4.    Use of Cash Collateral ............................................................... 43

    5.    Post-confirmation Management. ................................................. 43

    6.    Disbursing Agent........................................................................ 43

    7.    Tender of Possession, or Warrant of Eviction and Judgment of Possession Against Raffone. ...................................................... 44

    8.    Entry of the Confirmation Order ................................................ 45

    9.    Entry of Final Decree ................................................................. 45

E.    Risk Factors. ............................................................................................ 45

IV.    Other Provisions of the Plan.............................................................................. 45

A.    Executory Contracts and Unexpired Leases............................................ 45

    1.    Assumptions. .............................................................................. 45

    2.    Rejections. .................................................................................. 46

B.    Changes in Rates Subject to Regulatory Commission Approval. ............ 46

C.    Dismissal of Litigation. ........................................................................... 46

D.    Retention of Jurisdiction. ......................................................................... 46

E.    Tax Consequences of Plan. ...................................................................... 47

V.    CONFIRMATION REQUIREMENTS AND PROCEDURES................................ 47

A.    Discharge.................................................................................................. 48

B.    Revesting of Property in the Debtor and Raffone .................................... 48

C.    Modification of Plan. ............................................................................... 49

D.    Post-Confirmation Status Report ............................................................ 49

E.    Quarterly Fees ......................................................................................... 49

    1.    Quarterly Fees of the Debtor...................................................... 49

    2.    Quarterly Fees of Raffone .......................................................... 50

F.    Post-Confirmation Conversion/Dismissal ............................................... 50

G.    Revocation of Plan Confirmation Order .................................................. 50

H.    Who May Vote or Object. ........................................................................ 51

    1.    Who May Object to Confirmation of the Plan. .......................... 51

    2.    Who May Vote to Accept/Reject the Plan. ................................. 51

        a.    What Is an Allowed Claim/Interest. ............................. 51

        b.    What Is an Impaired Claim/Interest. ............................. 52

    3.    Who is Not Entitled to Vote. ...................................................... 52

    4.    Who Can Vote in More Than One Class...................................... 53

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

|   |   |   |   |
|---|---|---|---|
| 5. | Votes Necessary to Confirm the Plan. | ....................................................... | 53 |
| 6. | Votes Necessary for a Class to Accept the Plan. | ....................................... | 53 |
| 7. | Treatment of Nonaccepting Classes. | ........................................................ | 53 |
| 8. | Request for Confirmation Despite Nonacceptance by Impaired Class(es). | ..................................................................................................... | 53 |
| I. | Liquidation Analysis. | ........................................................................................ | 54 |
| J. | Feasibility. | ........................................................................................................ | 58 |
| K. | Final Decree. | ..................................................................................................... | 59 |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

# I. __INTRODUCTION__

Nevada Star, LLC ("Nevada Star" or "Debtor") is the Debtor in a Chapter 11 bankruptcy case known as 2:10-bk-26188-PC.  On April 26, 2010, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 *et seq*.  The Debtor's principal asset is a parcel of real property, commonly described as a 49 unit apartment building,[1] located at 114 West 86th Street in New York City, N.Y. and all fixtures and incidental personal property that is used for the operations and maintenance of the building (the "Property").

Claudia Raffone ("Raffone") is also a debtor in the administratively consolidated Chapter 11 bankruptcy case known as 2:10-bk-27683-PC.  On May 4, 2010, Raffone filed a voluntary petition under chapter 11 of the Bankruptcy Code.  Raffone's principal assets are two single family residences located in Beverly Hills, California and Florida, although she may have additional assets available for liquidation as well.  On October 14, 2010, the Court ordered the cases of the Debtor and Raffone to be administratively consolidated [Debtor Dkt No. 146; Raffone Dkt No. 29].

Chapter 11 allows the Debtor and Raffone, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization.  The plan filed along with this Consolidated Disclosure Statement ("Disclosure Statement") is a Consolidated Chapter 11 Plan of Liquidation ("Plan").  A plan may provide for the debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  This Plan intends to combine both the sale of the Debtor's Property, and a probable sale of Raffone's assets.  If the Property of the Debtor generates sufficient cash to pay all creditors in full, then the plan administrator appointed by the Plan may not need to sell significant assets of the Raffone estate.

Prior to the closing of the sale of any asset, the Plan provides for the property of the estates to be operated by an administrator appointed under the Plan.  Madison Realty Capital, L.P. ("Madison" or the "Proponent") is the party proposing the Plan sent to you in the same envelope as this document.  The Committee of Creditors Holding Unsecured Claims ("Committee") has

---

[1]     When the superintendent's 2-bedroom apartment in the basement is included, the building is considered to have 50 units.  However, only 49 units are available for lease to the public.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    indicated its support for the Plan.  Henry Douglas Campbell ("Campbell") has expressed his

2    support for the Plan.  Numerous other creditors are believed to be favorable toward the Plan.

3    Raffone has indicated she is opposed to the confirmation of the Plan.  THE DOCUMENT YOU

4    ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

5          This is a Plan of liquidation.  In other words, the Proponent seeks to accomplish payments

6    under the Plan by selling the Debtor's Property set forth on <u>Exhibit A</u> to the Plan and paying

7    creditors with the proceeds of such sale.  If necessary, the Plan provides for the sale of Raffone's

8    property set forth on <u>Exhibit B</u> to the Plan and paying her creditors (some of which overlap with

9    the claims asserted against the Debtor).  Only creditors of Raffone who can assert allowed claims

10   against Raffone shall participate in a distribution of the proceeds of the sale(s) of property of the

11   Raffone estate, to the extent such creditors claims are not satisfied in full by the proceeds of the

12   Debtor's Property.  The effective date of the proposed Plan is the first date that is 10 days after the

13   entry of an order confirming the Plan, providing no stay pending appeal is obtained by that date

14   (the "Effective Date").

15         **A.        <u>Purpose of This Document.</u>**

16         This Disclosure Statement summarizes what is in the Plan, and tells you certain

17   information relating to the Plan and the process the Court follows in determining whether or not to

18   confirm the Plan.  The Plan seeks to resolve all claims against both Nevada Star and Raffone in

19   one consolidated document.

20         **<u>READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO</u>**

21   **<u>KNOW ABOUT</u>:**

22         **(1)        WHO CAN VOTE OR OBJECT,**

23         **(2)        WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will**

24   **likely receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO**

25   **WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

26         **(3)        THE HISTORY OF THE DEBTOR AND RAFFONE AND SIGNIFICANT**

27   **EVENTS DURING THE BANKRUPTCY CASES,**

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

**(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

**(6)    WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.  Any party can now solicit votes for or against the Plan.

**B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL CREDITORS AND INTEREST HOLDERS IN THESE CASES.

**1.    Time and Place of the Confirmation Hearing.**

The hearing where the Court will determine whether or not to confirm the Plan will take place on the date set forth in the accompanying notice, once set, in Courtroom 1539, 15th Floor, United State Bankruptcy Court, 255 E. Temple Street, Los Angeles, California 90012.

**2.    Deadline For Voting For or Against the Plan.**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Katherine M. Windler, Attorney at Law, c/o Bryan Cave LLP, 120 Broadway, Third Floor, Santa Monica, California, 90401.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    Your ballot must be received by the date set forth in the accompanying notice or it will not

2    be counted.

3            **3.    Deadline For Objecting to the Confirmation of the Plan.**

4            Objections to the confirmation of the Plan must be filed with the Court and served upon

5    Katherine M. Windler, Attorney at Law, c/o Bryan Cave LLP, 120 Broadway, Third Floor, Santa

6    Monica, California, 90401 by the date set forth in the accompanying notice.

7            **4.    Identity of Person to Contact for More Information Regarding the**

8            **Plan.**

9            Any interested party desiring further information about the Plan should contact Katherine

10   M. Windler, Attorney at Law, c/o Bryan Cave LLP, 120 Broadway, Third Floor, Santa Monica,

11   California, 90401, telephone 310-576-2105, facsimile 310-260-4105, email

12   katherine.windler@bryancave.com.

13   **C.    Disclaimer.**

14           The financial data relied upon in formulating the Plan is based on Debtor's and Raffone's

15   books and records, information received from Raffone and Campbell and court pleadings filed by

16   them in various litigation matters that occurred before the bankruptcy cases, and information

17   learned about the Property from the operations managed by Minuit Partners Property Management

18   LLC ("Minuit") during the time of the chapter 11 cases.  The information contained in this

19   Disclosure Statement was written by the attorney working at the law firm hired by the Proponent

20   based on documents and information that was provided to it by the Debtor, Raffone, Campbell and

21   Minuit.  A substantial portion of the records of the Debtor and Raffone were not made available to

22   the Proponent.  The Plan Proponent represents that everything stated in the Disclosure Statement

23   is true to the Proponent's best knowledge.  The Court has not yet determined whether or not the

24   Plan is confirmable and makes no recommendation as to whether or not you should support or

25   oppose the Plan.

26

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

## II.    **BACKGROUND**

### A.    **Description and History of the Debtor's Business.**

The Debtor is a New York limited liability company.  The Debtor filed its chapter 11 case on April 26, 2010.  Since the inception of the case, the Debtor has not been permitted to manage and operate its business as a debtor in possession.  Instead, Minuit was appointed to act as the property manager for the Property by the Honorable Judge Peter O. Sherwood of the New York Supreme Court by order entered on March 25, 2010 in the New York Sale Litigation (defined below).  Minuit has managed the Property, collected rents, paid expenses and repairs and prepared all the Monthly Operating Reports.  Copies of the Monthly Operating Reports ("MORs") are available from Pacer at https://pacer.login.uscourts.gov/cgi-bin/login.pl or by writing to the plan proponent at the address in the top left corner of the first page of this document, who will provide copies of the MORs to any requesting party.

Raffone is an individual who resides in Beverly Hills, California, and who maintains a residence in Florida.  Raffone has been involved in significant litigation with Campbell for many years.

Because Raffone and Campbell have totally different perspectives on how this bankruptcy case came about, and what facts are relevant in helping creditors understand how they find themselves in this position today, each individual's perspective is represented below, first the factual history according to what Raffone has told the Plan Proponent, and then the factual history according to what Campbell has told the Plan Proponent.  Plan Proponent does not promote the truth or accuracy of either individual's perspective.

#### 1.    **History According to Raffone**

Traute Raffone ("Traute") was born in Czechoslovakia on August 20, 1920. She married John Joseph Raffone and had a daughter named Claudia Raffone.  Claudia Raffone is the person referred to in this Disclosure Statement as "Raffone."  Following a divorce, Traute married Campbell on August 27, 1966.  Traute continued to use her first husband's last name even after her marriage to Campbell.  On March 31, 1980, Traute's aunt, Olga Elfer, individually and as the executrix of the estate of Alexander A. Elfer, deceased, transferred title of the Property to Traute.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    John P. Reiner, Esquire ("Reiner") assisted with the title transfer and notarized the papers.  In or

2    around 1982, Olga Elfer died and left the Property to Traute. For many years, Traute lived in the

3    Property. At various times, Campbell lived in units in the Property, and later lived in the Property

4    with Traute.

5         During the late 1960's through the 1990's, Traute executed a series of wills and codicils

6    that consistently left the bulk of her estate to Raffone and some bequests to Campbell.  The

7    amount of the bequests to Campbell appeared to vary based on Traute's understanding of real

8    estate holdings that Campbell owned in Jamaica.  The majority of the wills and codicils were

9    prepared by Traute's longtime attorney Reiner.

10        On August 18, 1985, Campbell executed a waiver of right to take an elective share of

11   Traute's estate.  Raffone attended boarding school and college in the 1970's – 1980's and, in

12   January 1990, moved into the penthouse apartment in the Property.  After Raffone moved to New

13   York, the relationship between Raffone and Campbell became strained as each weighed in with

14   their opinions as to how Traute could more efficiently manage the Property.  Raffone suspected

15   that Campbell, along with the building's management company, Brown Harris Stevens, was

16   deliberately helping tenants with rent controlled apartment units, who were not using their units as

17   a primary residence (as required by law), to evade detection.  She also believed the management

18   company and Campbell frequently duped Traute into permitting non- primary residents to renew

19   their leases when Traute had the right to forgo renewal and rent the apartments to other tenants at

20   full market value.  Campbell in turn contended that Raffone was "meddling" in her mother's

21   affairs.

22        During the 1990's, Raffone and Traute purchased a beach house in Rehoboth Beach,

23   Delaware and spent summers together there. Campbell did not come to Rehoboth Beach but

24   instead stayed in New York.  On October 13, 1994, Campbell signed a second waiver of his right

25   to take an elective share of Traute's estate.  On March 5, 1995, Traute wrote to her lawyer Reiner

26   about changing her will (concerning a specific bequest of no material significance here) and

27   enclosed a copy of Campbell's waiver of his right to take an elective share.  On May 31, 2000,

28   Traute and Raffone jointly purchased an apartment unit at 214 Chilean Avenue, Palm Beach,

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  Florida.  Shortly thereafter Raffone moved into the apartment on Chilean Avenue.  Between 2000-

2  2001, Traute incurred significant consumer debts and Campbell blamed the debts on Raffone.

3       In 2002, Traute took out a 30-year mortgage on the Property and used some portion of the

4  funds to pay for renovations to the Property and also to satisfy various accumulated debts and

5  judgments owed by her and Raffone.

6       During 2002-2003, Campbell had Traute sign several powers-of attorney that purported to

7  transfer various rights to him and an accountant named Leonard Fay, C.P.A.  The powers of

8  attorney were handwritten by Campbell and Traute's signature appears shaky.  In 2003, Campbell

9  grew exceedingly angry at what he perceived to be excessive spending by Traute on her daughter

10  Raffone.  He began writing numerous angry handwritten memos to Traute, various personnel at

11  the management company for the Property, the accountant Leonard Fay, and personnel at various

12  banks, claiming that, for example:  "The only thing she looks forward to is sending large sums of

13  money to her daughter in Palm Beach either daily or every other day."  Campbell is a prolific

14  writer and his handwritten memos were typically several pages long, and full of terse, apocalyptic

15  and vengeful language directed at Traute and Raffone.

