1  **BRYAN CAVE LLP**
   Katherine M. Windler, California Bar No. 158899
2  120 Broadway, Suite 300
   Santa Monica, California  90401-2386
3  Telephone:      (310) 576-2100
   Facsimile:      (310) 576-2200
4  Email:          katherine.windler@bryancave.com

5  Attorneys for Madison Realty Capital LP

6

7

8                 **UNITED STATES BANKRUPTCY COURT**

9                 **CENTRAL DISTRICT OF CALIFORNIA**

10                     **LOS ANGELES DIVISION**

11

   In re                          | Case No.  2:10-bk-26188-PC (Lead Case)
12
                                   | Administratively Consolidated with Case No.
13                                 | 2:10-bk-27683-PC
   NEVADA STAR, LLC,
14                                 | Hon. Peter Carroll
15              Debtor.            | Chapter 11
16 Tax ID / EIN: 68-0658426        | **NOTICE OF FILING OF REDLINE OF
                                   | FIRST AMENDED CONSOLIDATED
17                                 | DISCLOSURE STATEMENT DESCRIBING
                                   | FIRST AMENDED CONSOLIDATED
18                                 | CHAPTER 11 PLAN OF LIQUIDATION**
19 In re
                                   | **Hearing on First Amended Disclosure
20                                 | Statement**
   CLAUDIA RAFFONE,
21                                 | Date:     March 16, 2011
              Debtor.              | Time:     9:30 a.m.
22                                 | Ctrm:     1539
                                   |           U.S. Bankruptcy Court
23                                 |           255 E. Temple Street, 15th Floor
                                   |           Los Angeles, CA 90012
24
                                   | **Plan Confirmation Hearing**
25
                                   | Not Yet Set
26

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**BRYAN CAVE LLP**
Katherine M. Windler, California Bar No. 158899
120 Broadway, Suite 300
Santa Monica, California  90401-2386
Telephone:       (310) 576-2100
Facsimile:       (310) 576-2200
Email:            katherine.windler@bryancave.com

Attorneys for Madison Realty Capital LP

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No.  2:10-bk-26188-PC (Lead Case) |
| | Administratively Consolidated with Case No. 2:10-bk-27683-PC |
| NEVADA STAR, LLC, | Hon. Peter Carroll |
| Debtor. | Chapter 11 |
| Tax ID / EIN: 68-0658426 | **FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION** |
| In re | **Hearing on First Amended Disclosure Statement ~~Hearing~~** |
| CLAUDIA RAFFONE, | ~~Date:        December 15, 2010~~ Date:        March 16, 2011 |
| Debtor. | Time:    9:30 a.m.<br>Ctrm:    1539<br>        U.S. Bankruptcy Court<br>        255 E. Temple Street, 15th Floor<br>        Los Angeles, CA 90012 |
| | **Plan Confirmation Hearing** |
| | ~~Date:        January 15, 2011 (proposed)~~<br>~~Time:        9:30 a.m.~~<br>~~Ctrm:        1539~~<br>~~        U.S. Bankruptcy Court~~<br>~~        255 E. Temple Street, 15th Floor~~<br>~~        Los Angeles, CA 90012~~ |

SM01DOCS\820240.2

1 |   Not Yet Set
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.      INTRODUCTION .................................................................... 1

A.      Purpose of This Document. ............................................... 2

B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing. ........... 3

        1.      Time and Place of the Confirmation Hearing. ...................... 4

        2.      Deadline For Voting For or Against the Plan. ....................... 4

        3.      Deadline For Objecting to the Confirmation of the Plan. ............ 4

        4.      Identity of Person to Contact for More Information Regarding the Plan. ........... 4

C.      Disclaimer. ..................................................................... 4

II.     BACKGROUND .................................................................... 5

A.      Description and History of the Debtor's Business. .................. 5

B.      Principals/Affiliates of Debtor's Business.

1.      History According to Raffone ........................................ 6

        C.      Management of the Debtor Before and After the Bankruptcy.

2.      History According to Campbell ..................................... 12

        D.      Events Leading to Chapter 11 Filing.

B.      Principals/Affiliates of Debtor's Business. ....................... 14

E.      Significant Events DuringC.Management of the Debtor Before and After the Bankruptcy. 1

1.      Bankruptcy Proceedings.

        D.      Events Leading to Chapter 11 Filing. ........................ 17

2.      Other Legal Proceedings.

        E.      Significant Events During the Bankruptcy. .................. 26

3.      Actual and Projected Recovery of Preferential or Fraudulent Transfers.

        1.      Bankruptcy Proceedings. ........................................ 26

4.      Procedures Implemented to Resolve Financial Problems.

        a.      Bankruptcy Case Matters: ...................................... 26

                5.      Current and Historical Financial Conditions.

        b.      Other Legal Proceedings. ..................................... 27

                III.    SUMMARY OF THE PLAN OF REORGANIZATION

2.      Actual and Projected Recovery of Preferential or Fraudulent Transfers. ........ 27

                A.      What Creditors and Interest Holders Will Receive Under The Proposed Plan.

3.      Procedures Implemented to Resolve Financial Problems. ........ 28

        B.      Unclassified Claims.

4.      Current and Historical Financial Conditions. .................... 28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

SM01DOCS\820240.2                    i

1.      Administrative Expenses.

III.    SUMMARY OF THE PLAN OF REORGANIZATION ...................29

2.      Priority Tax Claims.

A.      What Creditors and Interest Holders Will Receive Under The Proposed
Plan....................................................................................................29

C.      ClassifiedB. ................................. Unclassified Claims and Interests.        2

1.      Classes of Secured Claims.

1.      Administrative Expenses.................................................................29

2.      Classes of Priority UnsecuredTax Claims.....................................32

3.      Classes of General Unsecured Claims.

C.      Classified Claims and Interests.......................................................35

4.      Class(es) of Interest Holders.

1.      Classes of Secured Claims.............................................................35

D.      Means of Effectuating the Plan.

2.      Classes of Priority Unsecured Claims.............................................49

1.      Funding for the Plan.

3.      Classes of General Unsecured Claims...........................................51

2.      Post-confirmation Management.

a.      Unsecured Claims of the Debtor...................................................52

3.      Disbursing Agent.

b.      Unsecured Claims of Raffone.......................................................56

E.      Risk Factors.

4.      Class of Subordinated Claims..........................................................58

F.      Other Provisions of the Plan.

5.      Class(es) of Interest Holders...........................................................58

1.      Executory Contracts and Unexpired Leases.

D.      Means of Effectuating the Plan.......................................................59

a.      Assumptions.

1.      Secured Creditors' Alternative.....................................................59

b.      Rejections.

2.      Funding for the Plan.......................................................................61

2.      Changes in Rates Subject to Regulatory Commission Approval.

3.      Requirement of Tax Election .........................................................61

3.      Retention of Jurisdiction.

4.      Post Confirmation Authority of Administrator .............................62

G.      Tax Consequences of Plan.

5.      Payment of Creditors......................................................................69

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES ..................

6.    Use of Cash Collateral .................................................................................. 70

  A.    Who May Vote or Object. .............................................................

7.    Post-Confirmation Management. ............................................................... 70

  1.    Who May Object to Confirmation of the Plan. ..........................

8.    Disbursing Agent. ....................................................................................... 70

  2.    Who May Vote to Accept/Reject the Plan. ..................................

9.    Tender of Possession, or Warrant of Eviction and Judgment of
        Possession Against Raffone ...................................................................... 70

  a.    What Is an Allowed Claim/Interest. ............................................

    10.    Entry of the Confirmation Order ................................... 72

  b.    What Is an Impaired Claim/Interest. ..........................................

    11.    Entry of Final Decree ..................................................... 72

  3.    Who is Not Entitled to Vote. .......................................................

  E.    Risk Factors. ...................................................................................... 72

4.    Who Can Vote in More Than One Class. .................................................

  IV.    Other Provisions of the Plan. ......................................................... 72

5.    Votes Necessary to Confirm the Plan. ......................................................

  A.    Executory Contracts and Unexpired Leases. ............................... 72

6.    Votes Necessary for a Class to Accept the Plan. .....................................

  1.    Assumptions. ...................................................................... 72

  7.    Treatment of Nonaccepting Classes. ...........................................

  2.    Rejections. ........................................................................... 73

  8.    Request for Confirmation Despite Nonacceptance by Impaired
        Class(es). .........................................................................................

  B.    Changes in Rates Subject to Regulatory Commission Approval. .......... 73

B.    Liquidation Analysis. .................................................................................

C.    Dismissal of Litigation. ............................................................................ 73

C.    Feasibility. .................................................................................................

D.    Retention of Jurisdiction. ........................................................................ 74

V.    EFFECT OF CONFIRMATION OF PLAN ...............................................

E.    Tax Consequences of Plan. ...................................................................... 74

  A.    Discharge. ....................................................................................

V.    CONFIRMATION REQUIREMENTS AND PROCEDURES ......................... 75

B.    Revesting of Property in the Debtor. .......................................................

  A.    Discharge. ...................................................................................... 75

  C.    Modification of Plan. .................................................................

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

B.      Revesting of Property in the Debtor and Raffone .............................................. 76

D.      Post-Confirmation Status Report and U.S. Trustee Fees. ..............................

C.      Modification of Plan .............................................................................. 76

ED.     Post-Confirmation Conversion/Dismissal ............................... Status Report    7

F.      Final Decree. ..............................................................................

E.      Quarterly Fees of the Respective Estates ................................................ 77

        1.      Quarterly Fees of the Debtor .......................................................... 77

        2.      Quarterly Fees of Raffone ............................................................... 78

F.      Post-Confirmation Conversion/Dismissal ............................................. 78

G.      Revocation of Plan Confirmation Order ................................................. 78

H.      Who May Vote or Object. ....................................................................... 78

        1.      Who May Object to Confirmation of the Plan. ......................... 78

        2.      Who May Vote to Accept/Reject the Plan. ................................. 79

                a.      What Is an Allowed Claim/Interest. ................................. 79

                b.      What Is an Impaired Claim/Interest. ............................... 79

        3.      Who is Not Entitled to Vote. ........................................................ 80

        4.      Who Can Vote in More Than One Class. .................................... 80

        5.      Votes Necessary to Confirm the Plan. ........................................ 81

        6.      Votes Necessary for a Class to Accept the Plan. ....................... 81

        7.      Treatment of Nonaccepting Classes. ........................................... 81

        8.      Request for Confirmation Despite Nonacceptance by Impaired
                Class(es). ............................................................................................ 81

I.      Liquidation Analysis. ............................................................................... 81

        1.      Benefits of Chapter 11 Plan ......................................................... 85

        2.      Detail on Projected Zero Distribution in Chapter 7 Estate ...... 85

        3.      Projected Distribution if Avoidance Power Actions are Successful ......... 87

J.      Feasibility. ................................................................................................. 91

K.      Final Decree. ............................................................................................. 93

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

## I.      <u>INTRODUCTION</u>

Nevada Star, LLC ("Nevada Star" or "Debtor") is the Debtor in a Chapter 11 bankruptcy case known as 2:10-bk-26188-PC.  On April 26, 2010, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 *et seq*.  The Debtor's principal asset is a parcel of real property, commonly described as a 49 unit apartment building,[1] located at 114 West 86th Street in New York City, N.Y. and all fixtures and incidental personal property that is used for the operations and maintenance of the building (the "Property").

Claudia Raffone ("Raffone") is also a debtor in the administratively consolidated Chapter 11 bankruptcy case known as 2:10-bk-27683-PC.  On May 4, 2010, Raffone filed a voluntary petition under chapter 11 of the Bankruptcy Code.  Raffone's principal assets are two single family residences located in Beverly Hills, California and Florida, although she may have additional assets available for liquidation as well.  On October 14, 2010, the Court ordered the cases of the Debtor and Raffone to be administratively consolidated [Debtor Dkt No. 146; Raffone Dkt No. 29].

Chapter 11 allows the Debtor and Raffone, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization.  The plan filed along with this Consolidated Disclosure Statement ("Disclosure Statement") is a Consolidated Chapter 11 Plan of Liquidation ("Plan").  A plan may provide for the debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  This Plan intends to combine both the sale of the Debtor's Property, and a probable sale of Raffone's assets. ~~If the Property of the Debtor generates sufficient cash to pay all creditors in full, then the plan administrator appointed by the Plan may not need to sell significant assets of the Raffone estate.~~

Prior to the closing of the sale of any asset, the Plan provides for the property of the estates to be operated by an administrator appointed under the Plan.  Madison Realty Capital, L.P. ("Madison" or the "Proponent") is the party proposing the Plan sent to you in the same envelope

---

[1]      When the superintendant's 2-bedroom apartment in the basement is included, the building is considered to have 50 units.  However, only 49 units are available for lease to the public.

1    as this document.  The only creditor who has indicated its support for the Plan is the Internal

2    Revenue Service.  The Committee of Creditors Holding Unsecured Claims ("Committee") has

3    indicated its support for the Plannot yet taken a position.  Henry Douglas Campbell ("Campbell")

4    has expressed his support for the Planindicated he does not concur with the Plan and will not agree

5    to take the discount set forth herein.  Numerous other creditors are believed to be favorable toward

6    the Plan.  Raffone has indicated she is opposed to the confirmation of the Plan.  Certain law firms

7    holding lien claims have strongly indicated their preference for a plan that would "pass through"

8    the tax liability to Raffone.  It is impossible for the Proponent to predict whether this plan might

9    be confirmed.  THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT

10   FOR THE ENCLOSED PLAN.

11        This is a Plan of liquidation.  In other words, the Proponent seeks to accomplish payments

12   under the Plan by selling the Debtor's Property set forth on <u>Exhibit A</u> to the Plan and paying

13   creditors with the proceeds of such sale.  If necessaryIn addition, the Plan provides for the sale of

14   Raffone's property set forth on <u>Exhibit B</u> to the Plan and paying her creditors (some of which

15   overlap with the claims asserted against the Debtor).  Only creditors of Raffone who can assert

16   allowed claims against Raffone shall participate in a distribution of the proceeds of the sale(s) of

17   property of the Raffone estate, to the extent such creditorscreditors' claims are not satisfied in full

18   by the proceeds of the Debtor's Property.  The effective date of the proposed Plan is the first date

19   that is 1014 days after the entry of an order confirming the Plan, providing no stay pending appeal

20   is obtained by that date (the "Effective Date").

21        **A.    <u>Purpose of This Document.</u>**

22        This Disclosure Statement summarizes what is in the Plan, and tells you certain

23   information relating to the Plan and the process the Court follows in determining whether or not to

24   confirm the Plan.  The Plan seeks to resolve all claims against both Nevada Star and Raffone in

25   one consolidated document.

26        **<u>READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO</u>**

27   **<u>KNOW ABOUT</u>:**

28        **(1)    WHO CAN VOTE OR OBJECT,**

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will likely receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

**(3)    THE HISTORY OF THE DEBTOR AND RAFFONE AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASES,**

**(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

**(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

**(6)    WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

**B.    <u>Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.</u>**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL CREDITORS AND INTEREST HOLDERS IN THESE CASES.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**1.    Time and Place of the Confirmation Hearing.**

The hearing where the Court will determine whether or not to confirm the Plan will take place on the date set forth in the accompanying notice, once set, in Courtroom 1539, 15th Floor, United State Bankruptcy Court, 255 E. Temple Street, Los Angeles, California 90012.

**2.    Deadline For Voting For or Against the Plan.**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Katherine M. Windler, Attorney at Law, c/o Bryan Cave LLP, 120 Broadway, Third Floor, Santa Monica, California, 90401.

Your ballot must be received by the date set forth in the accompanying notice or it will not be counted.

**3.    Deadline For Objecting to the Confirmation of the Plan.**

Objections to the confirmation of the Plan must be filed with the Court and served upon Katherine M. Windler, Attorney at Law, c/o Bryan Cave LLP, 120 Broadway, Third Floor, Santa Monica, California, 90401 by the date set forth in the accompanying notice.

**4.    Identity of Person to Contact for More Information Regarding the Plan.**

Any interested party desiring further information about the Plan should contact Katherine M. Windler, Attorney at Law, c/o Bryan Cave LLP, 120 Broadway, Third Floor, Santa Monica, California, 90401, telephone 310-576-2105, facsimile 310-260-4105, email katherine.windler@bryancave.com.

**C.    Disclaimer.**

The financial data relied upon in formulating the Plan is based on Debtor's and Raffone's books and records, information received from Raffone and Campbell and court pleadings filed by them in various litigation matters that occurred before the bankruptcy cases, and information learned about the Property from the operations managed by Minuit Partners Property Management LLC ("Minuit") during the time of the chapter 11 cases.  The information contained in this Disclosure Statement was written by the attorney working at the law firm hired by the Proponent based on documents and information that was provided to it by the Debtor, Raffone, Campbell and

1    Minuit.  A substantial portion of the records of the Debtor and Raffone were not made available to

2    the Proponent.  The Plan Proponent represents that everything stated in the Disclosure Statement

3    is true to the Proponent's best knowledge.  The Court has not yet determined whether or not the

4    Plan is confirmable and makes no recommendation as to whether or not you should support or

5    oppose the Plan.

6    **II.    BACKGROUND**

7        **A.    Description and History of the Debtor's Business.**

8        The Debtor is a New York limited liability company.  The Debtor filed its chapter 11 case

9    on April 26, 2010.  Since the inception of the case, the Debtor has not been permitted to manage

10   and operate its business as a debtor in possession.  Instead, Minuit was appointed to act as the

11   property manager for the Property by the Honorable Judge Peter O. Sherwood of the New York

12   Supreme Court by order entered on March 25, 2010 in the New York Sale Litigation (defined

13   below).  Minuit has managed the Property, collected rents, paid expenses and repairs and prepared

14   all the Monthly Operating Reports.  Copies of the Monthly Operating Reports ("MORs") are

15   available from Pacer at https://pacer.login.uscourts.gov/cgi-bin/login.pl or by writing to the plan

16   proponent at the address in the top left corner of the first page of this document, who will provide

17   copies of the MORs to any requesting party.

18       Raffone is an individual who resides in Beverly Hills, California, and who maintains a

19   residence in Florida.  Raffone has been involved in significant litigation with Campbell for many

20   years.

21       Because Raffone and Campbell have totally different perspectives on how this bankruptcy

22   case came about, and what facts are relevant in helping creditors understand how they find

23   themselves in this position today, each individual's perspective is represented below, first the

24   factual history according to what Raffone has told the Plan Proponent, and then the factual history

25   according to what Campbell has told the Plan Proponent.  Plan Proponent does not promote the

26   truth or accuracy of either individual's perspective.

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1

### 1.    History According to Raffone

2          Traute Raffone ("Traute") was born in Czechoslovakia on August 20, 1920. She married

3    John Joseph Raffone and had a daughter named Claudia Raffone.  Claudia Raffone is the person

4    referred to in this Disclosure Statement as "Raffone."  Following a divorce, Traute married

5    Campbell on August 27, 1966.  Traute continued to use her first husband's last name even after

6    her marriage to Campbell.  On March 31, 1980, Traute's aunt, Olga Elfer, individually and as the

7    executrix of the estate of Alexander A. Elfer, deceased, transferred title of the Property to Traute.

8    John P. Reiner, Esquire ("Reiner") assisted with the title transfer and notarized the papers.  In or

9    around 1982, Olga Elfer died and left the Property to Traute. For many years, Traute lived in the

10   Property. At various times, Campbell lived in units in the Property, and later lived in the Property

11   with Traute.

12          During the late 1960's through the 1990's, Traute executed a series of wills and codicils

13   that consistently left the bulk of her estate to Raffone and some bequests to Campbell.  The

14   amount of the bequests to Campbell appeared to vary based on Traute's understanding of real

15   estate holdings that Campbell owned in Jamaica.  The majority of the wills and codicils were

16   prepared by Traute's longtime attorney Reiner.

17          On August 18, 1985, Campbell executed a waiver of right to take an elective share of

18   Traute's estate.  Raffone attended boarding school and college in the 1970's – 1980's and, in

19   January 1990, moved into the penthouse apartment in the Property.  After Raffone moved to New

20   York, the relationship between Raffone and Campbell became strained as each weighed in with

21   their opinions as to how Traute could more efficiently manage the Property.  Raffone suspected

22   that Campbell, along with the building's management company, Brown Harris Stevens, was

23   deliberately helping tenants with rent controlled apartment units, who were not using their units as

24   a primary residence (as required by law), to evade detection.  She also believed the management

25   company and Campbell frequently duped Traute into permitting non- primary residents to renew

26   their leases when Traute had the right to forgo renewal and rent the apartments to other tenants at

27   full market value.  Campbell in turn contended that Raffone was "meddling" in her mother's

28   affairs.

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

During the 1990's, Raffone and Traute purchased a beach house in Rehoboth Beach, Delaware and spent summers together there. Campbell did not come to Rehoboth Beach but instead stayed in New York. On October 13, 1994, Campbell signed a second waiver of his right to take an elective share of Traute's estate. On March 5, 1995, Traute wrote to her lawyer Reiner about changing her will (concerning a specific bequest of no material significance here) and enclosed a copy of Campbell's waiver of his right to take an elective share. On May 31, 2000, Traute and Raffone jointly purchased an apartment unit at 214 Chilean Avenue, Palm Beach, Florida. Shortly thereafter Raffone moved into the apartment on Chilean Avenue. Between 2000-2001, Traute incurred significant consumer debts and Campbell blamed the debts on Raffone.

In 2002, Traute took out a 30-year mortgage on the Property and used some portion of the funds to pay for renovations to the Property and also to satisfy various accumulated debts and judgments owed by her and Raffone.

During 2002-2003, Campbell had Traute sign several powers-of attorney that purported to transfer various rights to him and an accountant named Leonard Fay, C.P.A. The powers of attorney were handwritten by Campbell and Traute's signature appears shaky. In 2003, Campbell grew exceedingly angry at what he perceived to be excessive spending by Traute on her daughter Raffone. He began writing numerous angry handwritten memos to Traute, various personnel at the management company for the Property, the accountant Leonard Fay, and personnel at various banks, claiming that, for example: "The only thing she looks forward to is sending large sums of money to her daughter in Palm Beach either daily or every other day." Campbell is a prolific writer and his handwritten memos were typically several pages long, and full of terse, apocalyptic and vengeful language directed at Traute and Raffone.

On April 11, 2003, Traute went to her lawyer's office, Reiner, and executed what became known as "the April Will." This will (consistent with prior wills) left the majority of her assets to Raffone. The April Will also named Raffone as executor and gave her discretion as to certain bequests to Campbell. On April 14, 2003, only three days after Traute signed the April Will, Campbell drafted, signed, and had the local dry cleaner notarize, a handwritten revocation of "all previous wavers [sic]". Although he denied it at his deposition, it seems clear that Campbell

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  found the April Will shortly after it was signed by Traute, realized that it provided very little for

2  him and also gave discretion to Raffone.  He therefore decided to "revoke" the waivers of right to

3  elective share to ensure that he received 1/3 of Traute's assets (which at the time included the

4  Property now held by the Debtor).

5          On August 26, 2003, Reiner sent a letter to Traute, referencing a recent meeting where she

6  had discussed gifting the Property to Raffone, and warning her of potential tax consequences.  On

7  September 9, 2003, Traute (as her Aunt Olga Elfer did many years earlier) gifted the Property to

8  Raffone via Warranty Deed while visiting her daughter in Florida.  On October 16, 2003,

9  Campbell prevailed upon Traute to sign a "Last Durable Power of Attorney" in favor of Campbell.

10  The document was witnessed by two doormen who worked in the Property, and was signed by a

11  notary at the Emigrant bank around the corner from the Property.  On November 6, 2003, Reiner

12  filed the Warranty Deed, transferring title of the Property from Traute to Raffone, in New York.