16       On April 11, 2003, Traute went to her lawyer's office, Reiner, and executed what became

17  known as "the April Will."  This will (consistent with prior wills) left the majority of her assets to

18  Raffone.  The April Will also named Raffone as executor and gave her discretion as to certain

19  bequests to Campbell.  On April 14, 2003, only three days after Traute signed the April Will,

20  Campbell drafted, signed, and had the local dry cleaner notarize, a handwritten revocation of "all

21  previous wavers [sic]".  Although he denied it at his deposition, it seems clear that Campbell

22  found the April Will shortly after it was signed by Traute, realized that it provided very little for

23  him and also gave discretion to Raffone.  He therefore decided to "revoke" the waivers of right to

24  elective share to ensure that he received 1/3 of Traute's assets (which at the time included the

25  Property now held by the Debtor).

26       On August 26, 2003, Reiner sent a letter to Traute, referencing a recent meeting where she

27  had discussed gifting the Property to Raffone, and warning her of potential tax consequences.  On

28  September 9, 2003, Traute (as her Aunt Olga Elfer did many years earlier) gifted the Property to

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  Raffone via Warranty Deed while visiting her daughter in Florida.  On October 16, 2003,

2  Campbell prevailed upon Traute to sign a "Last Durable Power of Attorney" in favor of Campbell.

3  The document was witnessed by two doormen who worked in the Property, and was signed by a

4  notary at the Emigrant bank around the corner from the Property.  On November 6, 2003, Reiner

5  filed the Warranty Deed, transferring title of the Property from Traute to Raffone, in New York.

6       On November 14, 2003, Campbell apparently learned of the registration of the Warranty

7  Deed and forged what later became known as "the November Will."  The November Will

8  purported to disinherit Raffone, left the bulk of Traute's estate to Campbell and provided for a

9  smaller bequest to Raffone's cousin, Michael Wacher, in Germany.  The November Will was

10  purportedly witnessed by another doorman at the Property, and a nearby resident, and signed and

11  notarized by an employee at Emigrant Bank.  During his deposition the doorman later stated

12  emphatically that he did not read English, had no idea what he was signing, and recalled that the

13  testator Traute, who he knew very well, was not present when he signed the document.

14       On the day after the November Will was purportedly executed, Traute was admitted to

15  Mount Sinai Hospital in New York for vomiting.  Raffone contends that Traute was poisoned by

16  Campbell, who has admitted to being responsible for ensuring she took her many medications.  In

17  November 2003, Campbell surreptitiously taped many conversations between Raffone and Traute.

18  In some of the tapes, Raffone appears to be heard using racial epithets to describe Campbell.

19       On November 20, 2003, Dr. Gottlieb, a physician in New York, wrote a letter indicating

20  that Traute may be suffering from Parkinson's Disease.  In late November 2003, after another

21  hospitalization, Traute moved to Florida to live with Raffone and Claudia's husband Donald St.

22  John.  Campbell frequently called the Palm Beach Police Department and the State of Florida,

23  Department of Children and Family Services Adult Protective Services, claiming that Traute had

24  been kidnapped and was being held against her will.  As evidenced by numerous reports, both the

25  Palm Beach Police Department and the State of Florida, Department of Children and Family

26  Services Adult Protective Services, thoroughly investigated these charges (including isolated

27  interviews with Traute) and found them to be groundless.

28

1    On July 30, 2004, Campbell filed a verified complaint against Raffone seeking injunctive

2    relief and to rescind the transfer of the Property, in New York Index No. 60246/04 (the

3    "Fraudulent Transfer Litigation").  In the Fraudulent Transfer Litigation, Campbell alleged that at

4    the time of the transfer Raffone "took advantage of the infirm state" of Traute.  During his

5    prosecution of the Fraudulent Transfer Litigation in the New York court, Campbell repeatedly

6    tried to admit portions of the audiotapes of conversations between Raffone and Traute into

7    evidence and submitted handwritten transcripts of those portions containing alleged racial epithets,

8    to the court.

9    In September 2004, after Raffone had the basement of the Property cleaned, Campbell

10    filled out a police report claiming that many of his "antiques" had been stolen.  As a result, during

11    a routine visit to New York, Raffone was arrested.  On October 18, 2004, Traute filed a one page

12    handwritten affidavit in which she explained that she had moved to Florida to escape Campbell

13    and that she living there of her own free will.  She also stated in the affidavit that it had always

14    been her intent to gift the Property to her daughter.  On October 22, 2004, the New York Supreme

15    Court issued a decision and order denying Campbell's request for injunctive relief.

16    On October 29, 2004, Campbell amended the Fraudulent Transfer Litigation to add a claim

17    that Traute was incapacitated and incompetent to make the gift of the Property to Raffone.  The

18    Fraudulent Transfer Litigation continued for 3½ years, and was ultimately stayed by the death of

19    Traute in December 2007.

20    On May 17, 2007, Richard Hershman, Esq. ("Hershman") counsel for Campbell, filed an

21    Affidavit to Vacate Default that attached the November Will as an exhibit.  This was the first time

22    the alleged November Will was disclosed.  In his Affidavit, Hershman states at paragraph 10:

23        Plaintiff now supplements his showing to the Court of his interest in
the subject premise by the Last Will & Testament executed by

24    Traute on November 14, 2003, believed to have been prepared at the
law offices of Mujica & Goodman, 103 West 86th Street, New

25    York, New York and executed at the Emigrant Savings Bank, before
Mary Frances Gattuso the assistant treasurer of the bank.  *See*

26    Exhibit E.  The Court should be advised that plaintiff Douglas
Campbell was not involved in any aspect in the preparation or

27    execution of this will.

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1    In 2007, one of the rent control tenants in the Property (who appeared to be a non-primary

2    tenant as evidenced by the fact that his answering machine in the apartment unit answered in the

3    name of a business with several extension lines), named John Schreiber, began paying Campbell's

4    rent on the Property.  Raffone contends that John Schreiber agreed to pay Campbell's rent in

5    exchange for a portion of any settlement obtained by Campbell in his lawsuits against Raffone.

6    On September 14, 2007, Raffone registered the Debtor with the New York Secretary of

7    State, and subsequently transferred ownership of the Property to the Debtor.

8    On December 13, 2007, Traute died at Palms West Hospital, Loxahatchee, Florida.  On

9    January 22, 2008, Raffone filed a Petition for Administration of the April Will of the Estate of

10   Traute in Palm Beach County, Florida, Case No. 502008-CP-000346-XXXXXMB (the "Probate

11   Litigation") and she was appointed as the personal representative of the estate.  On April 25, 2008

12   Campbell filed a Counter-Petition of the November Will.  On April 30, 2008, the Florida court

13   entered a order vacating the appointment of Raffone as personal representative of the Estate of

14   Traute, due to the later November Will, which had not been disclosed in the Petition for

15   Administration filed by Raffone.  On May 7, 2008, Campbell filed a Statement of Claim in the

16   estate stating that he had incurred $5,000,000.00 in legal fees.  On May 7, 2008, Campbell filed a

17   Statement of Claim in the estate alleging that he had incurred $43,000.00 in payments of the

18   mortgage and maintenance fees related to the Property.  On May 7, 2008, Campbell filed a

19   Statement of Claim in the estate alleging that he had an interest in ½ of the Property.  On August

20   18, 2008, Campbell filed a Surcharge Petition seeking recovery of the value of the Property

21   ($17,000,000.00 claimed by Campbell) plus $43,000.00 in payments of the mortgage and

22   maintenance fees related to the Property.

23   On June 13, 2008, Campbell filed a separate civil complaint Florida state court, known as

24   Case No. 502008-CA-17861-XXXXMB AG seeking to recover $43,000.00 in payments of the

25   mortgage and maintenance fees related to the Property (the "Florida Civil Litigation").  It is

26   unclear why Campbell commenced the Florida Civil Litigation as the Probate Litigation was fully

27   underway at that time.

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  Litigation in the Probate Litigation continued from early 2008 until the bankruptcy cases

2  were commenced.  Litigation in the Florida Civil Litigation continued until the time of the

3  settlement in the Probate Litigation in 2009.  That settlement has never been implemented.

4  Ultimately, Campbell believed that the Probate Litigation was resolved by a written

5  settlement, which would have paid Campbell $2.5 million plus attorneys' fees.  However, while

6  Raffone did sign the settlement agreement, she declined to sign any of the collateral documents,

7  angering Judge Cook in the Probate Litigation, who then entered an order holding Raffone in

8  contempt, threatening to jail her, and transferring ownership of the Property to Campbell.

9  On April 14, 2010, Raffone's New York counsel, Beys, Stein & Mobargha LLP ("Beys

10  Stein"), attended a civil contempt hearing in the Probate Litigation.  At that hearing, Judge Cook,

11  the judge in the Probate Litigation, made a statement to the effect that "there's enough value in the

12  Property to pay everyone, including Campbell and his claim for attorneys fees."  Given its tone

13  and context, Raffone believes that Judge Cook would rule that Raffone is entitled to any surplus

14  equity in the Property.  At the subsequent hearing on April 20, 2010, in New York in the New

15  York Sale Litigation (defined below), Beys Stein argued that the meaning of Judge Cook's

16  statement was that Raffone was the true owner of the Property and Campbell was merely a

17  creditor holding a claim for the payment of money.  Raffone believes that Campbell's attorney

18  Hershman conceded that point and that Campbell should cease making claims to be the sole

19  managing member of the Debtor.

20  **2.    History According to Campbell**

21  Traute married Campbell on August 27, 1966.[2]  They remained married until Traute's

22  death on December 13, 2007.  During their marriage, and on repeated occasions before

23  September 9, 2003, Traute promised to transfer a 50% interest in the Property to Campbell.

24  On April 11, 2003, under the coercive, abusive and oppressive influence of Raffone, which

25  acts eliminated any of Traute's free will, Raffone caused Traute to execute the April Will whereby

26  Traute appointed Raffone as her sole heir and willed only $300 to Campbell.

---

[2]    Indicative of how adversarial the relationship between Raffone and Campbell has become,
they cannot even agree on the date of Campbell's marriage to Traute.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    On September 9, 2003, under the coercive, abusive and oppressive influence of Raffone,

2    Raffone caused Traute to gift the Property to Raffone by recorded deed for no consideration.

3    Raffone did not advise Campbell of this transfer and failed to report it to any taxing agency until

4    October 2008, on which form she testified that the value of the Property at the time of the

5    September 9, 2003 transfer was $5,000,000.

6    In 2008, Raffone obtained an appraisal of the Property at $25 million to secure an

7    $8 million loan from the Plan Proponent.  Raffone had previously caused Traute to obtain a prior

8    secured loan for $422,000, much or all of which net proceeds were paid to or used for the benefit

9    of Raffone.  In October 2008, Raffone sent a letter to the IRS requesting it to abate the tax

10    penalties on the unreported transaction.  Raffone asserted that Traute was incompetent to handle

11    her financial affairs dating back to September 2003.  This statement to the IRS is an admission

12    that the transfer of the Property to Raffone in September 2003 was a fraudulent transfer under

13    applicable law.  Raffone was fully aware of Traute's promise to give 50% interest in the Property

14    to Campbell.

15    Campbell learned of the April Will on November 11, 2003.  Three days later, Traute

16    requested that Campbell assist her in executing the November Will, by which Traute appointed

17    Campbell as the executor, and provided to pay Raffone zero, some small portion of her estate to

18    other relatives, and the majority of the estate to Campbell.  The November Will revoked all prior

19    wills.

20    When Raffone learned that Traute was contemplating transferring all her assets to a trust

21    and having a guardian appointed, and on or about November 23, 2003, Raffone and her then-

22    husband kidnapped Traute from her New York residence at the Property, in her house dress and

23    slippers and without her medications, and drove her to Florida.  Raffone cut off all contact

24    between Campbell and Traute.  Campbell never saw Traute alive again.  When Traute died,

25    Raffone refused to tell Campbell of her death and did not advise Campbell of the Probate

26    Litigation until 77 days after the death of Traute.

27    Approximately 6 months after Traute was forcibly moved to Florida against her will, and

28    in July 2004, Campbell commenced the Fraudulent Transfer Litigation.

1    In January 2008, while the Fraudulent Transfer Litigation was stayed, Raffone filed the

2    Probate Litigation.  In that Florida action, Raffone sought to appoint herself as Traute's personal

3    representative and to probate the April Will.  Raffone intentionally failed and refused to give the

4    Florida court a copy of the November Will, even thought she knew of it and had a copy of it.  The

5    Florida court held an evidentiary hearing and on April 28, 2008, vacated its order appointing

6    Raffone as the personal representative and admitting the April Will to probate.  On December 10,

7    2008, Campbell was appointed as curator in a limited capacity.  Campbell sought to have the

8    November Will admitted to probate.  Trial on the counter-petition to admit the November Will to

9    probate was set for June 2009.

10    Raffone and Campbell reached a compromise of their disputes to avoid the June 2009 trial

11    in the Probate Litigation.  A settlement agreement was drafted, but Raffone refused to settle it, and

12    again, significant litigation erupted.  The Florida court eventually entered a final judgment in favor

13    of Campbell affording him a money judgment of $2.5 million, plus all attorneys' costs and fees in

14    enforcing his rights under the settlement agreement (not all fees for all litigation).  Thereafter, on

15    April 30, 2010, after the Petition Date of the Debtor, but before Raffone's petition was filed, the

16    Florida judge in the Probate Litigation held Raffone in contempt, imposed a penalty in the amount

17    of $2,000 per day for failure to comply with the final judgment entered by that court, which sums

18    allegedly continue to accrue and will continue until the contempt is purged.