13          On November 14, 2003, Campbell apparently learned of the registration of the Warranty

14  Deed and forged what later became known as "the November Will."  The November Will

15  purported to disinherit Raffone, left the bulk of Traute's estate to Campbell and provided for a

16  smaller bequest to Raffone's cousin, Michael Wacher, in Germany.  The November Will was

17  purportedly witnessed by another doorman at the Property, and a nearby resident, and signed and

18  notarized by an employee at Emigrant Bank.  During his deposition the doorman later stated

19  emphatically that he did not read English, had no idea what he was signing, and recalled that the

20  testator Traute, who he knew very well, was not present when he signed the document.

21          On the day after the November Will was purportedly executed, Traute was admitted to

22  Mount Sinai Hospital in New York for vomiting.  Raffone contends that Traute was poisoned by

23  Campbell, who has admitted to being responsible for ensuring she took her many medications.  In

24  November 2003, Campbell surreptitiously taped many conversations between Raffone and Traute.

25  In some of the tapes, Raffone appears to be heard using racial epithets to describe Campbell.

26          On November 20, 2003, Dr. Gottlieb, a physician in New York, wrote a letter indicating

27  that Traute may be suffering from Parkinson's Disease.  In late November 2003, after another

28  hospitalization, Traute moved to Florida to live with Raffone and Claudia's husband Donald St.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  John.  Campbell frequently called the Palm Beach Police Department and the State of Florida,

2  Department of Children and Family Services Adult Protective Services, claiming that Traute had

3  been kidnapped and was being held against her will.  As evidenced by numerous reports, both the

4  Palm Beach Police Department and the State of Florida, Department of Children and Family

5  Services Adult Protective Services, thoroughly investigated these charges (including isolated

6  interviews with Traute) and found them to be groundless.

7        On July 30, 2004, Campbell filed a verified complaint against Raffone seeking injunctive

8  relief and to rescind the transfer of the Property, in New York Index No. 60246/04 (the

9  "Fraudulent Transfer Litigation").  In the Fraudulent Transfer Litigation, Campbell alleged that at

10  the time of the transfer Raffone "took advantage of the infirm state" of Traute.  During his

11  prosecution of the Fraudulent Transfer Litigation in the New York court, Campbell repeatedly

12  tried to admit portions of the audiotapes of conversations between Raffone and Traute into

13  evidence and submitted handwritten transcripts of those portions containing alleged racial epithets,

14  to the court.

15        In September 2004, after Raffone had the basement of the Property cleaned, Campbell

16  filled out a police report claiming that many of his "antiques" had been stolen.  As a result, during

17  a routine visit to New York, Raffone was arrested.  On October 18, 2004, Traute filed a one page

18  handwritten affidavit in which she explained that she had moved to Florida to escape Campbell

19  and that she living there of her own free will.  She also stated in the affidavit that it had always

20  been her intent to gift the Property to her daughter.  On October 22, 2004, the New York Supreme

21  Court issued a decision and order denying Campbell's request for injunctive relief.

22        On October 29, 2004, Campbell amended the Fraudulent Transfer Litigation to add a claim

23  that Traute was incapacitated and incompetent to make the gift of the Property to Raffone.  The

24  Fraudulent Transfer Litigation continued for 3½ years, and was ultimately stayed by the death of

25  Traute in December 2007.

26        On May 17, 2007, Richard Hershman, Esq. ("Hershman") counsel for Campbell, filed an

27  Affidavit to Vacate Default that attached the November Will as an exhibit.  This was the first time

28  the alleged November Will was disclosed.  In his Affidavit, Hershman states at paragraph 10:

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Plaintiff now supplements his showing to the Court of his interest in the subject premise by the Last Will & Testament executed by Traute on November 14, 2003, believed to have been prepared at the law offices of Mujica & Goodman, 103 West 86th Street, New York, New York and executed at the Emigrant Savings Bank, before Mary Frances Gattuso the assistant treasurer of the bank.  *See* Exhibit E.  The Court should be advised that plaintiff Douglas Campbell was not involved in any aspect in the preparation or execution of this will.

In 2007, one of the rent control tenants in the Property (who appeared to be a non-primary tenant as evidenced by the fact that his answering machine in the apartment unit answered in the name of a business with several extension lines), named John Schreiber, began paying Campbell's rent on the Property.  Raffone contends that John Schreiber agreed to pay Campbell's rent in exchange for a portion of any settlement obtained by Campbell in his lawsuits against Raffone.

On September 14, 2007, Raffone registered the Debtor with the New York Secretary of State, and subsequently transferred ownership of the Property to the Debtor.

On December 13, 2007, Traute died at Palms West Hospital, Loxahatchee, Florida.  On January 22, 2008, Raffone filed a Petition for Administration of the April Will of the Estate of Traute in Palm Beach County, Florida, Case No. 502008-CP-000346-XXXXXMB (the "Probate Litigation") and she was appointed as the personal representative of the estate.  On April 25, 2008 Campbell filed a Counter-Petition of the November Will.  On April 30, 2008, the Florida court entered a order vacating the appointment of Raffone as personal representative of the Estate of Traute, due to the later November Will, which had not been disclosed in the Petition for Administration filed by Raffone.  On May 7, 2008, Campbell filed a Statement of Claim in the estate stating that he had incurred $5,000,000.00 in legal fees.  On May 7, 2008, Campbell filed a Statement of Claim in the estate alleging that he had incurred $43,000.00 in payments of the mortgage and maintenance fees related to the Property.  On May 7, 2008, Campbell filed a Statement of Claim in the estate alleging that he had an interest in ½ of the Property.  On August 18, 2008, Campbell filed a Surcharge Petition seeking recovery of the value of the Property ($17,000,000.00 claimed by Campbell) plus $43,000.00 in payments of the mortgage and maintenance fees related to the Property.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    On June 13, 2008, Campbell filed a separate civil complaint Florida state court, known as

2  Case No. 502008-CA-17861-XXXXMB AG seeking to recover $43,000.00 in payments of the

3  mortgage and maintenance fees related to the Property (the "Florida Civil Litigation").  It is

4  unclear why Campbell commenced the Florida Civil Litigation as the Probate Litigation was fully

5  underway at that time.

6    Litigation in the Probate Litigation continued from early 2008 until the bankruptcy cases

7  were commenced.  Litigation in the Florida Civil Litigation continued until the time of the

8  settlement in the Probate Litigation in 2009.  That settlement has never been implemented.

9    Ultimately, Campbell believed that the Probate Litigation was resolved by a written

10  settlement, which would have paid Campbell $2.5 million plus attorneys' fees.  However, while

11  Raffone did sign the settlement agreement, she declined to sign any of the collateral documents,

12  angering Judge Cook in the Probate Litigation, who then entered an order holding Raffone in

13  contempt, threatening to jail her, and transferring ownership of the Property to Campbell.

14    On April 14, 2010, Raffone's New York counsel, Beys, Stein & Mobargha LLP ("Beys

15  Stein"), attended a civil contempt hearing in the Probate Litigation.  At that hearing, Judge Cook,

16  the judge in the Probate Litigation, made a statement to the effect that "there's enough value in the

17  Property to pay everyone, including Campbell and his claim for attorneys fees."  Given its tone

18  and context, Raffone believes that Judge Cook would rule that Raffone is entitled to any surplus

19  equity in the Property.  At the subsequent hearing on April 20, 2010, in New York in the New

20  York Sale Litigation (defined below), Beys Stein argued that the meaning of Judge Cook's

21  statement was that Raffone was the true owner of the Property and Campbell was merely a

22  creditor holding a claim for the payment of money.  Raffone believes that Campbell's attorney

23  Hershman conceded that point and that Campbell should cease making claims to be the sole

24  managing member of the Debtor.

25

26

27

28

1

## 2.    History According to Campbell

2    Traute married Campbell on August 27, 1966.[2]  They remained married until Traute's

3    death on December 13, 2007.  During their marriage, and on repeated occasions before

4    September 9, 2003, Traute promised to transfer a 50% interest in the Property to Campbell.

5    On April 11, 2003, under the coercive, abusive and oppressive influence of Raffone, which

6    acts eliminated any of Traute's free will, Raffone caused Traute to execute the April Will whereby

7    Traute appointed Raffone as her sole heir and willed only $300 to Campbell.

8    On September 9, 2003, under the coercive, abusive and oppressive influence of Raffone,

9    Raffone caused Traute to gift the Property to Raffone by recorded deed for no consideration.

10    Raffone did not advise Campbell of this transfer and failed to report it to any taxing agency until

11    October 2008, on which form she testified that the value of the Property at the time of the

12    September 9, 2003 transfer was $5,000,000.

13    In 2008, Raffone obtained an appraisal of the Property at $25 million to secure an

14    $8 million loan from the Plan Proponent.  Raffone had previously caused Traute to obtain a prior

15    secured loan for $422,000, much or all of which net proceeds were paid to or used for the benefit

16    of Raffone.  In October 2008, Raffone sent a letter to the IRS requesting it to abate the tax

17    penalties on the unreported transaction.  Raffone asserted that Traute was incompetent to handle

18    her financial affairs dating back to September 2003.  This statement to the IRS is an admission

19    that the transfer of the Property to Raffone in September 2003 was a fraudulent transfer under

20    applicable law.  Raffone was fully aware of Traute's promise to give 50% interest in the Property

21    to Campbell.

22    Campbell learned of the April Will on November 11, 2003.  Three days later, Traute

23    requested that Campbell assist her in executing the November Will, by which Traute appointed

24    Campbell as the executor, and provided to pay Raffone zero, some small portion of her estate to

25

26    _____

[2]    Indicative of how adversarial the relationship between Raffone and Campbell has become, they
cannot even agree on the date of Campbell's marriage to Traute.

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    other relatives, and the majority of the estate to Campbell.  The November Will revoked all prior

2    wills.

3         When Raffone learned that Traute was contemplating transferring all her assets to a trust

4    and having a guardian appointed, and on or about November 23, 2003, Raffone and her then-

5    husband kidnapped Traute from her New York residence at the Property, in her house dress and

6    slippers and without her medications, and drove her to Florida.  Raffone cut off all contact

7    between Campbell and Traute.  Campbell never saw Traute alive again.  When Traute died,

8    Raffone refused to tell Campbell of her death and did not advise Campbell of the Probate

9    Litigation until 77 days after the death of Traute.

10         Approximately 6 months after Traute was forcibly moved to Florida against her will, and

11    in July 2004, Campbell commenced the Fraudulent Transfer Litigation.

12         In January 2008, while the Fraudulent Transfer Litigation was stayed, Raffone filed the

13    Probate Litigation.  In that Florida action, Raffone sought to appoint herself as Traute's personal

14    representative and to probate the April Will.  Raffone intentionally failed and refused to give the

15    Florida court a copy of the November Will, even thought she knew of it and had a copy of it.  The

16    Florida court held an evidentiary hearing and on April 28, 2008, vacated its order appointing

17    Raffone as the personal representative and admitting the April Will to probate.  On December 10,

18    2008, Campbell was appointed as curator in a limited capacity.  Campbell sought to have the

19    November Will admitted to probate.  Trial on the counter-petition to admit the November Will to

20    probate was set for June 2009.

21         Raffone and Campbell reached a compromise of their disputes to avoid the June 2009 trial

22    in the Probate Litigation.  A settlement agreement was drafted, but Raffone refused to settle it, and

23    again, significant litigation erupted.  The Florida court eventually entered a final judgment in favor

24    of Campbell affording him a money judgment of $2.5 million, plus all attorneys' costs and fees in

25    enforcing his rights under the settlement agreement (not all fees for all litigation).  Thereafter, on

26    April 30, 2010, after the Petition Date of the Debtor, but before Raffone's petition was filed, the

27    Florida judge in the Probate Litigation held Raffone in contempt, imposed a penalty in the amount

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Case 2:10-bk-26188-PC    Doc 240    Filed 02/11/11    Entered 02/11/11 16:27:32    Desc
Main Document    Page 21 of 102

1  of $2,000 per day for failure to comply with the final judgment entered by that court, which sums

2  allegedly continue to accrue and will continue until the contempt is purged.

3       During the Probate Litigation, Campbell filed "Statements of Claim," to which Raffone

4  objected.  In response to the objections raised by Raffone, Campbell commenced the Florida Civil

5  Litigation.  In August 2008, Campbell attempted to use the Florida Civil Litigation to surcharge

6  Raffone, to compel Raffone to account for all probate estate assets, and to return to the probate

7  estate all assets that had been improperly transferred to Raffone before Traute's death.  The

8  Florida Civil Litigation was set for trial in 2009, but resolved as part of the settlement in the

9  Probate Litigation, referenced above.

10       Since the bankruptcy cases were filed, Raffone and the Debtor have had unfettered use of

11  an estimated $457,000 - $650,000 in gross rents per year.  Moreover, Raffone got a loan for

12  $8 million from the Plan Proponent and Raffone has refused and continues to refuse to account to

13  Campbell for the use of the loan proceeds.

14       On dates that are unknown to Campbell, Raffone used her influence over Traute to cause

15  Traute to transfer other assets to Raffone, including bank accounts, jewelry, stocks and real

16  property, with which Raffone purchased a Palm Beach, Florida condominium and a home in

17  Loxahatchee, Florida.

18       Campbell believes that Raffone has fraudulently transferred assets to herself, in violation

19  of the orders of the Probate Litigation, and in violation of Campbell's appointment as curator for

20  Traute's estate.  Campbell has filed a complaint seeking to ~~prevent the entry of a~~

21  ~~discharge~~determine that Raffone's debt to him is non-dischargeable as to Raffone in her personal

22  bankruptcy case ("Discharge Litigation").  Raffone has objected to the proof of claim filed by

23  Campbell in the Raffone bankruptcy case.  The bankruptcy court is likely to combine the

24  Discharge Litigation, which is an adversary action, with the claim objection, which is a contested

25  matter.  In November 2010, the bankruptcy court granted relief from stay to Campbell to pursue

26  the Florida Probate Litigation to finality.

27      **B.**    **Principals/Affiliates of Debtor's Business.**

28       Claudia Raffone contends that she is the sole managing member of the Debtor.

SM01DOCS\820240.2
14
FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    Campbell contends that he is the sole managing member of the Debtor.

2    ~~No court has ever determined with finality who is the owner of Nevada Star.  The Plan~~

3    ~~does not seek to resolve that issue.  Instead, the Plan provides that Campbell will accept a flat~~

4    ~~$2.5 million distribution as the member of Class 4 under the Plan and he will waive all other rights~~

5    ~~to ownership of any assets, his ownership of the membership certificates of Nevada Star, or other~~

6    ~~payment on account of any court rulings with respect to him and Raffone in any state.  At the time~~

7    ~~the Plan is fully consummated, Raffone will be recognized as the sole member of Nevada Star.~~

8    No court has ever determined with finality who is the owner of Nevada Star.  According to

9    Campbell, on December 29, 2010, at the request of Raffone, the Florida District Court of Appeal

10   entered an order of remand, for 30 days, to determine whether a portion of the Final Judgment

11   entered in the Probate Litigation transferred ownership to Campbell, or instead was meant only to

12   give Campbell a lien on Raffone's ownership interest in Nevada Star.  According to Campbell if

13   ownership indeed transferred to Campbell, then Raffone may have incurred a significant taxable

14   capital gain.  It is unknown as of the filing of this Disclosure Statement whether Raffone made an

15   IRS Code Section 1398 short-year election after commencing the instant bankruptcy case by

16   September 15, 2010.  Campbell believes that date is an immutable deadline.  According to

17   Campbell if Raffone did not timely make that election and the above transfer is effective, then it

18   appears Raffone personally and not her bankruptcy estate, will be liable for those capital gains.

19   According to Campbell, if Raffone did make the election timely, then any such gains would

20   become a priority claim in her bankruptcy case and be paid ahead of the claims of certain other

21   creditors.

22       **C.      Management of the Debtor Before and After the Bankruptcy.**

23   Minuit was appointed by Judge Peter Sherwood of the New York Supreme Court by order

24   entered on March 25, 2010.  Raffone and her counsel selected Minuit to manage the Property in

25   her effort to prevent Campbell from taking control over the Property.  At a later date, Raffone

26   came to distrust Minuit and expressed her desire to have Minuit removed.  Raffone never took any

27   formal steps in Court to have Minuit removed, although initially she did oppose Madison's efforts

28   to prevent Raffone from acting as a debtor in possession.  After the first hearing on the use of

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1  Madison's cash collateral, Raffone asserted no further objections to the use of rents from the

2  Property.  She has continued her objections to Minuit throughout the bankruptcy cases.

3          Madison did not believe Raffone to be trustworthy or competent with respect to

4  management of the Property.  On three separate occasions (June 4, 2010 [Docket No. 31], June 15,

5  2010 [Docket No. 45] and August 27, 2010 [Docket No. 76]), Madison asked the Bankruptcy

6  Court to (1) lift the automatic stay to the extent necessary to permit Minuit to remain in

7  possession, custody and control of the estate's cash collateral, (2) excuse the requirement of

8  turnover by a custodian such as Minuit under 11 U.S.C. § 363 of the Bankruptcy Code, and

9  (3) authorize the use of Madison's cash collateral in connection with budgets that had been

10  approved by Madison for the upkeep, maintenance and protection of the Property (the "Excuse

11  From Turnover Motions").  Madison brought on the Excuse From Turnover Motions at the urging

12  of Minuit who expressed difficulties it was experiencing in managing the Property under

13  Raffone's direction.

14          Minuit informed Madison  that critical repairs to the fire safety system and the erecting of

15  scaffolding to protect the public from falling pieces of the façade were necessary expenditures.

16  The Debtor and Raffone initially opposed any use of cash to protect the public, curiously insisting

17  that the masonry of the building would only fall on tenants using the courtyard and not on the

18  public street.  The Debtor and Raffone also opposed the retention of Minuit as the custodian of all

19  cash collateral, despite the order of a state court (described below) that a property manager other

20  than Raffone be in place.  The Debtor and Raffone ignored the rights of the tenants and caused

21  numerous complaints to be filed with the City of New York, leaving the Debtor liable for

22  thousands of dollars of fines and the need to retain an expeditor to resolve outstanding violations.

23  A list of the violations printed from the City of New York website can be accessed by any party in

24  interest.[3]  The Debtor and Raffone opposed the use of cash to pay for critical repairs to the fire

---

25  [3]      By accessing http://167.153.4.71/Hpdonline/provide_address.aspx  and inserting the street

26  address number (114) and street location (W. 86th Street) and hitting the search button, that should
   bring parties  to the following page:

27  http://167.153.4.71/Hpdonline/select_application.aspx .  On the left hand margin, any party can
   then clink the link entitled "All Open Violations."

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1    safety equipment in the building, insisting that such repairs were fabricated by Minuit and not

2    necessary.  The Debtor did not always timely pay employees and other regular maintenance and

3    repairs had gone unpaid.  Minuit also informed Madison that numerous leases were not timely

4    renewed under New York's rent stabilization law, some over a period of many years, leaving

5    insufficient funds to make any interest payment on the Note.  Apparently other vendors also went

6    unpaid, and at least 3 liens asserting demands for over $2.5 million have been recorded against the

7    Property in positions junior to Madison.  Accordingly, Madison felt that the bringing on of the

8    Excuse From Turnover Motions was necessary to preserve (i) the Property and (ii) any hope of a

9    sale that would generate proceeds in excess of Madison's claim.  The Debtor and Raffone did not

10   oppose the second and third Excuse From Turnover Motions.  All three Excuse From Turnover

11   Motions were granted by orders entered on July 13, 2010 [Docket No. 63], September 30, 2010

12   [Docket No. 139] and October 8, 2010 [Docket No. 144].

13         **D.    Events Leading to Chapter 11 Filing.**

14         Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case:

15         The Tenant Litigation:          At some point in early 2009, a group of tenants engaged

16   attorney Ms. Catherine Grad to assist them in assuring regular repair and maintenance of the

17   Property.  Ms. Grad commenced an action against the Debtor and on May 27, 2009 (the "Tenant

18   Litigation"), and a Civil Court of the City of New York ordered Raffone to obtain a managing

19   agent for the Property that was not Raffone or her family or related parties.  That order further

20   required the Debtor to maintain $5,000 in a bank account in New York which in turn could be

21   accessed by the court appointed managing agent to pay for ongoing maintenance of the building,

22   which includes paying the superintendent (the ("Tenant Protection Order").  Raffone appears to

23   have disregarded the Tenant Protection Order, and the managing agent mentioned in the court

24   order never signed the order or managed the Property.  Instead, Raffone had her superintendant's

25   wife (Vjollca Lumaj) registered for a period of time as the managing agent, when in actuality there

26   was no one other than Raffone herself acting as the property manager.  Subsequent to the entry of

27   the Tenant Protection Order, Minuit was appointed as the managing agent by Judge Sherwood.

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   Since the time of Minuit's appointment, the number of complaints by tenants has been

2   dramatically reduced.  New complaints by tenants are now extremely low in number.

3         <u>The Probate Litigation</u>:      Prior to the commencement of this bankruptcy case, the

4   Debtor and Raffone were involved in litigation in the Circuit Court of the Fifteenth Judicial

5   Circuit in and for Palm Beach County, Florida, in Case No. 502008-CP-00346-XXXXMB, *In re*

6   *Estate of Traute*, deceased (herein called the "Probate Litigation").  In the Probate Litigation,

7   Raffone was locked in a tug of war with Campbell over ownership of the Property.  On

8   February 5, 2010, the Circuit Court in Palm Beach County Florida entered a final judgment

9   approving a transfer of "100% of Claudia Raffone's membership interest in Nevada Star, LLC" to

10   Campbell ("Probate Order").  A summary of the Probate Litigation procedural history and facts

11   believed to be relatively neutral and not in favor of either Raffone or Campbell, relating to that

12   litigation is set forth in paragraphs numbered 1-28 below.

13         1.      1.     Raffone is the only child of her mother, Traute.

14         2.      2.     Campbell is allegedly Raffone's mother's third husband.  Raffone disputes

15   that fact as she contends that no certified marriage license has been proffered by Campbell.

16         3.      3.     Raffone filed a Petition for Administration seeking her appointment as

17   personal representative and the admission to probate of a Last Will and Testament executed by the

18   decedent at the decedent's lawyer's office on April 11, 2003, devising the remainder of the estate

19   to Raffone.

20         4.      4.     Campbell filed a Petition for Administration seeking his appointment as

21   personal representative and the admission to probate of a will allegedly prepared and executed by

22   the decedent on November 14, 2003, devising the remainder of the estate to Campbell.

23         5.      5.     Raffone contested the November Will on the basis of improper execution.

24         6.      6.     In New York and Florida, Campbell sued Raffone to invalidate a gift made

25   by the decedent in September 9, 2003 to Raffone of the Property.

26         7.      7.     According to Raffone, the Property has been appraised for approximately

27   $18 million dollars.  ~~A copy of the 2009 Appraisal is attached as Exhibit "A."~~

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

8.    8.    Raffone and Campbell litigated Campbell's Counter-Petition of
Administration in October of 2009, the parties settled all pending issues, executed a settlement
agreement and the settlement agreement was approved by the Florida Court on October 21, 2009
("Settlement Agreement").  The Settlement Agreement provided for Raffone's appointment as
Personal Representative and that Campbell would receive a different parcel of property, the co-
operative apartment located at 108 East 86th Street, Apt. 11N, New York, New York (the "Co-
Op") owned by Traute and $2.25 million dollars.  Raffone contends that the Co-Op has a $1.8
million dollar value.  There is also a federal tax lien placed against the Co-Op, which must be
satisfied by Raffone under the Settlement Agreement.  According to Campbell, that lien was
recorded on December 17, 2009 in the amount of $673,998.50.