19    During the Probate Litigation, Campbell filed "Statements of Claim," to which Raffone

20    objected.  In response to the objections raised by Raffone, Campbell commenced the Florida Civil

21    Litigation.  In August 2008, Campbell attempted to use the Florida Civil Litigation to surcharge

22    Raffone, to compel Raffone to account for all probate estate assets, and to return to the probate

23    estate all assets that had been improperly transferred to Raffone before Traute's death.  The

24    Florida Civil Litigation was set for trial in 2009, but resolved as part of the settlement in the

25    Probate Litigation, referenced above.

26    Since the bankruptcy cases were filed, Raffone and the Debtor have had unfettered use of

27    an estimated $457,000 - $650,000 in gross rents per year.  Moreover, Raffone got a loan for

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1   $8 million from the Plan Proponent and Raffone has refused and continues to refuse to account to

2   Campbell for the use of the loan proceeds.

3         On dates that are unknown to Campbell, Raffone used her influence over Traute to cause

4   Traute to transfer other assets to Raffone, including bank accounts, jewelry, stocks and real

5   property, with which Raffone purchased a Palm Beach, Florida condominium and a home in

6   Loxahatchee, Florida.

7         Campbell believes that Raffone has fraudulently transferred assets to herself, in violation

8   of the orders of the Probate Litigation, and in violation of Campbell's appointment as curator for

9   Traute's estate.  Campbell has filed a complaint seeking to prevent the entry of a discharge as to

10  Raffone in her personal bankruptcy case ("Discharge Litigation").  Raffone has objected to the

11  proof of claim filed by Campbell in the Raffone bankruptcy case.  The bankruptcy court is likely

12  to combine the Discharge Litigation, which is an adversary action, with the claim objection, which

13  is a contested matter.  In November 2010, the bankruptcy court granted relief from stay to

14  Campbell to pursue the Florida Probate Litigation to finality.

15         **B.    Principals/Affiliates of Debtor's Business.**

16  Claudia Raffone contends that she is the sole managing member of the Debtor.

17  Campbell contends that he is the sole managing member of the Debtor.

18         No court has ever determined with finality who is the owner of Nevada Star.  The Plan

19  does not seek to resolve that issue.  Instead, the Plan provides that Campbell will accept a flat

20  $2.5 million distribution as the member of Class 4 under the Plan and he will waive all other rights

21  to ownership of any assets, his ownership of the membership certificates of Nevada Star, or other

22  payment on account of any court rulings with respect to him and Raffone in any state.  At the time

23  the Plan is fully consummated, Raffone will be recognized as the sole member of Nevada Star.

24         **C.    Management of the Debtor Before and After the Bankruptcy.**

25         Minuit was appointed by Judge Peter Sherwood of the New York Supreme Court by order

26  entered on March 25, 2010.  Raffone and her counsel selected Minuit to manage the Property in

27  her effort to prevent Campbell from taking control over the Property.  At a later date, Raffone

28  came to distrust Minuit and expressed her desire to have Minuit removed.  Raffone never took any

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  formal steps in Court to have Minuit removed, although initially she did oppose Madison's efforts

2  to prevent Raffone from acting as a debtor in possession.  After the first hearing on the use of

3  Madison's cash collateral, Raffone asserted no further objections to the use of rents from the

4  Property.  She has continued her objections to Minuit throughout the bankruptcy cases.

5      Madison did not believe Raffone to be trustworthy or competent with respect to

6  management of the Property.  On three separate occasions (June 4, 2010 [Docket No. 31], June 15,

7  2010 [Docket No. 45] and August 27, 2010 [Docket No. 76]), Madison asked the Bankruptcy

8  Court to (1) lift the automatic stay to the extent necessary to permit Minuit to remain in

9  possession, custody and control of the estate's cash collateral, (2) excuse the requirement of

10  turnover by a custodian such as Minuit under 11 U.S.C. § 363 of the Bankruptcy Code, and

11  (3) authorize the use of Madison's cash collateral in connection with budgets that had been

12  approved by Madison for the upkeep, maintenance and protection of the Property (the "Excuse

13  From Turnover Motions").  Madison brought on the Excuse From Turnover Motions at the urging

14  of Minuit who expressed difficulties it was experiencing in managing the Property under

15  Raffone's direction.

16      Minuit informed Madison  that critical repairs to the fire safety system and the erecting of

17  scaffolding to protect the public from falling pieces of the façade were necessary expenditures.

18  The Debtor and Raffone initially opposed any use of cash to protect the public, curiously insisting

19  that the masonry of the building would only fall on tenants using the courtyard and not on the

20  public street.  The Debtor and Raffone also opposed the retention of Minuit as the custodian of all

21  cash collateral, despite the order of a state court (described below) that a property manager other

22  than Raffone be in place.  The Debtor and Raffone ignored the rights of the tenants and caused

23  numerous complaints to be filed with the City of New York, leaving the Debtor liable for

24  thousands of dollars of fines and the need to retain an expeditor to resolve outstanding violations.

25  A list of the violations printed from the City of New York website can be accessed by any party in

26  interest.[3]  The Debtor and Raffone opposed the use of cash to pay for critical repairs to the fire

[3]    By accessing http://167.153.4.71/Hpdonline/provide_address.aspx  and inserting the street
address number (114) and street location (W. 86th Street) and hitting the search button, that should
bring parties  to the following page:

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  safety equipment in the building, insisting that such repairs were fabricated by Minuit and not

2  necessary.  The Debtor did not always timely pay employees and other regular maintenance and

3  repairs had gone unpaid.  Minuit also informed Madison that numerous leases were not timely

4  renewed under New York's rent stabilization law, some over a period of many years, leaving

5  insufficient funds to make any interest payment on the Note.  Apparently other vendors also went

6  unpaid, and at least 3 liens asserting demands for over $2.5 million have been recorded against the

7  Property in positions junior to Madison.  Accordingly, Madison felt that the bringing on of the

8  Excuse From Turnover Motions was necessary to preserve (i) the Property and (ii) any hope of a

9  sale that would generate proceeds in excess of Madison's claim.  The Debtor and Raffone did not

10  oppose the second and third Excuse From Turnover Motions.  All three Excuse From Turnover

11  Motions were granted by orders entered on July 13, 2010 [Docket No. 63], September 30, 2010

12  [Docket No. 139] and October 8, 2010 [Docket No. 144].

13  **D.     Events Leading to Chapter 11 Filing.**

14  Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case:

15  The Tenant Litigation:          At some point in early 2009, a group of tenants engaged

16  attorney Ms. Catherine Grad to assist them in assuring regular repair and maintenance of the

17  Property.  Ms. Grad commenced an action against the Debtor and on May 27, 2009 (the "Tenant

18  Litigation"), and a Civil Court of the City of New York ordered Raffone to obtain a managing

19  agent for the Property that was <u>not</u> Raffone or her family or related parties.  That order further

20  required the Debtor to maintain $5,000 in a bank account in New York which in turn could be

21  accessed by the court appointed managing agent to pay for ongoing maintenance of the building,

22  which includes paying the superintendent (the ("Tenant Protection Order").  Raffone appears to

23  have disregarded the Tenant Protection Order, and the managing agent mentioned in the court

24  order never signed the order or managed the Property.  Instead, Raffone had her superintendant's

25  wife (Vjollca Lumaj) registered for a period of time as the managing agent, when in actuality there

26  was no one other than Raffone herself acting as the property manager.  Subsequent to the entry of

27  http://167.153.4.71/Hpdonline/select_application.aspx .  On the left hand margin, any party can
then clink the link entitled "All Open Violations."

28

1  the Tenant Protection Order, Minuit was appointed as the managing agent by Judge Sherwood.

2  Since the time of Minuit's appointment, the number of complaints by tenants has been

3  dramatically reduced.  New complaints by tenants are now extremely low in number.

4       <u>The Probate Litigation</u>:     Prior to the commencement of this bankruptcy case, the

5  Debtor and Raffone were involved in litigation in the Circuit Court of the Fifteenth Judicial

6  Circuit in and for Palm Beach County, Florida, in Case No. 502008-CP-00346-XXXXMB, *In re*

7  *Estate of Traute*, deceased (herein called the "Probate Litigation").  In the Probate Litigation,

8  Raffone was locked in a tug of war with Campbell over ownership of the Property.  On

9  February 5, 2010, the Circuit Court in Palm Beach County Florida entered a final judgment

10  approving a transfer of "100% of Claudia Raffone's membership interest in Nevada Star, LLC" to

11  Campbell ("Probate Order").  A summary of the Probate Litigation procedural history and facts

12  believed to be relatively neutral and not in favor of either Raffone or Campbell, relating to that

13  litigation is set forth in paragraphs numbered 1-28 below.

14       1.     Raffone is the only child of her mother, Traute.

15       2.     Campbell is allegedly Raffone's mother's third husband.  Raffone disputes that fact

16  as she contends that no certified marriage license has been proffered by Campbell.

17       3.     Raffone filed a Petition for Administration seeking her appointment as personal

18  representative and the admission to probate of a Last Will and Testament executed by the decedent

19  at the decedent's lawyer's office on April 11, 2003, devising the remainder of the estate to

20  Raffone.

21       4.     Campbell filed a Petition for Administration seeking his appointment as personal

22  representative and the admission to probate of a will allegedly prepared and executed by the

23  decedent on November 14, 2003, devising the remainder of the estate to Campbell.

24       5.     Raffone contested the November Will on the basis of improper execution.

25       6.     In New York and Florida, Campbell sued Raffone to invalidate a gift made by the

26  decedent in September 9, 2003 to Raffone of the Property.

27       7.     According to Raffone, the Property has been appraised for approximately

28  $18 million dollars.  A copy of the 2009 Appraisal is attached as Exhibit "A."

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

8.      Raffone and Campbell litigated Campbell's Counter-Petition of Administration in October of 2009, the parties settled all pending issues, executed a settlement agreement and the settlement agreement was approved by the Florida Court on October 21, 2009 ("Settlement Agreement").  The Settlement Agreement provided for Raffone's appointment as Personal Representative and that Campbell would receive a different parcel of property, the co-operative apartment located at 108 East 86th Street, Apt. 11N, New York, New York (the "Co-Op") owned by Traute and $2.25 million dollars.  Raffone contends that the Co-Op has a $1.8 million dollar value.  There is also a federal tax lien placed against the Co-Op, which must be satisfied by Raffone under the Settlement Agreement.

9.      The Settlement Agreement also provided that Raffone would retain ownership of the Property, and that Campbell would dismiss the Florida Civil Litigation and the Fraudulent Transfer Litigation.

10.     This $2.25 million dollars included payment to the Gunster law firm for their claim to more than one million dollars in attorneys' fees and costs.  Counsel for Campbell has represented that the amount due Gunster Yoakley has currently been reduced, presumably by payments from their client, Campbell, or an agent of their client.

11.     The Settlement Agreement also provides for the use of security documents in favor of Campbell in order to ensure payment of the $2.25 million dollars by April 1, 2010 ("Security Documents").  The Security Documents were to be the subject of further negotiations and were to include a pledge of Raffone's interests in the Debtor.

12.     The form of these Security Documents was not created and/or reviewed until at least a month after the execution of the Settlement Agreement and was not finalized as to form until late December 2009.

13.     At the time of the execution of the Settlement Agreement, it was contemplated by all parties that Raffone would pay Campbell the $2.25 million dollars after sale, re-financing or other transfer of ownership for profit, of the Property.

14.     The Property, both prior to and after the settlement, was subject to a first mortgage in an amount exceeding $8 million dollars in favor of Madison.  Thus, the Settlement Agreement

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    and the Security Documents were tailored in order to prevent an "event of default," under the first

2    mortgage and preserve Madison's priority.

3        15.    The Security Documents include a mortgage on Raffone's claimed Florida

4    Homestead, a New York Judgment by Confession for $2.5 million dollars, a Pledge Agreement by

5    Raffone to the membership interest in the Debtor and a first priority interest in an interest reserve

6    account held by the first mortgagor, Madison, on the Property.

7        16.    Prior to the completion of the form of the Security Documents, but two months

8    after the Settlement Agreement was agreed upon, at least verbally, a tax lien against the Defendant

9    was placed on the Co-Op.  Pursuant to the Settlement Agreement, Raffone would have to satisfy

10   the tax lien.  However, as stated above, the satisfaction of the financial obligation to Campbell by

11   Raffone would be paid from the proceeds of the sale or re-finance of the Property, which was

12   required to occur by April 1, 2010.

13       17.    With the tax lien pending on the Co-Op, execution of the Security Documents

14   would have allowed Campbell to foreclose on his security interest (through the Security

15   Documents and the default terms of the Settlement Agreement) long before April 1, 2010, the

16   contemplated payment date.  Therefore, Raffone moved for an extension of time to satisfy the tax

17   lien until April 1, 2010 and the Court denied same.

18       18.    After the denial of the extension request, Campbell requested Raffone sign the

19   Security Documents.  Raffone did not sign, nor consent to the execution of, the Security

20   Documents.  In response to Raffone not executing the Security Documents, Campbell moved the

21   Florida Court to hold Raffone in contempt and the Court entered a contempt order and issued a

22   writ of bodily attachment until such time as Raffone signed said documents which was granted.

23       19.    Raffone's counsel motioned the Florida Court to withdraw, which request was

24   granted on February 1, 2010.

25       20.    Campbell filed a "Motion to Enforce Settlement Agreement, for Entry of Final

26   Judgment in Favor of Henry Douglas Campbell and Against Raffone, Donald St. John, and the

27   Debtor, and to Confirm and Establish the Security Required Under Settlement Agreement."

28   ("Motion to Enforce Settlement Agreement").

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

21.     The Motion to Enforce Settlement Agreement requested that the Florida Court "deem" the Security Documents to be "signed," without Raffone's execution or consent to same, and grant Campbell the relief provided for in the Security Documents and further relief from the Court itself.  While Raffone was not represented by counsel, a hearing on the Motion to Enforce Settlement Agreement was held on February 5, 2010.

22.     On February 5, 2010, the Court entered a Final Judgment (the "Florida Final Judgment").  Raffone disputes the factual findings in the Final Judgment.

23.     The Florida Final Judgment provided in pertinent part:

a.     As a matter of law, Campbell was entitled to specific performance of the Settlement Agreement;

b.     The Florida Final Judgment was entered on behalf of Campbell and against Raffone and the Debtor, jointly and severally, in the amount of $2.5 million dollars;

c.     Campbell was entitled to immediately record the Florida Final Judgment in any and all jurisdictions;

d.     The Security Documents were deemed executed by the parties effective the date of the Florida Final Judgment and Campbell was entitled to all of the rights afforded by the Security Documents;

e.     100% of Raffone's membership interest in the Debtor was transferred to Campbell, effectively immediately, and Campbell was entitled to immediate possession of all its books, records, etc, including rent rolls and the right to immediately begin collecting rent from the tenants in the Property;

f.     The Debtor was directed to immediately issue a certificate for 100% of the membership interests to Campbell;

g.     The Department of Housing and Community Renewal for the City of New York was authorized and directed to provide Campbell with records of the registered rents for the Property;

h.     Campbell was assigned all the rights that the Debtor and/or Raffone had in the interest reserve account with Madison;

i.      Campbell was entitled to a mortgage in the principal amount of $400,000 on Raffone's Florida Homestead property; and

j.      Campbell was entitled to recover the attorneys' fees and costs he incurred in connection with enforcing his rights under the Settlement Agreement.