9.    9.    The Settlement Agreement also provided that Raffone would retain
ownership of the Property, and that Campbell would dismiss the Florida Civil Litigation and the
Fraudulent Transfer Litigation.

10.    10.    This $2.25 million dollars included payment to the Gunster law firm for
their claim to more than one million dollars in attorneys' fees and costs.  Counsel for Campbell
has represented that the amount due Gunster Yoakley has currently been reduced, presumably by
payments from their client, Campbell, or an agent of their client.

11.    11.    The Settlement Agreement also provides for the use of security documents
in favor of Campbell in order to ensure payment of the $2.25 million dollars by April 1, 2010
("Security Documents").  The Security Documents were to be the subject of further negotiations
and were to include a pledge of Raffone's interests in the Debtor.

12.    12.    The form of these Security Documents was not created and/or reviewed
until at least a month after the execution of the Settlement Agreement and was not finalized as to
form until late December 2009.

13.    13.    At the time of the execution of the Settlement Agreement, it was
contemplated by all parties that Raffone would pay Campbell the $2.25 million dollars after sale,
re-financing or other transfer of ownership for profit, of the Property, but not later than April 1,
2010.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

14.    ~~14.~~    The Property, both prior to and after the settlement, was subject to a first mortgage in an amount exceeding $8 million dollars in favor of Madison.  Thus, the Settlement Agreement and the Security Documents were tailored in order to prevent an "event of default," under the first mortgage and preserve Madison's priority.

15.    ~~15.~~    The Security Documents include a mortgage on Raffone's claimed Florida Homestead, a New York Judgment by Confession for $2.5 million dollars, a Pledge Agreement by Raffone to the membership interest in the Debtor and a first priority interest in an interest reserve account held by the first mortgagor, Madison, on the Property.

16.    ~~16.~~    Prior to the completion of the form of the Security Documents, but two months after the Settlement Agreement was agreed upon, at least verbally, a tax lien against the Defendant was placed on the Co-Op.  Pursuant to the Settlement Agreement, Raffone would have to satisfy the tax lien.  However, as stated above, the satisfaction of the financial obligation to Campbell by Raffone would be paid from the proceeds of the sale or re-finance of the Property, which was required to occur by April 1, 2010.

17.    ~~17.~~    With the tax lien pending on the Co-Op, execution of the Security Documents would have allowed Campbell to foreclose on his security interest (through the Security Documents and the default terms of the Settlement Agreement) long before April 1, 2010, the contemplated payment date.  Therefore, Raffone moved for an extension of time to satisfy the tax lien until April 1, 2010 and the Court denied same.

18.    ~~18.~~    After the denial of the extension request, Campbell requested Raffone sign the Security Documents.        Raffone did not sign, nor consent to the execution of, the Security Documents.  In response to Raffone not executing the Security Documents, Campbell moved the Florida Court to hold Raffone in contempt and the Court entered a contempt order and issued a writ of bodily attachment until such time as Raffone signed said documents which was granted.

19.    ~~19.~~    Raffone's counsel motioned the Florida Court to withdraw, which request was granted on February 1, 2010.

20.    ~~20.~~    Campbell filed a "Motion to Enforce Settlement Agreement, for Entry of Final Judgment in Favor of Henry Douglas Campbell and Against Raffone, Donald St. John, and

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

the Debtor, and to Confirm and Establish the Security Required Under Settlement Agreement."

("Motion to Enforce Settlement Agreement").

21.    ~~21.~~    The Motion to Enforce Settlement Agreement requested that the Florida Court "deem" the Security Documents to be "signed," without Raffone's execution or consent to same, and grant Campbell the relief provided for in the Security Documents and further relief from the Court itself.  While Raffone was not represented by counsel, a hearing on the Motion to Enforce Settlement Agreement was held on February 5, 2010.

22.    ~~22.~~    On February 5, 2010, the Court entered a Final Judgment (the "Florida Final Judgment").  Raffone disputes the factual findings in the Final Judgment.

23.    ~~23.~~    The Florida Final Judgment provided in pertinent part:

a.    ~~a.~~    As a matter of law, Campbell was entitled to specific performance of the Settlement Agreement;

b.    ~~b.~~    The Florida Final Judgment was entered on behalf of Campbell and against Raffone and the Debtor, jointly and severally, in the amount of $2.5 million dollars;

c.    ~~c.~~    Campbell was entitled to immediately record the Florida Final Judgment in any and all jurisdictions;

d.    ~~d.~~    The Security Documents were deemed executed by the parties effective the date of the Florida Final Judgment and Campbell was entitled to all of the rights afforded by the Security Documents;

e.    ~~e.~~    100% of Raffone's membership interest in the Debtor was transferred to Campbell, effectively immediately, and Campbell was entitled to immediate possession of all its books, records, etc, including rent rolls and the right to immediately begin collecting rent from the tenants in the Property;

f.    ~~f.~~    The Debtor was directed to immediately issue a certificate for 100% of the membership interests to Campbell;

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

g.   ~~g.~~   The Department of Housing and Community Renewal for the City of New York was authorized and directed to provide Campbell with records of the registered rents for the Property;

h.   ~~h.~~   Campbell was assigned all the rights that the Debtor and/or Raffone had in the interest reserve account with Madison;

i.   ~~i.~~   Campbell was entitled to a mortgage in the principal amount of $400,000 on Raffone's Florida Homestead property; and

j.   ~~j.~~   Campbell was entitled to recover the attorneys' fees and costs he incurred in connection with enforcing his rights under the Settlement Agreement.

24.   ~~24.~~   ~~Before the Florida Final Judgment became final as a matter of law,~~ Campbell began informing tenants of the Property and other New York entities of his "ownership" of the Property under the Florida Final Judgment. Raffone contends that Campbell began these communications with tenants before the Florida Final Judgment became final as a matter of law. By letter dated February 5, 2010, Campbell notified the tenants of the Property "that 114 W. 86th Street is now owned by Henry Douglas Campbell," "as owner he has appointed DRJ 175 LLC as the new management company for [the] property represented by Mr. Schreiber" and that "all future rents will be made to DRJ 175 . ..".

25.   ~~25.~~   On February 16, 2010, Raffone asked her probate counsel to re-appear in the matter. Raffone timely filed a Motion for Rehearing on Order Granting Final Judgment on Settlement Agreement and Confirming and Establishing Security Interests and Rights ("Motion for Rehearing") on February 16, 2010. Campbell provided the Court with a response to Raffone's Motion(s) for Rehearing and continued to claim he owned the Property. The Motion for Rehearing was denied by the Florida Court on February 25, 2010.

26.   ~~26.~~   Campbell also, through the use of the Florida Final Judgment, levied Raffone's personal and the Debtor's bank accounts at Chase Bank, Bank of America and Citibank.

27.   ~~27.~~   Due to Campbell's and Raffone's actions, many tenants stopped timely paying rent and the upkeep and maintenance of the Property suffered. The Debtor brought some lawsuits against defaulting tenants in landlord-tenant courts in New York. Raffone contends that

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    Campbell's intervention during that time prevented Raffone and the Debtor from enforcing the

2    leases which were then in effect and rental income was lost.

3        28.    28.    Raffone filed an appeal of the Florida Final Judgment on February 26,

4    2010, as Case Number 4D10-865 in the Fourth District Court of Appeal.  Raffone also filed a

5    motion for a stay pending appeal on March 12, 2010 ("Motion for Stay Pending Appeal").

6    Although the appeal case filing fee was paid on March 5, 2010, ultimately the appeal was not

7    prosecuted because (1) Raffone ran out of money and her lawyers were no longer willing to work

8    for a promise of future payment, and (ii) the New York Sale Litigation (described below) was

9    commenced.  The Motion for Stay Pending Appeal required the posting of a bond, which Raffone

10   either was unable or unwilling to post.  Raffone's bankruptcy counsel concedes that while the

11   filing of the bankruptcy case of Raffone operates as a stay, it does not override the requirement

12   that Raffone post a bond in the pending appeal.  The failure to post a bond eventually caused the

13   New York court to refuse to stay enforcement of the Florida Final Judgment.  Campbell contends

14   that Raffone did not pursue the appeal of the Florida Final Judgment because the Florida Probate

15   Litigation judge was so angry at Raffone that she knew she was certain to lose the appeal.

16   Raffone disputes that position.

17       The Loan from Madison:    On or about September 23, 2008, the Debtor made, executed

18   and delivered a promissory note in the form of a Mortgage Note (the "Note"), in favor of Madison

19   or Madison's successors in interest in connection with a loan in the original principal amount of

20   $8,000,000.00.  The loan made by Madison is subject to the express terms and conditions of the

21   Note, as well as those terms and conditions set forth in other related loan documents, (collectively,

22   the "Pre-Petition Loan Documents").  Under the Note, Debtor was to make monthly interest

23   payments to Madison and pay all real estate taxes and other assessments levied against the

24   Property.  The Pre-Petition Loan Documents include, among other things, a recorded security

25   interest against the Collateral (described below), among other documents.

26       In accordance with the Pre-Petition Loan Documents, the Debtor granted Madison a

27   security interest in the Property, in addition to any rents, issues, profits and proceeds thereof (the

28   "Collateral").  Madison duly perfected such security interest(s) by, promptly recording the

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    Mortgage and Security Agreement ("Mortgage") in the Official Records of the Office of the City

2    Register of the City of New York on or about October 3, 2008 as CRFN No. 2008000392051, and

3    accordingly, holds a valid and enforceable, unavoidable and perfected first priority security

4    interest in and lien on all of the Debtor's assets listed therein.  Madison also recorded a UCC-1

5    against the Collateral and recorded a separate Assignment of Leases and Rents.

6            Raffone personally guaranteed the Loan.

7            Prior to the Petition Date, a default in the payment of pre-petition real estate taxes pursuant

8    to Sections 5 and 21 of the Mortgage occurred on July 1, 2009, so on December 29, 2009,

9    Madison sent notice to the Debtor demanding a cure in the failure to pay over $209,000 of pre-

10    petition real estate taxes.  The Debtor defaulted under the loan by failing to pay the pre-petition

11    real estate taxes in July 2009, and thereafter failed to make interest payments due for the months

12    of December 2009 and January 2010.  The entry of the Probate Order was a further event of

13    default.  Accordingly, on February 23, 2010, Madison sent notice to the Debtor advising of these

14    defaults and accelerating the debt.  On or about February 10, 2010, Madison received a written

15    request from counsel to Campbell seeking a payoff figure so that it could satisfy the Mortgage and

16    prevent a foreclosure of ~~Campell's~~Campbell's interests therein.  No payoff has been received by

17    Madison.

18            Madison obtained an appraisal of the Property in February 2010 which stated a value of

19    $13.8 million.  Madison does not know the actual value of the Property but believes it will exceed

20    $13.8 million.  Madison's claim as of ~~October 21, 2010~~March 31, 2011, was approximately

21    $~~9,681,523.72~~10,566,062.99 including late fees, attorneys' fees, foreclosure costs and other

22    related expenses.  Additional amounts are continuing to accrue, including interest at the rate of

23    $5,055.34 per day.  No payments have been made to Madison in the last ~~10~~12 months because all

24    cash flow was used to maintain the Property and pay for repairs and costs of operation, excepting

25    only a small amount reserved for payment of post petition taxes.  Neither pre-petition nor post-

26    petition real estate taxes have been paid.  Madison believes that the sum of at least

27    $~~743,100~~500,000 is owed for pre-petition and post-petition real estate taxes and there is an

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  insufficient amount of cash on hand (roughly $~~5~~456,000 in the general account and $108,000 in

2  the tax account) to pay that amount.

3         The New York Sale Litigation.         In March 2010, soon after the appeal of the Florida

4  Final Judgment was filed in the Fourth District Court of Appeal, the Debtor and Raffone retained

5  the firm Beys Stein to commence litigation in the Supreme Court of the State of New York that

6  would facilitate a sale of the Property and prevent Campbell from taking it under the Florida Final

7  Judgment (the "New York Sale Litigation").  At the inception of the New York Sale Litigation,

8  Minuit was appointed to act as the property manager for the Property by the Honorable Judge

9  Peter Sherwood of the New York Supreme Court by order entered on March 25, 2010.  Judge

10  Sherwood indicated that he did not wish to have the Property or the tenants suffer while he

11  resolved the dispute over the Property between Raffone and Campbell.  Accordingly, since that

12  time on March 25, 2010, Minuit has been acting as the custodian in control of the Property,

13  collecting rents and paying expenses of operation as consented to by Madison.

14         During the New York Sale Litigation, Judge Sherwood entered orders, dated March 25,

15  2010 (granting a stay of the Final Florida Judgment and ordering the posting of a bond), April 8,

16  2010 (requiring that any sale of the Property go through him and extending the time to post a

17  bond), April 23, 2010 (further extending the time for Raffone to post a bond), and April 27, 2010

18  (vacating the stay for the failure of Raffone to post a bond).  This April 27, 2010 order ~~has~~

19  ~~been~~was deemed void by this Bankruptcy Court, Judge Samuel Bufford presiding, who later found

20  it to have violated the bankruptcy stay of 11 U.S.C. § 362(a).  This Bankruptcy Court, Judge Peter

21  Carroll, has subsequently held that the finding by Judge Samuel Bufford was non-binding dictum.

22         Immediately prior to the Petition Date, Judge Sherwood set a hearing on the proposed sale

23  of the Property.  Michael Beys of Beys Stein submitted an affidavit stating that his firm assisted

24  the Debtor in locating buyers for the Property, and that approximately five buyers in the price

25  range of $15,000,000 to $15,500,000 were located, each of whom were prepared to close cash

26  sales in a relatively short period of time.  Before Judge Sherwood could conduct an auction of the

27  Property, the Debtor's petition in bankruptcy was filed.

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    <u>The Foreclosure Litigation.</u>    Prior to the Debtor's bankruptcy, Madison commenced

2    litigation in the Supreme Court of the State of New York, County of New York, Index No.

3    103172/10, *Madison Realty Capital, L.P.. v. Nevada Star, LLC, et al.* ("Foreclosure Litigation").

4    In connection with the Foreclosure Litigation, Madison made application to appoint a receiver

5    over the Property to secure and protect the cash collateral and cause all rents, issues and profits to

6    be used to maintain the Property, and pay expenses associated therewith, including real estate

7    taxes that are accruing as a senior lien ahead of Madison.  On April 16, 2010, the Supreme Court

8    for the State of New York, County of New York, granted an order appointing Gerald Kahn of

9    Smith Buss & Jacobs as the receiver ("Receiver").  The Receiver never took possession of the

10    Property due to the filing of the bankruptcy petition and the triggering of the automatic stay.  The

11    foreclosure of the Property by Madison and the sale of the Property by Judge Sherwood were

12    stayed by the Debtor's commencement of the Debtor's case on April 26, 2010.  The Debtor never

13    filed an answer in the Foreclosure Litigation and accordingly, no sale was set.

14    On December 2, 2010, Madison moved the Bankruptcy Court for relief from stay to

15    continue litigating the Foreclosure Litigation, which motion was granted by order entered on

16    December —November 9, 2010, and became effective fourteen days later on November 23, 2010.

17    Following entry of that order, the Foreclosure Litigation was reactivated and the appointed

18    receiver, Gerald Kahn ("Kahn") took over from Minuit in managing the Property.

19    **E.    <u>Significant Events During the Bankruptcy.</u>**

20    **1.    <u>Bankruptcy Proceedings.</u>**

21    The following is a chronological list of significant events which have occurred during this

22    case:

23    **a.    Bankruptcy Case Matters:**

24    1.  On April 26, 2010 the Debtor filed its voluntary chapter 11 petition.

25    2.  On May 5, 2010, Raffone filed her voluntary chapter 11 petition.

26    3.  Three Excuse From Turnover Motions were granted by orders entered on July 13, 2010

27       [Docket No. 63], September 30, 2010 [Docket No. 139] and October 8, 2010 [Docket

28       No. 144]..

4.   On October 14, 2010, the Bankruptcy Court entered orders consolidating the cases of the Debtor and Raffone administratively [Docket Nos. 29 and 146].

5.   On November 9, 2010, the Bankruptcy Court entered an order granting Campbell relief from stay to pursue a final judgment in the Florida litigation matters [Docket No. 176].

6.   On November 9, 2010, the Bankruptcy Court entered an order granting Campbell the right to take the 2004 examination of Raffone [Docket No. 177].

7.   On December —3, 2010, the Bankruptcy Court entered an order granting Madison relief from stay to pursue the Foreclosure Litigation [Docket No. ——190].

8.   On December __, 2010_____ 2011, the Bankruptcy Court entered an order finding that this Disclosure Statement contained sufficient information to permit Madison to seek votes in favor of the Plan.

**b.    Other Legal Proceedings.**

Other than the foregoing bankruptcy court matters and bankruptcy court adversary proceedings, the Debtor is involved in various legal proceedings relating to the tenant's obligations to pay rent in a timely fashion.  Some of those actions may lead to evictions of non paying tenants and judgments for back due rent.

**2.    Actual and Projected Recovery of Preferential or Fraudulent Transfers.**

The Debtor's plandebtors' Plan contemplates only partial payment in full of all allowed claims.  Consequently, Madison and the Committee believes no, some creditors and interested parties believe that some benefit can be derived from the pursuit of preferential transfer actions. On the other hand, pursuingPursuing such actions will certainly increase the administrative expenses of the estate.  Alternatively, waiving all rights to pursue avoidance power actions in exchange for discounted claim allowance could be equally beneficial to the estate, particularly since litigation can involve delay and significant cost.  Thus, preference and fraudulent transfer actions are not contemplated at this time, but will be available with respect to potential defendant creditors in Classes 4-7, and can be brought by the Administrator, the Committee and any interested party (excepting the Debtor) who wishes to bring them prior to the consummation of the

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  Plan.  This Bankruptcy Court, Judge Samuel Bufford, also entered an order on July 12, 2010

2  [Docket No. 6] that barred the filing of any avoidance power actions after October 1, 2010, and

3  none were filed by that date.  There is a dispute as to whether that order only applies to the Debtor

4  or whether all parties are bound by such order.  Creditors in Classes 5-7 and certain interested

5  parties contend that they were never served with a notice of the bar date or of the possible entry of

6  such an order.  The Plan proposes to amend that order by re-opening the time frame in which

7  avoidance power actions may be filed against holders of claims in Classes 4-7 for the benefit of

8  creditors or the estate.  Nothing in this paragraph shall prevent the Administrator, the Committee,

9  creditors or interested parties, excepting the Debtor, from pursuing preferential or fraudulent

10  transfer actions, except that all such rights, if any exist, against Madison are waived.

11  **3.    Procedures Implemented to Resolve Financial Problems.**

12  To attempt to fix the problems that led to the bankruptcy filing, Madison has proposed the

13  following procedures:  The Administrator for the post confirmation estate will have the option, but

14  not the obligation, to retain a real estate broker to market and sell the Property for an amount

15  sufficient to pay allcompromised allowed claims against the Debtor in full within approximately 6

16  months of the Effective Date.  The Plan further contemplates that the Administrator shall take such

17  steps as he deems appropriate or necessary to liquidate assets of the Raffone estate to pay allowed

18  claims against Raffone within approximately 3 years of the Effective Date.

19  **4.    Current and Historical Financial Conditions.**

20  The Debtor's most recent historical pre-petition complete financial statement has not been

21  located and is not disclosed.

22  The Debtor's bankruptcy schedules A and BCourt filings do not clearly disclose all of the

23  Debtor's assets as of the petition date and so a list of known assets is included within Exhibit "A"

24  to the Plan.  Raffone's bankruptcy schedules A and B  are allegedly believed to not disclose all of

25  Raffone's assets as of the petition date and a more complete list, although possibly not complete,

26  is included within Exhibit "B" to the Plan.  The Debtor's MORs and Raffone's MORs are

27  available upon written  request to the Proponent's counsel.

28

## III.    SUMMARY OF THE PLAN OF REORGANIZATION

### A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan.

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

### B.    Unclassified Claims.

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class.

#### 1.    Administrative Expenses.

Administrative expenses are claims for costs or expenses of administering the Debtor's and Raffone's Chapter 11 case which are allowed under Code Section 507(a)(1).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.  This Plan provides that ~~two~~three administrative creditors consent to partially deferred payment of their claims ~~and,~~ to waive payment of their claims in their entirety on the Effective Date and to accept a 7% discount on their final allowed claim.

The following chart lists all of the known § 507(a)(1) administrative claims in both the Nevada Star and Raffone estates and their treatment under the Plan:

| Name | Amount Owed (exclusive of retainer deposits) | Treatment |
|---|---|---|
| Law Offices of Michael Berger (Nevada Star fees and expenses) | $~~TBC~~120,000 (est.) (accrued to date at $80,779.86) | Total payment = 93% of allowed amount. Paid from retainer, and remaining portion shall be paid half from cash collateral (if sufficient funds are available) and balance from the proceeds of escrow of the Property |
| Law Offices of Michael Berger (Raffone fees and expenses) | $~~TBC~~50,000 (est.) (accrued to date at $30,167.06) | Total payment = 93% of allowed amount. Paid from the proceeds of sale of property of the Raffone estate |
| Lewis R. Landau (Counsel in Nevada Star case for the Official Unsecured Creditors' Committee ("Committee")) | $~~TBC~~45,000 (est.) (accrued to date at $21,400) | Total payment = 93% of allowed amount. Paid half from cash collateral (if sufficient funds are available) and balance from the proceeds of escrow of the Property |
| Clerk's Office Fees (Nevada Star) | TBD (nominal) | Paid in Full on Effective Date from cash collateral in possession of ~~Minuit Partners~~ |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| Name | Amount Owed (exclusive of retainer deposits) | Treatment |
|---|---|---|
| | | ~~Property~~the Court ordered receiver Gerald Kahn, of Smith Buss & Jacobs LLP ("Kahn") or his managing agent, New York City Management LLC ("~~Minuit~~")NYC Management") |
| Clerk's Office Fees (Raffone) | TBD (nominal) | Paid in Full on Effective Date from cash contributed by Madison |
| Office of the U.S. Trustee Fees (Nevada Star) | Current | Paid in Full on Effective Date from cash collateral in possession of ~~Minuit~~NYC Management |
| Office of the U.S. Trustee Fees (Raffone) | Current | Paid in Full on Effective Date from cash contributed by Madison |
| Internal Revenue Service ("IRS") capital gains tax | Potentially as high as $3.53MM | Paid in Full on completion of tax return and tender of two thirds of the Tax Fund (defined below) |
| New York State Department of Taxation and Finance capital gains tax | Potentially as high as $1.73MM | Paid in Full on completion of tax return and tender of one third of the Tax Fund |
| | TOTAL $TBD | |

To the extent that the Law Offices of Michael Berger (the "Berger Firm") received a retainer for its work in the Nevada Star case from the cash collateral of Madison without its consent, Madison will not pursue recovery of such cash collateral if the Plan is confirmed. Madison believes $25,000 of its cash collateral was paid to the Berger Firm on account of the Nevada Star case. The Berger Firm contends that its retainer in the Debtor's case was paid from the proceeds of the loan obtained from Links Capital Partners, LLC, et al.; Defined Benefit Pension Plan Trust ("Links Capital").