24.     Before the Florida Final Judgment became final as a matter of law, Campbell began informing tenants of the Property and other New York entities of his "ownership" of the Property under the Florida Final Judgment.  By letter dated February 5, 2010, Campbell notified the tenants of the Property "that 114 W. 86th Street is now owned by Henry Douglas Campbell," "as owner he has appointed DRJ 175 LLC as the new management company for [the] property represented by Mr. Schreiber" and that "all future rents will be made to DRJ 175 . ..".

25.     On February 16, 2010, Raffone asked her counsel to re-appear in the matter.  Raffone timely filed a Motion for Rehearing on Order Granting Final Judgment on Settlement Agreement and Confirming and Establishing Security Interests and Rights ("Motion for Rehearing") on February 16, 2010.  Campbell provided the Court with a response to Raffone's Motion(s) for Rehearing and continued to claim he owned the Property.  The Motion for Rehearing was denied by the Florida Court on February 25, 2010.

26.     Campbell also, through the use of the Florida Final Judgment, levied Raffone's personal and the Debtor's bank accounts at Chase Bank, Bank of America and Citibank.

27.     Due to Campbell's and Raffone's actions, many tenants stopped timely paying rent and the upkeep and maintenance of the Property suffered.  The Debtor brought some lawsuits against defaulting tenants in landlord-tenant courts in New York.  Raffone contends that Campbell's intervention during that time prevented Raffone and the Debtor from enforcing the leases which were then in effect and rental income was lost.

28.     Raffone filed an appeal of the Florida Final Judgment on February 26, 2010, as Case Number 4D10-865 in the Fourth District Court of Appeal.  Raffone also filed a motion for a stay pending appeal on March 12, 2010 ("Motion for Stay Pending Appeal").  Although the appeal case filing fee was paid on March 5, 2010, ultimately the appeal was not prosecuted because (1) Raffone ran out of money and her lawyers were no longer willing to work for a promise of

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1    future payment, and (ii) the New York Sale Litigation (described below) was commenced.  The

2    Motion for Stay Pending Appeal required the posting of a bond, which Raffone either was unable

3    or unwilling to post.  Raffone's bankruptcy counsel concedes that while the filing of the

4    bankruptcy case of Raffone operates as a stay, it does not override the requirement that Raffone

5    post a bond in the pending appeal.  The failure to post a bond eventually caused the New York

6    court to refuse to stay enforcement of the Florida Final Judgment.  Campbell contends that

7    Raffone did not pursue the appeal of the Florida Final Judgment because the Florida Probate

8    Litigation judge was so angry at Raffone that she knew she was certain to lose the appeal.

9    Raffone disputes that position.

10        The Loan from Madison:        On or about September 23, 2008, the Debtor made, executed

11    and delivered a promissory note in the form of a Mortgage Note (the "Note"), in favor of Madison

12    or Madison's successors in interest in connection with a loan in the original principal amount of

13    $8,000,000.00.  The loan made by Madison is subject to the express terms and conditions of the

14    Note, as well as those terms and conditions set forth in other related loan documents, (collectively,

15    the "Pre-Petition Loan Documents").  Under the Note, Debtor was to make monthly interest

16    payments to Madison and pay all real estate taxes and other assessments levied against the

17    Property.  The Pre-Petition Loan Documents include, among other things, a recorded security

18    interest against the Collateral (described below), among other documents.

19        In accordance with the Pre-Petition Loan Documents, the Debtor granted Madison a

20    security interest in the Property, in addition to any rents, issues, profits and proceeds thereof (the

21    "Collateral").  Madison duly perfected such security interest(s) by, promptly recording the

22    Mortgage and Security Agreement ("Mortgage") in the Official Records of the Office of the City

23    Register of the City of New York on or about October 3, 2008 as CRFN No. 2008000392051, and

24    accordingly, holds a valid and enforceable, unavoidable and perfected first priority security

25    interest in and lien on all of the Debtor's assets listed therein.  Madison also recorded a UCC-1

26    against the Collateral and recorded a separate Assignment of Leases and Rents.

27        Raffone personally guaranteed the Loan.

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Prior to the Petition Date, a default in the payment of pre-petition real estate taxes pursuant to Sections 5 and 21 of the Mortgage occurred on July 1, 2009, so on December 29, 2009, Madison sent notice to the Debtor demanding a cure in the failure to pay over $209,000 of pre-petition real estate taxes. The Debtor defaulted under the loan by failing to pay the pre-petition real estate taxes in July 2009, and thereafter failed to make interest payments due for the months of December 2009 and January 2010. The entry of the Probate Order was a further event of default. Accordingly, on February 23, 2010, Madison sent notice to the Debtor advising of these defaults and accelerating the debt. On or about February 10, 2010, Madison received a written request from counsel to Campbell seeking a payoff figure so that it could satisfy the Mortgage and prevent a foreclosure of Campell's interests therein. No payoff has been received by Madison.

Madison obtained an appraisal of the Property in February 2010 which stated a value of $13.8 million. Madison does not know the actual value of the Property but believes it will exceed $13.8 million. Madison's claim as of October 21, 2010, was approximately $9,681,523.72 including late fees, attorneys' fees, foreclosure costs and other related expenses. Additional amounts are continuing to accrue, including interest at the rate of $5,055.34 per day. No payments have been made to Madison in the last 10 months because all cash flow was used to maintain the Property and pay for repairs and costs of operation, excepting only a small amount reserved for payment of post petition taxes. Neither pre-petition nor post-petition real estate taxes have been paid. Madison believes that the sum of at least $743,100 is owed for pre-petition and post-petition real estate taxes and there is an insufficient amount of cash on hand (roughly $54,000) to pay that amount.

The New York Sale Litigation.    In March 2010, soon after the appeal of the Florida Final Judgment was filed in the Fourth District Court of Appeal, the Debtor and Raffone retained the firm Beys Stein to commence litigation in the Supreme Court of the State of New York that would facilitate a sale of the Property and prevent Campbell from taking it under the Florida Final Judgment (the "New York Sale Litigation"). At the inception of the New York Sale Litigation, Minuit was appointed to act as the property manager for the Property by the Honorable Judge Peter Sherwood of the New York Supreme Court by order entered on March 25, 2010. Judge

1    Sherwood indicated that he did not wish to have the Property or the tenants suffer while he

2    resolved the dispute over the Property between Raffone and Campbell.  Accordingly, since that

3    time on March 25, 2010, Minuit has been acting as the custodian in control of the Property,

4    collecting rents and paying expenses of operation as consented to by Madison.

5        During the New York Sale Litigation, Judge Sherwood entered orders, dated March 25,

6    2010 (granting a stay of the Final Florida Judgment and ordering the posting of a bond), April 8,

7    2010 (requiring that any sale of the Property go through him and extending the time to post a

8    bond), April 23, 2010 (further extending the time for Raffone to post a bond), and April 27, 2010

9    (vacating the stay for the failure of Raffone to post a bond).  This April 27, 2010 order has been

10    deemed void by this Bankruptcy Court, Judge Samuel Bufford presiding, who later found it to

11    have violated the bankruptcy stay of 11 U.S.C. § 362(a).

12        Immediately prior to the Petition Date, Judge Sherwood set a hearing on the proposed sale

13    of the Property.  Michael Beys of Beys Stein submitted an affidavit stating that his firm assisted

14    the Debtor in locating buyers for the Property, and that approximately five buyers in the price

15    range of $15,000,000 to $15,500,000 were located, each of whom were prepared to close cash

16    sales in a relatively short period of time.  Before Judge Sherwood could conduct an auction of the

17    Property, the Debtor's petition in bankruptcy was filed.

18        The Foreclosure Litigation.    Prior to the Debtor's bankruptcy, Madison commenced

19    litigation in the Supreme Court of the State of New York, County of New York, Index No.

20    103172/10, *Madison Realty Capital, L.P.. v. Nevada Star, LLC, et al.* ("Foreclosure Litigation").

21    In connection with the Foreclosure Litigation, Madison made application to appoint a receiver

22    over the Property to secure and protect the cash collateral and cause all rents, issues and profits to

23    be used to maintain the Property, and pay expenses associated therewith, including real estate

24    taxes that are accruing as a senior lien ahead of Madison.  On April 16, 2010, the Supreme Court

25    for the State of New York, County of New York, granted an order appointing Gerald Kahn of

26    Smith Buss & Jacobs as the receiver ("Receiver").  The Receiver never took possession of the

27    Property due to the filing of the bankruptcy petition and the triggering of the automatic stay.  The

28    foreclosure of the Property by Madison and the sale of the Property by Judge Sherwood were

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  stayed by the Debtor's commencement of the Debtor's case on April 26, 2010.  The Debtor never

2  filed an answer in the Foreclosure Litigation and accordingly, no sale was set.

3      On December 2, 2010, Madison moved the Bankruptcy Court for relief from stay to

4  continue litigating the Foreclosure Litigation, which motion was granted by order entered on

5  December __, 2010.

6  **E.    Significant Events During the Bankruptcy.**

7      **1.    Bankruptcy Proceedings.**

8      The following is a chronological list of significant events which have occurred during this

9  case:

10      **a.    Bankruptcy Case Matters:**

11  1.  On April 26, 2010 the Debtor filed its voluntary chapter 11 petition.

12  2.  On May 5, 2010, Raffone filed her voluntary chapter 11 petition.

13  3.  Three Excuse From Turnover Motions were granted by orders entered on July 13, 2010

14      [Docket No. 63], September 30, 2010 [Docket No. 139] and October 8, 2010 [Docket

15      No. 144]..

16  4.  On October 14, 2010, the Bankruptcy Court entered orders consolidating the cases of

17      the Debtor and Raffone administratively [Docket Nos. 29 and 146].

18  5.  On November 9, 2010, the Bankruptcy Court entered an order granting Campbell relief

19      from stay to pursue a final judgment in the Florida litigation matters [Docket No. 176].

20  6.  On November 9, 2010, the Bankruptcy Court entered an order granting Campbell the

21      right to take the 2004 examination of Raffone [Docket No. 177].

22  7.  On December __, 2010, the Bankruptcy Court entered an order granting Madison relief

23      from stay to pursue the Foreclosure Litigation [Docket No.  ___].

24  8.  On December __, 2010, the Bankruptcy Court entered an order finding that this

25      Disclosure Statement contained sufficient information to permit Madison to seek votes

26      in favor of the Plan.

27

28

SM01DOCS\810794.1

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

### b.    Other Legal Proceedings.

Other than the foregoing bankruptcy court matters and bankruptcy court adversary proceedings, the Debtor is involved in various legal proceedings relating to the tenant's obligations to pay rent in a timely fashion.  Some of those actions may lead to evictions of non paying tenants and judgments for back due rent.

### 2.    Actual and Projected Recovery of Preferential or Fraudulent Transfers.

The Debtor's plan contemplates payment in full of all allowed claims.  Consequently, Madison and the Committee believes no benefit can be derived from the pursuit of preferential transfer actions.  On the other hand, pursuing such actions will certainly increase the administrative expenses of the estate.  Thus, preference actions are not contemplated at this time.  Nothing in this paragraph shall prevent the Administrator from pursuing preferential or fraudulent transfer actions, except that all such rights, if any exist, against Madison are waived.

### 3.    Procedures Implemented to Resolve Financial Problems.

To attempt to fix the problems that led to the bankruptcy filing, Madison has proposed the following procedures:  The post confirmation estate will retain a real estate broker to market and sell the Property for an amount sufficient to pay all allowed claims against the Debtor in full within 6 months of the Effective Date.  The Plan further contemplates that the Administrator shall take such steps as he deems appropriate or necessary to liquidate assets of the Raffone estate to pay allowed claims against Raffone within 3 years of the Effective Date.

### 4.    Current and Historical Financial Conditions.

The Debtor's most recent historical pre-petition complete financial statement has not been located and is not disclosed.

The Debtor's bankruptcy schedules A and B disclose all of the Debtor's assets as of the petition date and is included within Exhibit "A" to the Plan.  Raffone's bankruptcy schedules A and B  are believed to not disclose all of Raffone's assets as of the petition date and a more complete list, although possibly not complete, is included within Exhibit "B" to the Plan.  The

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1    Debtor's MORs and Raffone's MORs are available upon written request to the Proponent's

2    counsel.

3    **III.    SUMMARY OF THE PLAN OF REORGANIZATION**

4        **A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan.**

5        As required by the Bankruptcy Code, the Plan classifies claims and interests in various

6    classes according to their right to priority.  The Plan states whether each class of claims or

7    interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

8        **B.    Unclassified Claims.**

9        Certain types of claims are not placed into voting classes; instead they are unclassified.

10   They are not considered impaired and they do not vote on the Plan because they are automatically

11   entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent

12   has not placed the following claims in a class.

13       **1.    Administrative Expenses.**

14       Administrative expenses are claims for costs or expenses of administering the Debtor's and

15   Raffone's Chapter 11 case which are allowed under Code Section 507(a)(1).  The Code requires

16   that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant

17   agrees to a different treatment.  This Plan provides that two administrative creditors consent to

18   partially deferred payment of their claims and to waive payment of their claims in their entirety on

19   the Effective Date.

20       The following chart lists all of the known § 507(a)(1) administrative claims in both the

21   Nevada Star and Raffone estates and their treatment under the Plan:

22

| Name | Amount Owed (exclusive of retainer deposits) | Treatment |
|---|---|---|
| Law Offices of Michael Berger (Nevada Star fees and expenses) | $TBC | Paid from retainer, and remaining portion shall be paid half from cash collateral (if sufficient funds are available) and balance from the proceeds of escrow of the Property |
| Law Offices of Michael Berger (Raffone fees and expenses) | $TBC | Paid from the proceeds of sale of property of the Raffone estate |
| Lewis R. Landau (Counsel in Nevada Star case for the Official Unsecured Creditors' Committee ("Committee")) | $TBC | Paid half from cash collateral (if sufficient funds are available) and balance from the proceeds of escrow |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| Name | Amount Owed (exclusive of retainer deposits) | Treatment |
|---|---|---|
| Clerk's Office Fees (Nevada Star) | TBD (nominal) | Paid in Full on Effective Date from cash collateral in possession of Minuit Partners Property Management LLC ("Minuit") |
| Clerk's Office Fees (Raffone) | TBD (nominal) | Paid in Full on Effective Date from cash contributed by Madison |
| Office of the U.S. Trustee Fees (Nevada Star) | Current | Paid in Full on Effective Date from cash collateral in possession of Minuit |
| Office of the U.S. Trustee Fees (Raffone) | Current | Paid in Full on Effective Date from cash contributed by Madison |
| | TOTAL $TBD | |

To the extent that the Law Offices of Michael Berger (the "Berger Firm") received a retainer for its work in the Nevada Star case from the cash collateral of Madison without its consent, Madison will not pursue recovery of such cash collateral if the Plan is confirmed. Madison believes $25,000 of its cash collateral was paid to the Berger Firm on account of the Nevada Star case.