To the extent that the Berger Firm received a retainer for its work in the Raffone case from the cash collateral of Madison without its consent ~~and~~, Madison will not pursue recovery of such ~~funds were in fact~~ cash collateral ~~arising out of the Debtor's Property, the Law Offices of Michael Berger will remit such retainer to the Plan Administrator for payment of~~if the ~~Debtor's creditors and the law firm will be paid from the proceeds of the liquidation of the assets of Raffone~~Plan is confirmed. Madison believes $20,000 of its cash collateral was paid to the Berger Firm on account of the Raffone case. The Berger Firm contends that its retainer in the Raffone case was paid from the proceeds of the loan obtained from Links Capital.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    Court Approval of Fees Required:

2    The Court must approve all professional fees listed in this chart.  For all fees except

3    Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a

4    properly noticed fee application and the Court must rule on the application.  Only the amount of

5    fees allowed by the Court will be required to be paid under this Plan.  To the extent any fees are

6    paid prior to Plan confirmation, they will not be paid twice.  All pre-confirmation payments will

7    be taken into account before the final payment is determined.

8    The Plan provides for the appointment of the Administrator.  Fees and expenses arising out

9    of the Nevada Star case and owed to the Berger Firm and Lewis R. Landau will be paid (after

10   application of any retainer that is not disgorged) up to a maximum of half of their allowed amount

11   from the cash collateral on hand within a reasonable period of time following the Effective Date

12   (allowing for sufficient time to permit the Administrator to issue checks), and the balance direct

13   out of escrow at the time the Property is sold.  The total paid shall not exceed 93% of the amounts

14   approved by the Court.  Such payments are contingent upon their final fee applications having

15   been heard, the final amount allowed, and ordered paid from available funds and no stay pending

16   appeal is obtained as of that date.  If there are insufficient funds on hand from the cash collateral

17   of Madison to pay one half of the allowed amounts of both professionals' claims, then the

18   Administrator shall determine a reasonable amount to be paid from such funds that will not impair

19   the operations of the Property, and shall pay the remaining balance from the escrow closing at the

20   sale of the Property with interest to accrue on such unpaid amount at the rate of 5% simple interest

21   per annum.  The Administrator shall be permitted to withhold any payment to administrative

22   creditors until allowed by final Court order or until the Property has sold, if he determines in the

23   exercise of his discretion that such delay is warranted by the facts of the cases.

24   Madison authorizes the use of its cash collateral in an amount required to pay the Nevada

25   Star Clerk's Office Fees and the Office of the U.S. Trustee's Fees on the Effective Date.  If

26   insufficient funds from operations are present to pay such amounts on the Effective Date, then

27   Madison will make an advance under its loan documents to the reorganized Nevada Star Debtor's

28   ("Reorganized Debtor") estate and add any payment to its allowed Class 2 claim.

1    Madison shall make a gift to the Raffone estate in an amount required to pay the Raffone

2    estate's Clerk's Office Fees and the Office of the U.S. Trustee's Fees on the Effective Date.

3    Madison will not add any portion of the gift to its allowed Class 2 claim.  Madison will not assert

4    the amount of the gift as a general unsecured claim in the Raffone estate.

5              **2.    Priority Tax Claims.**

6         Priority tax claims are certain unsecured income, employment and other taxes described by

7    Code Section 507(a)(8).  The Code requires that each holder of such a § 507(a)(8) priority tax

8    claim receive ~~the present value~~ on account of such claim ~~in deferred cash~~ regular installment

9    payments,~~ over a period not exceeding six years form the~~ in cash of a total value as of the effective

10   date of the ~~assessment~~Plan equal to the allowed amount of such ~~tax.~~

11   ~~The following chart lists all of~~ claim over a period ending not later than five (5) years after

12   the ~~Debtor's~~date of the order for relief, and that such payment be achieved to cause the payment to

13   be in a manner not less favorable than the most favored non-priority unsecured claim provided for

14   by the Plan.

15        The Debtor is not known to have any Section 507(a)(8) priority tax claims to the IRS or to

16   the  New York State Dept of Taxation and Finance.

17        The following chart lists all of Raffone's Section 507(a)(8) priority tax claims, and their

18   treatment under this Plan.

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| DESCRIPTION | AMOUNT OWED | TREATMENT |
|---|---|---|
| • Name= IRS[4] and New York State Dept of Taxation and Finance<br><br>• Type of Tax = ~~capital gains tax~~FICA and income taxes from 2006 through 2009 with interest accrued<br><br>• Date tax assessed =2011 | ~~Approximately $2,000,000~~$53,350.99 (as amended on November 16, 2010)<br><br>Plus<br><br>$81,602.88 (as filed on January 6, 2011 for income taxes) | • Pymt interval =one time<br>• Pymt amt/interval = full amount of claim<br>• Begin date = ~~close of escrow, or~~as soon as Administrator can determine the amount owed, ~~whichever is earlier~~ and after funds are available for the payment of such claim<br>• End date = N/A<br>• Interest Rate ~~% = statutory~~= applicable non-bankruptcy rate<br>• Total Payout Amount 100 % |
| ~~• Name= New York State~~<br><br>~~• Type of Tax = capital gains tax~~<br><br>~~• Date tax assessed =2011~~ | ~~Approximately $897,000~~ | ~~• Pymt interval =one time~~<br>~~• Pymt amt/interval = full amount of claim~~<br>~~• Begin date = close of escrow, or as soon as Administrator can determine the amount owed, whichever is earlier~~<br>~~• End date = N/A~~<br>~~• Interest Rate % = statutory~~<br>~~• Total Payout Amount 100 %~~ |
| ~~• Name= New York State Tax Department and New York State Dept. of Labor~~<br><br>~~• Type of Tax = employment taxes on wages and salaries~~<br><br>~~• Date tax assessed =quarterly 2010 and 2011~~ | ~~Approximately $4,000~~<br><br>~~Each quarter, the property manager pays all employment related taxes for the two employees of the property, which payments will continue in the ordinary course.~~ | ~~• Pymt interval =quarterly~~<br>~~• Pymt amt/interval = $/quarterly~~<br>~~• Begin date = N/A~~<br>~~• End date = N/A~~<br>~~• Interest Rate % = statutory (believed 0.00)~~<br>~~• Total Payout Amount 100%~~ |

~~The following chart lists all of Raffone's Section 507(a)(8) priority tax claims and their treatment under this Plan.~~

---

[4]    Under this Plan, the Debtor shall not have the right to contest penalties assessed by the IRS because such claim are consensually treated in Class 14 which receives no distribution.

| DESCRIPTION | AMOUNT OWED | TREATMENT |
|---|---|---|
| • Name= IRS<br><br>• Type of Tax = FICA and income taxes from 2006 through 2009 with interest accrued<br><br>• Date tax assessed =2011 | $48,450.99 | • Pymt interval =one time<br>• Pymt amt/interval = full amount of claim<br>• Begin date = close of escrow, or as soon as Administrator can determine the amount owed, whichever is earlier<br>• End date = N/A<br>• Interest Rate % = statutory<br>• Total Payout Amount 100 % |

The penalty portion of the IRS priority claim shall be subordinated to the payment of the rest of the unsecured class. The asserted IRS penalty from the date of petition on unsecured priority claims (including interest thereon) that will be subordinated is $19,214.49, plus any additional accruing penalty amounts.

The penalty portion of the IRS priority claim shall be subordinated to the payment of the rest of the unsecured class. The asserted IRS penalty from the date of petition on unsecured priority claims (including interest thereon) that will be subordinated is $19,214.49, plus any additional accruing penalty amounts. There is no known penalty portion of the claim of the New York State Department of Taxation and Finance.

Under this Plan, the Administrator must pay each Section 507(a)(8) priority tax claim in full. The Administrator may pay such claims from the proceeds of the Property, if sold prior to the sale of the Beverly Hills house or the Florida house. However, if the proceeds of the Property are used to pay the Section 507(a)(8) priority tax claims, then upon sale of one or more asset in the Raffone estate, the Administrator shall cause the Raffone estate to refund the amount of the Section 507(a)(8) priority tax claims back to the Nevada Star estate. Under no circumstances shall the creditors of the Nevada Star estate bear the ultimate cost of the payment of the Section 507(a)(8) priority tax claims of the Raffone estate, although the cash of the Nevada Star estate may be used to satisfy such claims temporarily, as long as such cash is later reimbursed to the Nevada Star estate.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**C.    Classified Claims and Interests.**

    **1.    Classes of Secured Claims.**

Secured claims are claims secured by liens on property of the estate.  The following charts list (a)~~)~~ classes 1-4~~7~~ containing Debtor's secured pre-petition claims and their treatment under this Plan, and (b)~~Class 5)~~ Classes 8-9 containing Raffone's secured pre-petition claims and their treatment under this Plan.  ~~Class 5 is~~Classes 8-9 are not secured against the Property.  Classes 1-4~~7~~ are not secured by Raffone's California or Florida homes.  Classes 4-7 may not be treated as secured at the time of final distribution, depending upon the potential for prosecution of avoidance power actions.  A significant portion, and potentially all, of claims in Classes 4-7 are believed to be undersecured or wholly unsecured.  Notably, the Debtor may have lost the right to pursue avoidance power actions against any creditor in such Classes 4-7 whose liens were all recorded in the 90 days immediately prior to the filing of the Debtor's voluntary petition.  It is not clear that the Administrator, creditors or parties in interest were stripped of such rights.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1A | Secured claim of senior secured real estate taxes | No | Yes Claim paid in full at the close of escrow. | • Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |
| | • Name= New York City Department of Finance | | | • Pymt amt/interval = Allowed amount of claim/one payment. |
| | • Collateral description = Debtor's ~~real property~~Property. | | | • Balloon pymt = ~~Yes, one.~~No. |
| | • Collateral value = $~~16MM~~18MM | | | • Begin date = Close of escrow, subject to potential holdback for determination of appeal |
| | • Priority of security int. = first | | | • End date = ~~Close~~Final determination of ~~escrow.~~allowed amount of claim. |
| | • Principal owed = approx $~~999,354.32~~1,026151.42 (includes known interest and penalties through 1.~~13~~.11)[5] | | | • Interest rate % = statutory<br>• Penalties will not be paid as a Class 1 claim but will be paid as a Class ~~10~~13 claim |

---

[5]    Campbell believes this claim will only be allowed in a maximum amount of $459,070 because a proof of claim was filed by this claimant in that amount.  Madison however believes that a higher amount is warranted for purposes of disclosure as (i) the filed claim only applies to the second half of 2009 and the

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | • Pre-pet. Arrearage amount = $unknown. | | | • Total payout = 100% of allowed amount of claim excluding penalties<br>• . |
| | • Post-pet. Arrearage amount = $unknown. | | | • Treatment of Lien = Lien terminated and extinguished upon close of escrow, transferred to proceeds until final determination of claim. |
| | • Total claim amount = approx $1,026151.42 (includes known interest and penalties through 1.3.11) | | | Only allowed amount of claim, after appeal, and without penalties or interest on penalties, will be paid in class 1A |

Under this Plan, the payment to creditors in Class 1A shall be subject to an appeal hearing on the amount of the tax claimed by the New York City Department of Finance.  Madison believes that tax obligation will be reduced from $1,026151.42 to approximately $500,000.  The Administrator shall be responsible for bringing on that appeal and resolving it, providing for the sale of the Property to occur under this Plan, with a release of the tax lien upon closing of escrow, and the lien to remain against the proceeds of the sale until paid.  The Administrator shall be entitled to pay other creditors from proceeds of the sale if a sufficient amount is reserved for the payment of any tax to Class 1A, as may be finally determined.  The Administrator is encouraged, but not required, to determine the amount of any holdback on the Class 1A claim by consent, but if needed, may seek the ruling of the Court on an appropriate holdback amount so that claims to subordinate creditors may be paid.  Under this Plan, the Administrator is encouraged to cause Class 2 to be paid as soon as reasonably practical to preserve as much of the value of the proceeds for the benefit of other interest holders herein.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1B | Secured claim of senior | No | Yes | • Pymt interval = Single; see |

first half of 2010, and additional amounts have accrued since that time, (ii) the creditor's website states this higher amount, and (iii) efforts are underway by Madison to reduce the amount of the claim.  Accordingly, the ultimate amount remains uncertain.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | secured real estate taxes | | Claim paid in full at the close of escrow. | means for effectuating the plan at section III(D) hereof. |
| | • Name= State of California, County of Los Angeles | | | • Pymt amt/interval = Allowed amount of claim/one payment. |
| | • Collateral description = Raffone's Beverly Hills house. | | | • Balloon pymt = No. |
| | • Collateral value = $1,175,000 | | | • Begin date = Close of escrow |
| | • Priority of security int. = first on California house | | | • End date = Close of escrow. |
| | • Principal owed = unknown | | | • Interest rate % = statutory<br>• Penalties will not be paid as a Class 1 claim but will be paid as a Class 14 claim |
| | • Pre-pet. Arrearage amount = $unknown. | | | • Total payout = 100% of allowed amount of claim excluding penalties |
| | • Post-pet. Arrearage amount = $unknown. | | | • Treatment of Lien = Lien terminated and extinguished upon payment. |
| | • Total claim amount = approx $999,354.32 (includes known interest and penalties through 1.1.11)unknown | | | |

Class 1B shall be paid from the proceeds of escrow of the Beverly Hills property upon submission of a payoff demand statement.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1C | Secured claim of senior secured real estate taxes | No | Yes<br>Claim paid in full at the close of escrow. | • Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |
| | • Name= Florida Loxahatchee County | | | • Pymt amt/interval = Allowed amount of claim/one payment. |
| | • Collateral description = Debtor's Florida house. | | | • Balloon pymt = No. |
| | • Collateral value = $600,000 | | | • Begin date = Close of escrow |
| | • Priority of security int. = first on Florida house | | | • End date = Close of escrow. |

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | • Principal owed = $7,737.52 as of March 31, 2011 | | | • Interest rate % = statutory<br>• Penalties will not be paid as a Class 1 claim but will be paid as a Class 14 claim |
| | • Pre-pet. Arrearage amount = $unknown. | | | • Total payout = 100% of allowed amount of claim excluding penalties |
| | • Post-pet. Arrearage amount = $unknown. | | | • Treatment of Lien = Lien terminated and extinguished upon payment. |
| | • Total claim amount =unknown | | | |

Class 1C shall be paid from the proceeds of escrow of the Florida property upon submission of a payoff demand statement.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 2 | Secured claim of senior secured lender holding voluntary lien | No | Yes<br>Claim paid in full at the close of escrow. | • Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |
| | • Name= Madison Realty Capital, L.P. | | | • Pymt amt/interval = Allowed amount of claim/one payment, less $30,000 settlement payment to Raffone. |
| | • Collateral description = Debtor's ~~real property~~Property. | | | • Balloon pymt = ~~Yes, one.~~No. |
| | • Collateral value = $~~16MM~~18MM | | | • Begin date = Close of escrow |
| | • Priority of security int. = second (recorded 9.23.08) | | | • End date = Close of escrow. |
| | • Principal owed = $7,583,012.02 | | | • Interest rate % = contract rate of 24% |
| | • Pre-pet. Arrearage amount = $1,039,943.10. | | | • Total payout = 100% of allowed amount of claim, less $30,000. |
| | • Post-pet. Arrearage amount = $1,~~058,568.60~~943,107.88 as of ~~October 21, 2010.~~March 31, 2011. | | | • Treatment of Lien = Lien terminated and extinguished upon payment. |
| | • Total claim amount = $~~9,681,523.72~~10,566,062.99 as of ~~October 21, 2010~~March 31, 2011, plus amounts accrued after that date | | | If paid on March 31, 2011, estimated claim payment amount, would be $10,536,062, plus any |

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|----------------|-----------|
|        |             |                |                | amounts funded to Class 11 and elsewhere under this Plan. |

Madison shall be paid its contractually owed amount from the close of escrow upon submission of a payoff demand to the title company selected by the Administrator.  Madison shall provide in its payoff demand a full statement of the amounts owed under its contract, less a flat $30,000 paid to Raffone on account of the settlement of her occupation, possession and use of the Property.  The Administrator shall have no right to contest the payment or amount of the Madison payoff demand, unless such demand is not in accordance with its prepetition contract rights or fails to deduct the $30,000.

The Administrator is encouraged, but not required, to cause the payment of the Class 2 claim in the most expeditious manner possible.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|----------------|-----------|
| 3 | Secured claim of mechanic's lien holder | No | Yes Claim93% of allowed claim is paid in full on close of escrow | • Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |
|   | • Name= Ponichtera Contracting[6] |  |  | • Pymt amt/interval = AllowedFixed allowed amount of claim/one payment at 93%. |
|   | • Collateral description = Debtor's real propertyProperty. |  |  | • Balloon pymt = Yes, one.No. |
|   | • Collateral value = |  |  | • Begin date = Close of escrow. |

[6]    Raffone disputes the claim of Ponichtera Contracting on the grounds that Ponichtera never filed a proof of claim, and that Ponichtera may have been paid in full for unfinished services with respect to the kitchen and the bathroom in Unit 17A.  Madison believes the claim must be addressed in the Plan as the failure to file a proof of claim does not cause Ponichtera to lose its *in rem* rights, only its *in personam* rights.  Nothing in the order entered on July 12, 2010 at Docket No. 6, precludes the Administrator from determining and paying the *in rem* amount of this claim post confirmation and the Administrator shall have the authority, in a court of applicable jurisdiction, to determine the actual amount prior to any payment.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | $~~16MM~~18MM | | | or as soon thereafter as actual claim amount can be determined. |
| | • Priority of security int. = third (recorded 2.11.09) | | | • End date = Close of escrow, or as soon thereafter as actual claim amount can be determined. |
| | • Principal owed = $21,000 | | | • Interest rate % = ~~statutory~~none |
| | • Pre-pet. Arrearage amount = $12,017.29. | | | • Total payout = ~~100~~93% of allowed amount of claim with credit for all payments previously made. |
| | • Post-pet. Arrearage amount = as accrued by law. | | | • Treatment of Lien = Lien terminated and extinguished upon payment. |
| | • Total allowed claim amount = $32,017.29 ~~plus~~waiving all amounts accrued by operation of law, if any, paid at 93% | | | Flat payment is $29,775.81 if no credits to amount owed.  Payment will be less if any portion of claim previously paid by Debtor, Raffone or any custodian or receiver and less any amount which was not actually incurred by Ponichtera. |

**Statement regarding Classes 4 Through 7**

Each of the claims in Classes 4 through 7 allegedly were recorded as liens against the Property during the 90-day window immediately prior to the commencement of the Debtor's bankruptcy case.  Certain creditors have contended that the recording of UCC-1 statements was not sufficient to attach a lien to real property, or that other New York law was not followed sufficiently to create a lien.  In addition, each creditor in Classes 4 through 7 is potentially subject to avoidance powers by the Administrator, Committee, creditor or interested party which could invalidate the lien or determine that the claim amount or the security were preferential or fraudulent transfers without reasonably equivalent value.  The following treatment for each claim in Classes 4 through 7 may not be the actual result in that all four (4) claims are exposed to the risk of a successful avoidance action.  Additionally, the Class 4 claim as to its dollar amount has not yet been allowed by final order, unlike the claims in Classes 5-7, which have been allowed as

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  to dollar amount, although not as to lien priority.  Litigation concerning the Class 4 claim has

2  persisted for many years and does not appear likely to resolve soon.  Litigation regarding the

3  secured nature of the claims in Classes 4-7 is further likely.  For these reasons, the claim in Class 4

4  is listed as discounted from what Campbell believes he might one day win from a Florida court (at

5  $3.5 million to $4.0 million range), to the amount closer to what his litigation award stated ($2.25

6  million plus interest and post settlement attorneys' fees).  The actual treatment of all claims in

7  Classes 4-7 will be finally determined by the outcome of any litigation that may be brought, and

8  only in the event litigation is not filed, will be treated as set forth in this Plan.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | Secured claim of involuntary judgment lien holder | No | Yes ~~Claim~~Flat allowed amount of claim is paid in full on close of escrow, if allowed | • Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |
| | • Name= Henry Douglas Campbell ("Campbell") | | | • Pymt amt/interval = ~~$2.5 million/one payment.~~ One on close of escrow or as soon thereafter the setoff is determined, flat amount of $2,160,229.11. |
| | • Collateral description = Debtor's ~~real property.~~ Property, plus second priority on Raffone's Florida house, and disputed ownership or lien interest on membership interests of Debtor | | | • Balloon pymt = ~~Yes, one.~~No. Note:  Claim is subject to contest in pending litigation.  No payment will be made unless Campbell votes in favor of the Plan, litigation is dismissed with prejudice and order is entered confirming this Plan.  Flat payment on claim also may be subject to setoff on account of tenant deposits, if any, were received by Campbell. |
| | • Collateral value = $~~16MM~~18MM | | | • Begin date = ~~Close~~Completion of ~~escrow.~~determination of setoff amounts and preference recovery action, if any.. |
| | • Priority of security int. = fourth (recorded 2.6.10) as to Debtor's Property | | | • End date = ~~Close~~Completion of ~~escrow.~~determination of setoff amounts, and preference recovery action, if any. |
| | • Principal owed = $2.~~5MM~~25MM to $4.0MM | | | • Interest rate % = ~~N/A~~none |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | • Pre-pet. Arrearage amount = ~~No amount will be paid beyond principal of $2.5 million.~~unknown. | | | • Total payout = ~~100%~~$2,160, 229.11 less amounts received of ~~principal amount of claim.~~tenant deposits. |
| | • Post-pet. Arrearage amount = ~~No amount will be paid beyond principal of $2.5 million.~~Unknown. | | | • Treatment of Lien = Lien terminated and extinguished upon ~~payment.~~close of escrow, with lien to transfer to proceeds until paid by Administrator, after determination of setoffs. |
| | • Total claim amount = ~~$2,500,000~~estimated $4 million | | | • ~~Campbell's unsecured portion of his claim, if any, is waived in full.~~Actual payment will be flat amount of $2,160, 229.11 less amounts received of tenant deposits. |

Campbell believes that, if litigated, his claim will be allowed by Court order at no less than $2.5 million and likely closer to $3.5 million and possibly as high as $4 million. He also asserts a right to interest at the Florida judgment rate from February 6, 2010 until paid. Campbell asserts he has other collateral that includes Raffone's membership interest in the Debtor. He claims he filed a UCC-1 in Florida on January 21, 2010, despite that such date is prior to the February 6, 2010 judgment date. He also claims liens on Raffone's Florida real estate. A certified copy of Final Judgment was allegedly recorded in Loxahatchee County in January 2010, which date is prior to the February 6, 2010 judgment date. Campbell's actual rights are unclear and subject to litigation.

Accordingly, if the Plan is confirmed, then upon close of escrow, and transfer of lien to proceeds for payment of the flat amount proposed herein on account of his allowed claim, Campbell would be required to release all of his liens on all collateral. Under this Plan, Campbell trades the uncertainty of litigation and the opportunity to get cash in a certain amount exceeding $2 million, against the possibility that the case may be converted to chapter 7 or alternatively, the Property cannot be sold for an amount sufficient to pay administrative claims, leaving the estate administratively insolvent and incapable of confirming any plan, and losing the Property to foreclosure by Madison. Class 4 claims will be paid after the Administrator has paid or reserved for all senior claims in priority. Nothing herein shall prevent the Administrator, the Committee, or

1  any creditor or interested party, other than the Debtor, commencing an avoidance power lawsuit

2  against Campbell.