To the extent that the Berger Firm received a retainer for its work in the Raffone case from the cash collateral of Madison without its consent and such funds were in fact cash collateral arising out of the Debtor's Property, the Law Offices of Michael Berger will remit such retainer to the Plan Administrator for payment of the Debtor's creditors and the law firm will be paid from the proceeds of the liquidation of the assets of Raffone. Madison believes $20,000 of its cash collateral was paid to the Berger Firm on account of the Raffone case.

Court Approval of Fees Required:

The Court must approve all professional fees listed in this chart. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be required to be paid under this Plan.

The Plan provides for the appointment of the Administrator. Fees and expenses arising out of the Nevada Star case and owed to the Berger Firm and Lewis R. Landau will be paid (after application of any retainer that is not disgorged) up to a maximum of half of their allowed amount from the cash collateral on hand within a reasonable period of time following the Effective Date

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   (allowing for sufficient time to permit the Administrator to issue checks), and the balance direct

2   out of escrow at the time the Property is sold.  Such payments are contingent upon their fee

3   applications having been heard, the final amount allowed and no stay pending appeal is obtained

4   as of that date.  If there are insufficient funds on hand from the cash collateral of Madison to pay

5   one half of the allowed amounts of both professionals' claims, then the Administrator shall

6   determine a reasonable amount to be paid from such funds that will not impair the operations of

7   the Property, and shall pay the remaining balance from the escrow closing at the sale of the

8   Property with interest to accrue on such unpaid amount at the rate of 5% simple interest per

9   annum.  The Administrator shall be permitted to withhold any payment to administrative creditors

10  until allowed by final Court order or until the Property has sold, if he determines in the exercise of

11  his discretion that such delay is warranted by the facts of the cases.

12        Madison authorizes the use of its cash collateral in an amount required to pay the Nevada

13  Star Clerk's Office Fees and the Office of the U.S. Trustee's Fees on the Effective Date.  If

14  insufficient funds from operations are present to pay such amounts on the Effective Date, then

15  Madison will make an advance under its loan documents to the reorganized Nevada Star Debtor's

16  ("Reorganized Debtor") estate and add any payment to its allowed Class 2 claim.

17                    **2.      Priority Tax Claims.**

18        Priority tax claims are certain unsecured income, employment and other taxes described by

19  Code Section 507(a)(8).  The Code requires that each holder of such a § 507(a)(8) priority tax

20  claim receive the present value of such claim in deferred cash payments, over a period not

21  exceeding six years form the date of the assessment of such tax.

22        The following chart lists all of the Debtor's Section 507(a)(8) priority tax claims and their

23  treatment under this Plan.

24

25

26

27

28

SM01DOCS\810794.1

| DESCRIPTION | AMOUNT OWED | TREATMENT |
|---|---|---|
| • Name= IRS<br><br>• Type of Tax = capital gains tax<br><br>• Date tax assessed =2011 | Approximately $2,000,000 | • Pymt interval =one time<br>• Pymt amt/interval = full amount of claim<br>• Begin date = close of escrow, or as soon as Administrator can determine the amount owed, whichever is earlier<br>• End date = N/A<br>• Interest Rate % = statutory<br>• Total Payout Amount 100 % |
| • Name= New York State<br><br>• Type of Tax = capital gains tax<br><br>• Date tax assessed =2011 | Approximately $897,000 | • Pymt interval =one time<br>• Pymt amt/interval = full amount of claim<br>• Begin date = close of escrow, or as soon as Administrator can determine the amount owed, whichever is earlier<br>• End date = N/A<br>• Interest Rate % = statutory<br>• Total Payout Amount 100 % |
| • Name= New York State Tax Department and New York State Dept. of Labor<br><br>• Type of Tax = employment taxes on wages and salaries<br><br>• Date tax assessed =quarterly 2010 and 2011 | Approximately $4,000<br><br>Each quarter, the property manager pays all employment related taxes for the two employees of the property, which payments will continue in the ordinary course. | • Pymt interval =quarterly<br>• Pymt amt/interval = $/quarterly<br>• Begin date = N/A<br>• End date = N/A<br>• Interest Rate % = statutory (believed 0.00)<br>• Total Payout Amount 100% |

The following chart lists all of Raffone's Section 507(a)(8) priority tax claims and their treatment under this Plan.

| DESCRIPTION | AMOUNT OWED | TREATMENT |
|---|---|---|
| • Name= IRS<br><br>• Type of Tax = FICA and income taxes from 2006 through 2009 with interest accrued<br><br>• Date tax assessed =2011 | $48,450.99 | • Pymt interval =one time<br>• Pymt amt/interval = full amount of claim<br>• Begin date = close of escrow, or as soon as Administrator can determine the amount owed, whichever is earlier<br>• End date = N/A<br>• Interest Rate % = statutory<br>• Total Payout Amount 100 % |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    The penalty portion of the IRS priority claim shall be subordinated to the payment of the

2    rest of the unsecured class.  The asserted IRS penalty from the date of petition on unsecured

3    priority claims (including interest thereon) that will be subordinated is $19,214.49, plus any

4    additional accruing penalty amounts.

5    **C.    Classified Claims and Interests.**

6    **1.    Classes of Secured Claims.**

7    Secured claims are claims secured by liens on property of the estate. The following charts

8    list (a) classes 1-4 containing Debtor's secured pre-petition claims and their treatment under this

9    Plan, and (b) Class 5 containing Raffone's secured pre-petition claims and their treatment under

10    this Plan.  Class 5 is not secured against the Property.  Classes 1-4 are not secured by Raffone's

11    California or Florida homes.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of senior secured real estate taxes | No | Yes Claim paid in full at the close of escrow. | • Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |
| | • Name= New York City Department of Finance | | | • Pymt amt/interval = Allowed amount of claim/one payment. |
| | • Collateral description = Debtor's real property. | | | • Balloon pymt = Yes, one. |
| | • Collateral value = $16MM | | | • Begin date = Close of escrow |
| | • Priority of security int. = first | | | • End date = Close of escrow. |
| | • Principal owed = approx $999,354.32 (includes known interest and penalties through 1.1.11) | | | • Interest rate % = statutory • Penalties will not be paid as a Class 1 claim but will be paid as a Class 10 claim |
| | • Pre-pet. Arrearage amount = $unknown. | | | • Total payout = 100% of allowed amount of claim excluding penalties . |
| | • Post-pet. Arrearage amount = $unknown. | | | • Treatment of Lien = Lien terminated and extinguished upon payment. |
| | • Total claim amount = approx $999,354.32 (includes known interest and penalties through 1.1.11) | | | |

28

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Secured claim of senior secured lender holding voluntary lien | No | Yes<br>Claim paid in full at the close of escrow. | • Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |
| | • Name= Madison Realty Capital, L.P. | | | • Pymt amt/interval = Allowed amount of claim/one payment. |
| | • Collateral description = Debtor's real property. | | | • Balloon pymt = Yes, one. |
| | • Collateral value = $16MM | | | • Begin date = Close of escrow |
| | • Priority of security int. = second | | | • End date = Close of escrow. |
| | • Principal owed = $7,583,012.02 | | | • Interest rate % = 24% |
| | • Pre-pet. Arrearage amount = $1,039,943.10. | | | • Total payout = 100% of allowed amount of claim. |
| | • Post-pet. Arrearage amount = $1,058,568.60 as of October 21, 2010. | | | • Treatment of Lien = Lien terminated and extinguished upon payment. |
| | • Total claim amount = $9,681,523.72 as of October 21, 2010, plus amounts accrued after that date | | | |

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 3 | Secured claim of mechanic's lien holder | No | Yes<br>Claim is paid in full on close of escrow | • Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |
| | • Name= Ponichtera Contracting | | | • Pymt amt/interval = Allowed amount of claim/one payment. |
| | • Collateral description = Debtor's real property. | | | • Balloon pymt = Yes, one. |
| | • Collateral value = $16MM | | | • Begin date = Close of escrow. |
| | • Priority of security int. = third | | | • End date = Close of escrow. |
| | • Principal owed = $21,000 | | | • Interest rate % = statutory |
| | • Pre-pet. Arrearage amount = $12,017.29. | | | • Total payout = 100% of allowed amount of claim. |
| | • Post-pet. Arrearage amount = as accrued by law. | | | • Treatment of Lien = Lien terminated and extinguished upon payment. |
| | • Total claim amount = $32,017.29 plus amounts accrued by operation of law | | | |

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | Secured claim of involuntary judgment lien holder | No | Yes Claim is paid in full on close of escrow | • Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |
|  | • Name= Henry Douglas Campbell ("Campbell") |  |  | • Pymt amt/interval = $2.5 million/one payment. |
|  | • Collateral description = Debtor's real property. |  |  | • Balloon pymt = Yes, one. |
|  | • Collateral value = $16MM |  |  | • Begin date = Close of escrow. |
|  | • Priority of security int. = fourth |  |  | • End date = Close of escrow. |
|  | • Principal owed = $2.5MM |  |  | • Interest rate % = N/A |
|  | • Pre-pet. Arrearage amount = No amount will be paid beyond principal of $2.5 million. |  |  | • Total payout = 100% of principal amount of claim. |
|  | • Post-pet. Arrearage amount = No amount will be paid beyond principal of $2.5 million. |  |  | • Treatment of Lien = Lien terminated and extinguished upon payment. |
|  | • Total claim amount = $2,500,000 |  |  | • Campbell's unsecured portion of his claim, if any, is waived in full. |

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 5 | Secured claim of voluntary lender against Raffone's personal residence | No | Yes Claim is either assumed or paid in full on close of escrow | • Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |
|  | • Name= Links Capital Partners, LLC, et al.; Defined Benefit Pension Plan Trust |  |  | • Pymt amt/interval = $allowed amount/one payment or assumed |
|  | • Collateral description = Debtor's real property. |  |  | • Balloon pymt = Possible. |
|  | • Collateral value = $1,175K |  |  | • Begin date = Close of escrow. |
|  | • Priority of security int. = first against Beverly Hills house |  |  | • End date = Close of escrow or assumed |
|  | • Principal owed = $350K |  |  | • Interest rate % = per loan docs |
|  | • Pre-pet. Arrearage amount = Unknown. |  |  | • Total payout = 100% of allowed amount of claim |
|  | • Post-pet. Arrearage amount = Unknown |  |  | • Treatment of Lien = Lien terminated and extinguished upon payment, unless assumed. |
|  | • Total claim amount = as allowed |  |  | • Paid in full. |

1  To the extent that any claim listed on Exhibit C or Exhibit D is later determined by the

2  Administrator to be a secured claim, or if the Court enters an order affording treatment as a

3  secured claim to the holder of any claim that is not set forth in this section of the Plan, the

4  Administrator shall treat such claim as a secured claim with priority over payment of any priority

5  unsecured claim or general unsecured claim or equity claim for that debtor.

6  **2.    Classes of Priority Unsecured Claims.**

7  Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7)

8  are required to be placed in classes. These types of claims are entitled to priority treatment as

9  follows: the Code requires that each holder of such a claim receive cash on the Effective Date

10  equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders

11  may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the

12  allowed amount of such claims.

13  The Plan Proponent intends to allow the claim of Vjollca Lumaj for her unpaid regularly

14  hourly wages as if timely filed.  David and Vjollca Lumaj are employees at the Property and allege

15  that they were not paid certain wages, salaries and overtime during the years 2005-2010 when the

16  Property was managed by Raffone, notwithstanding that such claims may be late filed.  Madison

17  believes the legitimate past due wage claim of Vjollca Lumaj is $36,601.36 for basic hourly wages

18  without any overtime or bonus amounts included.  It shall be in the reasonable discretion of the

19  Administrator to determine whether to allow, compromise or contest the amount of any additional

20  filed claims by such employees that exceeds $36,601.36.  Raffone shall be entitled to object to any

21  treatment of such claims (including the $36,601.36) and the Administrator shall give notice to

22  Raffone of his proposed treatment of such creditors' claims, and if disputed, shall seek a ruling on

23  notice and opportunity for hearing before the Court.  Raffone shall bear the burden of proof if she

24  elects to challenge any portion of the $36,601.36.  David and Vjollca Lumaj shall have the burden

25  of proof if they elect to seek an amount higher than $36,601.36, including the amounts listed on

26  Exhibit C as disputed and not allowed.

27  The Plan Proponent intends to allow the claim of tenants for their security deposits,

28  believed to be held, at least in part, by Bank of America, N.A.  Tenant security deposits are not

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  funds of the Debtor or Raffone.  Under applicable New York law, tenant deposits must be held in

2  a bank in New York state, in each tenants' social security number, with annual reporting directly

3  to the tenants, who are entitled to all interest annually above 1% which they can choose to let

4  accrue or request be paid to them directly from the depositing bank.

5      The following chart lists all classes containing Debtor's §507(a)(3), (4), (5), (6), and (7)

6  priority unsecured claims and their treatment under this Plan.  There are no known §507(a)(3), (4),

7  (5), (6), and (7) priority unsecured claims of Raffone.