3      Several creditors, particularly those in Classes 5-7, believe that Campbell is an unsecured

4  creditor holding a general unsecured claim and that this Class 4 should be eliminated and paid in

5  conjunction with the Class 12 claims.  The Plan addresses that possibility by providing that the

6  Administrator has the power to bring avoidance actions against any of the holders of Class 4-7

7  claims in light of their recording of their liens within the 90-day window prior to bankruptcy.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 5 | ~~Secured claim of voluntary lender against Raffone's personal residence~~ | No | ~~Yes~~ ~~Claim is either assumed or paid in full on close of escrow~~ | • ~~Pymt interval = Single; see means for effectuating the plan at section III(D) hereof.~~ |
| 5 | Secured claim of senior secured lender holding voluntary lien | No | Yes 93% of allowed claim is paid in full on close of escrow, or as soon thereafter as possible | • Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |
|  | • Name= Christiansen & Jacknin |  |  | • Pymt amt/interval = Fixed allowed amount of claim/one payment at 93%. |
|  | • Collateral description = Debtor's Property. |  |  | • Balloon pymt = No. |
|  | • Collateral value = $18MM |  |  | • Begin date = Close of escrow, or as soon thereafter as possible following payment of senior claims. |
|  | • Priority of security int. = fifth (recorded 3.16.10) |  |  | • End date = Close of escrow, or as soon thereafter as possible following payment of senior claims. |
|  | • Principal owed = $54,281.66 |  |  | • Interest rate % = none |
|  | • Pre-pet. Arrearage amount = $unknown |  |  | • Total payout = 93% of allowed amount of claim with credit for all payments previously made. |
|  | • Post-pet. Arrearage amount = $unknown. |  |  | • Treatment of Lien = Lien terminated and extinguished upon payment. |
|  | • Total claim amount = $54,281.66 as of Petition Date, with waiver of all amounts accrued after that date |  |  | Flat payment is $50,481.94. |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Class 5 under this Plan will accrue no interest or other fees or charges of any kind on the $54,281.66 allowed claim amount and will receive a flat payment of $50,481.94, reflecting a 7% discount.  Accordingly, upon close of escrow, and transfer of lien to proceeds for payment of the flat amount proposed herein on account of its allowed claim, Christiansen & Jacknin would be required to release all of its liens on all collateral.  Class 5 claims will be paid after the Administrator has paid or reserved for all senior claims in priority.  Nothing herein shall prevent the Administrator, the Committee, or any creditor or interested party, other than the Debtor, commencing an avoidance power lawsuit against Class 5 creditors.

Several creditors believe that Class 5 is an unsecured creditor holding a general unsecured claim and that this Class 5 should be eliminated and paid in conjunction with the Class 12 claims.  The Plan addresses that possibility by providing that the Administrator, among others, but not the Debtor, has the power to bring avoidance actions against any of the holders of Class 5 claims in light of their recording of their liens within the 90-day window prior to bankruptcy.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 6 | Secured claim of senior secured lender holding voluntary lien | No | Yes 93% of allowed claim is paid in full on close of escrow, or as soon thereafter as possible | • Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |
| | • Name= Casey Ciklin Lubitz Martens O'Connell | | | • Pymt amt/interval = Fixed allowed amount of claim/one payment at 93%. |
| | • Collateral description = Debtor's real property. | | | • Balloon pymt = No. |
| | • Collateral value = $18MM | | | • Begin date = Close of escrow, or as soon thereafter as possible following payment of senior claims. |
| | • Priority of security int. = sixth (recorded 3.18.10) | | | • End date = Close of escrow, or as soon thereafter as possible following payment of senior claims. |
| | • Principal owed = $331,668.73 | | | • Interest rate % = none |
| | • Pre-pet. Arrearage amount = unknown | | | • Total payout = 93% of allowed amount of claim with credit for all payments previously made. |
| | • Post-pet. Arrearage amount = unknown. | | | • Treatment of Lien = Lien terminated and extinguished upon payment. |
| | • Total claim amount = | | | Flat payment is $308,451.91. |

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|----------------|-----------|
|  | $331,668.73 as of Petition Date, with waiver of amounts accrued after that date |  |  |  |

Class 6 under this Plan will accrue no interest or other fees or charges of any kind on the $331,668.73 allowed claim amount and will receive a flat payment of $308,451.91, reflecting a 7% discount.  Accordingly, upon close of escrow, and transfer of lien to proceeds for payment of the flat amount proposed herein on account of its allowed claim, Casey Ciklin Lubitz Martens O'Connell would be required to release all of its liens on all collateral.  Class 6 claims will be paid after the Administrator has paid or reserved for all senior claims in priority.

Nothing herein shall prevent the Administrator, the Committee, or any creditor or interested party, other than the Debtor, commencing an avoidance power lawsuit against Class 6 creditors.

Several creditors believe that Class 6 is an unsecured creditor holding a general unsecured claim and that this Class 6 should be eliminated and paid in conjunction with the Class 12 claims.  The Plan addresses that possibility by providing that the Administrator, among others, but not the Debtor, has the power to bring avoidance actions against any of the holders of Class 6 claims in light of their recording of their liens within the 90-day window prior to bankruptcy.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|----------------|-----------|
| 7 | Secured claim of senior secured lender holding voluntary lien | No | Yes 93% of allowed claim is paid in full on close of escrow, or as soon thereafter as possible | • Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |
|  | • Name= Beys Stein & Mobargha LLP |  |  | • Pymt amt/interval = Fixed allowed amount of claim/one payment at 93%. |
|  | • Collateral description = Debtor's Property. |  |  | • Balloon pymt = No. |
|  | • Collateral value = $18MM |  |  | • Begin date = Close of escrow, or as soon thereafter as possible following payment of senior claims. |
|  | • Priority of security int. = |  |  | • End date = Close of escrow, or |

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | seventh (recorded 5.4.10) | | | as soon thereafter as possible following payment of senior claims. |
| | • Principal owed = $230,421.88 | | | • Interest rate % = none |
| | • Pre-pet. Arrearage amount = unknown | | | • Total payout = 93% of allowed amount of claim with credit for all payments previously made. |
| | • Post-pet. Arrearage amount = unknown. | | | • Treatment of Lien = Lien terminated and extinguished upon payment. |
| | • Total claim amount = $230,421.88 as of Petition Date, with waiver of all amounts accrued after that date | | | Flat payment is $214,292.34. |

Class 7 under this Plan will accrue no interest or other fees or charges of any kind on the $230,421.88 allowed claim amount and will receive a flat payment of $214,292.34, reflecting a 7% discount.  Accordingly, upon close of escrow, and transfer of lien to proceeds for payment of the flat amount proposed herein on account of its allowed claim, Beys Stein & Mobargha LLP would be required to release all of its liens on all collateral.  Class 7 claims will be paid after the Administrator has paid or reserved for all senior claims in priority.  Nothing herein shall prevent the Administrator, the Committee, or any creditor or interested party, other than the Debtor, commencing an avoidance power lawsuit against Class 7 creditors.

Several creditors believe that Class 7 is an unsecured creditor holding a general unsecured claim and that this Class 7 should be eliminated and paid in conjunction with the Class 12 claims. The Plan addresses that possibility by providing that the Administrator, among others, but not the Debtor, has the power to bring avoidance actions against any of the holders of Class 7 claims in light of their recording of their liens within the 90-day window prior to bankruptcy.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 8 | Secured claim of voluntary lender against Raffone's personal residence in California | No | Yes<br>Claim is either assumed or paid in full on close of escrow | • Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | • Name= Links Capital Partners, LLC, et al.; Defined Benefit Pension Plan Trust | | | • Pymt amt/interval = $allowed amount/one payment or assumed |
| | • Collateral description = Debtor's real property in Beverly Hills. | | | • Balloon pymt = ~~Possible.~~ No. |
| | • Collateral value = $1,175K | | | • Begin date = Close of escrow. |
| | • Priority of security int. = ~~first~~ second against Beverly Hills house behind California real property taxes | | | • End date = Close of escrow or assumed |
| | • Principal owed = $350K | | | • Interest rate % = per loan docs |
| | • Pre-pet. Arrearage amount = Unknown. | | | • Total payout = 100% of allowed amount of claim |
| | • Post-pet. Arrearage amount = Unknown | | | • Treatment of Lien = Lien terminated and extinguished upon payment, unless assumed. |
| | • Total claim amount = as allowed | | | • Paid in full. |

Links Capital shall receive payment in full on its contract claim from close of escrow of the sale of the Beverly Hills house.  The Administrator shall be required to sell the Beverly Hills house within 6 months of the entry of a final confirmation order, or the stay shall automatically be lifted to permit Links Capital to proceed with remedies under state law.  The Administrator may sell the Beverly Hills house at any time prior to a foreclosure by Links Capital.

Under this Plan, Raffone agrees to vacate the Beverly Hills house and permit its sale free and clear of Raffone's occupancy and use, as well as cleared of all her personal possessions. Links Capital benefits from this concession by Raffone as it only defers exercising its remedies for a period of six months, a time period in which it is easily protected by the equity cushion in the house.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 9 | Secured claim of voluntary lender against Raffone's personal residence in Florida | No | Yes Claim is either assumed or paid in full on close of escrow | • Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | • Name= J.P. Morgan Chase | | | • Pymt amt/interval = $allowed amount/one payment or assumed |
| | • Collateral description = Debtor's real property located at 1495 Arabian Drive, Loxahatchee, FL 33470 | | | • Balloon pymt = No. |
| | • Collateral value = $600K | | | • Begin date = Close of escrow. |
| | • Priority of security int. = second against Florida house behind real property taxes on Florida house | | | • End date = Close of escrow or assumed |
| | • Principal owed = $250K estimated | | | • Interest rate % = per loan docs |
| | • Pre-pet. Arrearage amount = Unknown. | | | • Total payout = 100% of allowed amount of claim |
| | • Post-pet. Arrearage amount = Unknown | | | • Treatment of Lien = Lien terminated and extinguished upon payment, unless assumed. |
| | • Total claim amount = as allowed | | | • Paid in full. |

J.P. Morgan Chase shall receive payment in full on its contract claim from close of escrow of the sale of the Florida house.  The Administrator shall be required to sell the Florida house within 6 months of the entry of a final confirmation order, or the stay shall automatically be lifted to permit J.P. Morgan Chase to proceed with remedies under state law.  The Administrator may sell the Florida house at any time prior to a foreclosure by J.P. Morgan Chase.

J.P. Morgan Chase only defers exercising its remedies for a period of six months in exchange for the ability to sell the Florida house free and clear of Raffone's occupancy and use of that property.

To the extent that any claim listed on Exhibit C or Exhibit D is later determined by the Administrator to be a secured claim, or if the Court enters an order affording treatment as a secured claim to the holder of any claim that is not set forth in this section of the Plan, the Administrator shall treat such claim as a secured claim with priority over payment of any priority unsecured claim or general unsecured claim or equity claim for that debtor in accordance with this Section II.C.1. of the Plan.

2.    **Classes of Priority Unsecured Claims.**

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.  These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The Plan Proponent intends to allow the claim of Vjollca Lumaj for her unpaid regularly hourly wages as if timely filed.  David and Vjollca Lumaj are employees at the Property and allege that they were not paid certain wages, salaries and overtime during the years 2005-2010 when the Property was managed by Raffone, notwithstanding that such claims may be late filed.  Madison believes the legitimate past due wage claim of Vjollca Lumaj is $36,601.36 for basic hourly wages without any overtime or bonus amounts included.  It shall be in the reasonable discretion of the Administrator to determine whether to allow, compromise or contest the amount of any additional filed claims by such employees that exceeds $36,601.36.  Raffone shall be entitled to object to any treatment of such claims (including the $36,601.36) and the Administrator shall give notice to Raffone of his proposed treatment of such creditors' claims, and if disputed, shall seek a ruling on notice and opportunity for hearing before the Court.  Raffone shall bear the burden of proof if she elects to challenge any portion of the $36,601.36.  David and Vjollca Lumaj shall have the burden of proof if they elect to seek an amount higher than $36,601.36, including the amounts listed on Exhibit C as disputed and not allowed.  Vjollca Lumaj's claim shall be paid $10,000 in full, and the balance of $26,601.36 in the general unsecured class of Class 12.

The Plan Proponent intends to allow the claim of tenants for their security deposits, believed to be held, at least in part, by Campbell and/or Bank of America, N.A.  Tenant security deposits are not funds of Campbell, the Debtor or Raffone.  Under applicable New York law, tenant deposits must be held in a bank in New York state, in each tenants' social security number, with annual reporting directly to the tenants, who are entitled to all interest annually above 1% which they can choose to let accrue or request be paid to them directly from the depositing bank.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Raffone has produced documents that indicate that Campbell garnished at least some the funds of the tenants when he sought collection on the February 6, 2010 judgment of the Florida court against Raffone on February 22, 2010, and may have mistakenly believed the funds to have been hers.  Madison believes that Raffone admitted to Minuit that she personally spent some of the tenant deposits prior to the appointment of Minuit.  Raffone disputes that allegation.  The Administrator shall have the authority to investigate such allegations and possible possession of the tenant deposits by Campbell and/or Raffone and determine appropriate legal steps to remedy the rights of the tenants.  The Administrator shall handle the tenant deposits in accordance with New York law.  The Administrator's acts shall be authorized to extend to any person in whose hands he locates the tenant deposits, including Richard K. Hershman or any other person or entity. Notwithstanding any other discharge language in this Plan, Raffone shall not be discharged from this obligation to repay any tenant deposits taken by her.

The following chart lists all classes containing Debtor's §507(a)(3), (4), (5), (6), and (7) priority unsecured claims and their treatment under this Plan.  There are no known §507(a)(3), (4), (5), (6), and (7) priority unsecured claims of Raffone.

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 610 | Priority unsecured claims pursuant to § 507(a)(4)<br>• Total amt of allowed claims = $36,601.36<br><br>The claims in this Class 610 may be higher if the employees at the Property can submit a justifiable basis for additional compensation that was denied to them. | Yes | Paid in full$10,000 to be paid in cash on close of escrow or when allowed by the Court, whichever is later.  Claimssufficient funds are available to pay such claim.  Balance of claim is paid in Class 12.  Claim shall be paid without interest. |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| ~~7~~11 | Priority unsecured claims pursuant to § 507(a)(7)<br>• Total amt of claims = $58,610.77<br><br>(funds to be released by any custodian or receiver, Raffone, Bank of America, N.A., and/or Campbell, and to the extent of any shortfall, paid from operating cash flow of the Debtor's real property, and thereafter, only in the extent of a further shortfall, funded in cash by Madison as an advance under its loan documents, and recovered as part of its allowed Class 2 claim) | Yes | Funded in full in cash on the Effective Date to property manager for building for the benefit of claim holders.  These paid claim amounts shall be held in a bank in New York state, in the tenants' social security numbers, with annual reporting directly to the claim holders post close of escrow. Each claim holder shall be entitled to elect either payment to him/her of all interest that has accrued annually above 1% or maintenance of all interest in their tenant deposit accounts. |

To the extent that any claim listed on Exhibit C or Exhibit D is later determined by the Administrator to be a priority unsecured claim, or if the Court enters an order affording treatment as a priority unsecured claim to the holder of any claim that is not set forth in this section of the Plan, the Administrator shall treat such claim as a priority unsecured claim with priority over payment of any general unsecured claim or equity claim for that debtor.

***The Debtor has no known section 507(a)(3), (a)(5) or (a)(6) priority unsecured claims.***

### 3. Classes of General Unsecured Claims.

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). ~~Notwithstanding any judgment that might be issued in~~

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

a.    Unsecured Claims of the nondischargeability litigation commenced by Campbell on July 20, 2010, under this Plan, Campbell is not the holder of any allowed unsecured claim and shall not be entitled to participate in the distribution of amounts paid to holders of Classes 8 or 9 claims.  The Administrator shall not be required to liquidate assets of the Raffone estate to satisfy any judgment in favor of Campbell, other than to assure the payment in full of his stipulated Class 4 claim that is capped at $2.5 million.  The terms of this Plan shall prevail over the terms of any judgment Campbell may obtain, whether or not the judgment occurs prior to or after confirmation of this Plan.Debtor

The following chart identifies this Plan's treatment of the class containing all of Debtor's general unsecured claims.

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 812 | General Unsecured Claims asserted against Nevada Star, estimated at $1,779,346.38, $932,072.63* | Yes | Pymt interval = Single, with possibility of second later supplemental payment. |
| | | | Payment amt/interval = Balance of funds available from sale of Debtor's real property/reasonable time after the close of escrow and after final determination of all claims; and thereafter, proceeds of sale of Raffone's real and personal property/reasonable time after close of any sale of any asset |
| | | | Begin date = Reasonable time after the close of escrow for Debtor's Property. |
| | | | End date = Reasonable time after the close of escrow for Raffone's real and personal property, at the discretion of the post petition Plan Administrator |
| | | | Interest rate:  None. |
| | | | Total payout = pro rata share of proceeds after payment of Debtor's costs of sale, administrative claims, secured claims and priority unsecured claims. |

| | | | |
|---|---|---|---|
| | *Note:  Some claims in this Class 12 have been asserted against both Nevada Star and Raffone.  Notwithstanding such fact, such creditors are permitted only one recovery on their claim by accepting the pro rata payment of their allowed claim amount from the Debtor Fund set forth below and shall not participate in both Classes 12 and 13 of the Plan.  See Exhibit C. | | Payment amt/interval = One single payment from the Debtor Fund described below. |
| | | | Begin date = Reasonable time after the Administrator is capable of making payments from the Debtor Fund described below. |
| | | | End date = N/A |
| | | | Interest rate:  None. |
| | | | Total payout = pro rata amount of allowed claim amount from the Debtor Fund. |

A settlement has been reached with the IRS with respect to the treatment of its claim in these consolidated cases, which settlement is only valid in the event this Plan is confirmed for both estates.  Under the proposed settlement, the penalty portion of the IRS claim, which shall be a fully allowed claim, shall be subordinated to the payment of the unsecured class.  The penalty portion of any governmental or taxing authorities' claim shall be subordinated to the payment of the unsecured class.  The asserted IRS penalty from the date of petition on unsecured general claims (including interest thereon) that will be subordinated is approximately $157,480.51, plus any additional accruing penalty amounts.  Other conditions to the comprehensive settlement are as follows:

a)    Madison shall bear the cost of (i) the $30,000 settlement amount paid to Raffone, expected to be approved by the Court and all creditors during first quarter 2011, and (ii) the Clerk's Office Fees and the Office of the United States Trustee Fees in the Raffone case on the Effective Date of the Plan, neither of which will be added to its Class 2 claim;

b)    Each secured creditor in Classes 3-6 accept no accrual of interest or other charges on their claim and a 7% discount off the principal allowed amount, unless avoidance litigation is commenced, in which event the claims will be allowed as finally determined by judgment in each appropriate adversary case;

c)    With the exception of any gift tax owed by Traute Raffone attributed to the New York cooperative apartment at 108 East 86th Street, Apartment 11N, New York City, New York 10028 (the "NY Co-Op") and which gift tax is recorded as a lien on that NY Co-Op, Raffone's

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

income tax, FICA tax, interest, penalties, gift tax and capital gains tax or any other tax liability of any kind is fully resolved by the Plan and satisfied by the payments provided for herein;

       d)      Raffone takes nothing by the Plan other than the $30,000 settlement and her personal effects that would have been exempt had she made any exemption claims on Schedule C;

       e)      Raffone tenders to the Administrator all personal property that would not have been exempt under Schedule C without contest or dispute of any kind;

       f)      Raffone causes transfers of the title to the NY Co-Op, currently held in name of Traute Raffone, to Campbell subject only to the first lien, accrued real property taxes and gift tax owed by Traute Raffone or the Traute Raffone estate;

       g)      Raffone vacates the Beverly Hills house and the Florida house in broom clean condition upon request of the Administrator without delay, expense, demand or controversy of any kind, and no unlawful detainer actions need be brought to remove her or her possessions from any premises;

       h)      All Classes vote to accept their treatment under this Plan;

       i)      Other than as provided for by the Plan by the Administrator, or except as may be waived or excused by the IRS, all litigation ceases and all rights are dismissed with prejudice and subject to treatment under this Plan;

       j)      The New York City Department of Finance agrees to accept its proposed treatment of its administrative claim upon the sale of the Property, and to permit 1% of its claim amount to flow to Class 12;

       k)      The Administrator files all back and final income and gift tax returns for the Debtor and Raffone calculating the full amount of the tax owed and the Plan confirmation order provides that all such tax liability of each estate under 26 U.S.C. § 1398;

       l)      Raffone fully cooperates with the Administrator in the preparation of tax returns, as may be requested by the Administrator, including providing the Administrator with confidential or privileged information from accountants and attorneys;

       m)      Campbell drops all claims that he is the owner of the Debtor;

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

n)      No creditor objects to the release of all claims against Raffone, except for (i) claims for any tenant deposits she may have spent or used, and (ii) claims for her failure to comply with the provisions of this Plan;

o)      The Administrator makes the election for the Debtor to be taxed as a C-corporation beginning January 1, 2011 and such election shall be deemed to have been made as of January 1, 2011 regardless of when actually made or filed; and

a)      The IRS and the State of New York Department of Finance shall receive the balance of all funds from the sale of the Property, to be divided 2/3 to the IRS and 1/3 to the State of New York Department of Finance, less the agreed upon carve out for the benefit of unsecured creditors of the Debtor's estate (Class 12 only), described below.

The IRS reserves the right to waive or excuse any of the conditions set forth above.  The IRS reserves the rights to add additional conditions upon the treatment it accepts under the Plan up to the time of the confirmation hearing.

In exchange for such conditions, the IRS will (a) permit a portion of its claim to be subordinated into Class 14, (b) accept and share with the State of New York Department of Finance, all remaining amounts available for the payment of claims under this Plan as satisfaction of the tax owed on the filed returns ("Tax Fund"), and (c) carve out of the Tax Fund some amount to pay the creditors of Class 12.

The Tax Fund will consist of all amounts remaining from the sale of the Property after payment of (i) costs of sale other than capital gains, (ii) reserve of $450,000 for the payment of pre-petition administrative claims and the post confirmation Administrator's reserve amount, (iii) priority tax claims arising under 507(a)(8), and (iv) all claims in Class 1A, Classes 2-7, and Classes 10-11 as provided for in this Plan.  All amounts not necessary for the payment of administrative claims of the estate from the $450,000 set aside for the payment of pre-petition administrative claims and the Administrator's needs in running the Reorganized Debtor's affairs, shall flow back into the Tax Fund.  In short, the Tax Fund shall consist of the pot that remains after payment of the claims against the Debtor's estate as provided for in this Plan.  Excepting only the payment of the section 507(a)(8) claims, which is a mandatory component of the IRS's

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

settlement proposal in this Plan, none of the proceeds of the Property may be used to pay creditors holding claims against Raffone individually.

If the Plan is rejected by the State of New York Department of Finance, then the IRS settlement shall be null and void and of no effect.

If this Plan is not capable of being confirmed, then the IRS settlement shall be null and void and of no effect.