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 6 | Priority unsecured claims pursuant to § 507(a)(4)<br>• Total amt of allowed claims = $36,601.36<br><br>The claims in this Class 6 may be higher if the employees at the Property can submit a justifiable basis for additional compensation that was denied to them. | Yes | Paid in full in cash on close of escrow or when allowed by the Court, whichever is later.  Claims shall be paid without interest. |
| 7 | Priority unsecured claims pursuant to § 507(a)(7)<br>• Total amt of claims = $58,610.77<br><br>(funds to be released by Bank of America, N.A., and to the extent of any shortfall, paid from operating cash flow of the Debtor's real property, and thereafter, only in the extent of a further shortfall, funded in cash by Madison as an advance under its loan documents, and recovered as part of its allowed Class 2 claim) | Yes | Funded in full in cash on the Effective Date to property manager for building for the benefit of claim holders.  These paid claim amounts shall be held in a bank in New York state, in the tenants' social security numbers, with annual reporting directly to the claim holders post close of escrow. Each claim holder shall be entitled to elect either payment to him/her of all interest that has accrued annually above 1% or maintenance of all interest in their tenant deposit accounts. |

24      To the extent that any claim listed on <u>Exhibit C</u> or <u>Exhibit D</u> is later determined by the

25  Administrator to be a priority unsecured claim, or if the Court enters an order affording treatment

26  as a priority unsecured claim to the holder of any claim that is not set forth in this section of the

27  Plan, the Administrator shall treat such claim as a priority unsecured claim with priority over

28  payment of any general unsecured claim or equity claim for that debtor.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  *The Debtor has no known section 507(a)(3), (a)(5) or (a)(6) priority unsecured claims.*

2      **3.**    **Classes of General Unsecured Claims.**

3      General unsecured claims are unsecured claims not entitled to priority under Code Section

4  507(a).  Notwithstanding any judgment that might be issued in the nondischargeability litigation

5  commenced by Campbell on July 20, 2010, under this Plan, Campbell is not the holder of any

6  allowed unsecured claim and shall not be entitled to participate in the distribution of amounts paid

7  to holders of Classes 8 or 9 claims.  The Administrator shall not be required to liquidate assets of

8  the Raffone estate to satisfy any judgment in favor of Campbell, other than to assure the payment

9  in full of his stipulated Class 4 claim that is capped at $2.5 million.  The terms of this Plan shall

10  prevail over the terms of any judgment Campbell may obtain, whether or not the judgment occurs

11  prior to or after confirmation of this Plan.

12      The following chart identifies this Plan's treatment of the class containing all of Debtor's

13  general unsecured claims.

| Class | Description | Impaired (Y/N) | Treatment |
|-------|-------------|----------------|-----------|
| 8 | General Unsecured Claims asserted against Nevada Star, estimated at $1,779,346.38 | Yes | Pymt interval = Single, with possibility of second later supplemental payment. |
| | | | Payment amt/interval = Balance of funds available from sale of Debtor's real property/reasonable time after the close of escrow and after final determination of all claims; and thereafter, proceeds of sale of Raffone's real and personal property/reasonable time after close of any sale of any asset |
| | | | Begin date = Reasonable time after the close of escrow for Debtor's Property. |
| | | | End date = Reasonable time after the close of escrow for Raffone's real and personal property, at the discretion of the post petition Plan Administrator |
| | | | Interest rate:  None. |
| | | | Total payout = pro rata share of proceeds after payment of Debtor's costs of sale, administrative claims, secured claims and priority unsecured claims. |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

36

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

The following chart identifies this Plan's treatment of the class containing all of Raffone's general unsecured claims:

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 9 | General Unsecured Claims asserted against Raffone, estimated at $1,983,959.87* | Yes | Pymt interval = Single. |
| | *Note: Some claims in this Class 9 have been asserted against both Nevada Star and Raffone. To the extent the Property proceeds are insufficient to pay holders of Class 8 claims in full after costs of sale, administrative claims and Classes 1-7, then allowed claims in Class 8 will receive a second distribution in this Class 9 to the extent they have an allowed claim in Class 9. | | Payment amt/interval = After final determination of all claims; and after sale of Raffone's real and personal property, giving the Administrator a reasonable time after close of any sale of all assets |
| | | | Begin date = Reasonable time after the close of escrow for all of Raffone's property. |
| | | | End date = N/A |
| | | | Interest rate: None. |
| | | | Total payout = pro rata share of proceeds after payment of Raffone's costs of sale, administrative claims, secured claims and priority unsecured claims. |

The penalty portion of the IRS claim shall be subordinated to the payment of the rest of the unsecured class. The asserted IRS penalty from the date of petition on unsecured general claims (including interest thereon) that will be subordinated is $157,480.51, plus any additional accruing penalty amounts.

### 4.    Class of Subordinated Claims

The IRS shall hold a subordinate claim for penalties asserted against Raffone with respect to payment of her FICA and income taxes for years 2006-2010, identified on Claim No. 1 on the claims docket in the Raffone case.

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 10 | Penalty Claims asserted by the IRS against Raffone, estimated at $157,480.51 and Contempt charges asserted by the Florida Probate Court, estimated at $540,000 | Yes | Pymt interval = Single. Payment amt/interval = If funds remain after payment of all Class 1-9 claims Interest rate: None. Total payout = 0.00 est. |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

5.    **Class(es) of Interest Holders.**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.  If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders.  If the Debtor is a partnership, the interest holders include both general and limited partners.  If the Debtor is an individual, the Debtor is the interest holder.  The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 11 | Interest holder – deemed to be solely Claudia Raffone and excluding Henry Douglas Campbell who shall accept his Class 4 treatment if votes in favor of Plan | No<br>The Plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest. | Unimpaired |

D.    **Means of Effectuating the Plan.**

1.    **Funding for the Plan.**

The Plan will be funded by the following:  (1) turnover of cash from Minuit, (2) turnover of tenant deposits in possession of Bank of America, N.A., (3) cash gifted from Madison to the Raffone estate to pay for the administrative costs of the United States Trustee and the Clerk's Office, (4) turnover by Raffone's counsel of the pre-petition deposit taken from Madison's cash collateral, if any and (5) sale of assets of the estates.

2.    **Post Confirmation Authority of Administrator**

The Plan provides for the appointment of a post confirmation Administrator, David Gould.  The Administrator's employment shall be governed by the terms of this Plan.  The intent of the Plan is to provide the Administrator with the powers of a trustee of a bankruptcy estate as if he had been so appointed.  The Administrator shall further have authorization to travel to New York if he deems it reasonable or necessary in the exercise of his business judgment to consummate the Plan.

Upon entry of the Confirmation Order, the administratively consolidated chapter 11 estates shall be deemed to continue unabated until entry of a final decree.  The post-confirmation estates

1   shall be vested with title to all assets of the estates, whether or not disclosed, including but not

2   limited to, all assets listed on the Debtor's and Raffone's schedules, any and all causes of action

3   belonging to the estate and all cash on hand in the Debtor's and Raffone's accounts.

4        Post confirmation, the Administrator shall be the sole owner of the Property in the hands of

5   the Reorganized Debtor.  Raffone shall no longer be considered the owner of the Property for any

6   purpose, under any applicable non bankruptcy law.  Nothing in this paragraph shall prevent

7   Raffone from receiving her interest as a member of Class 11, **after** satisfaction of all claims under

8   this Plan, including, but not limited to, payment in full of Classes 1-10.  At all times prior to the

9   satisfaction of all claims under this Plan, Raffone shall not be the owner of the Property.

10       Immediately upon his appointment, the Administrator shall undertake an analysis of

11  whether the Property can be sold for sufficient amounts to provide at least $100 of distribution to

12  Class 6 or below.  In the event the Administrator determines that a sale of the Property will not

13  generate sufficient cash to pay for (1) costs of sale, (2) capital gains tax, (3) allowed secured

14  claims, (4) administrative claims of the post confirmation Reorganized Debtor and the pre-

15  confirmation estates, and (5) $100 to Class 6 creditors, then the Administrator shall negotiate with

16  secured creditors for a release of the Property to one or more of them.  In the event the

17  Administrator determines that the sales price for the Property is likely to be sufficiently high

18  enough to justify an auction of the Property, then the Administrator will retain Eastern

19  Consolidated as the broker and list the Debtor's real property for sale.  Once a stalking horse

20  bidder is identified in the discretion of the Administrator, an overbid auction will be scheduled

21  before the Court, and a sale to the highest bidder will be closed by the Administrator.  Absent the

22  express written consent of Madison, the Administrator shall not be entitled to sell the Debtor's real

23  property if the Supreme Court  for the State of New York, New York County has entered a final

24  judgment of foreclosure and sale in the action known as Index No. 103172/10, *Madison Realty*

25  *Capital, L.P.. v. Nevada Star, LLC, et al.* ("Foreclosure Litigation").  The Administrator shall

26  exercise his best efforts to complete a sale of the Debtor's real property at the highest and best

27  price before the end of the second quarter of 2011.  The sale shall be free and clear of all

28  Raffone's prior rights as owner.  The Administrator shall exercise his best efforts to negotiate fair

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    and reasonable employment terms for Eastern Consolidated and shall present his application to the

2    Court with notice and opportunity to be heard by all creditors.  The only basis for any objection to

3    the employment of Eastern Consolidated shall be an unwaivable conflict or a finding by the Court

4    that employment of Eastern Consolidated would be otherwise unfair or prejudicial to the creditors

5    of these administratively consolidated estates.  Any sale of Property of either estate shall be free of

6    transfer tax in accordance with 11 U.S.C. § 1146(a).

7        The Administrator shall also retain an accountant of his choice to determine the amount of

8    capital gains tax that must be reserved from the sales proceeds and to file the estate's final tax

9    returns.  The Administrator shall exercise his best efforts to negotiate fair and reasonable

10   employment terms for the proposed accountant and shall present his application to the Court with

11   notice and opportunity to be heard by all creditors.

12       Raffone, Minuit, Bank of America, N.A., and the debtors' counsel shall have the duty to

13   turn over all books and records and assets to the Administrator.  Assets shall be turned over to the

14   Administrator subject to secured liens and claims.  The Administrator shall have the authority to

15   seek Court orders to enforce this provision.

16       The Administrator shall have the authority, but not the obligation, to retain other

17   professionals and experts, including attorneys, to assist him in fulfilling his obligations under this

18   Plan, which are to liquidate such assets as are necessary to permit all creditors of each estate to be

19   paid on their allowed claims in full, first from the security property attributed to each creditor, and

20   only if required thereafter, from the proceeds of the sale of real and personal property of Raffone.

21   Absent express written consent from such secured creditor, no secured creditor can be compelled

22   to permit its collateral to be used to pay other unsecured creditors, and in lieu thereof, accept

23   payment from assets that are not part of its security prior to the liquidation of its collateral.

24       The Administrator shall be expressly permitted to retain as his own counsel the attorney

25   who was counsel for the Committee.  The Administrator can elect to retain post confirmation

26   counsel to assist him in fulfilling his obligations as the Administrator under this Plan and the

27   Order confirming this Plan.  All parties waive any right to contest the Administrator's retention of

28   the Committee's former counsel on any grounds, excepting only hourly rate and fees to be

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  charged.  No objections on the grounds of lack of disinterestedness shall be permitted.  Nothing in

2  this paragraph shall be deemed to waive any party's right to be heard at the time of any application

3  for allowance and payment of fees or expenses by any party or entity.

4  　　　The Administrator shall exercise his best efforts to negotiate fair and reasonable

5  employment terms for his choice of counsel and shall present his application to the Court with

6  notice and opportunity to be heard by all creditors.  Once invoices from post petition professionals

7  are received, if the Administrator has either approved the invoice or taken no action within

8  20 days after submission of the invoice, the invoice shall be deemed approved and the

9  Administrator may pay such invoice from the post-confirmation estate.  If an objection is raised to

10  the invoice, which the parties are unable to resolve, the affected professional may submit a fee

11  application to the Court pursuant to the Local Rules, except that no 45 day notice of a fee hearing

12  for all professionals shall be required and notice need only be given electronically to parties

13  registered with the Court's Electronic Case Filing system.

14  　　　The Administrator shall be entitled to retain eviction counsel in New York to assist him in

15  his management and operation of the Property prior to sale.  The Administrator shall exercise his

16  best efforts to negotiate fair and reasonable employment terms for such eviction counsel but shall

17  not be required to present any application to the Court with notice and opportunity to be heard by

18  all creditors, and such eviction counsel shall be considered to be employed in the ordinary course

19  of business.

20  　　　The Administrator shall be entitled to locate and take possession, custody and control over

21  any property of the Debtor's estate, including the real property and personal property assets listed

22  on the Debtor's schedules, or any other asset of the Debtor's estate that he may locate.  Except as

23  waived in the Plan, the Administrator shall be entitled to assert avoidance powers under the

24  Bankruptcy Code, bring on litigation to recover assets from third parties or the Debtor, and

25  subsequently market and liquidate such assets as necessary to fulfill his duties under the Plan.  The

26  Administrator shall have sole discretion to compromise claims, rights and obligations with respect

27  to the assets of the Debtor's estate without notice to parties or the Court, so long as his discretion

28

1   is exercised reasonably.  Any party who contests the reasonableness of the Administrator's

2   decisions shall seek a hearing on proper notice before the Court.

3          The Administrator shall be entitled to locate and take possession, custody and control over

4   any property of the Raffone estate, including the real property and personal property assets listed

5   on Exhibit B hereto, on the Raffone schedules, or any other asset of the Raffone estate that he may

6   locate.  The Administrator shall be entitled to assert avoidance powers under the Bankruptcy

7   Code, bring on litigation to recover assets from third parties or Raffone, and subsequently market

8   and liquidate such assets as necessary to fulfill his duties under the Plan.  The Administrator shall

9   have sole discretion to compromise claims, rights and obligations with respect to the assets of the

10  Raffone estate without notice to parties or the Court, so long as his discretion is exercised

11  reasonably.  Any party who contests the reasonableness of the Administrator's decisions shall seek

12  a hearing on proper notice before the Court.

13         Under this Plan, Bank of America, N.A shall be required by Court order to turn over the

14  security deposits held in the name of Raffone (or any other name, including if held in the name of

15  the individual tenants), relating to the real property of the Debtor's estate, to the Administrator for

16  handling and treatment under this Plan.  The Administrator shall be authorized to take such action

17  as is necessary to compel Bank of America, N.A to release the tenant security deposits to him.

18  The Order confirming this Plan shall provide for turnover over the tenant deposits to the

19  Administrator.

20         Under this Plan, Minuit shall be required by Court order to turn over all cash or cash

21  collateral relating to the real property of the Debtor's estate to the Administrator for handling and

22  treatment under this Plan.  The Administrator shall be authorized to take such action as is

23  necessary to compel Minuit to release all cash to him.  The Order confirming this Plan shall

24  provide for turnover over of cash on hand to the Administrator.  Nothing in this paragraph shall

25  prevent the Administrator from determining whether to keep Minuit employed as the on-site

26  manager for the Property prior to sale or abandonment of the Property, and to permitting Minuit to

27  hold cash collateral as the agent of the Administrator.

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1    The Administrator shall be entitled to employ a manager to operate the Property prior to its

2    liquidation.  The Administrator may elect to continue to use Minuit or may use the services of any

3    other qualified manager.  The decision of who to use to manage the Property shall be within the

4    sole discretion of the Administrator.  The Administrator shall exercise his best efforts to negotiate

5    fair and reasonable employment terms for such manager but shall not be required to present any

6    application to the Court with notice and opportunity to be heard by all creditors, and such manager

7    shall be considered to be employed in the ordinary course of business.