As part of its conditional agreement, the IRS has agreed that it will set aside a fund ("Debtor Fund") for the payment of creditors holding Class 12 claims. The Debtor Fund shall consisting of a carve out amount that is not less than 1% of the Tax Fund (the "Carve Out Floor"), and not greater than the amount necessary to make a dividend payment to general unsecured creditors in Class 12 not to exceed 10% (the "Carve Out Ceiling"). If the purchase price for the Property is $19.1 million or less, then the Debtor Fund will only have the Carve Out Floor contributed in. If the purchase price for the Property is $19.1 million or more, than the Debtor Fund will receive the maximum of up to the Carve Out Ceiling. The following chart demonstrably shows the funding of the Debtor Fund.

| Sales Price | <$18 million with broker | <$18 million without broker | >$18 million and <$19.1 million | >$19.1 million |
|---|---|---|---|---|
| Maximum Contribution | 1% of Tax Fund | 1% of Tax Fund | 1% of Tax Fund | 1% of Tax Fund, but no greater than 10% Class 12 Claims |

The Debtor Fund shall only be used for the payment of general unsecured creditors in Class 12. Each creditor holding an allowed claim in Class 12 shall receive its pro rata share of such amount placed into the Debtor Fund when reasonably possible for the Administrator to do so.

**b.    Unsecured Claims of Raffone**

The following chart identifies this Plan's treatment of the class containing all of Raffone's general unsecured claims:

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| ~~9~~13 | General Unsecured Claims asserted against Raffone, estimated at $~~1,983,959.87*~~2,110,239.21* | Yes | Pymt interval = Single. |
| | *Note:  Some claims in this Class ~~9~~13 have been asserted against both Nevada Star and Raffone.  ~~To the extent the Property proceeds are insufficient to pay holders of Class 8 claims in full after costs of sale, administrative claims and Classes 1-7, then allowed claims in Class 8 will receive a second distribution in this Class 9 to the extent they have an allowed claim in Class 9.~~Notwithstanding such fact, such creditors are permitted only one recovery on their claim by accepting the pro rata amount of their allowed claim amount from the Debtor Fund set forth above for Class 12, and shall only participate in Class 13 of the Plan to the extent of their claim amount remaining after such payment.  See Exhibit D. | | ~~Payment amt/interval = After final determination of all claims; and after sale of Raffone's real and personal property, giving the Administrator a reasonable time after close of any sale of all assets~~Payment amt/interval = One single payment from the Raffone Fund described below |
| | | | Begin date = Reasonable time after the ~~close~~Administrator is capable of ~~escrow for all of Raffone's property~~ making payments from the Raffone Fund. |
| | | | End date = N/A |
| | | | Interest rate:  None. |
| | | | Total payout =  pro rata ~~share of proceeds after~~ payment ~~of Raffone's costs of sale, administrative claims, secured claims and priority unsecured claims.~~ on allowed claim amount from the Raffone Fund. |

~~The penalty portion of the IRS claim shall be subordinated to the payment of the rest of the unsecured class.  The asserted IRS penalty from the date of petition on unsecured general claims (including interest thereon) that will be subordinated is $157,480.51, plus any additional accruing penalty amounts.~~

The Administrator shall use his best efforts to sell and liquidate the Beverly Hills house, the Florida house, and all other assets of Raffone, whether or not on Exhibit D to the Plan, including litigation against her husband or any other party or former counsel holding assets believed to belong to Raffone.  The net proceeds from such litigation, sales, and other liquidation efforts, after payment of all secured lien claims encumbering such assets, shall be placed into a separate account called the "Raffone Fund."  The assets to be liquidated shall include such items in Raffone's possession that would not have been exempt had she completed a Schedule C at the time of filing her petition.  The total amount of the Raffone Fund, less any administrative costs incurred by the Administrator and his professionals attributed to administering the Raffone assets

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Case 2:10-bk-26188-PC    Doc 240    Filed 02/11/11    Entered 02/11/11 16:27:32    Desc
Main Document    Page 65 of 102

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

and the post confirmation Raffone estate, shall be paid pro rata to the holders of allowed Class 13 claims as soon as reasonable practical.

This Class 13 shall include the claim of Campbell that Raffone is in breach of her agreement to tender the New York Co-Op to him free and clear of any tax lien claims, including the gift tax lien placed on the New York Co-Op by the IRS for the failure of Traute Raffone to pay the gift tax on the transfer of the New York Co-Op from Traute to Campbell.

### 4.    Class of Subordinated Claims

The IRS ~~shall hold~~ has a ~~subordinate~~ claim for penalties asserted against Raffone with respect to payment of her FICA and income taxes for years 2006-2010, identified on Claim No. 1 on the claims docket in the Raffone case. The New York State Department of Taxation and Finance may hold penalty claims against Raffone relating to unpaid income and FICA taxes. The Florida Probate Court has a claim for contempt penalties asserted against Raffone with respect to her failure to abide by court orders with respect to the transfer of her interest in the Property to Campbell. All such claims shall be subordinated and treated in Class 14.

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| ~~10~~14 | Penalty Claims asserted by ~~the IRS~~all governmental taxing agencies against Raffone, estimated at $157,480.51 and Contempt charges asserted by the Florida Probate Court, estimated at $540,000, and Any other penalty type claims relating to tax payments not timely made, including interest thereon, and asserted against Raffone. | Yes | Pymt interval = Single. Payment amt/interval = If funds remain after payment of all Class 1-B, 1C, 8, 9 and 13 claims in the amounts allowed, then payment of all remaining amounts. Interest rate:  None. Total estimated payout = $0.00 ~~est.~~ |

### 5.    Class(es) of Interest Holders.

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor. ~~If~~For the Debtor which is a corporation, entities holding preferred or common stock in the Debtor are interest holders. ~~If~~For the ~~Debtor is a partnership, the interest holders include both general and limited partners. If the Debtor~~debtor that is an individual, ~~the Debtor~~Raffone is the interest holder. The following chart identifies the Plan's treatment of the class of interest holders:

SM01DOCS\820240.2

58

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| ~~11~~15 | Interest holder of the Debtor – deemed to be solely Claudia Raffone and excluding Henry Douglas Campbell who shall accept his Class 4 treatment if votes in favor of Plan | No<br><br>The Plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest. | Unimpaired |
| 16 | Claudia Raffone | No | Unimpaired |

**D.    Means of Effectuating the Plan.**

    **1.    Secured Creditors' Alternative**

Creditors in Classes 4-7 are united in their belief that a more appropriate plan of reorganization would be the follow the line of cases that forces the capital gains tax liability to fall uniquely to Raffone.  They prefer a plan that does not impose any requirement upon the Debtor's estate to pay the capital gains tax associated with the sale of the Property.  Under their proposal, they believe that, because Raffone is the owner of 100% of the interests in the Debtor and is its sole member, ***none*** of the tax should be borne ahead of the payment of creditor claims, but should pass through from the Debtor's estate to the Raffone estate.  While none of these creditors in Classes 4-7 have filed their own plan, they propose an alternate plan would be as follows:

Claudia Raffone is the owner of 100% of the member interests in the Debtor and its sole member.  There is currently an all cash offer of $18,000,000 for the Property.  The Property will be sold by the Administrator for no less than $18,000,000, resulting in a taxable capital gain of a currently undeterminable amount.  The sale will occur no later than the end of the first quarter of 2011.  However, a the Debtor is a "pass through" entity and taxed as a partnership for federal and state income tax purposes, under the authority of In re KRSM Properties, LLV. V. Speier, 318 B.R. 712 (9th Cir. Bankr. 2004), the actual capital gain tax generated by the sale is payable by Raffone individually.  Accordingly, out of the sales proceeds, the payments could be made in the following order:

(i)  Closing costs (broker's commission, title insurance, transfer taxes (if any);

(ii)  Unpaid real estate taxes

(iii) Mortgage debt of Madison Capital Realty;

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    (iv)  Mechanic lien by Ponichtera Contracting

2    (v)  Henry Douglas Campbell

3    (vi)  Attorney claimants due to Beys Stein, Casey Ciklin, Jay
      Jacknin, Fox Rothschild, Vernon & Ginsburg and Michael DiMatti

4
5    (vii)  Minuit Partners

6    (viii)  David and Vjollca Lumaj

7    (ix)  Castle Oil Corporation

8    (x)  Fred Smith Plumbing

9    (xi) PS Marcato Elevator Corporation

10   (xii)  Tenant security deposits

11   The remaining net proceeds will be used by the administrator to pay
     administrative expenses of the Debtor's bankruptcy after appropriate
     application and court approval.  Upon the entry of a final decree, all
     remaining funds shall be utilized by the Administrator in the
     individual bankruptcy of Raffone.

13        The proponents of this revised structure fail to explain how their payment priority is

14   aligned with the requirements of the Code or what amounts would be paid to each creditor.  In

15   addition, under the proposal of the Classes 4-7 to cause a "pass through" of the capital gains tax

16   liability to Raffone, they are suggesting that all the assets of the Debtor and Raffone can be taken

17   from them, but none of the tax obligation paid, leaving Raffone with zero assets and significant

18   non-dischargeable debt.  Madison believes such proposal would not withstand a challenge under

19   11 U.S.C. §1129.[7]  Additionally, under this proposal, litigation by Raffone, Campbell and others

20   would not cease, resulting in a continued drain on all assets and possible delays in payments to

21   creditors.  In addition, under this proposal, the option to pursue fraudulent transfer and preference

22   actions against creditors holding claims in Classes 4-7 would be lost, and the unsecured creditors

23   could receive little or nothing.  Under this plan, if the asserted security interests of holders of

24   Class 4-7 claims are found to be invalid against the Property, the distribution to the general

25

26   [7]      On December 29, 2010, Raffone sought permission of the District Court of Appeal for the State of
     Florida to relinquish its jurisdiction for thirty days so that she can attempt to purge her contempt in the
27   State of Florida.  In January 2011, Raffone has threatened to turn the tables on Campbell and stipulate to
     dismissal of her appeal so as to cause him to become the sole member of the Debtor and allow the capital
28   gains tax fall 100% to him.  This *tit for tat* is precisely what Madison hopes to end.

SM01DOCS\820240.2                                60

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  unsecured class could be significant.  Finally, under this proposal, assets and liabilities of the two

2  estates re inextricably intertwined, yet the two estates have not been substantively consolidated.

3  For all these reasons, Madison did not support the efforts of creditors in Classes 4-7 to achieve

4  such a result.

5       1.2.    **Funding for the Plan.**

6       The Plan will be funded by the following:  (1) turnover of cash from ~~Minuit,~~ Gerald Kahn

7  ("Kahn") the duly appointed state court receiver, including any tenant deposits he may be holding

8  at the time of confirmation, (2) turnover of tenant deposits in possession of Minuit, Bank of

9  America, N.A., Campbell and/or Raffone, (3) cash gifted from Madison to the Raffone estate to

10  pay for the administrative costs of the United States Trustee and the Clerk's Office, and (4)

11  ~~turnover by Raffone's counsel of the pre-petition deposit taken from Madison's cash collateral, if~~

12  ~~any and (5)~~ sale of assets of the estates.

13       3.    **Requirement of Tax Election**

14       Under this Plan, for taxable year 2010, the Debtor is a disregarded entity and no separate

15  taxable estate is created under 26 U.S.C. § 1399.  The Administrator will file the required

16  information return reporting the taxable income for the owner of the Debtor's interests, Raffone.

17  The Bankruptcy Court has previously ordered that the owner of all membership interests in the

18  Debtor is the estate of Raffone, and thus the Raffone estate shall be liable for any 2010 post

19  petition administrative taxes.  26 U.S.C. § 1399; In re KRSM Properties, LLC, 318 B.R. 712, 719

20  (9th Cir. Bankr. 2004) (*citing* 26 C.F.R. § 301.7701-3(a)).

21       The Administrator, as the declared owner of the 100% membership interest in Nevada Star,

22  LLC, will make the election for the Debtor to be taxes as a separate entity (i.e., a C-corporation)

23  beginning January 1, 2011.  Any election made by the Administrator for the Debtor to be taxes as

24  a separate entity during calendar year 2011 shall be deemed to have been made on January 1,

25  2011.  Thereafter the Administrator shall file the required tax returns, and any tax liability shall be

26  a liability of the Debtor's estate under 26 U.S.C. § 1398.

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

### 2.4.    Post Confirmation Authority of Administrator

The Plan provides for the appointment of a post confirmation Administrator, David Gould. The Administrator's employment shall be governed by the terms of this Plan. ~~The intent of the Plan is to provide the Administrator with the powers of a trustee of a bankruptcy estate as if he had been so appointed.  The Administrator shall further have authorization to travel to New York if he deems it reasonable or necessary in the exercise of his business judgment to consummate the Plan.~~

Upon entry of the Confirmation Order, the administratively consolidated chapter 11 estates shall be deemed to continue unabated until entry of a final decree.  The post-confirmation estates shall be vested with title to all assets of the estates, whether or not disclosed, including but not limited to, all assets listed on the Debtor's and Raffone's schedules, any and all causes of action belonging to the estate and all cash on hand in the Debtor's and Raffone's accounts, and all other assets that may be located by the Administrator.

Post confirmation, the Administrator shall maintain insurance on the Property at all times, listing Madison as mortgagee and loss payee on the property insurance and as mortgagee and additional insured on the liability insurance.

Post confirmation and after the Administrator requests Raffone to vacate the Beverly Hills property and she has done so, the Administrator shall maintain insurance on the Beverly Hills property at all times, listing Links Capital as mortgagee and loss payee on the property insurance and as mortgagee and additional insured on the liability insurance.  For avoidance of any doubt, the Beverly Hills property must be insured at all times, and in the event the insurance placed by Raffone expires, the Administrator shall place insurance at a time to avoid any lapse in coverage.

Post confirmation and after the Administrator requests Raffone to vacate the Florida property and she has done so, the Administrator shall maintain insurance on the Florida property at all times, listing J.P. Morgan Chase as mortgagee and loss payee on the property insurance and as mortgagee and additional insured on the liability insurance

Post confirmation, the Administrator shall be the sole owner of the Property in the hands of the Reorganized Debtor and the sole owner of the assets of the Raffone estate, including the Beverly Hills and Florida properties.  Raffone shall no longer be considered the owner of the

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Property or the Beverly Hills and Florida properties for any purpose, under any applicable non

bankruptcy law.  Nothing in this paragraph shall prevent Raffone from receiving her interest as a

member of Class 11Classes 15 and 16, *after* satisfaction of all claims under this Plan, including,

but not limited to, payment in full of Classes 1-1014.  At all times prior to the satisfaction of all

claims under this Plan, Raffone shall not be the owner of the Property or the Beverly Hills and

Florida properties.

Immediately upon his appointment, the Administrator shall undertake an analysis of

whether the Property can be sold for sufficient amounts to provide at least $100 of distribution to

Class 6 or below.  In the event the Administrator determines that a sale of the Property will not

generate sufficient cash to pay for (1) costs of sale, (2) capital gains tax, (3) allowed secured

claims, (4) administrative claims of the post confirmation Reorganized Debtor and the pre-

confirmation estates, and (5) $100 to Class 6 creditors, then the Administrator shall negotiate with

secured creditors for a release of the Property to be entitled to, but not required to, retain one or

more of them.  In the event the Administrator determines that the sales price for the Property is

likely to be sufficiently high enough to justify an auction of the Property, then the Administrator

will retain Eastern Consolidated as thecompetent broker(s) and list the Debtor's real property for

sale. ***The Administrator shall sell the Property by a date prior to the foreclosure sale by

Madison in the Supreme Court  for the State of New York, New York County.***  Absent an

extension of time by order of the Bankruptcy Court for good cause shown, ***the Administrator

shall sell the Beverly Hills house by a date prior to October 31, 2011.***  With respect to the

Property, the Administrator shall make inquiries into the belief of creditors in Classes 5-7 that they

have identified a cash buyer for $18 million for the Property who will close in an acceptable time

frame with no broker's fee (the "Prospective Buyer").  The Administrator may accept the

Prospective Buyer as a stalking horse buyer upon terms reasonable and acceptable to the

Administrator.  If the Administrator feels prudent, he shall be entitled to carve out of any broker

compensation agreement such Prospective Buyer and provide for payment of a commission to a

retained broker only upon closing of a sale for an amount sufficient to cause a greater benefit to

the estate than the sale to the Prospective Buyer, taking into consideration that there would be no

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

SM01DOCS\820240.2

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1  broker's fee for the sale to the Prospective Buyer, along with all other terms and conditions of

2  sale.

3         Once a stalking horse bidder for any parcel of real estate is identified in the discretion of

4  the Administrator, an overbid auction will be scheduled before the Court, and a sale to the highest

5  bidder will be closed by the Administrator.  Absent the express written consent of Madison, the

6  Administrator shall not be entitled to sell the Debtor's ~~real property~~ Property if the Supreme Court

7  for the State of New York, New York County has entered a final judgment of foreclosure and sale

8  in the action known as Index No. 103172/10, *Madison Realty Capital, L.P.. v. Nevada Star, LLC,*

9  *et al.* ("Foreclosure Litigation").  The Administrator shall exercise his best efforts to complete a

10 sale of the Debtor's ~~real property~~ Property at the highest and best price before the end of the

11 second quarter of 2011.  The sale shall be free and clear of all Raffone's ~~prior~~ and Campbell's

12 asserted rights as owner and all claims.  The Administrator shall exercise his best efforts to

13 negotiate fair and reasonable employment terms for ~~Eastern Consolidated~~the selected broker and

14 shall present his application to the Court with notice and opportunity to be heard by all creditors.

15 The only ~~basis~~bases for any objection to the employment of ~~Eastern Consolidated~~any broker shall

16 be an unwaivable conflict or a finding by the Court that employment of ~~Eastern Consolidated~~the

17 selected broker would be otherwise unfair or prejudicial to the creditors of these administratively

18 consolidated estates or that the sale to the Prospective Buyer is a near certainty of closing and

19 would render a significantly greater benefit to the Reorganized Debtor's estate.  Any sale of

20 ~~Property~~ real property of either estate shall be free of transfer tax in accordance with 11 U.S.C. §

21 1146(a).

22        At the close of escrow for the Property, the Administrator shall be entitled to set aside

23 $450,000 for the payment of the pre-petition administrative claims and thereafter for his post

24 confirmation administrative claims and expenses (excepting administrative tax claims).

25        The Administrator shall ~~also~~ be entitled to retain an accountant of his choice to ~~determine~~

26 ~~the amount of capital gains tax that must be reserved from the sales proceeds and to~~ file all gift

27 and income tax returns for the ~~estate's~~Debtor and Raffone (but not for Traute Raffone), and the

28 estates' final tax returns.  The Administrator shall exercise best efforts to determine the amount of

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  capital gains tax that is owed to taxing entities, but shall only be required to pay the sums set forth

2  in this Plan.  The Tax Fund must be reserved from the sales proceeds and available to tender to the

3  tax creditors upon the filing of the tax returns, subject to a potential supplemental payment to the

4  tax creditors from remaining funds set aside for administrative expenses.  The Administrator shall

5  exercise his best efforts to negotiate fair and reasonable employment terms for the proposed

6  accountant and shall present his application to the Court with notice and opportunity to be heard

7  by all creditors.

8       Raffone, Minuit, Kahn, Bank of America, N.A., and the debtors' counsel shall have the

9  duty to turn over all books and records and assets to the Administrator.  Raffone shall have a duty

10  to cooperate with the Administrator whenever asked to do so on reasonable terms, including the

11  obligation to provide confidential, financial and potentially privileged information to allow the

12  Administrator to fulfill his duties under this Plan.  Raffone shall fully and completely respond to

13  all inquiries of the Administrator and his staff and professionals.  Assets shall be turned over to the

14  Administrator subject to secured liens and claims.  The Administrator shall have the authority to

15  seek Court orders to enforce this provision.  The Administrator shall not be entitled to insist upon

16  a waiver of the attorney client privilege of Raffone, but he may obtain information that is

17  otherwise protected by the accounting, tax, financial or other banking privileges that would

18  otherwise protect Raffone's privacy.

19       The Administrator shall have the authority, but not the obligation, to retain other

20  professionals and experts, including attorneys, to assist him in fulfilling his obligations under this

21  Plan, which are to liquidate such assets as are necessary to permit all creditors of each estate to be

22  paid on their allowed claims in full, first from the security property attributed to each creditor, and

23  only if required thereafter, from the proceeds of the sale of real and personal property of Raffone.

24  Absent express written consent from such secured creditor or as set forth in this Plan, no secured

25  creditor can be compelled to permit its collateral to be used to pay other the Administrator or his

26  professionals, any administrative expenses, income taxes upon sale of the Property, or any priority

27  or general unsecured creditors, and in lieu thereof, accept payment from assets that are not part of

28  its security prior to the liquidation of its collateral.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1       The Administrator shall be expressly permitted to retain as his own counsel the attorney

2   who was counsel for the Committee.  The Administrator can elect to retain post confirmation

3   counsel to assist him in fulfilling his obligations as the Administrator under this Plan and the

4   Order confirming this Plan.  All parties waive any right to contest the Administrator's retention of

5   the Committee's former counsel on any grounds, excepting only hourly rate and fees to be

6   charged.  No objections on the grounds of lack of disinterestedness shall be permitted.  Nothing in

7   this paragraph shall be deemed to waive any party's right to be heard at the time of any application

8   for allowance and payment of fees or expenses by any party or entity.

9       The Administrator shall exercise his best efforts to negotiate fair and reasonable

10  employment terms for his choice of counsel and shall present his application to the Court with

11  notice and opportunity to be heard by all creditors.  Once invoices from post petition professionals

12  are received, if the Administrator has either approved the invoice or taken no action within

13  20 days after submission of the invoice, the invoice shall be deemed approved and the

14  Administrator may pay such invoice from the post-confirmation estate.  If an objection is raised to

15  the invoice, which the parties are unable to resolve, the affected professional may submit a fee

16  application to the Court pursuant to the Local Rules, except that no 45 day notice of a fee hearing

17  for all professionals shall be required and notice need only be given electronically to parties

18  registered with the Court's Electronic Case Filing system.

19      The Administrator shall be entitled to retain eviction counsel in New York to assist him in

20  his management and operation of the Property prior to sale.  The Administrator shall exercise his

21  best efforts to negotiate fair and reasonable employment terms for such eviction counsel but shall

22  not be required to present any application to the Court with notice and opportunity to be heard by

23  all creditors, and such eviction counsel shall be considered to be employed in the ordinary course

24  of business.

25      The Administrator shall be entitled to locate and take possession, custody and control over

26  any property of the Debtor's estate, including the real property and personal property assets listed

27  on the Debtor's schedules, or any other asset of the Debtor's estate that he may locate.  ~~Except as~~

28  ~~waived in the Plan,~~ Raffone shall cooperate in the transfer of physical possession and title to the

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Administrator as reasonably requested by him.  Raffone shall permit the Administrator to inspect any and all assets in her possession, custody or control, including all personal property assets that she asserts would be exempt under Schedule C.  Raffone shall vacate every property and immediately turn over all keys, remotes, garage door openers and all other fixtures and furnishings to the extent provided in this Plan.  Raffone shall cooperate with the Administrator and provide him access to books and records as requested, and all information that might lead to the discovery of additional assets.  For avoidance of any doubt, Raffone shall surrender all her non exempt assets and in exchange take only the $30,000 settlement payment and her exempt personal belongings in exchange for a full walk away by all creditors.  Raffone's failure to cooperate with the provisions of this Plan shall be grounds for the denial of discharge upon request of the Administrator by motion to the Bankruptcy Court, and upon a showing of good cause that she has willfully failed and refused to cooperate with the terms and conditions herein.