8            **3.        Payment of Creditors**

9            Allowed secured claims shall be paid in full from the proceeds of sale through escrow.  Net

10    sale proceeds shall be distributed by the Administrator as soon as practicable to all remaining

11    allowed claims.

12            **4.        Use of Cash Collateral**

13            The Administrator shall be permitted to use cash collateral during the post confirmation

14    pre-closing period so long as such cash is only used in accordance with the categories previously

15    approved by Madison in the cash collateral budgets [Docket Nos. 31, 45 and 76], or in accordance

16    with the express terms of this Plan, or with express written consent of Madison.  Without leave of

17    Court, and without notice to creditors, Madison and the Administrator may consent in writing to

18    any additional use of cash collateral that the Administrator feels is in the best interests of all

19    creditors and to assist in the consummation of this Plan.

20            **5.        Post-confirmation Management.**

21            Post-confirmation management will be vested in the Administrator, who shall be David

22    Gould, A Professional Corporation, with an office address located at 23975 Park Sorrento, Suite

23    200, Calabasas, CA 91302-4011.  A copy of his curriculum vitae is attached at Exhibit 1 hereto.

24    The Administrator's hourly rate is $450 per hour, unchanged since 2007.

25            **6.        Disbursing Agent.**

26            The Administrator shall act as the disbursing agent for the purpose of making all

27    distributions provided for under the Plan.  The Administrator shall serve without bond and shall

28    receive his hourly compensation and reimbursement of actual out of pocket expenses for services

SM01DOCS\810794.1

43

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    rendered and expenses incurred pursuant to the Plan.  Any dispute that arises with respect to the

2    Administrator's fees and expenses shall be determined by the Court, which shall retain jurisdiction

3    to determine such disputes.

4         The Administrator shall give notice of his intent to draw his fees and expenses from the

5    close of escrow of the Property to all parties in interest by first class mail not later than ten (10)

6    calendar days prior to the close of escrow.  Any party who objects to the payment of such noticed

7    amounts must provide a written objection, stating the reasons therefore to the Administrator at

8    least two (2) court days prior to the noticed date for the close of escrow of the Debtor's Property.

9         In the event an objection is received, the escrow and/or title company shall reserve the full

10   amount of the Administrator's requested payment, including any amount of requested reserves,

11   until the Court enters an order finally determining the allowed amount of the Administrator's

12   compensation.  The Administrator shall be entitled to estimate any additional compensation that

13   he feels reasonably certain shall arise out of the need to administer the assets of the Raffone estate

14   and may seek and provide for himself a reserve amount from the proceeds of the Debtor's real

15   Property before the payment of any Classes 6, 7, 8, 9 or 10 claim.

**7.    Tender of Possession, or Warrant of Eviction and Judgment of
Possession Against Raffone.**

18   Raffone shall vacate and tender possession of the Penthouse, Unit 4C and all public areas

19   in the Property, including the parking and/or storage spaces she occupies in the garage, the

20   electrical room and all other locations at the Property where her personal property is located,

21   within twenty (20) calendar days of entry of the confirmation order.  All rights of setoff,

22   counterclaims, defenses or other rights that may be asserted against the issuance of a warrant of

23   eviction and judgment of possession are deemed waived.

24        The Administrator and each creditor holding an allowed secured claim, including but not

25   limited to Madison, shall be entitled to the immediate entry of a warrant of eviction and judgment

26   of possession against Raffone, to be entered by any court of competent jurisdiction, including this

27   Court, in the event that Raffone has not vacated the Property, removed her personal property, and

28   tendered possession as required by the Plan.  In the event the Administrator or any creditor seeks

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  entry of such an order effecting a warrant of eviction and judgment of possession against Raffone,

2  an application may be made to this Court on an ex parte emergency basis upon seven (7) calendar

3  days notice to Raffone.  The only defenses to the entry of such an order by this Court or any other

4  court of competent jurisdiction shall be the lack of expiration of twenty calendar days from the

5  date of entry of the order of confirmation or the issuance of a stay by a higher court.

6  **8.    Entry of the Confirmation Order**

7  The Debtor, as a debtor in possession, and Committee will terminate upon entry of the

8  confirmation order.

9  **9.    Entry of Final Decree**

10  Upon payment in full of all allowed claims, the Administrator's duties shall conclude and

11  the estates' assets, if any remaining, shall re-vest in the Debtor and Raffone.  The Administrator

12  shall thereafter file a final report and account and seek entry of a final decree.

13  **E.    Risk Factors.**

14  The proposed Plan has the following risks:  The primary Plan risk is the inability to close a

15  sale for an amount sufficient to pay all creditors in full.

16  **IV.    OTHER PROVISIONS OF THE PLAN.**

17  **A.    Executory Contracts and Unexpired Leases.**

18  **1.    Assumptions.**

19  Exhibit E sets forth the unexpired leases and executory contracts to be assumed as

20  obligations of the Reorganized Debtor under this Plan (*see* Exhibit E for more detailed

21  information on unexpired leases to be assumed and executory contracts to be assumed).

22  On the Effective Date, each of the unexpired leases and executory contracts listed on

23  Exhibit E shall be assumed as obligations of the Reorganized Debtor to be operated by the

24  Administrator.  The Order of the Court confirming the Plan shall constitute an Order approving

25  the assumption of each lease and contract listed above.  If you are a party to a lease or contract to

26  be assumed and you object to the assumption of your lease or contract, you must file and serve

27  your objection to the Plan within the deadline for objecting to the confirmation of the Plan. *See*

28  the Disclosure Statement describing this Plan for the specific date.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

2.    **Rejections.**

On the Effective Date, the following executory contracts and unexpired leases will be rejected:  Any lease or right of possession or occupancy given by Raffone with respect to her real or personal property.

The order confirming the Plan shall constitute an order approving the rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.  *See* Disclosure Statement for the specific date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS MARCH 31, 2011.

Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

B.    **Changes in Rates Subject to Regulatory Commission Approval.**

This Debtor and Raffone are not subject to governmental regulatory commission approval of its rates.

C.    **Dismissal of Litigation.**

If the Plan is accepted by creditors, confirmed by the Bankruptcy Court and consummated by the Administrator, then each of the Probate Litigation, the Fraudulent Transfer Litigation, the Florida Civil Litigation, the Discharge Litigation, the Tenant Litigation, the New York Sale Litigation, and the New York Foreclosure Litigation will be resolved by the Plan.  The Administrator shall be entitled, but not required, to file requests with each respective court for dismissal of the such litigation ***with prejudice*** upon substantial consummation of the Plan and at or about the time the Administrator seeks the entry of  a final decree from this Court.  This paragraph shall apply to any other litigation discovered by the Administrator that may not be disclosed in this Disclosure Statement, but the significance of which is fully resolved by this Plan.

D.    **Retention of Jurisdiction.**

The Court will retain jurisdiction to the extent provided by law or as provided by this Plan.

1      **E.      Tax Consequences of Plan.**

2          CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN

3   MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN

4   ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible

5   tax consequences is intended solely for the purpose of alerting readers about possible tax issues

6   this Plan may present to the Debtor and Raffone.  The Proponent CANNOT and DOES NOT

7   represent that the tax consequences contained below are the only tax consequences of the Plan

8   because the Tax Code embodies many complicated rules which make it difficult to state

9   completely and accurately all the tax implications of any action.

10          The following are the tax consequences which the Plan will have on the Debtors tax

11  liability:  It is highly likely there will be tax consequences to the Plan.  A capital gains tax owed to

12  the federal government and to the State of New York will be due in the Property is sold for a value

13  greater than the basis applicable to Raffone at the time she acquired title to the Property.  While

14  this Plan has sought to estimate such amounts, it is possible that the taxes will be higher or lower

15  than the estimates set forth in this Plan.

16  **V.    CONFIRMATION REQUIREMENTS AND PROCEDURES**

17          PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN

18  SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

19  CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following

20  discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

21  which they may wish to consider, as well as certain deadlines for filing claims.  The Proponent

22  CANNOT and DOES NOT represent that the discussion contained below is a complete summary

23  of the law on this topic.

24          Many requirements must be met before the Court can confirm a Plan.  Some of the

25  requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether

26  the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and

27  whether the Plan is feasible.  These requirements are not the only requirements for confirmation.

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

A.    Discharge

This Plan provides that upon confirmation, the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C.§ 1141.  However, any liability imposed by the Plan upon the Debtor or its assets will not be discharged.

This Plan provides that Raffone's right to a discharge under 11 U.S.C.§ 1141 shall be determined upon the Court's final adjudication of that certain complaint to determine dischargeability of debt under 11 U.S.C. § 523 filed on July 20, 2010 by Campbell.  However, any liability imposed by the Plan upon Raffone or her assets will not be discharged.

B.    Revesting of Property in the Debtor and Raffone

Except as provided in Section IV.E., and except as provided elsewhere in the Plan, the confirmation of the Plan vests all of the property of the Debtor's estate in the Reorganized Debtor under the sole control of the Administrator up to such date on which entry of a final judgment in the Foreclosure Litigation occurs, after which the Foreclosure Litigation judgment shall control over the rights of the Administrator under this Plan.  The Debtor's Property shall either be sold by the Administrator pursuant to this Plan, or shall be adjudicated by the Supreme Court of the State of New York in the Foreclosure Litigation, whichever occurs first.

Except as provided in Section IV.E., and except as provided elsewhere in the Plan, the confirmation of the Plan vests all of the property of Raffone's estate in the Reorganized Raffone under the sole control of the Administrator, until such time as the Administrator either (1) abandons any property to Raffone, or (2) determines he has completed his liquidation of property of the estates for the benefit of holders of allowed claims against Raffone and seeks the entry of an order directing the entry of a final decree and the closing of the jointly administered cases based upon his substantial or complete consummation of the Plan.  The Administrator shall have the right to exercise his reasonable discretion to abandon any asset of the Raffone estate at any time.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

C.    **Modification of Plan**

The Proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan if proponent modifies the Plan before confirmation.

The Proponent of the Plan, the Administrator, the City of New York, any holder of an administrative claim, the United States Trustee, or any unsecured creditor may also seek to modify the Plan at any time after confirmation so long as (1) the Plan has not been substantially consummated, and (2) if the Court authorizes the proposed modifications after notice and a hearing.

Campbell shall have no right to seek modification of the Plan.

Raffone shall have no right to seek modification of the Plan.

D.    **Post-Confirmation Status Report**

Within 120 days of the entry of the order confirming the Plan, the Administrator shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed consolidated Plan.  The status report shall be served on the United States Trustee, all secured creditors, the twenty largest unsecured creditors, and those parties who have requested special notice.  Further status reports shall be filed every 120 days and served on the same entities.

E.    **Quarterly Fees**

1.    **Quarterly Fees of the Debtor**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) prior to the date of confirmation shall be paid to the United States Trustee on or before the Effective Date of the Plan.  Madison's cash collateral that has accrued and is held by Minuit shall be used for such purposes.  In the event there are insufficient funds to pay all quarterly fees that accrued prior the Effective Date of the Plan, Madison shall advance such cash necessary to pay the fees in full on the Effective Date of the Plan and shall be entitled to add such amounts to its Class 2 secured claim.

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid by the Administrator to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.  Such

1   payments shall be made from the proceeds of the sale of assets, and only from the cash collateral

2   in the event that the Property will not be sold prior to the close of the second quarter of 2011.  If

3   paid from the cash collateral of Madison, then Madison shall be entitled to add such amounts to its

4   Class 2 secured claim.

5                   **2.       Quarterly Fees of Raffone**

6          Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) prior to the date of confirmation

7   shall be paid to the United States Trustee by Madison as a gift to the Raffone estate on or before

8   the Effective Date of the Plan.  Madison shall not add such amounts to its Class 2 secured claim.

9          Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to

10  the United States Trustee by the Administrator in accordance with 28 U.S.C. § 1930(a)(6) until

11  entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.  Such

12  payments shall be made from the proceeds of the sale of Raffone's assets, and only from the cash

13  collateral arising out of the Debtor's Property in the event that the Property will not be sold prior

14  to the close of the second quarter of 2011.  If paid from the cash collateral of Madison, then

15  Madison shall be entitled to add such amounts to its Class 2 secured claim.

16          **F.       Post-Confirmation Conversion/Dismissal**

17          A creditor or party in interest may bring a motion to convert or dismiss the cases under

18  § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court

19  orders the cases converted to Chapter 7 after the Plan is confirmed, then all property that had been

20  property of the Chapter 11 estates, and that has not been disbursed pursuant to the Plan, will revest

21  in the Chapter 7 estates, and the automatic stay will be reimposed upon the revested property only

22  to the extent that relief from stay was not previously granted by the Court during these cases.

23          **G.       Revocation of Plan Confirmation Order**

24          The order confirming the Plan may also be revoked under very limited circumstances. The

25  Court may revoke the order if the order of confirmation was procured by fraud and if the party in

26  interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of

27  the order of confirmation.

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

**H.      Who May Vote or Object.**

      **1.      Who May Object to Confirmation of the Plan.**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

      **2.      Who May Vote to Accept/Reject the Plan.**

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

      **a.      What Is an Allowed Claim/Interest.**

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote.  Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM <u>IN THE DEBTOR'S CASE</u> WAS *AUGUST 20, 2010*.

THE PROPONENT HAS ASKED THE COURT TO SET A BAR DATE <u>IN THE RAFFONE CASE</u> OF *APRIL 30, 2011*.

THE PROPONENT HAS ASKED THE COURT TO SET A BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT OF MARCH 31, 2011.

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's or Raffone's schedules and such claim is not scheduled as disputed, contingent, or unliquidated; (2) no party in interest has objected to the claim; or (3) the Plan proposes to treat the claim as timely.  An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

b.      **What Is an Impaired Claim/Interest.**

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that every Class, excepting Class 11, is impaired because no creditor will be paid in full on the Effective Date.  Interest holders in Class 11 are not impaired because (i) Campbell is deemed not to be an interest holder, and (ii) Raffone will receive everything to which she is entitled.  Thus, all creditors are entitled to vote to accept or reject the Plan.  Interest holders will not be permitted to vote.  Nothing prevents an interest holder or creditor in objecting to confirmation of the Plan, even if such party is not permitted to, or fails to vote.  Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

3.      **Who is Not Entitled to Vote.**

The following four types of claims are not entitled to vote: (i) claims that have been disallowed; (ii) claims in unimpaired classes; (iii) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (iv) claims in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

4.      **Who Can Vote in More Than One Class.**

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

5.      **Votes Necessary to Confirm the Plan.**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a cram down on non-accepting classes, as discussed later in Section IV(A)(8).