Except as waived in the Plan or previously ordered by the Court, the Administrator, the Committee and any creditor or interested party (except the Debtor) shall be entitled to assert avoidance powers under the Bankruptcy Code, against holders of claims in Classes 4-7.  In addition, the Administrator shall be entitled to bring on litigation to recover assets from third parties or the Debtor, and subsequently market and liquidate such assets as necessary to fulfill his duties under the Plan. The Administrator shall have sole discretion to

In the event that the Administrator can reach an agreeable compromise between the estate and a third party with respect to an asset of the Debtor's estate, the Administrator shall have sole discretion to compromise the estate's claims, rights and obligations with respect to the assets of the Debtor's estate without upon the giving of a 10 day written notice to other parties or the Court, so. So long as his discretion is exercised reasonably, and no objection to the compromise is filed, then the compromise shall take effect without a Court order or hearing.  Any party who contests the reasonableness of the Administrator's decisions shall seek a hearing on proper notice, before the Court.

The Administrator shall be entitled to locate and take possession, custody and control over any property of the Raffone estate, including the real property and personal property assets listed

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  ~~on Exhibit B hereto, on the Raffone schedules, or any other asset of the Raffone estate that he may~~

2  ~~locate.  The Administrator shall be entitled to assert avoidance powers under the Bankruptcy~~

3  ~~Code, bring on litigation to recover assets from third parties or Raffone, and subsequently market~~

4  ~~and liquidate such assets as necessary to fulfill his duties under the Plan.  The Administrator shall~~

5  ~~have sole discretion to compromise claims, rights and obligations with respect to the assets of the~~

6  ~~Raffone estate without notice to parties or the Court, so long as his discretion is exercised~~

7  ~~reasonably.  Any party who contests the reasonableness of the Administrator's decisions~~

8  ~~shall~~expiration of the ten days, seek a hearing on proper notice before the Court, in which case the

9  Administrator's compromise shall not be effective until approved by the Court.

10  Under this Plan, Minuit, Kahn, Bank of America, N.A., and Campbell, shall be required by

11  Court order to turn over the security deposits originally held in the name of Raffone (or any other

12  name, including if held in the name of the individual tenants), relating to the real property of the

13  Debtor's estate, to the Administrator for handling and treatment under this Plan, if any are in their

14  possession.  The Administrator shall be authorized to take such action as is necessary to compel

15  any of Minuit, Kahn, Bank of America, N.A., or Campbell to release the tenant security deposits

16  to him.  The Order confirming this Plan shall provide for turnover over the tenant deposits to the

17  Administrator who will hold them in compliance with all applicable New York state laws.

18  Under this Plan, Minuit and Kahn shall be required by Court order to turn over all cash or

19  cash collateral relating to the real property of the Debtor's estate to the Administrator for handling

20  and treatment under this Plan.  The Administrator shall be authorized to take such action as is

21  necessary to compel Minuit and Kahn to release all cash to him.  The Order confirming this Plan

22  shall provide for turnover over of cash on hand to the Administrator.  Nothing in this paragraph

23  shall prevent the Administrator from determining whether to keep Minuit, Kahn or any other

24  person employed as the on-site manager for the Property prior to sale or abandonment of the

25  Property, and to permitting Minuit, Kahn or such other selected person or entity to hold cash

26  collateral as the agent of the Administrator.

27  The Administrator shall be entitled to employ a manager to operate the Property prior to its

28  liquidation.  The Administrator may elect to continue to use Minuit, Kahn, or may use the services

1   of any other qualified manager.  The decision of who to use to manage the Property shall be within

2   the sole discretion of the Administrator.  The Administrator shall exercise his best efforts to

3   negotiate fair and reasonable employment terms for such manager but shall not be required to

4   present any application to the Court with notice and opportunity to be heard by all creditors, and

5   such manager shall be considered to be employed in the ordinary course of business.

6          **3.5.    Payment of Creditors**

7          Allowed priority, secured, unsecured and allowed pre-petition administrative claims (to the

8   extent finally allowed and approved for payment) shall be paid in full from the ~~proceeds of sale~~

9   ~~through escrow.  Net sale proceeds~~funds held by the Administrator after the escrows have closed

10  and the final claim amounts are determined with sufficient precision to permit the payments to be

11  made.  Proceeds shall be distributed by the Administrator as soon as practicable to all ~~remaining~~

12  allowed claims.

13         Under the Plan, the sum of $450,000 shall be set aside from the sale of the Property for the

14  payment of (i) first pre-petition approved administrative expenses of the Committee counsel and

15  the debtors' counsel on final fee applications, and (ii) second to fund post petition administrative

16  fees, costs and expenses incurred by the Administrator and his professionals in excess of the

17  amounts gifted by Madison as set forth in the Plan (exclusive of tax claims), in administering the

18  Reorganized Debtor's estate.

19         Administrative expenses and costs incurred in the post petition Reorganized Raffone estate

20  shall be paid from the balance of proceeds available after payment of secured creditor claims

21  encumbering assets in the Raffone estate.

22         The Administrator shall give not less than ten (10) calendar days notice of his intent to

23  draw his own post confirmation fees and expenses (whether to him or his professionals) to all

24  parties in interest by first class mail.  Any party who objects to the payment of such noticed

25  amounts must provide a written objection, stating the reasons therefore to the Administrator at

26  least two (2) court days prior to the noticed date and request a hearing thereon.  Madison,

27  Campbell, Raffone and Raffone's counsel shall not be permitted to object to payment of any

28  noticed post confirmation fees and expenses.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**4.6.     Use of Cash Collateral**

The Administrator shall be permitted to use cash collateral of Madison during the post confirmation pre-closing period so long as such cash is only used in accordance with the categories previously approved by Madison in the cash collateral budgets [Docket Nos. 31, 45 and 76], or in accordance with the express terms of this Plan, or with express written consent of Madison.  Without leave of Court, and without notice to creditors, Madison and the Administrator may consent in writing to any additional use of cash collateral that the Administrator feels is in the best interests of all creditors and to assist in the consummation of this Plan.

**5.7.     Post-confirmationConfirmation Management.**

Post-confirmation management will be vested in the Administrator, who shall be David Gould, A Professional Corporation, with an office address located at 23975 Park Sorrento23801 Calabasas Road, Suite 2002032, Calabasas, CA 91302-4011.  A copy of Gould's CV is attached hereto as Exhibit "1."

**6.8.     Disbursing Agent.**

The Administrator shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan.  The Administrator shall serve without bond and shall receive his hourly compensation and reimbursement of actual out of pocket expenses for services rendered and expenses incurred pursuant to the Plan.  Any dispute that arises with respect to the Administrator's fees and expenses shall be determined by the Court, which shall retain jurisdiction to determine such disputes.

The Administrator shall give notice of his intent to draw his fees and expenses from the close of escrow of the Property to all parties in interest by first class mail not later than ten (10) calendar days prior to the close of escrow.  Any party who objects to the payment of such noticed amounts must provide a written objection, stating the reasons therefore to the Administrator at least two (2) court days prior to the noticed date for the close of escrow of the Debtor's Property. In the event an objection is received, the escrow and/or title company shall reserve the full amount of the Administrator's requested payment, including any amount of requested reserves, until the Court enters an order finally determining the allowed amount of the Administrator's

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1  compensation.  The Administrator shall be entitled to estimate any additional compensation that

2  he feels reasonably certain shall arise out of the need to administer the assets of the Raffone estate

3  and may seek and provide for himself a reserve amount from the proceeds of the Debtor's real

4  Property before the payment of any Classes 6, 7, 8, 9 or 10 claim.

5            **7.9.    Tender of Possession, or Warrant of Eviction and Judgment of**

6                     **Possession Against Raffone.**

7            If no settlement is approved prior to the confirmation of this Plan providing for the relief

8  set forth in this paragraph, then Raffone shall vacate and tender possession of the Penthouse, Unit

9  4C and all public areas in the Property, including the parking and/or storage spaces she occupies in

10  the garage, the electrical room and all other locations at the Property where her personal property

11  is located, within twenty (20) calendar days of entry of the confirmation order.  All rights of setoff,

12  counterclaims, defenses or other rights that may be asserted against the issuance of a warrant of

13  eviction and judgment of possession are deemed waived.

14            The Administrator and each creditor holding an allowed secured claim, including but not

15  limited to Madison, Raffone shall vacate and tender possession of the Beverly Hills house and the

16  Florida house upon request of the Administrator, who shall provide Raffone with a request upon

17  thirty (30) calendar days notice.  Such tender of possession shall be free and clear of all her

18  personal belongings that would be listed on Schedule C, but shall leave intact all personal property

19  that would not be exempt and will be liquidated by the Administrator.  All rights of setoff,

20  counterclaims, defenses or other rights that may be asserted against the issuance of a warrant of

21  eviction and judgment of possession for each of the Property, the Beverly Hills property and the

22  Florida property are deemed waived.

23            The Administrator shall be entitled to the immediate entry of a warrant of eviction and

24  judgment of possession against Raffone, to be entered by any court of competent jurisdiction,

25  including this Court, in upon confirmation.  In the event that Raffone has not vacated the Property,

26  removed her personal property, and tendered possession as required by the Plan.  In the event the

27  Administrator or any creditor seeks entry of such an order effecting a warrant of eviction and

28  judgment of possession against Raffone, an application may be made within the time frames set

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  forth in this Plan, then the Administrator shall be entitled to ~~this Court on an ex parte emergency~~

2  ~~basis upon seven (7) calendar days notice to Raffone.  The only defenses to the entry of such an~~

3  ~~order by this Court or any other court of competent jurisdiction shall be the lack of expiration of~~

4  ~~twenty calendar days from the date of entry of the order~~enforce the warrant of ~~confirmation or the~~

5  ~~issuance of a stay by a higher court~~eviction and judgment of possession.

6          **8.10.   Entry of the Confirmation Order**

7          The Debtor, as a debtor in possession, Raffone as a debtor in possession, and Committee

8  will terminate upon entry of the confirmation order.

9          **9.11.   Entry of Final Decree**

10         Upon payment in full of all allowed claims, the Administrator's duties shall conclude and

11 the estates' assets, if any remaining, shall re-vest in the Debtor and Raffone.  The Administrator

12 shall thereafter file a final report and account and seek entry of a final decree.

13   **E.     Risk Factors.**

14         The proposed Plan has the following risks:  The primary Plan risk for the Debtor is the

15 inability to close a sale of the Property for an amount sufficient to pay ~~all~~the reduced amount of

16 the compromised claims of creditors as set forth in ~~full~~the Plan.  The risks for the Debtor and

17 Raffone estates also include the costs of administration and the willingness of tax creditors to

18 accept the discounted payments and conditions imposed upon them if there is a sale of the

19 Property by the Administrator.  If the Administrator commences litigation, there is an additional

20 risk that the litigation can become too expensive or take too long to be justified.

21 **IV.    OTHER PROVISIONS OF THE PLAN.**

22   **A.     Executory Contracts and Unexpired Leases.**

23          **1.     Assumptions.**

24         Exhibit E to the Plan sets forth the unexpired leases and executory contracts to be assumed

25 as obligations of the Reorganized Debtor under this Plan (*see* Exhibit E to the Plan for more

26 detailed information on unexpired leases to be assumed and executory contracts to be assumed).

27         On the Effective Date, each of the unexpired leases and executory contracts listed on

28 Exhibit E to the Plan shall be assumed as obligations of the Reorganized Debtor to be operated by

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  the Administrator.  The Order of the Court confirming the Plan shall constitute an Order

2  approving the assumption of each lease and contract listed above.  If you are a party to a lease or

3  contract to be assumed and you object to the assumption of your lease or contract, you must file

4  and serve your objection to the Plan within the deadline for objecting to the confirmation of the

5  Plan.  *See* the Disclosure Statement describing this Plan for the specific date.

6          **2.**      **Rejections.**

7          On the Effective Date, the following executory contracts and unexpired leases will be

8  rejected:  Any lease or right of possession or occupancy given by Raffone with respect to her real

9  or personal property.

10         The order confirming the Plan shall constitute an order approving the rejection of the lease

11  or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of

12  your contract or lease, you must file and serve your objection to the Plan within the deadline for

13  objecting to the confirmation of the Plan.  *See* Disclosure Statement for the specific date.

14         THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING

15  FROM THE REJECTION OF A LEASE OR CONTRACT IS ~~MARCH 31~~JUNE 30, 2011.

16         Any claim based on the rejection of an executory contract or unexpired lease will be barred

17  if the proof of claim is not timely filed, unless the Court later orders otherwise.

18         **B.**      **Changes in Rates Subject to Regulatory Commission Approval.**

19         This Debtor and Raffone are not subject to governmental regulatory commission approval

20  of its rates.  [~~Jerry F – any~~The Debtor is subject to New York rent ~~regulations that should be

21  included here?~~]control statutes.

22         **C.**      **Dismissal of Litigation.**

23         If the Plan is accepted by creditors, confirmed by the Bankruptcy Court and consummated

24  by the Administrator, then each of the Probate Litigation, the Fraudulent Transfer Litigation, the

25  Florida Civil Litigation, the Discharge Litigation, the Tenant Litigation, ~~the New York Sale~~

26  ~~Litigation,~~ and the New York ~~Foreclosure~~Sale Litigation will be resolved by the Plan.  The

27  Administrator shall be entitled, but not required, to file requests with each respective court for

28  dismissal of the such litigation ***with prejudice*** upon substantial consummation of the Plan and at or

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    about the time the Administrator seeks the entry of a final decree from this Court. This paragraph

2    shall apply to any other litigation discovered by the Administrator that may not be disclosed in this

3    Disclosure Statement, but the significance of which is fully resolved by this Plan.

4        **D.**      <u>**Retention of Jurisdiction.**</u>

5        The Court will retain jurisdiction to the extent provided by law or as provided by this Plan.

6        **E.**      <u>**Tax Consequences of Plan.**</u>

7        CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN

8    MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN

9    ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible

10    tax consequences is intended solely for the purpose of alerting readers about possible tax issues

11    this Plan may present to the Debtor and Raffone. The Proponent CANNOT and DOES NOT

12    represent that the tax consequences contained below are the only tax consequences of the Plan

13    because the Tax Code embodies many complicated rules which make it difficult to state

14    completely and accurately all the tax implications of any action.

15        The following are the tax consequences which the Plan will have on the ~~Debtors~~Debtor's

16    and Raffone's tax liability: It is highly likely there will be tax consequences to the Plan. A capital

17    gains tax owed to the ~~federal government~~IRS and to the State of New York will be due ~~in~~if

18    Property is sold for a value greater than the basis applicable to Raffone at the time she acquired

19    title to the Property. It is believed that Raffone may have filed a gift tax return on the Property,

20    albeit late, and may or may not have paid any of the gift taxes then due. While this Plan has

21    sought to estimate such amounts, it is possible that the taxes will be higher or lower than the

22    estimates set forth in this Plan. Notwithstanding whatever the actual amounts of the tax claim are,

23    the IRS has agreed to accept the amounts set forth in Sections II.B.1. and II.C.3. of this Plan as full

24    satisfaction of the payments due from the Debtor, Raffone, and their post confirmation estates.

25    The State of New York may or may not agree to accept the treatment set forth in this Plan, and if it

26    does not unequivocally consent in writing, prior to the time the Property is sold, the Administrator

27    may not sell the Property and may abandon it, leaving it to the secured creditors to resolve in state

28    court.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

## V.    CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The Proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  These requirements are not the only requirements for confirmation.

### A.    Discharge

This Plan provides that upon confirmation, the Debtor shall not receive a discharge of liability.

This Plan provides that upon confirmation, Raffone shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141.  However, any liability imposed by the Plan upon the DebtorRaffone or itsher assets will not be discharged, including liability for return of tenant deposits spent by Raffone, if any.  In addition, the discharge of Raffone may be revoked under this Plan if Raffone fails or refuses to cooperate in her obligations under this Plan and the Court determines that such failure was willful and intentional and resulted in harm to creditors.

This Plan provides that Raffone's right to a discharge under 11 U.S.C.§ 1141 shall be determined upon the Court's final adjudication of that certainCampbell has objected to the dischargeability of the Campbell claims against Raffone.  If Campbell votes for the Plan or if the Plan is confirmed over his objection, the complaint to determine dischargeability of his debt against Raffone under 11 11 U.S.C. § 523 filed on July 20, 2010 by Campbell.  However, any

1  ~~liability imposed by the Plan upon Raffone or her assets will not be discharged~~will be dismissed

2  with prejudice and the Plan will fix finally the availability of a discharge to her.

3  **B.    Revesting of Property in the Debtor and Raffone**

4  Except as provided in Section IV.~~E~~D., and except as provided elsewhere in the Plan, the

5  confirmation of the Plan vests all of the property of the Debtor's estate in the Reorganized Debtor

6  under the sole control of the Administrator up to such date on which entry of a final judgment in

7  the Foreclosure Litigation occurs, after which the Foreclosure Litigation judgment shall control

8  over the rights of the Administrator under this Plan.  The Debtor's Property shall either be sold by

9  the Administrator pursuant to this Plan, or shall be adjudicated by the Supreme Court of the State

10 of New York in the Foreclosure Litigation, or sold at a judicial or nonjudicial foreclosure sale by a

11 secured creditor other than Madison if it has not already foreclosed on the Property, whichever

12 occurs first.

13 Except as provided in Section IV.E., and except as provided elsewhere in the Plan, the

14 confirmation of the Plan vests all of the property of Raffone's estate in the Reorganized Raffone

15 under the sole control of the Administrator, until such time as the Administrator either

16 (1) abandons any property to Raffone, or (2) determines he has completed his liquidation of

17 property of the estates for the benefit of holders of allowed claims against Raffone and seeks the

18 entry of an order directing the entry of a final decree and the closing of the jointly administered

19 cases based upon his substantial or complete consummation of the Plan.  The Administrator shall

20 have the right to exercise his reasonable discretion to abandon any asset of the Raffone estate at

21 any time.

22 **C.    Modification of Plan**

23 The Proponent of the Plan may modify the Plan at any time before confirmation.

24 However, the Court may require a new disclosure statement and/or revoting on the Plan if

25 proponent modifies the Plan before confirmation.

26 The Proponent of the Plan, the Administrator, the City of New York, any holder of an

27 administrative claim, the United States Trustee, or any unsecured creditor may also seek to modify

28 the Plan at any time after confirmation so long as (1) the Plan has not been substantially

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   consummated, and (2) if the Court authorizes the proposed modifications after notice and a

2   hearing.

3   ~~Campbell shall have no right to seek modification of the Plan.~~

4   ~~Raffone shall have no right to seek modification of the Plan.~~

5   **D.    Post-Confirmation Status Report**

6   Within 120 days of the entry of the order confirming the Plan, the Administrator shall file a

7   status report with the Court explaining what progress has been made toward consummation of the

8   confirmed consolidated Plan.  The status report shall be served on the United States Trustee, all

9   secured creditors, the twenty largest unsecured creditors, and those parties who have requested

10  special notice.  Further status reports shall be filed every 120 days and served on the same entities.

11  **E.    Quarterly Fees of the Respective Estates**

12  **1.    Quarterly Fees of the Debtor**

13  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) prior to the date of confirmation

14  shall be paid to the United States Trustee on or before the Effective Date of the Plan.  Madison's

15  cash collateral that has accrued and is held by Minuit and or the state court receiver, Gerald Kahn,

16  shall be used for such purposes.  In the event there are insufficient funds to pay all quarterly fees

17  that accrued prior the Effective Date of the Plan, Madison shall advance such cash necessary to

18  pay the fees in full on the Effective Date of the Plan and shall be entitled to add such amounts to

19  its Class 2 secured claim.

20  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid by

21  the Administrator to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until

22  entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.  Such

23  payments shall be made from the proceeds of the sale of assets, and only from the cash collateral

24  in the event that the Property will not be sold prior to the close of the second quarter of 2011.  If

25  paid from the cash collateral of Madison, then Madison shall be entitled to add such amounts to its

26  Class 2 secured claim.

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

2.      **Quarterly Fees of Raffone**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) prior to the date of confirmation shall be paid to the United States Trustee by Madison as a gift to the Raffone estate on or before the Effective Date of the Plan.  Madison shall not add such amounts to its Class 2 secured claim.

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee by the Administrator in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.  Such payments shall be made from the proceeds of the sale of Raffone's assets, and only from the cash collateral arising out of the Debtor's Property in the event that the Property will not be sold prior to the close of the second quarter of 2011.  If paid from the cash collateral of advanced by Madison at its sole discretion, then Madison shall be entitled to add such amounts to its Class 2 secured claim.

F.      **Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the cases under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders the cases converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estates, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estates, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during these cases.

G.      **Revocation of Plan Confirmation Order**

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

H.      **Who May Vote or Object.**

1.      **Who May Object to Confirmation of the Plan.**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**2.      Who May Vote to Accept/Reject the Plan.**

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

**a.      What Is an Allowed Claim/Interest.**

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote.  Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM <u>IN THE DEBTOR'S CASE</u> WAS ***AUGUST 20, 2010***.

THE PROPONENT HAS ASKED THE COURT TO SET A BAR DATE <u>IN THE RAFFONE CASE</u> OF ***APRIL 30, 2011***.

THE PROPONENT HAS ASKED THE COURT TO SET A BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT OF ~~MARCH 31~~JUNE 30, 2011.

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's or Raffone's schedules and such claim is not scheduled as disputed, contingent, or unliquidated; (2) no party in interest has objected to the claim; or (3) the Plan proposes to treat the claim as timely.  An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

**b.      What Is an Impaired Claim/Interest.**

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual

1  rights of the members of that class. For example, a class comprised of general unsecured claims is

2  impaired if the Plan fails to pay the members of that class 100% of what they are owed.

3  In this case, the Proponent believes that every Class, excepting ~~Class 11~~Classes 15 and 16,

4  is impaired because no creditor will be paid in full on the Effective Date.  Interest holders in ~~Class~~

5  ~~11~~Classes 15 and 16 are not impaired because (i) Campbell is deemed not to be an interest holder,

6  and (ii) Raffone will receive everything to which she is entitled.  Thus, all creditors are entitled to

7  vote to accept or reject the Plan.  Interest holders will not be permitted to vote.  Nothing prevents

8  an interest holder or creditor in objecting to confirmation of the Plan, even if such party is not

9  permitted to, or fails to vote.  Parties who dispute the Proponent's characterization of their claim

10  or interest as being impaired or unimpaired may file an objection to the Plan contending that the

11  Proponent has incorrectly characterized the class.

12  **3.    Who is Not Entitled to Vote.**

13  The following four types of claims are not entitled to vote: (i) claims that have been

14  disallowed; (ii) claims in unimpaired classes; (iii) claims entitled to priority pursuant to Code

15  sections 507(a)(1), (a)(2), and (a)(8); and (iv) claims in classes that do not receive or retain any

16  value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes

17  are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Code sections

18  507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes

19  and they are required to receive certain treatment specified by the Code. Claims in classes that do

20  not receive or retain any value under the Plan do not vote because such classes are deemed to have

21  rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU

22  MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

23  **4.    Who Can Vote in More Than One Class.**

24  A creditor whose claim has been allowed in part as a secured claim and in part as an

25  unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the

26  secured part of the claim and another ballot for the unsecured claim.

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1

### 5.    Votes Necessary to Confirm the Plan.

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a cram down on non-accepting classes, as discussed later in Section IV(A)(8).

### 6.    Votes Necessary for a Class to Accept the Plan.

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

### 7.    Treatment of Nonaccepting Classes.

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as a cram down. The Code allows the Plan to be crammed down on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not discriminate unfairly and is fair and equitable toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8.    Request for Confirmation Despite Nonacceptance by Impaired Class(es).

The party proposing this Plan will ask the Court to confirm this Plan by cram down if sufficient votes are not received to confirm the plan under section 1129(a).