6.      **Votes Necessary for a Class to Accept the Plan.**

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

7.      **Treatment of Nonaccepting Classes.**

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code.  The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as a cram down.  The Code allows the Plan to be crammed down on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not discriminate unfairly and is fair and equitable toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

8.      **Request for Confirmation Despite Nonacceptance by Impaired Class(es).**

The party proposing this Plan will ask the Court to confirm this Plan by cram down if sufficient votes are not received to confirm the plan under section 1129(a).

1        I.      **Liquidation Analysis.**

2              Another confirmation requirement is the "Best Interest Test", which requires a liquidation

3   analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and

4   that claimant or interest holder does not vote to accept the Plan, then that claimant or interest

5   holder must receive or retain under the Plan property of a value not less than the amount that such

6   holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy

7   Code.

8              In a Chapter 7 case, the Debtor's and Raffone's assets are usually sold by a Chapter 7

9   trustee.  Secured creditors are paid first from the sales proceeds of properties on which the secured

10  creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from

11  any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the

12  same priority share in proportion to the amount of their allowed claim in relationship to the

13  amount of total allowed unsecured claims. Finally, interest holders receive the balance that

14  remains after all creditors are paid, if any.

15             For the Court to be able to confirm this Plan, the Court must find that all creditors and

16  interest holders who do not accept the Plan will receive at least as much under the Plan as such

17  holders would receive under a Chapter 7 liquidation.  The Plan Proponent maintains that this

18  requirement is met here for the following reasons:  the Plan pays allowed claimants in full which

19  is necessarily at least as much as such creditors would receive under chapter 7.

20             Below is a demonstration, in balance sheet format, that all creditors and interest holders

21  will receive at least as much under the Plan as such creditor or interest holder would receive under

22  a Chapter 7 liquidation.  This information is provided by the Plan Proponent based on the Debtor's

23  and Raffone's schedules, MORs and predictions of value of the Property.  This value used for the

24  Property comes from an all-cash offer that Minuit received for the Property in November 2010.

25

26

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

## NEVADA STAR LIQUIDATION ANALYSIS

**ASSETS VALUE AT LIQUIDATION VALUES:**

CURRENT ASSETS

| | | |
|---|---|---|
| a. | Cash on hand (general, tax and payroll escrow accounts) | $183,865.15 |
| b. | Accounts receivable | $96,239.86[4] |
| c. | Retainer from Law Offices of Michael Berger | $20,000.00 |
| | TOTAL CURRENT ASSETS | $300,105.01 |

FIXED ASSETS

| | | |
|---|---|---|
| a. | Office furniture & equipment (Computer and equip. at Property) | $1,500.00 |
| b. | Machinery & equipment (Tools and supplies at Property) | $800.00 |
| c. | Automobiles | $0.00 |
| d. | Property in New York | $18,000,000.00 |
| | TOTAL FIXED ASSETS | $18,002,300.00 |

**TOTAL ASSETS AT LIQUIDATION VALUE**     **$18,302,405.01**
===========

**Less:**
Secured creditor's recovery

| | | |
|---|---|---|
| a) | New York City Department of Finance (as of Nov 8, 2010) | $1,001,590.80 |
| b) | Madison Realty Capital, L.P. (estimate 4.30.11) | $10,667,093.92 |
| c) | Ponichtera Contracting | $32,017.29 |
| d) | Henry Douglas Campbell (includes $1MM attorney fees + one year of interest at 10% judgment rate) | $3,750,000.00 |

**Less:**
Chapter 7 trustee fees and expenses (5% of net assets)     $915,120.25

**Less:**
Chapter 11 administrative expenses     $150,000

**Less:**
Priority claims,     $2,901,000.00
excluding administrative expense claims

**Less:**
Debtor's claimed exemptions     $0.00

**Less:**
Costs of Sale for Property(est. at 8%)     $1,440,000.00
===========

Total Chapter 7 Claims (before payment of unsecured claims)     $20,856,822.26

(1)    Balance available for unsecured claims of Nevada Star     <$2,554,417.25>

(2)    Total amt of unsecured claims for Nevada Star     $1,548,444.90

**Payment to unsecured creditors in chapter 7:**     **$0.00**

**Payment to unsecured creditors in chapter 11:**     $10,703.00
(Eliminates chapter 7 trustee, portion of Campbell claim exceeding
$2.5 million, real estate tax reductions are presumed to save $500,000,
adds $100K for Plan Administrator)

---

[4]    Unpaid rent of $88,522.50 for Unit 11B, and withheld deposits for illegal rent stabilized tenant of $7,717.36 for Unit 7B.

**% OF THEIR CLAIMS WHICH NEVADA STAR'S UNSECURED CREDITORS
WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION: = 0%**

**% OF THEIR CLAIMS WHICH NEVADA STAR'S UNSECURED CREDITORS
WOULD RECEIVE OR RETAIN UNDER THIS PLAN: = 0.69%**

In addition to the availability of some small amount of cash to pay unsecured creditors, it is believed that the Administrator will cause the capital gains tax to be reduced significantly from $2.9 million, and that the real estate tax claims will be significantly reduced. Those reductions will make the distribution to unsecured creditors more significant. If the capital gains cannot be reduced to provide a larger benefit to unsecured creditors, the Administrator will not be required to sell the Property.

Under the Plan, creditors of the Debtor other than just secured creditors will be paid, including past due pre- and post- petition real estate taxes to New York, all secured creditors, all pre-petition administrative creditors of the bankruptcy case, all post petition expenses of the reorganized debtor, and all capital gains taxes which were not paid by Raffone at the time of transfer in 2003. Thus the benefits to the Plan are real and not illusory. The alternative of foreclosure by the Plan Proponent is less appealing.

Below is a demonstration, in balance sheet format, that all creditors and interest holders in the Raffone case will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation.

## CLAUDIA RAFFONE LIQUIDATION ANALYSIS

**ASSETS VALUE AT LIQUIDATION VALUES:**

CURRENT ASSETS

| | | |
|---|---|---:|
| a. | Cash on hand (only to extent non-exempt) | $0.00 |
| b. | Horses | $100,000.00 |
| | TOTAL CURRENT ASSETS | $100,000.00 |

FIXED ASSETS

| | | |
|---|---|---:|
| a. | Office furniture & equipment (presumed exempt) | $0.00 |
| b. | Machinery & equipment | $0.00 |
| c. | Automobiles (Mercedes, truck, trailer, Maybach (no value est.)) | $78,300.00 |
| d. | SFR Beverly Hills CA | $1,175,000.00 |
| e. | SFR Loxahatchee FL | $600,000.00 |
| | TOTAL FIXED ASSETS | $1,853,300.00 |

**TOTAL ASSETS AT LIQUIDATION VALUE**        **$1,953,300.00**
                                               ===========

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**Less:**
Secured creditor's recovery
    a) Links Capital Partners, LLC      $350,000.00

**Less:**
Chapter 7 trustee fees and expenses (5% of net assets)      $97,665.00

**Less:**
Chapter 11 administrative expenses      $15,000.00

**Less:**
Priority claims, excluding administrative expense claims      $48,450.99

**Less:**
Debtor's claimed exemptions (presumed all household goods and furnishings, all personal clothing)      $0.00

**Less:**
Costs of Sale for SFR properties      $142,000.00
     ===========

Total Chapter 7 Claims (before payment of unsecured claims)      $653,115.99

    (1)     Balance available for unsecured claims of Claudia Raffone      $1,300,184.1

    (2)     Total amt of unsecured claims for Raffone      $556,578.40

**Payment to unsecured creditors in chapter 7:**      $556,578.40

**Payment to unsecured creditors in chapter 11:**      $556,578.40
(Eliminates chapter 7 trustee, adds $25K for Plan Administrator)

**% OF THEIR CLAIMS WHICH RAFFONE'S UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION: =100%**

**% OF THEIR CLAIMS WHICH RAFFONE'S UNSECURED CREDITORS WOULD RECEIVE OR RETAIN UNDER THIS PLAN: = 100%**

    Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100% | 100% |
| Priority Tax Claims | 100% | 100% |
| Classes 1 to 5 -- Secured Claims | 100% | 100% |
| Classes 6-7 – Priority Unsecured Claims | 100% | 100% |
| Classes 8 and 9 – General Unsecured Claims | 0.69% | 100% |

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Class 10 – Subordinated General Unsecured Claims | 100% | 100% |
| Class 11 – Interests | Unimpaired | Unimpaired |

**J.    Feasibility.**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or Raffone or any successor to the Debtor or Raffone under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis.  The first aspect considers whether the Debtor and Raffone will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.  The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

Cash both debtors will have on hand by Effective Date:                          $183,865.15

**To Pay:**  Administrative claims (UST, Clerk, and half allowed fees)        Est. at -$75,000.00

**To Pay:**  Statutory costs & charges                                                -$0.00

**To Pay:**        Other Plan Payments due                                        -$0.00
             on Effective Date (priority and unsecured creditors)

Balance (due) after paying these amounts.................................................        $108,865.15

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

$141,865.15    Cash in New York Escrow Account now

$40,000.00    Additional cash that will accumulate from net earnings between now and Effective Date

$0.00    Borrowing

$2,000.00    Gift from Madison (to cover Raffone admin exp. to UST)

**$183,865.15    Total**

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1    The second aspect considers whether the Proponent will have enough cash over the life of

2    the Plan to make the required Plan payments.  The Plan is consummated in the months following

3    the Effective Date, but in light of the projected value of the Property, and the purpose of the Plan

4    to liquidate all assets, prospective payments are not believed to be material to performance under

5    the Plan.

6        YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL

7    ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL

8    STATEMENTS.

9        **K.**    <u>**Final Decree.**</u>

10        Once the estates have been fully administered as referred to in Bankruptcy Rule 3022, the

11    Administrator or other party as the Court shall designate in the Plan Confirmation Order, shall file

12    a motion with the Court to obtain a final decree to close the cases.

13        */s/ Brian Shatz*
         Signature of Plan Proponent
14        Managing member of Madison Realty Capital GP,
         LLC, the general partner of Madison Realty Capital,
15        L.P.

16

17        */s/ Katherine M. Windler*
         Signature of Attorney for Plan Proponent
18        Katherine M. Windler of Bryan Cave LLP

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

SM01DOCS\810794.1

CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

# EXHIBIT 1

C.V. of David Gould

David Gould is the principal of David Gould, a Professional Corporation, which maintains its office at 23975 Park Sorrento, Suite 200, Calabasas, California 91302-4011

B.A. University of California, Los Angeles, 1962
LL.B. University of California, Berkeley (Boat Hall) 1965

Member, State Bar of California, the American, Los Angeles County, and Federal Bar Associations; Los Angeles Bankruptcy Forum, California Bankruptcy Forum and the Financial Lawyers Conference; Past President (1993-94) of the Los Angeles Bankruptcy Forum; Past President (1982-83) of the Financial Lawyers Conference; Past President of the California Bankruptcy Forum (2001-02); Lawyer Delegate to the Ninth Circuit Judicial Conference (1990-93); Member, Personal and Small Business Bankruptcy Specialization Commission, Board of Legal Specialization, State Bar of California (1992-95)

Admitted to practice in California; United States District Courts for the Central, Southern, Northern and Eastern District of California; United States Court of Appeals for the Ninth Circuit and the United States Supreme Court

Adjunct Associate Professor of Law, Southwestern University School of Law, Los Angeles ((1978-80); Adjunct Professor of Law, Pepperdine University School of Law, Malibu (1983-84)

Co-Author, Local Bankruptcy Practice Manual (PESI 1991) with Bankruptcy Judge Lisa Hill Fenning

Deputy Attorney General, California 1965-68; associate, Loeb & Loeb 1968-73; associate and partner, Danning, Gill, Gould, Diamond & Spector 1973-92; partner, McDermott Will & Emery LLP 1992-2007; David Gould, a Professional Corporation 2007-date

Among the cases handled include serving as Chapter 11 Trustee of Baldwin Builders and Baldwin Building Contractors, Quality Home Loans; Examiner (with expanded powers) in Center Staging Musical Productions, Inc; the attorney for debtor in Marina City Club, L.P.; attorney for the Chapter 11 and 7 Trustee in In re Lazar et al; the attorney for the prevailing party in the noted case of In re Powerine Oil Company, 59 F.3d 969 (1995)

Member, Panel of Mediators appointed by United States Bankruptcy Courts for the Central District of California and the District of Delaware; Attorney Settlement Officer for the United States District Court for the Central District of California

Exhibit 1 Page 60

Fellow, American College of Bankruptcy

Exhibit 1 Page 61

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**120 Broadway, Suite 300, Santa Monica, CA 90401**

A true and correct copy of the foregoing document described as ***Consolidated Disclosure Statement Describing Consolidated Chapter 11 Plan of Liquidation*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***November 9, 2010,*** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Michael Jay Berger on behalf of Debtor Nevada Star, LLC (michael.berger@bankruptcypower.com);
Russell Clementson on behalf of U.S. Trustee United States Trustee (LA) (russell.clementson@usdoj.gov);
United States Trustee (LA) (ustpregion16.la.ecf@usdoj.gov.)
Lewis R Landau on behalf of Creditor Committee Creditors Committee of Nevada Star, LLC (lew@landaunet.com)
R G Pagter on behalf of Creditor Henry Campbell (gibson@pagterandmiller.com, pandm@pagterandmiller.com; pagterandmiller@yahoo.com); and
Brett A. Axelrod on behalf of Fox Rothschild LLP (baxelrod@foxrothschild.com, mrustia@foxrothschild.com)

☐  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ***November 9, 2010,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| **Via Overnight Mail** | **Debtors Via U.S. Mail** |
|---|---|
| Honorable Peter Carroll | Nevada Star, LLC, and |
| United States Bankruptcy Court | Claudia Raffone |
| 255 E. Temple Street – Ctrm. 1539 | 1401 Claridge Drive |
| Los Angeles, CA 90012 | Beverly Hills, CA 90210 |
| **Office of the U.S. Trustee Via Overnight Mail** | |
| Attention:  Russell Clementson, Esq. | |
| 725 S. Figueroa Street, Suite 2600 | |
| Los Angeles, CA 90017 | |

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***Fill in Date Document is Filed,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 9, 2010 | Michael M. Mason | /s/ Michael M. Mason |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.