### I.    Liquidation Analysis.

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1   holder must receive or retain under the Plan property of a value not less than the amount that such

2   holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy

3   Code.

4          In a Chapter 7 case, the Debtor's and Raffone's assets are usually sold by a Chapter 7

5   trustee.  Secured creditors are paid first from the sales proceeds of properties on which the secured

6   creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from

7   any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the

8   same priority share in proportion to the amount of their allowed claim in relationship to the

9   amount of total allowed unsecured claims. Finally, interest holders receive the balance that

10  remains after all creditors are paid, if any.

11         For the Court to be able to confirm this Plan, the Court must find that all creditors and

12  interest holders who do not accept the Plan will receive at least as much under the Plan as such

13  holders would receive under a Chapter 7 liquidation.  The Plan Proponent maintains that this

14  requirement is met here for the following reasons:  the Plan pays allowed claimants in full which

15  is necessarily at least as much as such creditors would receive under chapter 7.

16         Below is a demonstration, in balance sheet format, that all creditors and interest holders

17  will receive at least as much under the Plan as such creditor or interest holder would receive under

18  a Chapter 7 liquidation.  This information is provided by the Plan Proponent based on the Debtor's

19  and Raffone's schedules, MORs and predictions of value of the Property.  This value used for the

20  Property comes from an all-cash offer that Minuit received for the Property in November 2010.

## NEVADA STAR LIQUIDATION ANALYSIS

**Assumes No Preference or Avoidance Actions are Filed**

**ASSETS VALUE AT LIQUIDATION VALUES:**

CURRENT ASSETS

a.   Cash on hand (general, tax and payroll escrow accounts) — $183,865.15

b.   Accounts receivable — $96,239.86[8]

c.   Retainer from Law Offices of Michael Berger — ~~$20,000~~.00

TOTAL CURRENT ASSETS — $~~300~~280,105.01

FIXED ASSETS

a.   Office furniture & equipment (Computer and equip. at Property) — $1,500.00

b.   Machinery & equipment (Tools and supplies at Property) — $800.00

c.   Automobiles — $0.00

d.   Property in New York — $18,000,000.00

TOTAL FIXED ASSETS — $18,002,300.00

**TOTAL ASSETS AT LIQUIDATION VALUE** — **$18,~~302~~282,405.01**

============

---

[8]        Unpaid rent of $88,522.50 for Unit 11B, and withheld deposits for illegal rent stabilized tenant of $7,717.36 for Unit 7B. These numbers will likely be higher at the time of confirmation.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**Less:**
Secured creditor's recovery

| | | |
|---|---|---|
| a) New York City Department of Finance (as of Nov 8, 2010) | | ~~$1,001,590.80~~$5 |
| b) Madison Realty Capital, L.P. (estimate ~~4.30~~3.31.11) | | 30,000 |
| c) Ponichtera Contracting | | $10,~~667,093.9~~25 |
| d) Henry Douglas Campbell ~~(includes $1MM attorney fees + one~~ | | 66,063 |
| ~~year of interest at 10% judgment rate)~~ | | ~~$32,017.29~~,766 |
| e) Christiansen & Jacknin | | ~~$3,750,000.00~~ |
| f) Casey Ciklin Lubitz Martens O'Connell | | |
| g) Beys Stein & Mobargha LLP | | |

**Less:**
~~Chapter 7 trustee fees and expenses (5% of net assets)~~    ~~$915,120.25~~
Plan Administrator's carve out for fees and expenses    ~~$150~~$2,160,229
**Less:**    $50,482
Chapter 11 administrative expenses    $308,452
**Less:**    $214,292
~~Priority claims,~~
~~excluding administrative expense claims~~    $450,000
Priority claims (IRS taxes) (refunded by Raffone estate later)
Priority claims (NY State FICA and income) (refunded by Raffone estate)    ~~$2,901~~153,450
Priority claims (Class 10)
Priority claims (Class 11)    $53,351
**Less:**    $81,603
Debtor's claimed exemptions    $10,000~~.00~~
**Less:**    $58,611
Costs of Sale for Property(est. at 8%)    $0.00

Total Chapter ~~7~~11 Claims (before payment of tax admin and unsecured
claims)    $1,440,000.00
    ==========

(1)    Balance of funds available in Nevada Star    ~~$20,856,822.26~~

(2)    Carve out for unsecured claims of Nevada Star    ~~<$2,554,417.00>~~

~~(2)    Total amt of unsecured claims for Nevada Star~~    ~~$1,548,444.90~~

~~Payment to unsecured creditors in chapter 7:~~    ~~$16,106,299.00~~

**Payment to unsecured creditors in chapter 11:**    $2,176,106.00
~~(Eliminates chapter 7 trustee, portion of Campbell claim exceeding~~
~~$2.5 million, real estate tax reductions are presumed to save $500,000,~~    $21,761.06
~~adds $100K for Plan Administrator)~~

    **$21,761.06**

**Payment to unsecured creditors in chapter 7:**
(Assumes no reduction in rights of administrative tax creditors,    $0.00
prepetition administrative creditors and secured lien creditors, addition
of chapter 7 trustee fees)    ~~$10,703.00~~

**% OF THEIR CLAIMS WHICH NEVADA STAR'S UNSECURED CREDITORS
WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION: = 0%**

**% OF THEIR CLAIMS WHICH NEVADA STAR'S UNSECURED CREDITORS
WOULD RECEIVE OR RETAIN UNDER THIS PLAN: = ~~0.69%~~
2.3% - 10%**

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

In addition to the availability of ~~some~~ a small guaranteed amount of cash to pay unsecured creditors, it is ~~believed~~possible that the Administrator will cause the ~~capital gains tax~~ Property to be ~~reduced~~sold without a broker's commission, which would reduce the costs of sale from an estimated $1,440,000 to $360,000.  That savings would allow an additional $1,080,000 to flow down to the Tax Fund, making a total of $3,256,106 available to the IRS and State of New York Department of Finance.  Assuming the purchase price for the building also exceeds $19.1 million, then these increased funds would then cause the tax creditors to fund the Debtor's Fund with a minimum of 10% of the total allowed claims, which is expected to be $93,208.  If the purchase price is below $19.1 million, then the amount paid into the Debtor's Fund will remain at 1%, for an approximate 2.5% distribution to general unsecured creditors.  If the capital gains cannot be reduced to provide ~~a larger~~some benefit to unsecured creditors, because the State of New York Department of Finance refuses to consent to the Plan, then the Administrator will not be required to sell the Property.

### 1.    Benefits of Chapter 11 Plan

Under the Plan, ~~substantial other~~ creditors of the Debtor other than just secured creditors will be paid, including past due pre- and post- petition real estate taxes to New York, all secured creditors, all pre-petition administrative creditors of the bankruptcy case, ~~and~~ all post petition expenses of the reorganized debtor, and all capital ~~gains~~gains and gift taxes which were not paid by Raffone at the time of transfer in 2003.  Thus the benefits to the Plan are real and not illusory.  The alternative of foreclosure by the Plan Proponent or conversion to Chapter 7 and the inherent risks that the appointed trustee might abandon the Property back to the Debtor, continuing the decade long war between Raffone and Campbell, is less appealing.

### 2.    Detail on Projected Zero Distribution in Chapter 7 Estate

Madison estimates that the distribution in a Chapter 7 case would be zero because the trustee would evaluate the likelihood of a significant administrative tax liability, and determine that the sale of the Property in a chapter 7 sale under 11 U.S.C. § 363 sale would not render any benefit to unsecured creditors.  Accordingly, such a trustee, without a compromise offered by the

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  IRS in this Chapter 11 Plan, would likely abandon the Property to the secured lenders and allow

2  Madison's foreclosure to take place.

3  **NEVADA STAR LIQUIDATION ANALYSIS**

4  **Assumes Chapter 7 Trustee is Appointed**

5  **ASSETS VALUE AT LIQUIDATION VALUES:**

CURRENT ASSETS

6  a.      Cash on hand (general, tax and payroll escrow accounts)                              $183,865.15

7  b.      Accounts receivable                                                                  $96,239.86[9]

   c.      Retainer from Law Offices of Michael Berger                                          $0.00

8          TOTAL CURRENT ASSETS                                                                 $280,105.01

FIXED ASSETS

9  a.      Office furniture & equipment (Computer and equip. at Property)                       $1,500.00

   b.      Machinery & equipment (Tools and supplies at Property)                              $800.00

10 c.      Automobiles                                                                          $0.00

   d.      Property in New York                                                                 $18,000,000.00

11

12         TOTAL FIXED ASSETS                                                                   $18,002,300.00

13 **TOTAL ASSETS AT LIQUIDATION VALUE**                                                        **$18,282,405.01**
                                                                                                ===========

14 **Less:**

   Secured creditor's recovery

15      a) New York City Department of Finance (as of Nov 8, 2010)                              $530,000

        b) Madison Realty Capital, L.P. (estimate 3.31.11)                                      $10,566,063

16      c) Ponichtera Contracting                                                               $29,766

        d) Henry Douglas Campbell                                                               $2,160,229

17      e) Christiansen & Jacknin                                                               $50,482

        f) Casey Ciklin Lubitz Martens O'Connell                                                $308,452

18      g) Beys Stein & Mobargha LLP                                                            $214,292

   **Less:**

   Chapter 7 administrative expenses                                                            $153,450

19 **Less:**

20 Priority claims (IRS taxes) (refunded by Raffone estate later)                               $53,351

   Priority claims (NY State FICA and income) (refunded by Raffone estate)                      $81,603

   Priority claims (Class 10)                                                                   $10,000

21 Priority claims (Class 11)                                                                   $58,611

   **Less:**

22 Debtor's claimed exemptions                                                                  $0.00

   **Less:**

23 Costs of Sale for Property(est. at 8%)                                                       $1,440,000.00
                                                                                                ===========

24 Total Chapter 7 Claims (before payment of tax admin and unsecured claims)                    $15,656,299.00

25    Balance of funds available in Nevada Star                                                 $2,626,106.00

26 _____
   [9]      Unpaid rent of $88,522.50 for Unit 11B, and withheld deposits for illegal rent stabilized tenant of

27 $7,717.36 for Unit 7B.  These numbers will likely be higher at the time of confirmation.

28

**Amount due for Capital Gains Tax (est.):**                                    $5,700,000.00

**Payment to unsecured creditors in chapter 7:**                                        **$0.00**

3.    **Projected Distribution if Avoidance Power Actions are Successful**

In the event that avoidance power actions are filed against creditors holding claims in any of the Classes 4-7, then the distribution to unsecured creditors may be much higher.  Below is a demonstration, in balance sheet format, of how such a distribution would work, presuming the avoidance power complaints are successful and lead to judgment reducing those creditors into Class 12.

**NEVADA STAR LIQUIDATION ANALYSIS**

**Assumes Successful Avoidance Actions to Judgment**

**ASSETS VALUE AT LIQUIDATION VALUES:**
CURRENT ASSETS
a.    Cash on hand (general, tax and payroll escrow accounts)              $183,865.15
b.    Accounts receivable                                                  $96,239.86[10]
c.    Retainer from Law Offices of Michael Berger                                $0.00
       TOTAL CURRENT ASSETS                                               $280,105.01
FIXED ASSETS
a.    Office furniture & equipment (Computer and equip. at Property)         $1,500.00
b.    Machinery & equipment (Tools and supplies at Property)                  $800.00
c.    Automobiles                                                              $0.00
d.    Property in New York                                                $18,000,000.00

       TOTAL FIXED ASSETS                                                $18,002,300.00

**TOTAL ASSETS AT LIQUIDATION VALUE**                                   **$18,282,405.01**
                                                                        ===========

**Less:**
Secured creditor's recovery
       a)  New York City Department of Finance (as of Nov 8, 2010)          $530,000
       b)  Madison Realty Capital, L.P. (estimate 3.31.11)               $10,566,063
       c)  Ponichtera Contracting                                           $29,766
**Less:**
Plan Administrator's carve out for fees and expenses                        $750,000
**Less:**
Chapter 11 administrative expenses                                          $153,450
**Less:**
Priority claims (IRS taxes) (refunded by Raffone estate later)               $53,351

---

[10]    Unpaid rent of $88,522.50 for Unit 11B, and withheld deposits for illegal rent stabilized tenant of $7,717.36 for Unit 7B.  These numbers will likely be higher at the time of confirmation.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| | | |
|---|---|---|
| Priority claims (NY State FICA and income) (refunded by Raffone estate) | | $81,603 |
| Priority claims (Class 10) | | $10,000 |
| Priority claims (Class 11) | | $58,611 |
| **Less:** | | |
| Debtor's claimed exemptions | | $0.00 |
| **Less:** | | |
| Costs of Sale for Property(est. at 8%) | | $1,440,000.00 |
| | | =========== |
| Total Chapter 11 Claims (before payment of tax admin and unsecured claims) | | $13,672,844.00 |
| (1)      Balance of funds available in Nevada Star | | $4,609,561.00 |
| (2)      Carve out for unsecured claims of Nevada Star | | $46,095.61 |
| **Payment to unsecured creditors in chapter 11:** | | **$46,095.61** |
| **Payment to unsecured creditors in chapter 7:** | | $0.00 |

(Assumes no reduction on rights of administrative tax creditors,
prepetition administrative creditors and secured lien creditors, addition
of chapter 7 trustee fees)

**% OF THEIR CLAIMS WHICH NEVADA STAR'S UNSECURED CREDITORS
WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION: = 0%**

**% OF THEIR CLAIMS WHICH NEVADA STAR'S UNSECURED CREDITORS
WOULD RECEIVE OR RETAIN UNDER THIS PLAN: = 1.69% to 10%**

The reason that the distribution in a case where avoidance actions are brought returns less to creditors is because the amounts proposed to be paid to Classes 4-7 ($2,733,455) is added to general unsecured claims of $932,073, making the Class 12 claims surge to $3,665,528. However, the amount of cash available only increases from $21,761 to $46,096, as the vast majority of the increase goes to the taxing creditors who are expected to hold claims exceeding $5.5 million.[11] Even with their consent to accept reduced payments, they would only receive roughly $4.55 million and general unsecured creditor recovery would drop from 2.3% to 1.6%. The only time the Carve Out Ceiling would apply is if the Property sells for in excess of $19.1 million. The offsetting cost of several hundred thousand in litigation expenses does not appear likely to put more money in the hands of unsecured creditors.

---

[11]      In the event that the Property has a basis of $1,899,610, then the maximum recovery by the IRS and State of NY may be only $4,398,117 ($18 million less $1,440,000 costs of sale, less basis of $1,899,610, multiplied by .30), which would leave $211,444 for the benefit of Class 12, resulting in a 5.8% recovery ($211,444 divided by $3,655,528).

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Below is a demonstration, in balance sheet format, that all creditors and interest holders in the Raffone case will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation.

### CLAUDIA RAFFONE LIQUIDATION ANALYSIS

**ASSETS VALUE AT LIQUIDATION VALUES:**

CURRENT ASSETS

| | | |
|---|---|---|
| a. | Cash on hand (only to extent non-exempt) | $0.00 |
| b. | Horses | |
| | TOTAL CURRENT ASSETS | $100,000.00unknown |
| | | $100,000.00 |

FIXED ASSETS

| | | |
|---|---|---|
| a. | Office furniture & equipment (presumed exempt) | $0.00 |
| b. | Machinery & equipment | $0.00 |
| c. | Automobiles (Mercedes, truck, trailer, Maybach (no value est.)) | $78,300.00 |
| d. | SFR Beverly Hills CA | $1,175,000.00 |
| e. | SFR Loxahatchee FL | $600,000.00 |
| f. | Membership interest in Debtor (disputed by Campbell)[12] | $0.00 |
| | TOTAL FIXED ASSETS | $1,853,300.00 |

**TOTAL ASSETS AT LIQUIDATION VALUE**        **$1,953853,300.00**
============

Less:
Secured creditor's recovery

| | |
|---|---|
| a) State of California, County of Los Angeles | $2,000.00 |
| b) Florida Loxahatchee County | $7,737.52 |
| c) Links Capital Partners, LLC, et al.; DB Pension Plan Trust | $350,000.00 |
| d) J.P. Morgan Chase | |

Less:
Chapter 7 trustee fees and expenses (5% of net assets)        $97,665.00
Plan Administrator's anticipated fees and expenses        $15250,000.00

Less:
Chapter 11 administrative expenses        $150,000.00

Less:
Priority claims, excluding administrative expense claims        $48,450.99
Priority claims (IRS taxes) (refunded by Raffone estate later)
Priority claims (NY State FICA and income) (refunded by Raffone estate)        $46,500.00

Less:
Debtor's claimed exemptions (presumed all household goods and        $53,351
furnishings, all personal clothing)        $81,603

Less:
Costs of Sale for SFR properties
        $0.00

[12] Not only does Campbell argue he may be the true owner of the membership interest in the Debtor, depending on anticipated appeal of prior court rulings, he also argues that if Raffone remains the member of the Debtor holding the membership interests that he holds a security interest against her property right to the extent of at least $4 million.

SM01DOCS\820240.2

89

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Total Chapter ~~7~~11 Claims (before payment of unsecured claims)

$142,000.00
===========

(1)    Balance available for unsecured claims of Claudia Raffone    ~~$653,115.99~~

(2)    Total amt of unsecured claims for Raffone    ~~$1,300,184.1~~

~~**Payment to unsecured creditors in chapter 7:**~~    ~~$556,578.40~~

**Payment to unsecured creditors in chapter 11:**    ~~$556,578.40~~
(Eliminates

**Payment to unsecured creditors in chapter 7:**
(Offset chapter 7 trustee~~, adds $25K for Plan~~ with Administrator,    ~~$556,578.40~~$1,0
presume on going litigation with Raffone to vacate properties at est. cost    83,191.52
of $200,000, presume Campbell retains claim for $600,000 secured
claim on FL property)    $770,108.48

$2,110,239.21

$770,108.48

$0.00

**% OF THEIR CLAIMS WHICH RAFFONE'S UNSECURED CREDITORS WOULD
RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION: =~~100~~0.0%**

**% OF THEIR CLAIMS WHICH RAFFONE'S UNSECURED CREDITORS WOULD
RECEIVE OR RETAIN UNDER THIS PLAN: = ~~100%~~
36.5%**

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Pre-Petition Administrative Claims | ~~100%~~93% | ~~1~~0.00% |
| Priority Tax Claims | 100% | ~~1~~0.00% |
| Classes 1 ~~to 5~~ -2 – Secured Claims | 100% (slightly less for Madison) | 100% |
| ~~Classes 6-7 – Priority Unsecured Claims~~Class 3 | ___%93% | ~~1~~0.00% |
| ~~Classes 8 and 9 – General Unsecured Claims~~Class 4 | ___%93% of reduced claim 54% of claimed $4 million | ___%0.00% |

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| ~~Class 10 – Subordinated General Unsecured Claims~~ Classes 5 to 7 -- Secured Claims | ~~—%~~93% | 0.00% |
| ~~Class 11 – Interests~~ Classes 10-11 – Priority Unsecured Claims | ~~Unimpaired~~100% | 0.00% |
| Classes 12 and 13 – General Unsecured Claims | Class 12 between 2.3% and 10% Class 13 -- 36.5% | 0.00% |
| Class 14 – Subordinated General Unsecured Claims | 0.00% | 0.00% |
| Classes 15 and 16 – Interests | Unimpaired | Unimpaired |

**J.    Feasibility.**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or Raffone or any successor to the Debtor or Raffone under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis.  The first aspect considers whether the Debtor and Raffone will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.  The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

Cash both debtors will have on hand by Effective Date:                $183,865.15

**To Pay:**  Administrative claims (UST, Clerk, and half allowed fees)      Est. at -$~~50~~-75,000.00

**To Pay:**  Statutory costs & charges                                                 -$0.00

**To Pay:**      Other Plan Payments due                                          -$0.00
                on Effective Date (priority and unsecured creditors)
Balance (due) after paying these amounts................................................  $108,865.15

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

       $141,865.15   Cash in New York Escrow Account now

       $40,000.00   Additional cash that will accumulate from net earnings between now
                and Effective Date

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| | |
|---|---|
| $0.00 | Borrowing |
| $2,000.00 | Gift from Madison (to cover Raffone admin exp. to UST) |
| **$183,865.15** | **Total** |

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.  The Plan is consummated in the months following the Effective Date, but in light of the projected value of the Property, and the purpose of the Plan to liquidate all assets, prospective payments are not believed to be material to performance under the Plan.

YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

SM01DOCS\820240.2

FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1

**K.**      <u>**Final Decree.**</u>

2

     Once the estates have been fully administered as referred to in Bankruptcy Rule 3022, the

3

Administrator or other party as the Court shall designate in the Plan Confirmation Order, shall file

4

a motion with the Court to obtain a final decree to close the cases.

5

               *<u>/s/ Brian Shatz</u>*

6

               Signature of Plan Proponent
               Managing member of Madison Realty Capital GP,

7

               LLC, the general partner of Madison Realty Capital,
               L.P.

8

9

               *<u>/s/ Katherine M. Windler</u>*
               Signature of Attorney for Plan Proponent

10

               Katherine M. Windler of Bryan Cave LLP

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

<u>FIRST AMENDED</u> CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
<u>FIRST AMENDED</u> CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**120 Broadway, Suite 300, Santa Monica, CA 90401**

A true and correct copy of the foregoing document described as ***NOTICE OF FILING OF REDLINE OF FIRST AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION*** will be served or was served in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***February 11, 2011,*** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ***February 11, 2011,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

| By Overnight Delivery | By U.S. Mail |
|---|---|
| Honorable Peter Carroll | Debtor |
| United States Bankruptcy Court | Nevada Star LLC |
| 255 E Temple Street, Courtroom 1539 | Claudia Raffone |
| Los Angeles, CA 90012 | 1401 Claridge Drive |
|  | Beverly Hills, CA 90210 |
|  |  |
| United States Trustee (LA) | Links Capital Partners, LLC |
| Attention: Russell Clementson | Defined Benefit Pension Plan Trust |
| 725 S. Figueroa St. 26th Floor | 9777 Wilshire Blvd, 6th Floor |
| Los Angeles, CA 90017 |  |

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***Fill in Date Document is Filed,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 11, 2011 | Michael M. Mason | /s/ Michael M. Mason |
|---|---|---|
| Date | Type Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                                     **F 9013-3.1.PROOF.SERVICE**
819927.2

**Additional Service Information
VIA NOTICE OF ELECTRONIC FILING (NEF)**

Michael Jay Berger on behalf of Debtor Claudia Raffone (michael.berger@bankruptcypower.com);
Russell Clementson on behalf of U.S. Trustee United States Trustee (LA) (russell.clementson@usdoj.gov);
United States Trustee (LA) (ustpregion16.la.ecf@usdoj.gov.)
Lewis R Landau on behalf of Creditor Committee Creditors Committee of Nevada Star, LLC (lew@landaunet.com),
R G Pagter on behalf of Creditor Henry Campbell (gibson@pagterandmiller.com, pandm@pagterandmiller.com;
Thomas M. Geher (tmg@jmbm.com)
Brett A. Axelrod on behalf of Fox Rothschild LLP (baxelrod@foxrothschild.com, mrustia@foxrothschild.com)
David L. Neale on behalf of Creditor Beys , Stein & Mobargha LLP (dln@lnbrb.com, kjm@lnbrb.com)
Sandor T. Boxer on behalf of Creditor Castle Oil Corporation (tedb@tedboxer.com)
Michael W. Tan on behalf of Creditor United States of America, IRS (michael.w.tan@irscounsel.treas.gov)

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

**F 9013-3.1.PROOF.SERVICE**

819927.2