**BRYAN CAVE LLP**
Katherine M. Windler, California Bar No. 158899
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Telephone:     (310) 576-2100
Facsimile:     (310) 576-2200
Email:           katherine.windler@bryancave.com

Attorneys for Madison Realty Capital LP

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No.  2:10-bk-26188-PC (Lead Case) |
| | Administratively Consolidated with Case No. 2:10-bk-27683-PC |
| NEVADA STAR, LLC, | Hon. Peter Carroll |
| Debtor. | Chapter 11 |
| Tax ID / EIN: 68-0658426 | **NOTICE OF FILING OF REDLINE OF SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR NEVADA STAR LLC;** |
| In re | **Original Disclosure Statement Hearing** |
| CLAUDIA RAFFONE, | Date:      December 15, 2010<br>Time:      9:30 a.m. |
| Debtor. | **Hearing on Second Amended Disclosure Statement** |
| | Date:      April 6, 2011<br>Time:      9:30 a.m.<br>Ctrm:      1539<br>          U.S. Bankruptcy Court<br>          255 E. Temple Street, 15th Floor<br>          Los Angeles, CA 90012 |

*Bryan Cave LLP*
*120 Broadway, Suite 300*
*Santa Monica, California 90401-2386*

**BRYAN CAVE LLP**
Katherine M. Windler, California Bar No. 158899
120 Broadway, Suite 300
Santa Monica, California  90401-2386
Telephone:      (310) 576-2100
Facsimile:      (310) 576-2200
Email:          katherine.windler@bryancave.com

Attorneys for Madison Realty Capital LP

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>NEVADA STAR, LLC,<br><br>          Debtor.<br><br>Tax ID / EIN: 68-0658426 | Case No.  2:10-bk-26188-PC (Lead Case)<br><br>Administratively Consolidated with Case No. 2:10-bk-27683-PC<br><br>Hon. Peter Carroll<br><br>Chapter 11<br><br>~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING ~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION |
| In re<br><br>CLAUDIA RAFFONE,<br><br>          Debtor. | **Hearing on ~~First~~Second Amended Disclosure Statement**<br><br>Date:   ~~March 1~~April 6, 2011<br>Time:   9:30 a.m.<br>Ctrm:   1539<br>       U.S. Bankruptcy Court<br>       255 E. Temple Street, 15th Floor<br>       Los Angeles, CA 90012<br><br>**Plan Confirmation Hearing**<br><br>Not Yet Set |

SM01DOCS\829745.2

~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................... 1

A.      Purpose of This Document. ..................................................................... 3

B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing. ........... 4

1.      Time and Place of the Confirmation Hearing. ............................. 4

2.      Deadline For Voting For or Against the Plan. .............................. 4

3.      Deadline For Objecting to the Confirmation of the Plan. ................. 4

4.      Identity of Person to Contact for More Information Regarding the Plan. ........ 4

C.      Disclaimer. .......................................................................................... 5

II.     BACKGROUND .................................................................................................. 5

A.      Description and History of the Debtor's Business. ................................. 5

1.      History According to Raffone ........................................................ 6

2.      History According to Campbell ................................................... 12

B.      Principals/Affiliates of Debtor's Business. .......................................... 15

C.      Management of the Debtor Before and After the Bankruptcy. .............. 15

D.      Events Leading to Chapter 11 Filing. .................................................. 17

E.      Significant Events During the Bankruptcy. .......................................... 26

1.      Bankruptcy Proceedings. .......................................................... 26

a.      Bankruptcy Case Matters: ............................................... 26

b.      Other Legal Proceedings. ............................................... 27

2.      Actual and Projected Recovery of Preferential or Fraudulent Transfers. ......... 27

3.      Procedures Implemented to Resolve Financial Problems. .............. 28

4.      Current and Historical Financial Conditions. ............................. 29

III.    ~~SUMMARY~~CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS IN THE ~~PLAN OF REORGANIZATION~~DEBTOR'S ESTATES ............ 29

A.      ~~What Creditors and Interest Holders Will Receive Under The Proposed Plan.~~General Overview ................................................ 29

B.      Unclassified Claims~~.~~ ............................................................................ 30

1.      Administrative Expenses~~.~~ .......................................................... 30

2.      Court Approval of Fees Required. ............................................... 31

3.      Priority Tax Claims. ................................................................ 32

C.      Classified Claims and Interests. .......................................................... 32

1.      Classes of Secured Claims. ...................................................... 32

2.      Classes of Priority Unsecured Claims. ....................................... 44

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

3.    Classes of General Unsecured Claims. ....................................47
            a.    Unsecured Claims of the Debtor ........................48
     b.    Unsecured Claims of Raffone ..............................52
     4.    Class of Subordinated Claims ........................................48
     5.    Class(es) of Interest Holders. .......................................48
D.    Quarterly Fees ...........................................................................48
E.    Mutual General Releases ............................................................49
F.    Means of Effectuating the Plan. ................................................50
     1.    Secured Creditors'Debtor's Alternative ......................50
     2.    Funding for the Plan. ....................................................50
     3.    Requirement of Tax Election .......................................50
     4.    Post Confirmation Authority of Administrator ............51
            a.    Sale of Property ................................................51
            b.    Overbid Procedures and Break Up Fee .............52
            c.    Sale Order .........................................................55
            d.    Closing ..............................................................55
            e.    Auction and Other Conditions .........................56
     5.    Payment of Creditors ...................................................60
     6.    Use of Cash Collateral .................................................60
     7.    Post-Confirmation Management. ..................................61
     8.    Disbursing Agent. ........................................................61
     9.    Tender of Possession, or Warrant of Eviction and Judgment of
            Possession Against Raffone. ........................................65
     10.    Entry of the Confirmation Order .................................61
     1110.    Entry of Final Decree .................................................61
EG.    Risk Factors. ..............................................................................61
IV.    Other Provisions of the Plan. ...............................................................62
A.    Executory Contracts and Unexpired Leases. ..............................62
     1.    Assumptions. ................................................................62
     2.    Rejections. ...................................................................62
B.    Changes in Rates Subject to Regulatory Commission Approval. ..63
C.    Dismissal of Litigation. ..............................................................63
D.    Retention of Jurisdiction. ...........................................................63
E.    Tax Consequences of Plan. ........................................................63
V.    CONFIRMATION REQUIREMENTS AND PROCEDURES .................64
A.    Discharge ....................................................................................64

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

B.    Revesting of Property in the Debtor and Raffone ......................................... 64

C.    Modification of Plan................................................................................... 65

D.    Post-Confirmation Status Report ............................................................... 65

E.    Quarterly Fees of the Respective Estates ................................................... 65

    1.    Quarterly Fees of the Debtor................................................... 71

  2.    Quarterly Fees of Raffone ............................................................ 72

F.    Post-Confirmation Conversion/Dismissal .................................................. 66

G.    Revocation of Plan Confirmation Order .................................................... 66

H.    Who May Vote or Object. .......................................................................... 66

    1.    Who May Object to Confirmation of the Plan. ......................... 66

    2.    Who May Vote to Accept/Reject the Plan. .............................. 66

        a.    What Is an Allowed Claim/Interest. ............................... 66

        b.    What Is an Impaired Claim/Interest. ............................... 67

    3.    Who is Not Entitled to Vote. ................................................... 68

    4.    Who Can Vote in More Than One Class.................................... 68

    5.    Votes Necessary to Confirm the Plan. ...................................... 68

    6.    Votes Necessary for a Class to Accept the Plan........................ 68

    7.    Treatment of Nonaccepting Classes. ........................................ 69

    8.    Request for Confirmation Despite Nonacceptance by Impaired Class(es). ................................................................................... 69

I.    Liquidation Analysis. ................................................................................. 69

    1.    Benefits of Chapter 11 Plan .................................................... 71

    2.    Detail on Projected Zero Distribution in Chapter 7 Estate....................... 78

    3.    Projected Distribution if Avoidance Power Actions are Successful ........ 80

J.    Feasibility. ................................................................................................. 72

K.    Final Decree. .............................................................................................. 73

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

## I.    **INTRODUCTION**

Nevada Star, LLC ("Nevada Star" or "Debtor") is the Debtor in a Chapter 11 bankruptcy case known as 2:10-bk-26188-PC.  On April 26, 2010, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 *et seq*.  The Debtor's principal asset is a parcel of real property, commonly described as a 49 unit apartment building,[1] located at 114 West 86th Street in New York City, N.Y. and all fixtures and incidental personal property that is used for the operations and maintenance of the building (the "Property").

Claudia Raffone ("Raffone") is also a debtor in the administratively consolidated Chapter 11 bankruptcy case known as 2:10-bk-27683-PC.  On May 4, 2010, Raffone filed a voluntary petition under chapter 11 of the Bankruptcy Code.  Raffone's principal assets are two single family residences located in Beverly Hills, California and Florida, although she may have additional assets available for liquidation as well.  On October 14, 2010, the Court ordered the cases of the Debtor and Raffone to be administratively consolidated [Debtor Dkt No. 146; Raffone Dkt No. 29].

**This disclosure statement does not apply to the Raffone bankruptcy estate**.  While the disclosure statement reveals facts and events that occurred affecting the Raffone estate, such disclosures are made in order to assist creditors in understanding their rights and how the proposed plan in the Debtor's case may impact any rights they may also have in the Raffone estate.

Chapter 11 allows the Debtor and Raffone, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization.  The plan filed along with this ~~Consolidated~~Second Amended Disclosure Statement ("Disclosure Statement") is a ~~Consolidated~~ Chapter 11 Plan of Liquidation ("Plan~~")~~") for the Debtor only.  A plan may provide for the debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  This Plan intends to ~~combine both~~cause the sale of the Debtor's Property~~, and a probable sale of Raffone's assets~~.

---

[1]    When the superintendant's 2-bedroom apartment in the basement is included, the building is considered to have 50 units.  However, only 49 units are available for lease to the public.

~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1    Prior to the closing of the sale of any asset, the Plan provides for the property of the

2 ~~estates~~Debtor's estate to be operated by an administrator appointed under the Plan.  Madison

3 Realty Capital, L.P. ("Madison" or the "Proponent") is the party proposing the Plan sent to you in

4 the same envelope as this document.  The ~~only creditor who has~~creditors who have indicated

5 ~~its~~their support for the Plan ~~is~~are: (i) the Internal Revenue Service~~.  The~~, (ii) the Committee of

6 Creditors Holding Unsecured Claims ("Committee~~") has not yet taken a position.  "~~"), (iii) Henry

7 Douglas Campbell ("Campbell~~") has indicated he does not concur with the Plan and will not agree~~

8 ~~to take the discount set forth herein~~"), and (iv) Fox Rothschild, the largest creditor in the general

9 unsecured creditor class.  Numerous other creditors are believed to be favorable toward the Plan

10 but may not favor every component of the Plan.  Raffone has indicated she is opposed to the

11 confirmation of the Plan, despite that her interests in the Debtor remain unaltered.  Certain law

12 firms holding lien claims have ~~strongly~~indicated their preference for a plan that would "pass

13 ~~through" the tax liability to Raffone~~not include a drop dead closing date of June 30, 2011.  It is

14 impossible for the Proponent to predict whether this ~~plan~~Plan might be confirmed.  THE

15 DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE

16 ENCLOSED PLAN.

17    This is a ~~Plan of liquidation~~liquidating Plan.  In other words, the Proponent seeks to

18 accomplish payments under the Plan by ~~selling the Debtor's~~appointing an independent post

19 confirmation administrator ("Administrator") to sell the Property ~~set forth on Exhibit A to the Plan~~

20 ~~and paying creditors with the proceeds of such sale.  In addition, the Plan provides for the sale of~~

21 ~~Raffone's property set forth on Exhibit B~~of the Debtor's estate to ~~the Plan and paying her creditors~~

22 ~~(some of which overlap with the claims asserted against the Debtor).  Only~~pay the Debtor's

23 creditors ~~of Raffone who can assert allowed claims against Raffone shall participate in a~~

24 ~~distribution of the proceeds of the sale(s) of property.~~  The assets of the Raffone estate~~,~~ will not be

25 sold under this Plan ~~to the extent such creditors' claims are not satisfied by the proceeds~~satisfy

26 creditor claims against Raffone.[2]  A list of the ~~Debtor's Property~~known assets of Nevada Star is

27 _____
[2]    There is overlap between the creditors of the two bankruptcy estates, in that certain claims are

28 asserted against both estates.  Nothing in this Plan prohibits any unpaid portion of an allowed claim against
the Debtor under this Plan from being asserted against Raffone.  In addition, under the Plan, the Internal

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  attached at Exhibit A.  The Plan Administrator may locate additional assets which are intended to

2  be included in this Plan, even if not discovered until a later date.

3       To the extent that any unsecured claim is successfully asserted against the Debtor, it will

4  be paid from the funds obtained from the liquidation of assets *only after* certain other secured

5  claims, administrative claims and priority claims of creditors of Nevada Star are satisfied as

6  provided for in this Plan (*see* Section II.C.3.a. below).  A list of the filed and scheduled claims

7  (non-disputed) against Nevada Star is attached at Exhibit B.

8       The effective date of the proposed Plan is the first date that is 14 days after the entry of an

9  order confirming the Plan, providing no stay pending appeal is obtained by that date (the

10  "Effective Date").

11       **A.    Purpose of This Document.**

12       This Disclosure Statement summarizes what is in the Plan, and tells you certain

13  information relating to the Plan and the process the Court follows in determining whether or not to

14  confirm the Plan.  The Plan seeks to resolve all claims against both Nevada Star and Raffone in

15  one consolidated document.

16       **READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO**

17  **KNOW ABOUT:**

18       **(1)    WHO CAN VOTE OR OBJECT,**

19       **(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will**

20  **likely receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO**

21  **WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

22       **(3)    THE HISTORY OF THE DEBTOR AND RAFFONE AND SIGNIFICANT**

23  **EVENTS DURING THE BANKRUPTCY CASES,**

24       **(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER**

25  **OR NOT TO CONFIRM THE PLAN,**

26       **(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

27

28  Revenue Service ("IRS") has agreed to accept a substantial discount as a settlement of its litigation claims.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**(6)    WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.  Any party can now solicit votes for or against the Plan.

**B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL CREDITORS AND INTEREST HOLDERS IN THESE CASES.

**1.    Time and Place of the Confirmation Hearing.**

The hearing where the Court will determine whether or not to confirm the Plan will take place on the date set forth in the accompanying notice, once set, in Courtroom 1539, 15th Floor, United State Bankruptcy Court, 255 E. Temple Street, Los Angeles, California 90012.

**2.    Deadline For Voting For or Against the Plan.**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Katherine M. Windler, Attorney at Law, c/o Bryan Cave LLP, 120 Broadway, Third Floor, Santa Monica, California, 90401.

Your ballot must be received by the date set forth in the accompanying notice or it will not be counted.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

3.     **Deadline For Objecting to the Confirmation of the Plan.**

Objections to the confirmation of the Plan must be filed with the Court and served upon Katherine M. Windler, Attorney at Law, c/o Bryan Cave LLP, 120 Broadway, Third Floor, Santa Monica, California, 90401 by the date set forth in the accompanying notice.

4.     **Identity of Person to Contact for More Information Regarding the Plan.**

Any interested party desiring further information about the Plan should contact Katherine M. Windler, Attorney at Law, c/o Bryan Cave LLP, 120 Broadway, Third Floor, Santa Monica, California, 90401, telephone 310-576-2105, facsimile 310-260-4105, email katherine.windler@bryancave.com.

C.     **Disclaimer.**

The financial data relied upon in formulating the Plan is based on Debtor's ~~and Raffone's~~ books and records, information received from Raffone and Campbell and court pleadings filed by them in various litigation matters that occurred before the bankruptcy cases, and information learned about the Property from the operations managed by Minuit Partners Property Management LLC ("Minuit") during the time of the chapter 11 cases. The information contained in this Disclosure Statement was written by the attorney working at the law firm hired by the Proponent based on documents and information that was provided to it by the Debtor, Raffone, Campbell and Minuit. A substantial portion of the records of the Debtor and Raffone were not made available to the Proponent. The Plan Proponent represents that everything stated in the Disclosure Statement is true to the Proponent's best knowledge. The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

II.     **BACKGROUND**

A.     **Description and History of the Debtor's Business.**

The Debtor is a New York limited liability company. The Debtor filed its chapter 11 case on April 26, 2010. Since the inception of the case, the Debtor has not been permitted to manage and operate its business as a debtor in possession. Instead, Minuit was appointed to act as the

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  property manager for the Property by the Honorable Judge Peter O. Sherwood of the New York

2  Supreme Court by order entered on March 25, 2010 in the New York Sale Litigation (defined

3  below).  Minuit has managed the Property, collected rents, paid expenses and repairs and prepared

4  all the Monthly Operating Reports through January 2011.  Copies of the Monthly Operating

5  Reports ("MORs") are available from Pacer at https://pacer.login.uscourts.gov/cgi-bin/login.pl or

6  by writing to the plan proponent at the address in the top left corner of the first page of this

7  document, who will provide copies of the MORs to any requesting party.

8      Raffone is an individual who resides in Beverly Hills, California, and who maintains a

9  residence in Florida.  Raffone has been involved in significant litigation with Campbell for many

10  years.

11      Because Raffone and Campbell have totally different perspectives on how this bankruptcy

12  case came about, and what facts are relevant in helping creditors understand how they find

13  themselves in this position today, each individual's perspective is represented below, first the

14  factual history according to what Raffone has told the Plan Proponent, and then the factual history

15  according to what Campbell has told the Plan Proponent.  Plan Proponent does not promote the

16  truth or accuracy of either individual's perspective.

17                    **1.    <u>History According to Raffone</u>**

18      Traute Raffone ("Traute") was born in Czechoslovakia on August 20, 1920. She married

19  John Joseph Raffone and had a daughter named Claudia Raffone.  Claudia Raffone is the person

20  referred to in this Disclosure Statement as "Raffone."  Following a divorce, Traute married

21  Campbell on August 27, 1966.  Traute continued to use her first husband's last name even after

22  her marriage to Campbell.  On March 31, 1980, Traute's aunt, Olga Elfer, individually and as the

23  executrix of the estate of Alexander A. Elfer, deceased, transferred title of the Property to Traute.

24  John P. Reiner, Esquire ("Reiner") assisted with the title transfer and notarized the papers.  In or

25  around 1982, Olga Elfer died and left the Property to Traute. For many years, Traute lived in the

26  Property. At various times, Campbell lived in units in the Property, and later lived in the Property

27  with Traute.

28

1    During the late 1960's through the 1990's, Traute executed a series of wills and codicils

2  that consistently left the bulk of her estate to Raffone and some bequests to Campbell.  The

3  amount of the bequests to Campbell appeared to vary based on Traute's understanding of real

4  estate holdings that Campbell owned in Jamaica.  The majority of the wills and codicils were

5  prepared by Traute's longtime attorney Reiner.

6    On August 18, 1985, Campbell executed a waiver of right to take an elective share of

7  Traute's estate.  Raffone attended boarding school and college in the 1970's – 1980's and, in

8  January 1990, moved into the penthouse apartment in the Property.  After Raffone moved to New

9  York, the relationship between Raffone and Campbell became strained as each weighed in with

10  their opinions as to how Traute could more efficiently manage the Property.  Raffone suspected

11  that Campbell, along with the building's management company, Brown Harris Stevens, was

12  deliberately helping tenants with rent controlled apartment units, who were not using their units as

13  a primary residence (as required by law), to evade detection.  She also believed the management

14  company and Campbell frequently duped Traute into permitting non- primary residents to renew

15  their leases when Traute had the right to forgo renewal and rent the apartments to other tenants at

16  full market value.  Campbell in turn contended that Raffone was "meddling" in her mother's

17  affairs.

18    During the 1990's, Raffone and Traute purchased a beach house in Rehoboth Beach,

19  Delaware and spent summers together there. Campbell did not come to Rehoboth Beach but

20  instead stayed in New York.  On October 13, 1994, Campbell signed a second waiver of his right

21  to take an elective share of Traute's estate.  On March 5, 1995, Traute wrote to her lawyer Reiner

22  about changing her will (concerning a specific bequest of no material significance here) and

23  enclosed a copy of Campbell's waiver of his right to take an elective share.  On May 31, 2000,

24  Traute and Raffone jointly purchased an apartment unit at 214 Chilean Avenue, Palm Beach,

25  Florida.  Shortly thereafter Raffone moved into the apartment on Chilean Avenue.  Between 2000-

26  2001, Traute incurred significant consumer debts and Campbell blamed the debts on Raffone.

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

FIRST SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    In 2002, Traute took out a 30-year mortgage on the Property and used some portion of the

2    funds to pay for renovations to the Property and also to satisfy various accumulated debts and

3    judgments owed by her and Raffone.

4    During 2002-2003, Campbell had Traute sign several powers-of attorney that purported to

5    transfer various rights to him and an accountant named Leonard Fay, C.P.A.  The powers of

6    attorney were handwritten by Campbell and Traute's signature appears shaky.  In 2003, Campbell

7    grew exceedingly angry at what he perceived to be excessive spending by Traute on her daughter

8    Raffone.  He began writing numerous angry handwritten memos to Traute, various personnel at

9    the management company for the Property, the accountant Leonard Fay, and personnel at various

10    banks, claiming that, for example:  "The only thing she looks forward to is sending large sums of

11    money to her daughter in Palm Beach either daily or every other day."  Campbell is a prolific

12    writer and his handwritten memos were typically several pages long, and full of terse, apocalyptic

13    and vengeful language directed at Traute and Raffone.

14    On April 11, 2003, Traute went to her lawyer's office, Reiner, and executed what became

15    known as "the April Will."  This will (consistent with prior wills) left the majority of her assets to

16    Raffone.  The April Will also named Raffone as executor and gave her discretion as to certain

17    bequests to Campbell.  On April 14, 2003, only three days after Traute signed the April Will,

18    Campbell drafted, signed, and had the local dry cleaner notarize, a handwritten revocation of "all

19    previous wavers [sic]".  Although he denied it at his deposition, it seems clear that Campbell

20    found the April Will shortly after it was signed by Traute, realized that it provided very little for

21    him and also gave discretion to Raffone.  He therefore decided to "revoke" the waivers of right to

22    elective share to ensure that he received 1/3 of Traute's assets (which at the time included the

23    Property now held by the Debtor).

24    On August 26, 2003, Reiner sent a letter to Traute, referencing a recent meeting where she

25    had discussed gifting the Property to Raffone, and warning her of potential tax consequences.  On

26    September 9, 2003, Traute (as her Aunt Olga Elfer did many years earlier) gifted the Property to

27    Raffone via Warranty Deed while visiting her daughter in Florida.  On October 16, 2003,

28    Campbell prevailed upon Traute to sign a "Last Durable Power of Attorney" in favor of Campbell.

1    The document was witnessed by two doormen who worked in the Property, and was signed by a

2    notary at the Emigrant bank around the corner from the Property.  On November 6, 2003, Reiner

3    filed the Warranty Deed, transferring title of the Property from Traute to Raffone, in New York.

4         On November 14, 2003, Campbell apparently learned of the registration of the Warranty

5    Deed and forged what later became known as "the November Will."  The November Will

6    purported to disinherit Raffone, left the bulk of Traute's estate to Campbell and provided for a

7    smaller bequest to Raffone's cousin, Michael Wacher, in Germany.  The November Will was

8    purportedly witnessed by another doorman at the Property, and a nearby resident, and signed and

9    notarized by an employee at Emigrant Bank.  During his deposition the doorman later stated

10   emphatically that he did not read English, had no idea what he was signing, and recalled that the

11   testator Traute, who he knew very well, was not present when he signed the document.

12        On the day after the November Will was purportedly executed, Traute was admitted to

13   Mount Sinai Hospital in New York for vomiting.  Raffone contends that Traute was poisoned by

14   Campbell, who has admitted to being responsible for ensuring she took her many medications.  In

15   November 2003, Campbell surreptitiously taped many conversations between Raffone and Traute.

16   In some of the tapes, Raffone appears to be heard using racial epithets to describe Campbell.

17        On November 20, 2003, Dr. Gottlieb, a physician in New York, wrote a letter indicating

18   that Traute may be suffering from Parkinson's Disease.  In late November 2003, after another

19   hospitalization, Traute moved to Florida to live with Raffone and Claudia's husband Donald St.

20   John.  Campbell frequently called the Palm Beach Police Department and the State of Florida,

21   Department of Children and Family Services Adult Protective Services, claiming that Traute had

22   been kidnapped and was being held against her will.  As evidenced by numerous reports, both the

23   Palm Beach Police Department and the State of Florida, Department of Children and Family

24   Services Adult Protective Services, thoroughly investigated these charges (including isolated

25   interviews with Traute) and found them to be groundless.

26        On July 30, 2004, Campbell filed a verified complaint against Raffone seeking injunctive

27   relief and to rescind the transfer of the Property, in New York Index No. 60246/04 (the

28   "Fraudulent Transfer Litigation").  In the Fraudulent Transfer Litigation, Campbell alleged that at

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  the time of the transfer Raffone "took advantage of the infirm state" of Traute.  During his

2  prosecution of the Fraudulent Transfer Litigation in the New York court, Campbell repeatedly

3  tried to admit portions of the audiotapes of conversations between Raffone and Traute into

4  evidence and submitted handwritten transcripts of those portions containing alleged racial epithets,

5  to the court.

6       In September 2004, after Raffone had the basement of the Property cleaned, Campbell

7  filled out a police report claiming that many of his "antiques" had been stolen.  As a result, during

8  a routine visit to New York, Raffone was arrested.  On October 18, 2004, Traute filed a one page

9  handwritten affidavit in which she explained that she had moved to Florida to escape Campbell

10  and that she living there of her own free will.  She also stated in the affidavit that it had always

11  been her intent to gift the Property to her daughter.  On October 22, 2004, the New York Supreme

12  Court issued a decision and order denying Campbell's request for injunctive relief.

13       On October 29, 2004, Campbell amended the Fraudulent Transfer Litigation to add a claim

14  that Traute was incapacitated and incompetent to make the gift of the Property to Raffone.  The

15  Fraudulent Transfer Litigation continued for 3½ years, and was ultimately stayed by the death of

16  Traute in December 2007.

17       On May 17, 2007, Richard Hershman, Esq. ("Hershman") counsel for Campbell, filed an

18  Affidavit to Vacate Default that attached the November Will as an exhibit.  This was the first time

19  the alleged November Will was disclosed.  In his Affidavit, Hershman states at paragraph 10:

20             Plaintiff now supplements his showing to the Court of his
21  interest in the subject premise by the Last Will & Testament
   executed by Traute on November 14, 2003, believed to have
22  been prepared at the law offices of Mujica & Goodman, 103
   West 86th Street, New York, New York and executed at the
23  Emigrant Savings Bank, before Mary Frances Gattuso the
   assistant treasurer of the bank.  *See* Exhibit E.  The Court
24  should be advised that plaintiff Douglas Campbell was not
   involved in any aspect in the preparation or execution of this
25  will.

26       In 2007, one of the rent control tenants in the Property (who appeared to be a non-primary

27  tenant as evidenced by the fact that his answering machine in the apartment unit answered in the

28  name of a business with several extension lines), named John Schreiber, began paying Campbell's

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    rent on the Property.  Raffone contends that John Schreiber agreed to pay Campbell's rent in

2    exchange for a portion of any settlement obtained by Campbell in his lawsuits against Raffone.

3        On September 14, 2007, Raffone registered the Debtor with the New York Secretary of

4    State, and subsequently transferred ownership of the Property to the Debtor.

5        On December 13, 2007, Traute died at Palms West Hospital, Loxahatchee, Florida.  On

6    January 22, 2008, Raffone filed a Petition for Administration of the April Will of the Estate of

7    Traute in Palm Beach County, Florida, Case No. 502008-CP-000346-XXXXXMB (the "Probate

8    Litigation") and she was appointed as the personal representative of the estate.  On April 25, 2008

9    Campbell filed a Counter-Petition of the November Will.  On April 30, 2008, the Florida court

10    entered a order vacating the appointment of Raffone as personal representative of the Estate of

11    Traute, due to the later November Will, which had not been disclosed in the Petition for

12    Administration filed by Raffone.  On May 7, 2008, Campbell filed a Statement of Claim in the

13    estate stating that he had incurred $5,000,000.00 in legal fees.  On May 7, 2008, Campbell filed a

14    Statement of Claim in the estate alleging that he had incurred $43,000.00 in payments of the

15    mortgage and maintenance fees related to the Property.  On May 7, 2008, Campbell filed a

16    Statement of Claim in the estate alleging that he had an interest in ½ of the Property.  On August

17    18, 2008, Campbell filed a Surcharge Petition seeking recovery of the value of the Property

18    ($17,000,000.00 claimed by Campbell) plus $43,000.00 in payments of the mortgage and

19    maintenance fees related to the Property.

20        On June 13, 2008, Campbell filed a separate civil complaint Florida state court, known as

21    Case No. 502008-CA-17861-XXXXMB AG seeking to recover $43,000.00 in payments of the

22    mortgage and maintenance fees related to the Property (the "Florida Civil Litigation").  It is

23    unclear why Campbell commenced the Florida Civil Litigation as the Probate Litigation was fully

24    underway at that time.

25        Litigation in the Probate Litigation continued from early 2008 until the bankruptcy cases

26    were commenced.  Litigation in the Florida Civil Litigation continued until the time of the

27    settlement in the Probate Litigation in 2009.  That settlement has never been implemented.

28

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1   Ultimately, Campbell believed that the Probate Litigation was resolved by a written

2   settlement, which would have paid Campbell $2.5 million plus attorneys' fees.  However, while

3   Raffone did sign the settlement agreement, she declined to sign any of the collateral documents,

4   angering Judge Cook in the Probate Litigation, who then entered an order holding Raffone in

5   contempt, threatening to jail her, and transferring ownership of the Property to Campbell.

6   On April 14, 2010, Raffone's New York counsel, Beys, Stein & Mobargha LLP ("Beys

7   Stein"), attended a civil contempt hearing in the Probate Litigation.  At that hearing, Judge Cook,

8   the judge in the Probate Litigation, made a statement to the effect that "there's enough value in the

9   Property to pay everyone, including Campbell and his claim for attorneys fees."  Given its tone

10  and context, Raffone believes that Judge Cook would rule that Raffone is entitled to any surplus

11  equity in the Property.  At the subsequent hearing on April 20, 2010, in New York in the New

12  York Sale Litigation (defined below), Beys Stein argued that the meaning of Judge Cook's

13  statement was that Raffone was the true owner of the Property and Campbell was merely a

14  creditor holding a claim for the payment of money.  Raffone believes that Campbell's attorney

15  Hershman conceded that point and that Campbell should cease making claims to be the sole

16  managing member of the Debtor.

17          **2.    History According to Campbell**

18  Traute married Campbell on August 27, 1966.[3]  They remained married until Traute's

19  death on December 13, 2007.  During their marriage, and on repeated occasions before

20  September 9, 2003, Traute promised to transfer a 50% interest in the Property to Campbell.

21  On April 11, 2003, under the coercive, abusive and oppressive influence of Raffone, which

22  acts eliminated any of Traute's free will, Raffone caused Traute to execute the April Will whereby

23  Traute appointed Raffone as her sole heir and willed only $300 to Campbell.

24  On September 9, 2003, under the coercive, abusive and oppressive influence of Raffone,

25  Raffone caused Traute to gift the Property to Raffone by recorded deed for no consideration.

26  _____

[3]       Indicative of how adversarial the relationship between Raffone and Campbell has become, they
27  cannot even agree on the date of Campbell's marriage to Traute.

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1    Raffone did not advise Campbell of this transfer and failed to report it to any taxing agency until

2    October 2008, on which form she testified that the value of the Property at the time of the

3    September 9, 2003 transfer was $5,000,000.

4         In 2008, Raffone obtained an appraisal of the Property at $25 million to secure an

5    $8 million loan from the Plan Proponent.  Raffone had previously caused Traute to obtain a prior

6    secured loan for $422,000, much or all of which net proceeds were paid to or used for the benefit

7    of Raffone.  In October 2008, Raffone sent a letter to the IRS requesting it to abate the tax

8    penalties on the unreported transaction.  Raffone asserted that Traute was incompetent to handle

9    her financial affairs dating back to September 2003.  This statement to the IRS is an admission

10   that the transfer of the Property to Raffone in September 2003 was a fraudulent transfer under

11   applicable law.  Raffone was fully aware of Traute's promise to give 50% interest in the Property

12   to Campbell.

13        Campbell learned of the April Will on November 11, 2003.  Three days later, Traute

14   requested that Campbell assist her in executing the November Will, by which Traute appointed

15   Campbell as the executor, and provided to pay Raffone zero, some small portion of her estate to

16   other relatives, and the majority of the estate to Campbell.  The November Will revoked all prior

17   wills.

18        When Raffone learned that Traute was contemplating transferring all her assets to a trust

19   and having a guardian appointed, and on or about November 23, 2003, Raffone and her then-

20   husband kidnapped Traute from her New York residence at the Property, in her house dress and

21   slippers and without her medications, and drove her to Florida.  Raffone cut off all contact

22   between Campbell and Traute.  Campbell never saw Traute alive again.  When Traute died,

23   Raffone refused to tell Campbell of her death and did not advise Campbell of the Probate

24   Litigation until 77 days after the death of Traute.

25        Approximately 6 months after Traute was forcibly moved to Florida against her will, and

26   in July 2004, Campbell commenced the Fraudulent Transfer Litigation.

27        In January 2008, while the Fraudulent Transfer Litigation was stayed, Raffone filed the

28   Probate Litigation.  In that Florida action, Raffone sought to appoint herself as Traute's personal

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  representative and to probate the April Will.  Raffone intentionally failed and refused to give the

2  Florida court a copy of the November Will, even thought she knew of it and had a copy of it.  The

3  Florida court held an evidentiary hearing and on April 28, 2008, vacated its order appointing

4  Raffone as the personal representative and admitting the April Will to probate.  On December 10,

5  2008, Campbell was appointed as curator in a limited capacity.  Campbell sought to have the

6  November Will admitted to probate.  Trial on the counter-petition to admit the November Will to

7  probate was set for June 2009.

8      Raffone and Campbell reached a compromise of their disputes to avoid the June 2009 trial

9  in the Probate Litigation.  A settlement agreement was drafted, but Raffone refused to settle it, and

10  again, significant litigation erupted.  The Florida court eventually entered a final judgment in favor

11  of Campbell affording him a money judgment of $2.5 million, plus all attorneys' costs and fees in

12  enforcing his rights under the settlement agreement (not all fees for all litigation).  Thereafter, on

13  April 30, 2010, after the Petition Date of the Debtor, but before Raffone's petition was filed, the

14  Florida judge in the Probate Litigation held Raffone in contempt, imposed a penalty in the amount

15  of $2,000 per day for failure to comply with the final judgment entered by that court, which sums

16  allegedly continue to accrue and will continue until the contempt is purged.

17      During the Probate Litigation, Campbell filed "Statements of Claim," to which Raffone

18  objected.  In response to the objections raised by Raffone, Campbell commenced the Florida Civil

19  Litigation.  In August 2008, Campbell attempted to use the Florida Civil Litigation to surcharge

20  Raffone, to compel Raffone to account for all probate estate assets, and to return to the probate

21  estate all assets that had been improperly transferred to Raffone before Traute's death.  The

22  Florida Civil Litigation was set for trial in 2009, but resolved as part of the settlement in the

23  Probate Litigation, referenced above.

24      Since the bankruptcy cases were filed, Raffone and the Debtor have had unfettered use of

25  an estimated $457,000 - $650,000 in gross rents per year.  Moreover, Raffone got a loan for

26  $8 million from the Plan Proponent and Raffone has refused and continues to refuse to account to

27  Campbell for the use of the loan proceeds.

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    On dates that are unknown to Campbell, Raffone used her influence over Traute to cause

2 Traute to transfer other assets to Raffone, including bank accounts, jewelry, stocks and real

3 property, with which Raffone purchased a Palm Beach, Florida condominium and a home in

4 Loxahatchee, Florida.

5    Campbell believes that Raffone has fraudulently transferred assets to herself, in violation

6 of the orders of the Probate Litigation, and in violation of Campbell's appointment as curator for

7 Traute's estate.  Campbell has filed a complaint seeking to determine that Raffone's debt to him is

8 non-dischargeable as to Raffone in her personal bankruptcy case ("Discharge Litigation").

9 Raffone has objected to the proof of claim filed by Campbell in the Raffone bankruptcy case.  The

10 bankruptcy court is likely to combine the Discharge Litigation, which is an adversary action, with

11 the claim objection, which is a contested matter.  In November 2010, the bankruptcy court granted

12 relief from stay to Campbell to pursue the Florida Probate Litigation to finality.

13    **B.    Principals/Affiliates of Debtor's Business.**

14    Claudia Raffone contends that she is the sole managing member of the Debtor.

15    Campbell contends that he is the sole managing member of the Debtor.

16    No court has ever determined with finality who is the owner of Nevada Star.  According to

17 Campbell, on December 29, 2010, at the request of Raffone, the Florida District Court of Appeal

18 entered an order of remand, for 30 days, to determine whether a portion of the Final Judgment

19 entered in the Probate Litigation transferred ownership to Campbell, or instead was meant only to

20 give Campbell a lien on Raffone's ownership interest in Nevada Star.  According to Campbell if

21 ownership indeed transferred to Campbell, then Raffone may have incurred a significant taxable

22 capital gain.  It is unknown as of the filing of this Disclosure Statement whether Raffone made an

23 IRS Code Section 1398 short-year election after commencing the instant bankruptcy case by

24 September 15, 2010.  Campbell believes that date is an immutable deadline.  According to

25 Campbell if Raffone did not timely make that election and the above transfer is effective, then it

26 appears Raffone personally and not her bankruptcy estate, will be liable for those capital gains.

27 According to Campbell, if Raffone did make the election timely, then any such gains would

28 become a priority claim in her bankruptcy case and be paid ahead of the claims of certain other

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    creditors.  The Plan settles this dispute by acknowledging Raffone's ownership of the entire

2    membership interest of the Debtor and causing the Administrator to file a return for the post

3    confirmation estate.

4         **C.     Management of the Debtor Before and After the Bankruptcy.**

5         Minuit was appointed by Judge Peter Sherwood of the New York Supreme Court by order

6    entered on March 25, 2010.  Raffone and her counsel selected Minuit to manage the Property in

7    her effort to prevent Campbell from taking control over the Property.  At a later date, Raffone

8    came to distrust Minuit and expressed her desire to have Minuit removed.  Raffone never took any

9    formal steps in Court to have Minuit removed, although initially she did oppose Madison's efforts

10   to prevent Raffone from acting as a debtor in possession for the Debtor.  After the first hearing on

11   the use of Madison's cash collateral, Raffone asserted no further objections to the use of rents

12   from the Property.  She has continued her objections to Minuit throughout the bankruptcy cases.

13        Madison did not believe Raffone to be trustworthy or competent with respect to

14   management of the Property.  On three separate occasions (June 4, 2010 [Docket No. 31], June 15,

15   2010 [Docket No. 45] and August 27, 2010 [Docket No. 76]), Madison asked the Bankruptcy

16   Court to (1) lift the automatic stay to the extent necessary to permit Minuit to remain in

17   possession, custody and control of the estate's cash collateral, (2) excuse the requirement of

18   turnover by a custodian such as Minuit under 11 U.S.C. § 363 of the Bankruptcy Code, and

19   (3) authorize the use of Madison's cash collateral in connection with budgets that had been

20   approved by Madison for the upkeep, maintenance and protection of the Property (the "Excuse

21   From Turnover Motions").  Madison brought on the Excuse From Turnover Motions at the urging

22   of Minuit who expressed difficulties it was experiencing in managing the Property under

23   Raffone's direction.

24        Minuit informed Madison that critical repairs to the fire safety system and the erecting of

25   scaffolding to protect the public from falling pieces of the façade were necessary expenditures.

26   The Debtor and Raffone initially opposed any use of cash to protect the public, curiously insisting

27   that the masonry of the building would only fall on tenants using the courtyard and not on the

28   public street.  The Debtor and Raffone also opposed the retention of Minuit as the custodian of all

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    cash collateral, despite the order of a state court (described below) that a property manager other

2    than Raffone be in place.  The Debtor and Raffone ignored the rights of the tenants and caused

3    numerous complaints to be filed with the City of New York, leaving the Debtor liable for

4    thousands of dollars of fines and the need to retain an expeditor to resolve outstanding violations.

5    A list of the violations printed from the City of New York website can be accessed by any party in

6    interest.[4]  The Debtor and Raffone opposed the use of cash to pay for critical repairs to the fire

7    safety equipment in the building, insisting that such repairs were fabricated by Minuit and not

8    necessary.  The Debtor did not always timely pay employees and other regular maintenance and

9    repairs had gone unpaid.  Minuit also informed Madison that numerous leases were not timely

10   renewed under New York's rent stabilization law, some over a period of many years, leaving

11   insufficient funds to make any interest payment on the Note.  Apparently other vendors also went

12   unpaid, and at least 3 liens asserting demands for over $2.5 million have been recorded against the

13   Property in positions junior to Madison.  Accordingly, Madison felt that the bringing on of the

14   Excuse From Turnover Motions was necessary to preserve (i) the Property and (ii) any hope of a

15   sale that would generate proceeds in excess of Madison's claim.  The Debtor and Raffone did not

16   oppose the second and third Excuse From Turnover Motions.  All three Excuse From Turnover

17   Motions were granted by orders entered on July 13, 2010 [Docket No. 63], September 30, 2010

18   [Docket No. 139] and October 8, 2010 [Docket No. 144].

19       **D.    Events Leading to Chapter 11 Filing.**

20           Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case:

21           The Tenant Litigation:———  At some point in early 2009, a group of tenants engaged

22   attorney Ms. Catherine Grad to assist them in assuring regular repair and maintenance of the

23   Property.  Ms. Grad commenced an action against the Debtor and on May 27, 2009 (the "Tenant

24   Litigation"), and a Civil Court of the City of New York ordered Raffone to obtain a managing

---

25   [4]    By accessing http://167.153.4.71/Hpdonline/provide_address.aspx and inserting the street
26   address number (114) and street location (W. 86th Street) and hitting the search button, that should
     bring parties to the following page:
27   http://167.153.4.71/Hpdonline/select_application.aspx .  On the left hand margin, any party can
     then clink the link entitled "All Open Violations."

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  agent for the Property that was <u>not</u> Raffone or her family or related parties.  That order further

2  required the Debtor to maintain $5,000 in a bank account in New York which in turn could be

3  accessed by the court appointed managing agent to pay for ongoing maintenance of the building,

4  which includes paying the superintendent (the ("Tenant Protection Order").  Raffone appears to

5  have disregarded the Tenant Protection Order, and the managing agent mentioned in the court

6  order never signed the order or managed the Property.  Instead, Raffone had her superintendant's

7  wife (Vjollca Lumaj) registered for a period of time as the managing agent, when in actuality there

8  was no one other than Raffone herself acting as the property manager.  Subsequent to the entry of

9  the Tenant Protection Order, Minuit was appointed as the managing agent by Judge Sherwood.

10  Since the time of Minuit's appointment, the number of complaints by tenants has been

11  dramatically reduced.  New complaints by tenants are now extremely low in number.

12      <u>The Probate Litigation</u>:      Prior to the commencement of this bankruptcy case, the

13  Debtor and Raffone were involved in litigation in the Circuit Court of the Fifteenth Judicial

14  Circuit in and for Palm Beach County, Florida, in Case No. 502008-CP-00346-XXXXMB, *In re*

15  *Estate of Traute*, deceased (herein called the "Probate Litigation").  In the Probate Litigation,

16  Raffone was locked in a tug of war with Campbell over ownership of the Property.  On

17  February 5, 2010, the Circuit Court in Palm Beach County Florida entered a final judgment

18  approving a transfer of "100% of Claudia Raffone's membership interest in Nevada Star, LLC" to

19  Campbell ("Probate Order").  A summary of the Probate Litigation procedural history and facts

20  believed to be relatively neutral and not in favor of either Raffone or Campbell, relating to that

21  litigation is set forth in paragraphs numbered 1-28 below.

22      1.      Raffone is the only child of her mother, Traute.

23      2.      Campbell is allegedly Raffone's mother's third husband.  Raffone disputes that fact

24  as she contends that no certified marriage license has been proffered by Campbell.

25      3.      Raffone filed a Petition for Administration seeking her appointment as personal

26  representative and the admission to probate of a Last Will and Testament executed by the decedent

27  at the decedent's lawyer's office on April 11, 2003, devising the remainder of the estate to

28  Raffone.

4.    Campbell filed a Petition for Administration seeking his appointment as personal representative and the admission to probate of a will allegedly prepared and executed by the decedent on November 14, 2003, devising the remainder of the estate to Campbell.

5.    Raffone contested the November Will on the basis of improper execution.

6.    In New York and Florida, Campbell sued Raffone to invalidate a gift made by the decedent in September 9, 2003 to Raffone of the Property.

7.    According to Raffone, the Property has been appraised for approximately $18 million dollars.

8.    Raffone and Campbell litigated Campbell's Counter-Petition of Administration in October of 2009, the parties settled all pending issues, executed a settlement agreement and the settlement agreement was approved by the Florida Court on October 21, 2009 ("Settlement Agreement").  The Settlement Agreement provided for Raffone's appointment as Personal Representative and that Campbell would receive a different parcel of property, the co-operative apartment located at 108 East 86th Street, Apt. 11N, New York, New York (the "Co-Op") owned by Traute and $2.25 million dollars.  Raffone contends that the Co-Op has a $1.8 million dollar value.  There is also a federal tax lien placed against the Co-Op, which must be satisfied by Raffone under the Settlement Agreement.  According to Campbell, that lien was recorded on December 17, 2009 in the amount of $673,998.50.

9.    The Settlement Agreement also provided that Raffone would retain ownership of the Property, and that Campbell would dismiss the Florida Civil Litigation and the Fraudulent Transfer Litigation.

10.    This $2.25 million dollars included payment to the Gunster law firm for their claim to more than one million dollars in attorneys' fees and costs.  Counsel for Campbell has represented that the amount due Gunster Yoakley has currently been reduced, presumably by payments from their client, Campbell, or an agent of their client.

11.    The Settlement Agreement also provides for the use of security documents in favor of Campbell in order to ensure payment of the $2.25 million dollars by April 1, 2010 ("Security

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

SM01DOCS\829745.2

19

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    Documents"). The Security Documents were to be the subject of further negotiations and were to

2    include a pledge of Raffone's interests in the Debtor.

3         12.    The form of these Security Documents was not created and/or reviewed until at

4    least a month after the execution of the Settlement Agreement and was not finalized as to form

5    until late December 2009.

6         13.    At the time of the execution of the Settlement Agreement, it was contemplated by

7    all parties that Raffone would pay Campbell the $2.25 million dollars after sale, re-financing or

8    other transfer of ownership for profit, of the Property, but not later than April 1, 2010.

9         14.    The Property, both prior to and after the settlement, was subject to a first mortgage

10    in an amount exceeding $8 million dollars in favor of Madison. Thus, the Settlement Agreement

11    and the Security Documents were tailored in order to prevent an "event of default," under the first

12    mortgage and preserve Madison's priority.

13         15.    The Security Documents include a mortgage on Raffone's claimed Florida

14    Homestead, a New York Judgment by Confession for $2.5 million dollars, a Pledge Agreement by

15    Raffone to the membership interest in the Debtor and a first priority interest in an interest reserve

16    account held by the first mortgagor, Madison, on the Property.

17         16.    Prior to the completion of the form of the Security Documents, but two months

18    after the Settlement Agreement was agreed upon, at least verbally, a tax lien against the Defendant

19    was placed on the Co-Op. Pursuant to the Settlement Agreement, Raffone would have to satisfy

20    the tax lien. However, as stated above, the satisfaction of the financial obligation to Campbell by

21    Raffone would be paid from the proceeds of the sale or re-finance of the Property, which was

22    required to occur by April 1, 2010.

23         17.    With the tax lien pending on the Co-Op, execution of the Security Documents

24    would have allowed Campbell to foreclose on his security interest (through the Security

25    Documents and the default terms of the Settlement Agreement) long before April 1, 2010, the

26    contemplated payment date. Therefore, Raffone moved for an extension of time to satisfy the tax

27    lien until April 1, 2010 and the Court denied same.

28

~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

18.     After the denial of the extension request, Campbell requested Raffone sign the Security Documents.  Raffone did not sign, nor consent to the execution of, the Security Documents.  In response to Raffone not executing the Security Documents, Campbell moved the Florida Court to hold Raffone in contempt and the Court entered a contempt order and issued a writ of bodily attachment until such time as Raffone signed said documents which was granted.

19.     Raffone's counsel motioned the Florida Court to withdraw, which request was granted on February 1, 2010.

20.     Campbell filed a "Motion to Enforce Settlement Agreement, for Entry of Final Judgment in Favor of Henry Douglas Campbell and Against Raffone, Donald St. John, and the Debtor, and to Confirm and Establish the Security Required Under Settlement Agreement." ("Motion to Enforce Settlement Agreement").

21.     The Motion to Enforce Settlement Agreement requested that the Florida Court "deem" the Security Documents to be "signed," without Raffone's execution or consent to same, and grant Campbell the relief provided for in the Security Documents and further relief from the Court itself.  While Raffone was not represented by counsel, a hearing on the Motion to Enforce Settlement Agreement was held on February 5, 2010.

22.     On February 5, 2010, the Court entered a Final Judgment (the "Florida Final Judgment").  Raffone disputes the factual findings in the Final Judgment.

23.     The Florida Final Judgment provided in pertinent part:

a.     As a matter of law, Campbell was entitled to specific performance of the Settlement Agreement;

b.     The Florida Final Judgment was entered on behalf of Campbell and against Raffone and the Debtor, jointly and severally, in the amount of $2.5 million dollars;

c.     Campbell was entitled to immediately record the Florida Final Judgment in any and all jurisdictions;

d.     The Security Documents were deemed executed by the parties effective the date of the Florida Final Judgment and Campbell was entitled to all of the rights afforded by the Security Documents;

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

e.      100% of Raffone's membership interest in the Debtor was transferred to Campbell, effectively immediately, and Campbell was entitled to immediate possession of all its books, records, etc, including rent rolls and the right to immediately begin collecting rent from the tenants in the Property;

f.      The Debtor was directed to immediately issue a certificate for 100% of the membership interests to Campbell;

g.      The Department of Housing and Community Renewal for the City of New York was authorized and directed to provide Campbell with records of the registered rents for the Property;

h.      Campbell was assigned all the rights that the Debtor and/or Raffone had in the interest reserve account with Madison;

i.      Campbell was entitled to a mortgage in the principal amount of $400,000 on Raffone's Florida Homestead property; and

j.      Campbell was entitled to recover the attorneys' fees and costs he incurred in connection with enforcing his rights under the Settlement Agreement.

24.      Campbell began informing tenants of the Property and other New York entities of his "ownership" of the Property under the Florida Final Judgment.  Raffone contends that Campbell began these communications with tenants before the Florida Final Judgment became final as a matter of law.  By letter dated February 5, 2010, Campbell notified the tenants of the Property "that 114 W. 86th Street is now owned by Henry Douglas Campbell," "as owner he has appointed DRJ 175 LLC as the new management company for [the] property represented by Mr. Schreiber" and that "all future rents will be made to DRJ 175 . ..".

25.      On February 16, 2010, Raffone asked her probate counsel to re-appear in the matter.  Raffone timely filed a Motion for Rehearing on Order Granting Final Judgment on Settlement Agreement and Confirming and Establishing Security Interests and Rights ("Motion for Rehearing") on February 16, 2010.  Campbell provided the Court with a response to Raffone's Motion(s) for Rehearing and continued to claim he owned the Property.  The Motion for Rehearing was denied by the Florida Court on February 25, 2010.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

26.    Campbell also, through the use of the Florida Final Judgment, levied Raffone's personal and the Debtor's bank accounts at Chase Bank, Bank of America and Citibank.

27.    Due to Campbell's and Raffone's actions, many tenants stopped timely paying rent and the upkeep and maintenance of the Property suffered. The Debtor brought some lawsuits against defaulting tenants in landlord-tenant courts in New York. Raffone contends that Campbell's intervention during that time prevented Raffone and the Debtor from enforcing the leases which were then in effect and rental income was lost.

28.    Raffone filed an appeal of the Florida Final Judgment on February 26, 2010, as Case Number 4D10-865 in the Fourth District Court of Appeal. Raffone also filed a motion for a stay pending appeal on March 12, 2010 ("Motion for Stay Pending Appeal"). Although the appeal case filing fee was paid on March 5, 2010, ultimately the appeal was not prosecuted because (1) Raffone ran out of money and her lawyers were no longer willing to work for a promise of future payment, and (ii) the New York Sale Litigation (described below) was commenced. The Motion for Stay Pending Appeal required the posting of a bond, which Raffone either was unable or unwilling to post. Raffone's bankruptcy counsel concedes that while the filing of the bankruptcy case of Raffone operates as a stay, it does not override the requirement that Raffone post a bond in the pending appeal. The failure to post a bond eventually caused the New York court to refuse to stay enforcement of the Florida Final Judgment. Campbell contends that Raffone did not pursue the appeal of the Florida Final Judgment because the Florida Probate Litigation judge was so angry at Raffone that she knew she was certain to lose the appeal. Raffone disputes that position.

The Loan from Madison:    On or about September 23, 2008, the Debtor made, executed and delivered a promissory note in the form of a Mortgage Note (the "Note"), in favor of Madison or Madison's successors in interest in connection with a loan in the original principal amount of $8,000,000.00. The loan made by Madison is subject to the express terms and conditions of the Note, as well as those terms and conditions set forth in other related loan documents, (collectively, the "Pre-Petition Loan Documents"). Under the Note, Debtor was to make monthly interest payments to Madison and pay all real estate taxes and other assessments levied against the

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   Property.  The Pre-Petition Loan Documents include, among other things, a recorded security

2   interest against the Collateral (described below), among other documents.

3       In accordance with the Pre-Petition Loan Documents, the Debtor granted Madison a

4   security interest in the Property, in addition to any rents, issues, profits and proceeds thereof (the

5   "Collateral").  Madison duly perfected such security interest(s) by, promptly recording the

6   Mortgage and Security Agreement ("Mortgage") in the Official Records of the Office of the City

7   Register of the City of New York on or about October 3, 2008 as CRFN No. 2008000392051, and

8   accordingly, holds a valid and enforceable, unavoidable and perfected first priority security

9   interest in and lien on all of the Debtor's assets listed therein.  Madison also recorded a UCC-1

10  against the Collateral and recorded a separate Assignment of Leases and Rents.

11      Raffone personally guaranteed the Loan.

12      Prior to the Petition Date, a default in the payment of pre-petition real estate taxes pursuant

13  to Sections 5 and 21 of the Mortgage occurred on July 1, 2009, so on December 29, 2009,

14  Madison sent notice to the Debtor demanding a cure in the failure to pay over $209,000 of pre-

15  petition real estate taxes.  The Debtor defaulted under the loan by failing to pay the pre-petition

16  real estate taxes in July 2009, and thereafter failed to make interest payments due for the months

17  of December 2009 and January 2010.  The entry of the Probate Order was a further event of

18  default.  Accordingly, on February 23, 2010, Madison sent notice to the Debtor advising of these

19  defaults and accelerating the debt.  On or about February 10, 2010, Madison received a written

20  request from counsel to Campbell seeking a payoff figure so that it could satisfy the Mortgage and

21  prevent a foreclosure of Campbell's interests therein.  No payoff has been received by Madison.

22      Madison obtained an appraisal of the Property in February 2010 which stated a value of

23  $13.8 million.  Madison does not know the actual value of the Property but believes it will exceed

24  $13.8 million.  Madison's claim as of ~~March 31~~April 30, 2011, ~~was~~is approximately

25  $10,~~566,062.99~~750,000 including late fees, some of the attorneys' fees, foreclosure costs and

26  other related expenses.  Additional amounts are continuing to accrue, including interest at the rate

27  of $5,055.34 per day.  No payments have been made to Madison in the last ~~12~~16 months because

28  all cash flow was used to maintain the Property and pay for repairs and costs of operation,

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    excepting only a small amount reserved for payment of post petition taxes.  Neither pre-petition

2    nor post-petition real estate taxes have been paid.  Madison believes that the sum of at least

3    $500,000 is owed for pre-petition and post-petition real estate taxes and there is an insufficient

4    amount of cash on hand (roughly $~~56,000 in the general account and $108~~275,000 ~~in~~ inclusive of

5    the tax account, tenant deposits, payroll and general funds) to pay that amount.

6         The New York Sale Litigation.         In March 2010, soon after the appeal of the Florida

7    Final Judgment was filed in the Fourth District Court of Appeal, the Debtor and Raffone retained

8    the firm Beys Stein to commence litigation in the Supreme Court of the State of New York that

9    would facilitate a sale of the Property and prevent Campbell from taking it under the Florida Final

10   Judgment (the "New York Sale Litigation").  At the inception of the New York Sale Litigation,

11   Minuit was appointed to act as the property manager for the Property by the Honorable Judge

12   Peter Sherwood of the New York Supreme Court by order entered on March 25, 2010.  Judge

13   Sherwood indicated that he did not wish to have the Property or the tenants suffer while he

14   resolved the dispute over the Property between Raffone and Campbell.  Accordingly, since that

15   time on March 25, 2010, Minuit ~~has been acting~~ acted as the custodian in control of the Property,

16   collecting rents and paying expenses of operation as consented to by Madison.  In December 2010,

17   Minuit was removed and a state court receiver took over operations.  Their handling of funds

18   overlapped through January 2011 when Minuit turned over all funds to the state court receiver.

19         During the New York Sale Litigation, Judge Sherwood entered orders, dated March 25,

20   2010 (granting a stay of the Final Florida Judgment and ordering the posting of a bond), April 8,

21   2010 (requiring that any sale of the Property go through him and extending the time to post a

22   bond), April 23, 2010 (further extending the time for Raffone to post a bond), and April 27, 2010

23   (vacating the stay for the failure of Raffone to post a bond).  This April 27, 2010 order was

24   deemed void by this Bankruptcy Court, Judge Samuel Bufford presiding, who later found it to

25   have violated the bankruptcy stay of 11 U.S.C. § 362(a).  This Bankruptcy Court, Judge Peter

26   Carroll, has subsequently held that the finding by Judge Samuel Bufford was non-binding dictum.

27         Immediately prior to the Petition Date, Judge Sherwood set a hearing on the proposed sale

28   of the Property.  Michael Beys of Beys Stein submitted an affidavit stating that his firm assisted

1  the Debtor in locating buyers for the Property, and that approximately five buyers in the price

2  range of $15,000,000 to $15,500,000 were located, each of whom were prepared to close cash

3  sales in a relatively short period of time.  Before Judge Sherwood could conduct an auction of the

4  Property, the Debtor's petition in bankruptcy was filed.

5       The Foreclosure Litigation.    Prior to the Debtor's bankruptcy, Madison commenced

6  litigation in the Supreme Court of the State of New York, County of New York, Index No.

7  103172/10, *Madison Realty Capital, L.P.. v. Nevada Star, LLC, et al.* ("Foreclosure Litigation").

8  In connection with the Foreclosure Litigation, Madison made application to appoint a receiver

9  over the Property to secure and protect the cash collateral and cause all rents, issues and profits to

10  be used to maintain the Property, and pay expenses associated therewith, including real estate

11  taxes that are accruing as a senior lien ahead of Madison.  On April 16, 2010, the Supreme Court

12  for the State of New York, County of New York, granted an order appointing Gerald Kahn of

13  Smith Buss & Jacobs as the receiver ("Receiver").  ~~The~~ At that time, the Receiver never took

14  possession of the Property due to the filing of the bankruptcy petition and the triggering of the

15  automatic stay.  The foreclosure of the Property by Madison and the sale of the Property by Judge

16  Sherwood were stayed by the Debtor's commencement of the Debtor's case on April 26, 2010.

17  The Debtor never filed an answer in the Foreclosure Litigation and accordingly, no sale was set.

18       On December 2, 2010, Madison moved the Bankruptcy Court for relief from stay to

19  continue litigating the Foreclosure Litigation, which motion was granted by order entered on

20  November 9, 2010, and became effective fourteen days later on November 23, 2010.  Following

21  entry of that order, the Foreclosure Litigation was reactivated and the appointed receiver, Gerald

22  Kahn ("Kahn") took over from Minuit in managing the Property.  Some of the January 2011 rents

23  were collected by Minuit, and some were collected by the Receiver.  Both Minuit and the Receiver

24  prepared January MORs.

25      **E.**    **Significant Events During the Bankruptcy.**

26           **1.**    **Bankruptcy Proceedings.**

27       The following is a chronological list of significant events which have occurred during this

28  case:

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

#### a.    Bankruptcy Case Matters:

1.    On April 26, 2010 the Debtor filed its voluntary chapter 11 petition.

2.    On May 5, 2010, Raffone filed her voluntary chapter 11 petition.

3.    Three Excuse From Turnover Motions were granted by orders entered on July 13, 2010 [Docket No. 63], September 30, 2010 [Docket No. 139] and October 8, 2010 [Docket No. 144]..

4.    On October 14, 2010, the Bankruptcy Court entered orders consolidating the cases of the Debtor and Raffone administratively [Docket Nos. 29 and 146].

5.    On November 9, 2010, the Bankruptcy Court entered an order granting Campbell relief from stay to pursue a final judgment in the Florida litigation matters [Docket No. 176].

6.    On November 9, 2010, the Bankruptcy Court entered an order granting Campbell the right to take the 2004 examination of Raffone [Docket No. 177].

7.    On December 3, 2010, the Bankruptcy Court entered an order granting Madison relief from stay to pursue the Foreclosure Litigation [Docket No.  190].

8.    On March 30, 2011, the Second Amended Plan and Second Amended Disclosure Statement were filed with the Court [Docket Nos. ___ and ___].

8.9.On _____ 2011, the Bankruptcy Court entered an order finding that this Disclosure Statement contained sufficient information to permit Madison to seek votes in favor of the Plan.

#### b.    Other Legal Proceedings.

Other than the foregoing bankruptcy court matters and bankruptcy court adversary proceedings, the Debtor is involved in various legal proceedings relating to the tenant's obligations to pay rent in a timely fashion.  Some of those actions may lead to evictions of non paying tenants and judgments for back due rent.

### 2.    Actual and Projected Recovery of Preferential or Fraudulent Transfers.

The debtors' Plan contemplates only partial payment of all allowed claims.  Consequently, the Committee, some creditors and interested parties believe that some benefit can be derived from

1   the pursuit of preferential transfer actions.  Pursuing such actions will certainly increase the

2   administrative expenses of the estate.  Alternatively, waiving all rights to pursue avoidance power

3   actions in exchange for discounted claim allowance could be equally beneficial to the estate,

4   particularly since litigation can involve delay and significant cost.  Thus, preference and

5   fraudulent transfer actions ~~are not contemplated at this time, but will be available with respect to~~

6   ~~potential defendant creditors in Classes 4-7, and can be~~ brought by the ~~Administrator, the~~

7   ~~Committee and any interested party (excepting the Debtor) who wishes to bring them prior to the~~

8   ~~consummation of~~ IRS will be settled by the Plan.

9       This Bankruptcy Court, Judge Samuel Bufford, also entered an order on July 12, 2010

10  [Docket No. 6] that barred the filing of any avoidance power actions after October 1, 2010, and

11  none were filed by that date.  There is a dispute as to whether that order only applies to the Debtor

12  or whether all parties are bound by such order.  Creditors in Classes 5-~~7~~8 and certain interested

13  parties contend that they were never served with a notice of the bar date or of the possible entry of

14  such an order.  The Plan proposes to ~~amend~~enforce that order by ~~re-opening~~ affirming that the

15  time frame in which avoidance power actions may be filed against ~~holders of claims in Classes 4-7~~

16  ~~for the benefit of~~any creditors, Raffone or the estate.  ~~Nothing in this paragraph shall prevent the~~

17  ~~Administrator, the Committee, creditors or interested parties, excepting the Debtor, from pursuing~~

18  ~~preferential or fraudulent transfer actions, except that all~~ has expired.  All such rights, if any exist,

19  ~~against Madison~~ are waived and released.

### 3.    <u>Procedures Implemented to Resolve Financial Problems.</u>

21      To attempt to fix the problems that led to the bankruptcy filing, Madison has proposed the

22  following procedures:  The Administrator for the post confirmation estate will have the ~~option, but~~

23  ~~not the~~ obligation, to retain a~~Eastern~~ Consolidated as the estate's real estate broker to market and

24  sell the Property ~~for an amount sufficient to pay compromised allowed claims against~~in

25  accordance with the ~~Debtor in full within approximately 6 months of the Effective Date.  The~~

26  settlement outlined in the Plan ~~further contemplates~~.  Under that settlement, the Administrator

27  ~~shall take such steps as he deems appropriate or necessary~~ will ask Judge Peter Carroll to conduct

28  an auction of the Property on May 4, 2011, with respect to ~~liquidate assets~~the stalking horse

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    proposal attached to the Plan at Exhibit E.  The overbid procedure for the sale of the ~~Raffone~~

2    ~~estate to pay allowed~~Property is set forth in Section IV.E.4 below.

3    The terms of the settlement are as follows:

4    a.    All parties agree to cooperate and facilitate a sale of the Property at the earliest

5    possible date.

6    b.    All real property taxes in Class 1 shall be paid or reserved for.

7    c.    On behalf of the Debtor's estate, Madison shall negotiate an asset purchase

8    agreement with Bernstein Real Estate as the proposed stalking horse bidder.  On account of its

9    secured claim in Class 2, Madison shall receive a flat amount of $10,750,000 plus all interest, fees

10   and other charges from April 30, 2011 until closing, plus all attorneys' fees and costs incurred

11   from February 1, 2011 until closing.  In the event the sale closes on or before May 31, 2011,

12   Madison shall agree to discount its claim by (i) the amount of all attorneys' fees incurred in

13   February 2011, and (ii) the difference between the default interest rate and the nominal interest

14   rate for the time period April 30, 2011 through May 31, 2011.  Madison will forbear from holding

15   an actual foreclosure sale of the Property until June 30, 2011.  However, nothing in the Plan shall

16   require Madison to forbear from exercising any other remedies, including taking of all steps up to

17   the point of the holding of the sale.

18   d.    All administrative and non classified claims shall be paid in full or reserved for

19   pending applications.

20   e.    The wage claim shall be paid the full $10,000 in priority with the balance of the

21   claim to participate in the unsecured class.

22   f.    The tenant security deposits shall be fully funded from cash collateral or proceeds

23   of sale to the Buyer.

24   g.    The Receiver shall turn over the Property and the cash collateral to the

25   Administrator upon confirmation of the Plan.

26   h.    The sum of $35,000 shall be set aside for the Administrator to fulfill his duties

27   under the Plan.  This amount shall not include the sums necessary for the Administrator to operate

28   the Property prior to closing.

SM01DOCS\829745.2

29

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    i.    Creditors in Classes 3-8 and 11 may receive the fixed amount set forth on

2    Exhibit C, but the actual payment to such creditors shall be plus any excess funds or minus any

3    additional liabilities, in the pro rata percentages set forth on Exhibit C.

4    j.    Creditors in Classes 9-10 shall be treated as set forth in the Plan.

5    k.    Creditors in Class 12 shall be paid after all claims against Raffone within

6    approximately 3 years of the Effective Date in senior classes are paid in full.

7    l.    Interest holders in Class 13 shall retain all rights and therefore is unimpaired.

8    **4.    Current and Historical Financial Conditions.**

9    The Debtor's most recent historical pre-petition complete financial statement has not been

10    located and is not disclosed.

11    The Debtor's bankruptcy schedules and Court filings do not clearly disclose all of the

12    Debtor's assets as of the petition date and so a list of known assets is included within Exhibit "A"

13    to the Plan. Raffone's bankruptcy schedules A and B  are allegedly believed to not disclose all of

14    Raffone's assets as of the petition date and a more complete list, although possibly not complete,

15    is included within Exhibit "B" to the Plan. The Debtor's MORs and Raffone's MORs are

16    available upon written  request to the Proponent's counsel.

17    **III.    SUMMARY CLASSIFICATION AND TREATMENT OF CLAIMS AND**

18    **INTERESTS IN THE PLAN OF REORGANIZATION DEBTOR'S ESTATES**

19    A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan.

20    **A.    General Overview**

21    As required by the Bankruptcy Code, the Plan classifies claims and interests in various

22    classes according to their right to priority of payments as provided in the Bankruptcy Code.  The

23    Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides

24    the treatment each class will receive under the Plan.

25    **B.    Unclassified Claims.**

26    Certain types of claims are not placed into voting classes; instead they are unclassified.

27    They are not considered impaired and they do not vote on the Plan because they are automatically

28

1  entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Proponent

2  has not placed the following claims in a class.  The treatment of these claims is provided below.

3  **1.    Administrative Expenses.**

4  Administrative expenses are claims for costs or expenses of administering the Debtor's ~~and~~

5  ~~Raffone's~~ Chapter 11 case which are allowed under Code Section 507(a).  The Code requires that

6  all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant

7  agrees to a different treatment.  This Plan provides that ~~three~~ the administrative creditors ~~consent~~

8  ~~to partially deferred payment of their claims, to waive payment of their claims~~are paid in their

9  entirety on the Effective Date ~~and to accept a 7% discount on their final allowed claim~~.

10  The following chart lists all of the known § 507(a) administrative claims in ~~both~~ the

11  Nevada Star ~~and Raffone estates~~estate and their treatment under the Plan:

| Name | Amount Owed (exclusive of retainer deposits) | Treatment |
|---|---|---|
| Law Offices of Michael Berger (Nevada Star fees and expenses) | $~~120~~90,000 (est.) (accrued to date at $80,779.86) | Total payment = ~~93% of~~allowed amount. Paid from retainer, and remaining portion shall be paid ~~half from cash collateral (if sufficient funds are available) and balance~~on the Effective Date from the proceeds of escrow of the Property |
| ~~Law Offices of Michael Berger (Raffone fees and expenses)~~Lewis R. Landau (Counsel in Nevada Star case for the Official Unsecured Creditors' Committee ("Committee")) | $~~50~~40,000 (est.) (accrued to date at $~~30,167.06)~~21,400) | Total payment = ~~93% of~~allowed amount. Paid ~~on the Effective Date~~ from the proceeds of ~~sale of property~~escrow of the ~~Raffone estate~~Property |
| ~~Lewis R. Landau (Counsel in Nevada Star case for the Official Unsecured Creditors' Committee ("Committee"))~~Clerk's Office Fees (Nevada Star) | $~~45,000 (est.) (accrued to date~~TBD (nominal), est. at $~~21,400)~~650.00 | ~~Total payment = 93% of allowed amount.~~ Paid ~~half from cash collateral (if sufficient funds are available) and balance~~in Full on Effective Date from the proceeds of escrow of the Property |
| ~~Clerk's~~Office of the U.S. Administrator Fees (Nevada Star) | ~~TBD (nominal)~~Current | Paid in Full on Effective Date from ~~cash collateral in possession~~the proceeds of ~~the Court ordered receiver Gerald Kahn,~~escrow of ~~Smith Buss & Jacobs LLP ("Kahn") or his managing agent, New York City Management LLC ("NYC Management")~~ the Property |
| ~~Clerk's Office Fees (Raffone)~~Internal Revenue Service ("IRS") capital gains tax | ~~TBD (nominal)~~Potentially as high as $3.53MM | ~~Paid in Full on Effective Date from cash contributed by Madison~~Partially paid as agreed in this Plan, as a settlement of litigation rights only, and proceeds |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| Name | Amount Owed (exclusive of retainer deposits) | Treatment |
|------|-----------------------------------------------|-----------|
|  |  | applicable to reduce the tax owed, from the proceeds of escrow of the Property |
| Office of the U.S. Trustee Fees (Nevada Star) | Current | Paid in Full on Effective Date from cash collateral in possession of NYC Management |
| Office of the U.S. Trustee Fees (Raffone) | Current | Paid in Full on Effective Date from cash contributed by Madison |
| Internal Revenue Service ("IRS") capital gains tax | Potentially as high as $3.53MM | Paid in Full on completion of tax return and tender of two thirds of the Tax Fund (defined below) |
| New York State Department of Taxation and Finance capital gains tax | Potentially as high as $1.73MM | Paid in Full on completion of tax return and tender of one third of the Tax Fund |
|  | TOTAL $TBD |  |

To the extent that the Law Offices of Michael Berger (the "Berger Firm") received a retainer for its work in the Nevada Star case from the cash collateral of Madison without its consent, ~~Madison~~creditors will not pursue recovery of such cash collateral if the Plan is confirmed. Madison believes $25,000 of its cash collateral was paid to the Berger Firm on account of the Nevada Star case. The Berger Firm contends that its retainer in the Debtor's case was paid from the proceeds of the loan obtained from Links Capital Partners, LLC, et al.; Defined Benefit Pension Plan Trust ~~("Links Capital")~~.

To the extent that the Berger Firm received a retainer for its work in the Raffone case from the cash collateral of Madison without its consent, ~~Madison~~creditors will not pursue recovery of such cash collateral in the Raffone estate if the Plan is confirmed. Madison believes $20,000 of its cash collateral was paid to the Berger Firm on account of the Raffone case. The Berger Firm contends that its retainer in the Raffone case was paid from the proceeds of the loan obtained from Links Capital.

## 2.    Court Approval of Fees Required~~:~~.

The Court must approve all professional fees listed in this chart. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be required to be paid under this Plan. To the extent any fees are

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1   paid prior to Plan confirmation, they will not be paid twice.  All pre-confirmation payments will

2   be taken into account before the final payment is determined.

3       The Plan provides for the appointment of the Administrator.  Fees and expenses arising out

4   of the Nevada Star case and owed to the Berger Firm and Lewis R. Landau will be paid (after

5   application of any retainer that is not disgorged) ~~up to a maximum of half of~~ their allowed amount

6   ~~from the cash collateral~~ on ~~hand within a reasonable period of time following~~ the Effective Date

7   (allowing for sufficient time to permit the Administrator to issue checks)~~, and the balance direct~~

8   ~~out of escrow at the time the Property is sold~~.  The total paid shall not exceed ~~93~~100% of ~~the~~the

9   final allowed amounts ~~approved by the Court~~.  Such payments are contingent upon their final fee

10  applications having been heard, the final amount allowed, and ordered paid from available funds

11  and no stay pending appeal is obtained as of that date.  ~~If there are insufficient funds on hand from~~

12  ~~the cash collateral of Madison to~~ The Administrator shall pay ~~one half of the allowed~~these

13  amounts ~~of both professionals' claims, then the Administrator shall determine a reasonable~~

14  ~~amount to be paid from such funds that will not impair the operations of the Property, and shall~~

15  ~~pay the remaining balance~~ from the escrow closing at the sale of the Property.  The Administrator

16  shall be permitted to withhold any payment to administrative creditors until allowed by final Court

17  order ~~or until the Property has sold, if he determines in the exercise of his discretion that such~~

18  ~~delay is warranted by the facts of the cases~~.

19      Madison authorizes the use of its cash collateral in an amount required to pay the Nevada

20  Star Clerk's Office Fees and the Office of the U.S. Trustee's Fees on the Effective Date.~~  If~~

21  ~~insufficient funds from operations are present to pay such amounts on the Effective Date, then~~

22  ~~Madison will make an advance under its loan documents to the reorganized Nevada Star Debtor's~~

23  ~~("Reorganized Debtor") estate and add any payment to its allowed Class 2 claim.~~

24      ~~Madison shall make a gift to the Raffone estate in an amount required to pay the Raffone~~

25  ~~estate's Clerk's Office Fees and the Office of the U.S. Trustee's Fees on the Effective Date.~~

26  ~~Madison will not add any portion of the gift to its allowed Class 2 claim.  Madison will not assert~~

27  ~~the amount of the gift~~ or as ~~a general unsecured claim in the Raffone estate~~soon thereafter as the

28  Administrator can do so.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1

### 2.3.    Priority Tax Claims.

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that each holder of such a § 507(a)(8) priority tax claim receive on account of such claim regular installment payments in cash of a total value as of the effective date of the Plan equal to the allowed amount of such claim over a period ending not later than five (5) years after the date of the order for relief, and that such payment be achieved to cause the payment to be in a manner not less favorable than the most favored non-priority unsecured claim provided for by the Plan.

The Debtor is not known to have any Section 507(a)(8) priority tax claims to the IRS or to the  New York State Dept of Taxation and Finance.

The following chart lists all of Raffone's Section 507(a)(8) priority tax claims, and their treatment under this Plan.

| DESCRIPTION | AMOUNT OWED | TREATMENT |
|---|---|---|
| • Name= IRS[5] and New York State Dept of Taxation and Finance<br><br>• Type of Tax = FICA and income taxes from 2006 through 2009 with interest accrued<br><br>• Date tax assessed =2011 | $53,350.99 (as amended on November 16, 2010)<br><br>Plus<br><br>$81,602.88 (as filed on January 6, 2011 for income taxes) | • Pymt interval =one time<br>• Pymt amt/interval = full amount of claim<br>• Begin date = as soon as Administrator can determine the amount owed and after funds are available for the payment of such claim<br>• End date = N/A<br>• Interest Rate = applicable non-bankruptcy rate<br>• Total Payout Amount 100 % |

The penalty portion of the IRS priority claim shall be subordinated to the payment of the rest of the unsecured class.  The asserted IRS penalty from the date of petition on unsecured priority claims (including interest thereon) that will be subordinated is $19,214.49, plus any additional accruing penalty amounts.  There is no known penalty portion of the claim of the New York State Department of Taxation and Finance.

 Under this Plan, the Administrator must pay each Section 507(a)(8) priority tax claim, if any, in full. The Administrator may pay such claims from the proceeds of the Property, if sold

---

[5]    Under this Plan, the Debtor shall not have the right to contest penalties assessed by the IRS because such claim are consensually treated in Class 14 which receives no distribution.

SM01DOCS\829745.2

34

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  ~~prior to the sale of the Beverly Hills house or the Florida house.  However, if the proceeds of the~~

2  ~~Property are used to pay the Section 507(a)(8) priority tax claims, then upon sale of one or more~~

3  ~~asset in the Raffone estate, the Administrator shall cause the Raffone estate to refund the amount~~

4  ~~of the Section 507(a)(8) priority tax claims back to the Nevada Star estate.  Under no~~

5  ~~circumstances shall the creditors of the Nevada Star estate bear the ultimate cost of the payment of~~

6  ~~the Section 507(a)(8) priority tax claims of the Raffone estate, although the cash of the Nevada~~

7  ~~Star estate may be used to satisfy such claims temporarily, as long as such cash is later reimbursed~~

8  ~~to the Nevada Star estate.~~

9    **C.**    **Classified Claims and Interests.**

10    **1.**    **Classes of Secured Claims.**

11    Secured claims are claims secured by liens on property of the estate.  The following charts

12  list ~~(a)~~ classes 1-7 containing Debtor's secured pre-petition claims and their treatment under this

13  Plan, ~~and (b)~~ Classes 2-8 ~~9 containing Raffone's secured pre-petition claims and their treatment~~

14  ~~under this Plan.  Classes 8-9 are not secured against the Property.  Classes 1-7 are not secured by~~

15  ~~Raffone's California or Florida homes.  Classes 4-7 may not~~ will be treated as secured at the time

16  of final distribution, ~~depending~~but will be paid in accordance with an agreed upon ~~the potential for~~

17  ~~prosecution of avoidance power actions~~settlement that provides for a flat amount plus additional

18  accruing charges for interest or fees (Madison) or a formula (Classes 3-8), as set forth in Exhibit

19  C.  There is no guarantee of the amount that creditors in Classes 3-8 will receive.  A significant

20  portion, and potentially all, of claims in Classes 4-~~7~~8 are believed to be undersecured or wholly

21  unsecured.  ~~Notably~~As part of the settlement set forth in this Plan, the ~~Debtor may have lost~~

22  complaint filed by the ~~right~~IRS to pursue avoidance power actions against any creditor in such

23  Classes 4-7 whose liens were all recorded in the 90 days immediately prior to the filing of the

24  Debtor's voluntary petition.  ~~It is not clear that~~ shall be dismissed with prejudice within 5

25  business days after receiving the ~~Administrator, creditors or parties in interest were stripped of~~

26  ~~such rights~~initial settlement payment described below.

27

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1~~A~~ | Secured claim of senior | No | Yes | • Pymt interval = Single; see |

28

SM01DOCS\829745.2

35

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | secured real estate taxes | | Claim, less penalties, paid in full at the close of escrow. | means for effectuating the plan at section III(D) hereof. |
| | • Name= New York City Department of Finance | | | • Pymt amt/interval = Allowed amount of claim/one payment. |
| | • Collateral description = Debtor's Property. | | | • Balloon pymt = No. |
| | • Collateral value = $18MM | | | • Begin date = ~~Close of escrow, subject to potential holdback for determination of appeal~~on Effective Date |
| | • Priority of security int. = first | | | • End date = Final determination of allowed amount of claim. |
| | • Principal owed = approx $1,~~026151.42~~072,709.71 (includes known interest and penalties through 1.~~3~~1.11)[6] | | | • Interest rate % = statutory<br>• Penalties will not be paid as a Class 1 claim but will be paid as a Class ~~13~~12 claim |
| | • Pre-pet. Arrearage amount = $unknown. | | | • Total payout = 100% of allowed amount of claim excluding penalties |
| | • Post-pet. Arrearage amount = $unknown. | | | • Treatment of Lien = Lien terminated and extinguished upon close of escrow, transferred to proceeds until final determination of claim. |
| | • Total claim amount = approx $1,~~026151.42~~072,709.71 (includes known interest and penalties through 1.~~3~~1.11) | | | Only allowed amount of claim, after appeal, and without penalties or interest on penalties, will be paid in ~~class 1A~~Class 1. |

~~Under this Plan, the payment to creditors in Class 1A shall be subject to an appeal hearing on the amount of the tax claimed by the New York City Department of Finance. Madison believes that tax obligation will be reduced from $1,026151.42 to approximately $500,000. The Administrator shall be responsible for bringing on that appeal and resolving it, providing for the~~

---

[6]    Campbell believes this claim ~~will~~ may only be allowed in a maximum amount of $459,070 because a proof of claim was filed by this claimant in that amount. Madison however believes that a higher amount is warranted for purposes of disclosure as (i) the filed claim only applies to the second half of 2009 and the first half of 2010, and additional amounts have accrued since that time, and (ii) the creditor's website states this higher amount~~, and (iii)~~. The IRS, who will receive an assignment of this right to seek a refund of any overpayment of the claim from the Administrator, may undertake efforts ~~are underway by Madison~~ to reduce the amount of the claim. Accordingly, the ultimate amount remains uncertain.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  sale of the Property to occur under this Plan, with a release of the tax lien upon closing of escrow,

2  and the lien to remain against the proceeds of the sale until paid.  The Administrator shall be

3  entitled to pay other creditors from proceeds of the sale if a sufficient amount is reserved for the

4  payment of any tax to Class 1A, as may be finally determined.  The Administrator is encouraged,

5  but not required, to determine the amount of any holdback on the Class 1A claim by consent, but

6  if needed, may seek the ruling of the Court on an appropriate holdback amount so that claims to

7  subordinate creditors may be paid.  Under this Plan, the Administrator is encouraged to cause

8  Class 2 to be paid as soon as reasonably practical to preserve as much of the value of the proceeds

9  for the benefit of other interest holders herein.

10

11

12      Under this Plan, the payment to creditors in Class 1 shall be paid at the close of escrow.

13  Penalties or interest on penalties of the Class 1 claim will be paid in Class 12.  Upon payment of

14  Class 1, less penalties and interest on penalties, the tax lien of the New York City Department of

15  Finance shall be released.  Any right to pursue an appeal against the New York City Department

16  of Finance, reducing the tax obligation of the Debtor shall vest with the United States.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1B | Secured claim of senior secured real estate taxes | No | Yes Claim paid in full at the close of escrow. | Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |
| | • Name= State of California, County of Los Angeles | | | • Pymt amt/interval = Allowed amount of claim/one payment. |
| | • Collateral description = Raffone's Beverly Hills house. | | | • Balloon pymt = No. |
| | • Collateral value = $1,175,000 | | | • Begin date = Close of escrow |
| | • Priority of security int. = first on California house | | | • End date = Close of escrow. |
| | • Principal owed = unknown | | | • Interest rate % = statutory • Penalties will not be paid as a Class 1 claim but will be paid as a Class 14 claim |
| | • Pre-pet. Arrearage amount = $unknown. | | | • Total payout = 100% of allowed amount of claim |

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|----------------|-----------|
| | | | | excluding penalties |
| | Post-pet. Arrearage amount = $unknown. | | | Treatment of Lien = Lien terminated and extinguished upon payment. |
| | Total claim amount = unknown | | | |

Class 1B shall be paid from the proceeds of escrow of the Beverly Hills property upon submission of a payoff demand statement.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|----------------|-----------|
| 1C | Secured claim of senior secured real estate taxes | No | Yes Claim paid in full at the close of escrow. | Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |
| | Name= Florida Loxahatchee County | | | Pymt amt/interval = Allowed amount of claim/one payment. |
| | Collateral description = Debtor's Florida house. | | | Balloon pymt = No. |
| | Collateral value = $600,000 | | | Begin date = Close of escrow |
| | Priority of security int. = first on Florida house | | | End date = Close of escrow. |
| | Principal owed = $7,737.52 as of March 31, 2011 | | | Interest rate % = statutory Penalties will not be paid as a Class 1 claim but will be paid as a Class 14 claim |
| | Pre-pet. Arrearage amount = $unknown. | | | Total payout = 100% of allowed amount of claim excluding penalties |
| | Post-pet. Arrearage amount = $unknown. | | | Treatment of Lien = Lien terminated and extinguished upon payment. |
| | Total claim amount =unknown | | | |

Class 1C shall be paid from the proceeds of escrow of the Florida property upon submission of a payoff demand statement.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|----------------|-----------|
| 2 | Secured claim of senior secured lender holding voluntary lien | No | Yes Claim paid in full at the close of escrow. | Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | • Name= Madison Realty Capital, L.P. | | | • Pymt amt/interval = Allowed amount of claim/one payment, less $30,000 settlement payment pursuant to Raffone payoff demand submitted to escrow. |
| | • Collateral description = Debtor's Property. | | | • Balloon pymt = No. |
| | • Collateral value = $18MM | | | • Begin date = Close of escrow |
| | • Priority of security int. = second (recorded 9.23.08) | | | • End date = Close of escrow. |
| | • Principal owed = $7,583,012.02 | | | • Interest rate % = contract rate of 24%, reduced to 12.75% from April 30 to May 31, 2011 only in event payment occurs prior to May 31, 2011 |
| | • Pre-pet. Arrearage amount = $1,039,943.10.+ | | | • Total payout = 100% of allowed settled amount of claim, less $30,000.agreed upon reduction from Exhibit C, if paid by no later than May 31, 2011. |
| | • Post-pet. Arrearage amount = at least $1,943,107.88 as of March 31, 2011. | | | • Treatment of Lien = Lien terminated and extinguished upon payment. |
| | • Total claim amount = flat settlement amount of $10,566,062.99750,000 as of March 31April 30, 2011, plus amounts accrued after that dateApril 30, 2011 for interest and fees and after February 1, 2011 for attorneys' fees and costs. | | | If paid on March or before May 31, 2011, estimatedthen Madison will agree to a discount of its claim payment amount, which would then be $10,536,062750,000, plus accrued interest at nominal rate for month of May 2011, plus any amounts funded to Class 11actually incurred and elsewhere under this Plan billed in attorneys fees from March 1, 2011 through closing. |

Madison shall be paid its contractually owed the agreed upon settlement amount from the close of escrow upon submission of a payoff demand to the title company selected by the Administrator.  Madison shall provide in its payoff demand a full statementrequest for the sum of $10,750,000.00 as the amounts flat the amount owed under its contract, less a flat $30,000 paid to Raffone on account of the settlement of her occupation, possessionthe settlement at Exhibit C,

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  plus all interest fees and ~~use~~other charges under its loan documents from April 30, 2011 until

2  closing, plus all attorneys' fees and costs from February 1, 2011 until closing.  In the event the

3  sale closes on or before May 31, 2011, Madison shall agree to discount its claim by (i) the amount

4  of all attorneys' fees incurred in February 2011, and (ii) the difference between the default interest

5  rate and the nominal interest rate for the time period April 30, 2011 through May 31, 2011.

6  Madison will forbear from holding an actual foreclosure sale of the Property~~.~~ until June 30, 2011.

7  However, nothing in this Plan shall require Madison to forbear from exercising any other

8  remedies, including taking of all steps up to the point of the holding of the sale.

9           The Administrator shall have no right to contest the payment or amount of the Madison

10  payoff demand~~, unless such demand is not in accordance with its prepetition contract rights or~~

11  ~~fails to deduct the $30,000.~~

12           .  The general mutual releases set forth in this Plan shall be effective upon entry of a final

13  confirmation order. The Administrator is encouraged, but not required, to cause the payment of the

14  Class 2 claim in the most expeditious manner possible so as to preserve as much of the value of

15  the proceeds for the benefit of other interest holders herein.

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 3 | Secured claim of mechanic's lien holder | No | Yes<br>~~93~~100% of allowed claim is paid in full on close of escrow | • ~~Pymt interval = Single; see means for effectuating the plan at section III(D) hereof.~~Pymt interval = One, full payment at close of escrow. |
| | • Name= Ponichtera Contracting[7] | | | • ~~Pymt amt/interval = Fixed~~ Payment amount is fixed at allowed amount of claim~~/one payment at 93%.~~ |
| | • Collateral description = Debtor's Property. | | | • Balloon pymt = No. |
| | • Collateral value = $18MM | | | • Begin date = Close of escrow, or as soon thereafter as ~~actual claim amount can be determined.~~funds are available. |
| | • Priority of security int. = third (recorded 2.11.09) | | | • End date = Close of escrow~~, or as soon thereafter as actual claim amount can be determined.~~ |
| | • Principal owed = $21,000 | | | • Interest rate % = none |
| | • Pre-pet. Arrearage amount = $12,017.29. | | | • Total payout = ~~93~~est. 100% of allowed amount of claim with credit for all payments previously made. |
| | • Post-pet. Arrearage amount = as accrued by law. | | | • Treatment of Lien = Lien terminated and extinguished upon payment. |
| | • Total allowed claim amount = $32,017.29 waiving all amounts accrued by operation of law, if any, paid at ~~93%~~100% | | | ~~Flat payment is $29,775.81 if no credits to amount owed.~~ Payment will be less if any portion of claim previously paid by Debtor, Raffone or any custodian or receiver and less any amount which was not actually incurred by Ponichtera. Actual payment will be after credits are applied. |

### Statement regarding Classes 4 Through ~~7~~

---

[7]    Raffone disputes the claim of Ponichtera Contracting on the grounds that Ponichtera never filed a proof of claim, and that Ponichtera may have been paid in full for unfinished services with respect to the kitchen and the bathroom in Unit 17A. Madison believes the claim must be addressed in the Plan as the failure to file a proof of claim does not cause Ponichtera to lose its *in rem* rights, only its *in personam* rights. Nothing in the order entered on July 12, 2010 at Docket No. 6, precludes the Administrator from determining and paying the *in rem* amount of this claim post confirmation and the Administrator shall have the authority, in a court of applicable jurisdiction, to determine the actual amount prior to any payment.

**8 and 11**

Each of the claims in Classes 4 through 7 allegedly were recorded as liens against the Property during the 90-day window immediately prior to the commencement of the Debtor's bankruptcy case.  Certain creditors have contended that the recording of UCC-1 statements was not sufficient to attach a lien to real property, or that other New York law was not followed sufficiently to create a lien.  In addition, absent the settlement set forth in this Plan, each creditor in Classes 4 through 7 is potentially subject to avoidance powers by the Administrator, Committee, creditor or interested party which who could invalidate the lien or determine that the claim amount or the security were preferential or fraudulent transfers without reasonably equivalent value.  The following treatment for each claim in Classes 4 through 7 may not be the actual result in that all four (4) claims are exposed to the risk of a successful avoidance action. Additionally, the Class 4 claim as to its dollar amount 8 has not yet been allowed by agreed upon as part of a settlement.  If the confirmation order becomes a final order, unlike the claims in Classes 5-7, which have been allowed as to dollar amount, although not as to lien priority. then all litigation as to the dollar amount and lien priority against *the Debtor's estate* shall be deemed resolved.  Notwithstanding the entry of a final confirmation order, nothing herein shall prevent Raffone from continuing to litigate with Henry Douglas Campbell as to litigation outside the bankruptcy court or his allowed claim amount in the Raffone estate.

Litigation concerning the Class 4 claim has persisted for many years and does not appear likely to resolve soon.  Litigation Even if this Plan is confirmed, Madison expects that litigation concerning the Class 4 claim will continue both under state law and in the bankruptcy court as to the allowed amount against the Raffone estate.  The settlement set forth in this Plan are the result of creditors' belief that litigation regarding the secured nature of the claims in Classes 4-7 is further likely. For these reasons, the claim, including a claim raised, but not yet filed, by the IRS asserting that the transfer of the Property from Raffone to the Debtor was a fraudulent transfer.  As part of the settlement set forth in this Plan, the IRS shall dismiss with prejudice its current adversary proceeding (Docket No. 2:11-ap-1759-PC) within 5 business days after receipt of the initial settlement payment described below and refrain from bringing any litigation that shall delay

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  the implementation of the Plan described herein.  The United States intends to apply its payment

2  under this Plan in full satisfaction of any capital gains arising from the sale of the Property.  The

3  creditors in Classes 4-7 dispute the contentions raised in the descriptions above.

4      The Administrator shall have no right to contest the payment or amount of the claims in

5  Classes 4 through 8 or the claim of Fox Rothschild in Class 4 is listed as discounted from what

6  Campbell believes he might one day win from a Florida court (at $3.5 million to $4.0 million

7  range), to the amount closer to what his litigation award stated ($2.25 million plus interest and

8  post settlement attorneys' fees).  The 11.  The general mutual releases set forth in this Plan shall be

9  effective upon entry of a final confirmation order.

10      The actual treatment of all claims in Classes 4-78 and 11 is set forth on Exhibit C.

11  Creditors on Exhibit C who have a percentage figure listed in the far right column shall share in

12  the upside of any additional funds for distribution and share in the risk that lesser funds will be

13  available, in the stated percentages set forth for each creditor.  The payment amount on the claims

14  in Classes 4-8 is not guaranteed and will be finally determined by the (i) value at which the

15  Property sells, (ii) amount of money that the Administrator recovers in the liquidation of assets,

16  (iii) amount of the claims of a higher priority, (iv) the date on which payment to senior creditors is

17  made, (v) the actual closing date on the sale of the Property, (vi) the amount of fees and interest

18  charged by Madison as set forth above, and (vii) the actual amount of administrative expenses

19  allowed by the Court and further incurred by the Administrator or owed under the Plan, including

20  for operations of the Property.  The payment amount on the claims in Classes 2-8 and 11 will not

21  be finally determined by the outcome of any litigation that has been or may be brought.  The

22  Administrator shall make the payment to Classes 2-8 and only11 as soon as reasonably practical

23  but in the no event litigation is not filed, will be treated as set forth in this Planlater than 10

24  business days after Closing.

25      The Administrator shall be entitled to make two payments to creditors holding claims in

26  Classes 4-8 and 11.  The first payment should be as large as possible reserving sufficient funds for

27  the Administrator to perform his obligations under this Plan.  The second payment shall be the

28  balance of funds on hand at the closing of the estate.  For purposes of reservation of funds for

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

SM01DOCS\829745.2

1  senior classes, once the Administrator has paid Classes 1-3 and all reserved for or paid all non

2  classified or administrative claims, including the wages and tenant deposits, then payments must

3  begin pro-rata to Classes 4-8 and 11.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | Secured claim of involuntary judgment lien holder | No | Yes<br>Flat ~~allowed~~settled amount of claim is paid in full ~~on close of escrow, if allowed~~in two payments | • Pymt interval = ~~Single~~Two; see means for effectuating the plan at section III(D) hereof. |
| | • Name= Henry Douglas Campbell ("Campbell") | | | • Pymt amt/interval = ~~One on close of escrow or as soon thereafter the setoff is determined, flat amount of $2,160,229.11.~~<br>• Fixed allowed amount of claim paid via two payments. First payment  est. at $3M and second payment determined by formula described below |
| | • Collateral description = Debtor's Property, plus second priority on Raffone's Florida house, and disputed ownership or lien interest on membership interests of Debtor | | | • Balloon pymt = No.<br>• ~~Note: Claim is subject to contest in pending litigation. No payment will be made unless Campbell votes in favor of the Plan, litigation is dismissed with prejudice and order is entered confirming this Plan. Flat payment on claim also may be subject to setoff on account of tenant deposits, if any, were received by Campbell.~~ |
| | • Collateral value = $18MM | | | • ~~Begin date = Completion of determination of setoff amounts and preference recovery action, if any..~~Begin date = Close of escrow, or as soon thereafter as funds are available. |
| | • Priority of security int. = fourth (recorded 2.6.10) as to Debtor's Property | | | • ~~End date = Completion of determination of setoff amounts, and preference recovery action, if any.~~End date = Close of estate, or as soon thereafter as actual final cash for distribution can be determined. |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | • Principal owed = $2.25MM to $4.0MM | | | • Interest rate % = none |
| | • Pre-pet. Arrearage amount = unknown. | | | • Total payout = $~~2,160, 229.11 less amounts received of tenant deposits.~~3,000,000 est.. |
| | • Post-pet. Arrearage amount = Unknown. | | | • Treatment of Lien = Lien terminated and extinguished upon close of escrow, with lien to transfer to proceeds until paid by Administrator~~, after determination of setoffs~~. |
| | • Total claim amount = estimated $4 million as of April 30, 2011 | | | • ~~Actual payment will be flat amount of $2,160, 229.11 less amounts received of tenant deposits.~~ Actual payment will be in accordance with settlement at Exhibit C. |

Campbell believes that, if litigated, his claim will be allowed by Court order at no less than $2.5 million and likely closer to $3.5 million and possibly as high as $4 million.  He also asserts a right to interest at the Florida judgment rate from February 6, 2010 until paid.  Campbell asserts he has other collateral that includes Raffone's membership interest in the Debtor.  He claims he filed a UCC-1 in Florida on January 21, 2010, despite that such date is prior to the February 6, 2010 judgment date.  He also claims liens on Raffone's Florida real estate.  A certified copy of Final Judgment was allegedly recorded in Loxahatchee County in January 2010, which date is prior to the February 6, 2010 judgment date.  Campbell's actual rights are unclear and subject to litigation.

Accordingly, if the Plan is confirmed, then upon close of escrow, and transfer of lien to proceeds for payment of the flat settlement amount proposed herein on account of his allowed claim, Campbell ~~would~~will be required to release all of his liens on all the Debtor's collateral.  Under this Plan, Campbell trades the uncertainty of litigation and the opportunity to get cash ~~in a certain amount exceeding $2~~estimated at $3 million, against the possibility that the case may be converted to chapter 7 or alternatively, the Property cannot be sold for an amount sufficient to pay administrative claims, leaving the estate administratively insolvent and incapable of confirming any plan, and losing the Property to foreclosure by Madison.  Pursuant to the Settlement Agreement, Class 4 claims will be paid a second payment out of excess funds according to their

~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  respective percentages as described in the far right column of Exhibit C after the Administrator

2  has paid or Classes 1-3 and reserved for or paid all seniornonclassified or administrative claims in

3  priority. Nothing herein shall prevent the Administrator, the Committee, or any creditor, including

4  wages and tenant deposits.

5  Class 4 under this Plan will accrue no interest or interested party, other than the Debtor,

6  commencing an avoidance power lawsuit against Campbell.

7  fees or charges of any kind on the $3,000,000 settled claim amount. Several creditors,

8  particularly those in Classes 5-78, believe that Campbell is an unsecured creditor holding a general

9  unsecured claim and that this Class 4 should be eliminated and paid in conjunction with the Class

10  1211 claims. The Plan addressesforecloses that possibility by providing that the Administrator has

11  the power to bring avoidance actions against any of the holders of Class 4-7 claims in light of their

12  recordingfor general mutual releases to become effective upon entry of their liens within the 90-

13  day window prior to bankruptcya final confirmation order.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 5 | Secured claim of senior secured lender holding voluntary lien | No | Yes 93%Flat settled amount of allowed claim is paid in full on close of escrow, or as soon thereafter as possible.in two payments | • Pymt interval = SingleTwo; see means for effectuating the plan at section III(D) hereof. |
|  | • Name= Christiansen & Jacknin |  |  | • Pymt amt/interval = Fixed allowed amount of claim/one paid via two payments. First payment total est. at 93%. $69,166.11 with second payment determined via formula described below. |
|  | • Collateral description = Debtor's Property. |  |  | • Balloon pymt = No. |
|  | • Collateral value = $18MM |  |  | • Begin date = Close of escrow, or as soon thereafter as possible following payment of senior claims.funds are available. |
|  | • Priority of security int. = fifth (recorded 3.16.10) |  |  | • End date = Close of escrowestate, or as soon thereafter as possible following payment of senior claims.actual final cash for distribution can be determined. |
|  | • Principal owed = $54,281.66 |  |  | • Interest rate % = none |
|  | • Pre-pet. Arrearage amount |  |  | • Total payout = 93% of |

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | = $unknown | | | ~~allowed~~settled amount of claim ~~with credit for all payments previously made~~. |
| | • Post-pet. Arrearage amount = $unknown. | | | • Treatment of Lien = Lien terminated and extinguished upon payment. |
| | • Total claim amount = $~~54,281.66~~76,851.23 as of ~~Petition Date,~~April 30, 2011 with waiver of all amounts accrued after that date | | | ~~Flat payment is $50,481.94.~~ Actual payment will be in accordance with settlement at Exhibit C. |

Class 5 under this Plan will accrue no interest or other fees or charges of any kind on the $~~54,281.66 allowed~~76,851.23 settled claim amount and will receive a ~~flat~~settlement payment ~~of $50,481.94, reflecting~~estimated at a ~~7~~10% discount.  Accordingly, upon close of escrow, and transfer of lien to proceeds for payment of the flat amount proposed herein on account of its allowed claim, Christiansen & Jacknin would be required to release all of its liens on all collateral. Pursuant to the Settlement Agreement, Class 5 claims will be paid a second payment out of excess funds according to their respective percentages as described in the far right column of Exhibit C after the Administrator has paid ~~or~~Classes 1-3 and reserved for ~~or paid~~ all ~~senior~~nonclassified or administrative claims ~~in priority.  Nothing herein shall prevent the Administrator, the Committee, or any creditor or interested party, other than the Debtor, commencing an avoidance power lawsuit against Class 5 creditors.~~

, including wages and tenant deposits.

Several creditors believe that Class 5 is an unsecured creditor holding a general unsecured claim and that this Class 5 should be eliminated and paid in conjunction with the Class ~~12~~11 claims.  The Plan ~~addresses~~forecloses that possibility by providing ~~that the Administrator, among others, but not the Debtor, has the power to bring avoidance actions against any of the holders~~for general mutual releases to become effective upon entry of ~~Class 5 claims in light of their recording of their liens within the 90-day window prior to bankruptcy~~a final confirmation order.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 6 | Secured claim of senior secured lender holding voluntary lien | No | Yes ~~93%~~ Flat settled amount of ~~allowed~~ claim is paid in full ~~on close of escrow, or as soon thereafter as possible.~~ in two payments | • Pymt interval = ~~Single~~Two; see means for effectuating the plan at section III(D) hereof. |
|  | • Name= Casey Ciklin Lubitz Martens O'Connell |  |  | • Pymt amt/interval = Fixed allowed amount of claim~~/one~~ paid via two payments.  First payment  est.  at ~~93%~~ $444,129.39 with second payment determined by formula described below |
|  | • Collateral description = Debtor's real property. |  |  | • Balloon pymt = No. |
|  | • Collateral value = $18MM |  |  | • Begin date = Close of escrow, or as soon thereafter as ~~possible following payment of senior claims.~~ funds are available. |
|  | • Priority of security int. = sixth (recorded 3.18.10) |  |  | • End date = Close of ~~escrow~~estate, or as soon thereafter as ~~possible following payment of senior claims.~~ actual final cash for distribution can be determined. |
|  | • Principal owed = $331,668.73 |  |  | • Interest rate % = none |
|  | • Pre-pet. Arrearage amount = unknown |  |  | • Total payout = ~~93% of allowed~~settled amount of claim ~~with credit for all payments previously made~~. |
|  | • Post-pet. Arrearage amount = unknown. |  |  | • Treatment of Lien = Lien terminated and extinguished upon payment. |
|  | • Total claim amount = $~~331,668.73~~493,477.10 as of ~~Petition Date~~April 30, 2011, with waiver of amounts accrued after that date |  |  | • ~~Flat~~Actual payment ~~is $308,451.91~~will be in accordance with settlement at Exhibit C. |

Class 6 under this Plan will accrue no interest or other fees or charges of any kind on the

$~~331,668.73 allowed~~493,477.10 settled claim amount and will receive a ~~flat~~settlement payment ~~of $308,451.91, reflecting~~estimated at a ~~7~~10% discount.  Accordingly, upon close of escrow, and

transfer of lien to proceeds for payment of the flat amount proposed herein on account of its

allowed claim, Casey Ciklin Lubitz Martens O'Connell would be required to release all of its liens

on all collateral. Pursuant to the Settlement Agreement, Class 6 claims will be paid a second

~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  payment out of excess funds according to their respective percentages as described in the far right

2  column of Exhibit C after the Administrator has paid or Classes 1-3 and reserved for or paid all

3  senior nonclassified or administrative claims in priority., including wages and tenant deposits.

4          Nothing herein shall prevent the Administrator, the Committee, or any creditor or

5  interested party, other than the Debtor, commencing an avoidance power lawsuit against Class 6

6  creditors.

7          Several creditors believe that Class 6 is an unsecured creditor holding a general unsecured

8  claim and that this Class 6 should be eliminated and paid in conjunction with the Class 1211

9  claims.  The Plan addressesforecloses that possibility by providing that the Administrator, among

10  others, but not the Debtor, has the power to bring avoidance actions against any of the holdersfor

11  general mutual releases to become effective upon entry of Class 6 claims in light of their recording

12  of their liens within the 90-day window prior to bankruptcya final confirmation order.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 7 | Secured claim of senior secured lender holding voluntary lien | No | Yes 93%, Flat settled amount of allowed claim is paid in full on close of escrow, or as soon thereafter as possible. in two payments | • Pymt interval = SingleTwo; see means for effectuating the plan at section III(D) hereof. |
| | • Name= Beys Stein & Mobargha LLP | | | • Pymt amt/interval = Fixed allowed amount of claim/one paid via two payments.  First payment _est.at 93%.$270,000.00 with second payment determined by formula described below |
| | • Collateral description = Debtor's Property. | | | • Balloon pymt = No. |
| | • Collateral value = $18MM | | | • Begin date = Close of escrow, or as soon thereafter as possible following payment of senior claims.funds are available. |
| | • Priority of security int. = seventh (recorded 5.4.10) | | | • End date = Close of escrowestate, or as soon thereafter as possible following payment of senior claims.actual final cash for distribution can be determined. |
| | • Principal owed = $230,421.88 | | | • Interest rate % = none |
| | • Pre-pet. Arrearage amount | | | • Total payout = 93% of |

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | = unknown | | | ~~allowed~~settled amount of claim ~~with credit for all payments previously made~~. |
| | • Post-pet. Arrearage amount = unknown. | | | • Treatment of Lien = Lien terminated and extinguished upon payment. |
| | • Total claim amount = $~~230,421.88~~300,000.00 as of Petition Date, with waiver of all amounts accrued after that date | | | • ~~Flat~~Actual payment ~~is $214,292.34~~will be in accordance with settlement at Exhibit C. |

Class 7 under this Plan will accrue no interest or other fees or charges of any kind on the $~~230,421.88 allowed~~300,000.00 settled claim amount and will receive a ~~flat~~settlement payment ~~of $214,292.34, reflecting~~estimated at a ~~7~~10% discount.  Accordingly, upon close of escrow, and transfer of lien to proceeds for payment of the flat amount proposed herein on account of its allowed claim, Beys Stein & Mobargha LLP would be required to release all of its liens on all collateral.  Pursuant to the Settlement Agreement, Class 7 claims will be paid a second payment out of excess funds according to their respective percentages as described in the far right column of Exhibit C after the Administrator has paid ~~or~~Classes 1-3 and reserved for or paid all ~~senior~~nonclassified or administrative claims ~~in priority.  Nothing herein shall prevent the Administrator, the Committee, or any creditor or interested party, other than the Debtor, commencing an avoidance power lawsuit against Class 7 creditors.~~

, including wages and tenant deposits.

Several creditors believe that Class 7 is an unsecured creditor holding a general unsecured claim and that this Class 7 should be eliminated and paid in conjunction with the Class ~~12~~11 claims.  The Plan ~~addresses~~forecloses that possibility by providing ~~that the Administrator, among others, but not the Debtor, has the power to bring avoidance actions against any of the holders~~for general mutual releases to become effective upon entry of ~~Class 7 claims in light of their recording of their liens within the 90-day window prior to bankruptcy~~a final confirmation order.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 8 | ~~Secured claim of voluntary~~ | No | Yes | • Pymt interval = ~~Single~~Two; |

SM01DOCS\829745.2

50

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | lender against Raffone's personal residence in California Litigation claim (preference and fraudulent transfer, both filed and unfiled) | | Claim is either assumed or paid in full on close of escrow Flat settled amount of claim is paid in full in two payments | see means for effectuating the plan at section III(D) hereof. |
| | • Name= Links Capital Partners, LLC, et al.; Defined Benefit Pension Plan Trust Name= United States of America (IRS) | | | • Pymt amt/interval = $Fixed allowed amount/one of claim paid via two payments total. First payment or assumed est. at $934,335.49 with second payment determined by formula described below |
| | • Collateral description = Debtor's real property in Beverly Hills. none | | | • Balloon pymt = No. |
| | • Collateral value = $1,175K N/A | | | • Begin date = Close of escrow, or as soon thereafter as funds are available. |
| | • Priority of security int. = second against Beverly Hills house behind California real property taxes = N/A (asserted administrative claim) | | | • End date = Close of escrow estate, or assumed as soon thereafter as actual final cash for distribution can be determined. |
| | • Principal owed = $350K 3MM | | | • Interest rate % = per loan docs none |
| | • Pre-pet. Arrearage amount = Unknown. | | | • Total payout = 100% of allowed settled amount of claim. |
| | • Post-pet. Arrearage amount = Unknown | | | • Treatment of Lien = Lien terminated and extinguished upon payment, unless assumed. N/A |
| | • Total claim amount = as allowed settled | | | Paid in full. Actual payment will be in accordance with settlement at Exhibit C. |

Links Capital shall receive payment in full on its contract claim from close of escrow of the sale of the Beverly Hills house.  The Administrator shall be required to sell the Beverly Hills house within 6 months of the entry of a final confirmation order, or the stay shall automatically be lifted to permit Links Capital to proceed with remedies under state law.  The Administrator may sell the Beverly Hills house at any time prior to a foreclosure by Links Capital.

1    Under this Plan, Raffone agrees to vacate the Beverly Hills house and permit its sale free

2    and clear of Raffone's occupancy and use, as well as cleared of all her personal possessions.

3    Links Capital benefits from this concession by Raffone as it only defers exercising its remedies for

4    a period of six months, a time period in which it is easily protected by the equity cushion in the

5    house.

6

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 9 | Secured claim of voluntary lender against Raffone's personal residence in Florida | No | Yes  Claim is either assumed or paid in full on close of escrow | Pymt interval = Single; see means for effectuating the plan at section III(D) hereof. |
| | • Name= J.P. Morgan Chase | | | • Pymt amt/interval = $allowed amount/one payment or assumed |
| | • Collateral description = Debtor's real property located at 1495 Arabian Drive, Loxahatchee, FL 33470 | | | • Balloon pymt = No. |
| | • Collateral value = $600K | | | • Begin date = Close of escrow. |
| | • Priority of security int. = second against Florida house behind real property taxes on Florida house | | | • End date = Close of escrow or assumed |
| | • Principal owed = $250K estimated | | | • Interest rate % = per loan docs |
| | • Pre pet. Arrearage amount = Unknown. | | | • Total payout = 100% of allowed amount of claim |
| | • Post pet. Arrearage amount = Unknown | | | • Treatment of Lien = Lien terminated and extinguished upon payment, unless assumed. |
| | • Total claim amount = as allowed | | | • Paid in full. |

22

23    J.P. Morgan Chase shall receive payment in full on its contract claim from close of escrow

24    of the sale of the Florida house.  The Administrator shall be required to sell the Florida house

25    within 6 months of the entry of a final confirmation order, or the stay shall automatically be lifted

26    to permit J.P. Morgan Chase to proceed with remedies under state law.  The Administrator may

27    sell the Florida house at any time prior to a foreclosure by J.P. Morgan Chase.

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

J.P. Morgan Chase only defers exercising its remedies for a period of six months in exchange for the ability to sell the Florida house free and clear of Raffone's occupancy and use of that property.

To the extent that any claim listed on Exhibit C or Exhibit D is later determined by the Administrator to be a secured claim, or if the Court enters an order affording treatment as a secured claim to the holder of any claim that is not set forth in this section of the Plan, the Administrator shall treat such claim as a secured claim with priority over payment of any priority unsecured claim or general unsecured claim or equity claim for that debtor in accordance with this Section II.C.1. of the Plan.

Class 8 under this Plan will accrue no interest or other fees or charges of any kind on the agreement to accept a settlement payment estimated at $934,335.49.

In settlement of the United States' adversary complaint (2:11-ap-1759) in the Nevada Star LLC case and a release from any future litigation in the Nevada Star case, the United States shall receive an initial payment of approximately $934,355.49 at the close of escrow.  Pursuant to the Settlement Agreement, Class 8 claims will be paid a second payment out of excess funds according to their respective percentages as described in the far right column of Exhibit C after the Administrator has paid Classes 1-3 and reserved for or paid all non-classified or administrative claims, including wages and tenant deposits. At the time of the filing of this Disclosure Statement and Plan, the United States' settlement agreement is still subject to final approval by the Department of Justice, though no objection is anticipated.

Several creditors believe that Class 8 is an administrative creditor of the Raffone estate only and that this Class 8 should be eliminated and paid in conjunction with the Raffone estate. The Plan forecloses the possibility that such litigation would be brought or prosecuted, by providing for general mutual releases to become effective upon entry of a final confirmation order.

### 2.   Classes of Priority Unsecured Claims.

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.  These types of claims are entitled to priority treatment as

1  follows: the Code requires that each holder of such a claim receive cash on the Effective Date

2  equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders

3  may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the

4  allowed amount of such claims.

5          The Plan Proponent intends to allow the claim of Vjollca Lumaj for her unpaid regularly

6  hourly wages as if timely filed.  David and Vjollca Lumaj are employees at the Property and allege

7  that they were not paid certain wages, salaries and overtime during the years 2005-2010 when the

8  Property was managed by Raffone, notwithstanding that such claims may be late filed.  Madison

9  believes the legitimate past due wage claim of _Vjollca Lumaj is $36,601.36 for basic hourly

10  wages without any overtime or bonus amounts included.  It shall be in the reasonable discretion of

11  the Administrator to determine whether to allow, compromise or contest the amount of any

12  additional filed claims by such employees that exceeds $36,601.36.  Raffone shall be entitled to

13  object to any treatment of such claims (including the $36,601.36) and the Administrator shall give

14  notice to Raffone of his proposed treatment of such creditors' claims, and if disputed, shall seek a

15  ruling on notice and opportunity for hearing before the Court.  Raffone shall bear the burden of

16  proof if she elects to challenge any portion of the $36,601.36.  David and Vjollca Lumaj shall

17  have the burden of proof if they elect to seek an amount higher than $36,601.36, including the

18  amounts listed on Exhibit ~~C~~B as disputed and not allowed.  Vjollca Lumaj's claim shall be paid

19  $10,000 ~~in full~~as a priority, and the balance of $26,601.36 in the general unsecured ~~class of~~ claim

20  in Class ~~12~~11.

21          The Plan Proponent intends to allow the claim of tenants for their security deposits,

22  believed to be held, at least in part, by Raffone, Campbell and/or Bank of America, N.A.  Tenant

23  security deposits are not funds of Campbell, the Debtor or Raffone.  Under applicable New York

24  law, tenant deposits must be held in a bank in New York state, in each tenants' social security

25  number, with annual reporting directly to the tenants, who are entitled to all interest annually

26  above 1% which they can choose to let accrue or request be paid to them directly from the

27  depositing bank. Raffone has produced documents that indicate that Campbell garnished at least

28  some the funds of the tenants when he sought collection on the February 6, 2010 judgment of the

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  Florida court against Raffone on February 22, 2010, and may have mistakenly believed the funds

2  to have been hers.  ~~Madison~~ Campbell disputes that allegation.  Minuit believes that Raffone

3  ~~admitted to Minuit~~ that she personally spent some of the tenant deposits prior to the appointment

4  of Minuit.  Raffone disputes that allegation.  The Administrator shall have ~~the~~ no authority to

5  investigate ~~such~~ the allegations and possible possession of the tenant deposits by Campbell ~~and/or~~

6  ~~Raffone and determine appropriate legal steps to remedy~~, which is settled by this Plan.  Under the

7  ~~rights of the tenants.  The Administrator~~ settlement, an amount believed to be sufficient to re-

8  instate the tenant security deposits is to be paid or credited to the buyer.  The Buyer shall handle

9  the tenant deposits in accordance with New York law~~.  The Administrator's acts shall be~~

10 ~~authorized to extend to any person in whose hands he locates the tenant deposits, including~~

11 ~~Richard K. Hershman or any other person or entity~~ and the proposed terms of the contract with the

12 Buyer of the Property.  Notwithstanding any ~~other~~ settlement or discharge language in this Plan,

13 Raffone shall not be discharged by this Plan from this obligation to repay any tenant deposits

14 taken by her, which issue shall be determined in the Raffone estate.

15       The following chart lists all classes containing Debtor's §507(a)(3), (4), (5), (6), and (7)

16 priority unsecured claims and their treatment under this Plan.  ~~There are no known §507(a)(3), (4),~~

17 ~~(5), (6), and (7) priority unsecured claims of Raffone.~~

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| ~~10~~9 | Priority unsecured claims pursuant to § 507(a)(4)<br>• Total amt of allowed claims = $36,601.36<br>The claims in this Class 10 may be higher if the employees at the Property can submit a justifiable basis for additional compensation that was denied to them. | Yes | $10,000.00 to be paid in cash on close of escrow ~~or when sufficient funds are available~~, with remaining $26,601.36 to ~~pay such claim.  Balance of claim is~~ be paid in accordance with Class ~~12~~ 11.  Claim shall be paid without interest. |

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| ~~11~~10 | Priority unsecured claims pursuant to § 507(a)(7)<br>• Total amt of claims = $~~58,610.77~~<br>• ~~(funds to be released by any custodian or receiver, Raffone, Bank of America, N.A., and/or Campbell, and to the extent of any shortfall, paid from operating cash flow of the Debtor's real property, and thereafter, only in the extent of a further shortfall, funded in cash by Madison as an advance under its loan documents, and recovered as part of its allowed Class 2 claim)~~79,167.05 | Yes | Funded in full in cash on the Effective Date to ~~property manager for building~~buyer of Property for the benefit of claim holders. ~~These paid claim amounts shall be held in a bank in New York state, in the tenants' social security numbers, with annual reporting directly to the claim holders post close of escrow. Each claim holder shall be entitled to elect either payment to him/her of all interest that has accrued annually above 1% or maintenance of all interest in their tenant deposit accounts.~~ |

The amount of each tenant's security deposit, to be funded under this Plan is set forth with more particularity on Exhibit F.  The total amount to be funded under this Plan is $79,167.05.  If the Plan is confirmed, then each tenant shall receive credit for his or her deposit only the amount set forth on Exhibit F and shall not be entitled to make any further claim against the Debtor, the estate, the Administrator, the post confirmation Debtor, any buyer or any other party or entity for an amount greater than what is specified on Exhibit F.  All tenants' rights under applicable state law, to have interest accrue on each tenant's security deposit or other rights, will commence on the Closing Date of the proposed sale to the buyer.  Nothing in the Plan shall prevent the Buyer from enforcing all rights against a tenant under applicable state law, including set off of such tenant's security deposit.

To the extent that any claim listed on Exhibit ~~C or Exhibit D~~B is later determined by the Administrator to be a priority unsecured claim, or if the Court enters an order affording treatment as a priority unsecured claim to the holder of any claim that is not set forth in this section of the Plan, the Administrator shall treat such claim as a priority unsecured claim with priority over payment of any general unsecured claim or equity claim for that debtor.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    ~~The Debtor has no known section 507(a)(3), (a)(5) or (a)(6)~~  Under the settlement

2    embodied in this Plan, the priority ~~unsecured~~portion of the claims in Class 9 and all of Class 10

3    are to be paid in full.

4    **3.    Class~~es~~ of General Unsecured Claims.**

5    General unsecured claims are unsecured claims not entitled to priority under Code Section

6    507(a).

7    ~~a.    Unsecured Claims of the Debtor~~

8    _The following chart identifies this Plan's treatment of the class containing all of Debtor's

9    general unsecured claims.

10

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| ~~12~~11 | General Unsecured Claims asserted against Nevada Star, est. $~~932~~922,072.63* | Yes | • Pymt interval = ~~Single~~Two; see means for effectuating the plan at section III(D) hereof. |
| | *Note: Some claims in this Class ~~12~~11 have been asserted against both Nevada Star and Raffone. Notwithstanding such fact, such creditors are permitted only one recovery on their claim ~~by accepting the pro rata payment of their allowed claim amount from the Debtor Fund set forth below and shall not participate in both Classes 12 and 13 of the Plan. See Exhibit C.~~  Each dollar actually received under this Plan shall reduce the creditor's claim in the Raffone estate by a like amount. | | • ~~Payment~~Pymt amt/interval = ~~One single~~Fixed allowed amount of claim paid via two payments. First payment ~~from the Debtor Fund~~est. to be $626,829,89, with second payment calculated as described below~~.~~ |
| | | | • ~~Begin date = Reasonable time after the Administrator is capable of making payments from the Debtor Fund described below.~~Begin date = Close of escrow, or as soon thereafter as funds are available. |
| | | | • End date = ~~N/A~~Close of estate, or as soon thereafter as actual final cash for distribution can be determined. |
| | | | • Interest rate~~:  None.~~ % = none |
| | | | ~~Total payout = pro rata amount of allowed claim amount from the Debtor Fund.~~ |

23    ~~A settlement has been reached with the IRS with respect to the treatment of its claim in~~

24    ~~these consolidated cases, which settlement is only valid in the event this Plan is confirmed for both~~

25    ~~estates.  Under the proposed settlement, the penalty portion of the IRS claim, which shall be a~~

26    ~~fully allowed claim, shall be subordinated to the payment of the unsecured class.  The penalty~~

27    ~~portion of any governmental or taxing authorities' claim shall be subordinated to the payment of~~

28    ~~the unsecured class.  The asserted IRS penalty from the date of petition on unsecured general~~

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   claims (including interest thereon) that will be subordinated is approximately $157,480.51, plus

2   any additional accruing penalty amounts.  Other conditions to the comprehensive settlement are as

3   follows:

4   a) Madison shall bear the cost of (i) the $30,000 settlement amount paid to Raffone,

5   expected to be approved by the Court and all creditors during first quarter 2011, and (ii) the

6   Clerk's Office Fees and the Office of the United States Trustee Fees in the Raffone case on the

7   Effective Date of the Plan, neither of which will be added to its Class 2 claim;

8   b) Each secured creditor in Classes 3-6 accept no accrual of interest or other charges

9   on their claim and a 7% discount off the principal allowed amount, unless avoidance litigation is

10   commenced, in which event the claims will be allowed as finally determined by judgment in each

11   appropriate adversary case;

12   c) With the exception of any gift tax owed by Traute Raffone attributed to the New

13   York cooperative apartment at 108 East 86th Street, Apartment 11N, New York City, New York

14   10028 (the "NY Co-Op") and which gift tax is recorded as a lien on that NY Co-Op, Raffone's

15   income tax, FICA tax, interest, penalties, gift tax and capital gains tax or any other tax liability of

16   any kind is fully resolved by the Plan and satisfied by the payments provided for herein;

17   d) Raffone takes nothing by the Plan other than the $30,000 settlement and her

18   personal effects that would have been exempt had she made any exemption claims on Schedule C;

19   e) Raffone tenders to the Administrator all personal property that would not have been

20   exempt under Schedule C without contest or dispute of any kind;

21   f) Raffone causes transfers of the title to the NY Co-Op, currently held in name of

22   Traute Raffone, to Campbell subject only to the first lien, accrued real property taxes and gift tax

23   owed by Traute Raffone or the Traute Raffone estate;

24   g) Raffone vacates the Beverly Hills house and the Florida house in broom clean

25   condition upon request of the Administrator without delay, expense, demand or controversy of any

26   kind, and no unlawful detainer actions need be brought to remove her or her possessions from any

27   premises;

28   h) All Classes vote to accept their treatment under this Plan;

SM01DOCS\829745.2

58

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1        i)      Other than as provided for by the Plan by the Administrator, or except as may be

2 waived or excused by the IRS, all litigation ceases and all rights are dismissed with prejudice and

3 subject to treatment under this Plan;

4        j)      The New York City Department of Finance agrees to accept its proposed treatment

5 of its administrative claim upon the sale of the Property, and to permit 1% of its claim amount to

6 flow to Class 12;

7        k)      The Administrator files all back and final income and gift tax returns for the Debtor

8 and Raffone calculating the full amount of the tax owed and the Plan confirmation order provides

9 that all such tax liability of each estate under 26 U.S.C. § 1398;

10        l)      Raffone fully cooperates with the Administrator in the preparation of tax returns, as

11 may be requested by the Administrator, including providing the Administrator with confidential or

12 privileged information from accountants and attorneys;

13        m)      Campbell drops all claims that he is the owner of the Debtor;

14        n)      No creditor objects to the release of all claims against Raffone, except for (i) claims

15 for any tenant deposits she may have spent or used, and (ii) claims for her failure to comply with

16 the provisions of this Plan;

17        o)      The Administrator makes the election for the Debtor to be taxed as a C-corporation

18 beginning January 1, 2011 and such election shall be deemed to have been made as of January 1,

19 2011 regardless of when actually made or filed; and

20        a)      The IRS and the State of New York Department of Finance shall receive the

21 balance of all funds from the sale of the Property, to be divided 2/3 to the IRS and 1/3 to the State

22 of New York Department of Finance, less the agreed upon carve out for the benefit of unsecured

23 creditors of the Debtor's estate (Class 12 only), described below.

24        The IRS reserves the right to waive or excuse any of the conditions set forth above.  The

25 IRS reserves the rights to add additional conditions upon the treatment it accepts under the Plan up

26 to the time of the confirmation hearing.

27        In exchange for such conditions, the IRS will (a) permit a portion of its claim to be

28 subordinated into Class 14, (b) accept and share with the State of New York Department of

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  Finance, all remaining amounts available for the payment of claims under this Plan as satisfaction

2  of the tax owed on the filed returns ("Tax Fund"), and (c) carve out of the Tax Fund some amount

3  to pay the creditors of Class 12.

4      The Tax Fund will consist of all amounts remaining from the sale of the Property after

5  payment of (i) costs of sale other than capital gains, (ii) reserve of $450,000 for the payment of

6  pre-petition administrative claims and the post confirmation Administrator's reserve amount,

7  (iii) priority tax claims arising under 507(a)(8), and (iv) all claims in Class 1A, Classes 2-7, and

8  Classes 10-11 as provided for in this Plan.  All amounts not necessary for the payment of

9  administrative claims of the estate from the $450,000 set aside for the payment of pre-petition

10 administrative claims and the Administrator's needs in running the Reorganized Debtor's affairs,

11 shall flow back into the Tax Fund.  In short, the Tax Fund shall consist of the pot that remains

12 after payment of the claims against the Debtor's estate as provided for in this Plan.  Excepting

13 only the payment of the section 507(a)(8) claims, which is a mandatory component of the IRS's

14 settlement proposal in this Plan, none of the proceeds of the Property may be used to pay creditors

15 holding claims against Raffone individually.

16      If the Plan is rejected by the State of New York Department of Finance, then the IRS

17 settlement shall be null and void and of no effect.

18      If this Plan is not capable of being confirmed, then the IRS settlement shall be null and

19 void and of no effect.

20      As part of its conditional agreement, the IRS has agreed that it will set aside a fund

21 ("Debtor Fund") for the payment of creditors holding Class 12 claims.  The Debtor Fund shall

22 consisting of a carve out amount that is not less than 1% of the Tax Fund (the "Carve Out Floor"),

23 and not greater than the amount necessary to make a dividend payment to general unsecured

24 creditors in Class 12 not to exceed 10% (the "Carve Out Ceiling").  If the purchase price for the

25 Property is $19.1 million or less, then the Debtor Fund will only have the Carve Out Floor

26 contributed in.  If the purchase price for the Property is $19.1 million or more, than the Debtor

27 Fund will receive the maximum of up to the Carve Out Ceiling.  The following chart demonstrably

28 shows the funding of the Debtor Fund.

SM01DOCS\829745.2                    60

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| Sales Price | <$18 million with broker | <$18 million without broker | >$18 million and <$19.1 million | >$19.1 million |
|---|---|---|---|---|
| Maximum Contribution | 1% of Tax Fund | 1% of Tax Fund | 1% of Tax Fund | 1% of Tax Fund, but no greater than 10% Class 12 Claims |

The Debtor Fund shall only be used for the payment of general unsecured creditors in Class 12. Each creditor holding an allowed claim in Class 12 shall receive its pro rata share of such amount placed into the Debtor Fund when reasonably possible for the Administrator to do so.

b.    **Unsecured Claims of Raffone**

The following chart identifies this Plan's treatment of the class containing all of Raffone's general unsecured claims:

| Class | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 13 | General Unsecured Claims asserted against Raffone, estimated at $2,110,239.21* | Yes | Pymt interval = Single. |
|  | *Note: Some claims in this Class 13 have been asserted against both Nevada Star and Raffone. Notwithstanding such fact, such creditors are permitted only one recovery on their claim by accepting the pro rata amount of their allowed claim amount from the Debtor Fund set forth above for Class 12, and shall only participate in Class 13 of the Plan to the extent of their claim amount remaining after such payment. See Exhibit D. |  | Payment amt/interval = One single payment from the Raffone Fund described below |
|  |  |  | Begin date = Reasonable time after the Administrator is capable of making payments from the Raffone Fund. |
|  |  |  | End date = N/A |
|  |  |  | Interest rate: None. |
|  |  |  | Total payout = pro rata payment on allowed claim amount from the Raffone Fund. |

The Administrator shall use his best efforts to sell and liquidate the Beverly Hills house, the Florida house, and all other assets of Raffone, whether or not on Exhibit D to the Plan, including litigation against her husband or any other party or former counsel holding assets believed to belong to Raffone. The net proceeds from such litigation, sales, and other liquidation efforts, after payment of all secured lien claims encumbering such assets, shall be placed into a

1    separate account called the "Raffone Fund."  The assets to be liquidated shall include such items

2    in Raffone's possession that would not have been exempt had she completed a Schedule C at the

3    time of filing her petition.  The total amount of the Raffone Fund, less any administrative costs

4    incurred by the Administrator and his professionals attributed to administering the Raffone assets

5    and the post confirmation Raffone estate, shall be paid pro rata to the holders of allowed Class 13

6    claims as soon as reasonable practical.

7        This Class 13 shall include the claim of Campbell that Raffone is in breach of her

8    agreement to tender the New York Co-Op to him free and clear of any tax lien claims, including

9    the gift tax lien placed on the New York Co-Op by the IRS for the failure of Traute Raffone to pay

10   the gift tax on the transfer of the New York Co-Op from Traute to Campbell.

11

12       Class 11 under this Plan will accrue no interest or other fees or charges of any kind on the

13   allowed claim amounts.

14       Class 11 will be split into Class 11A and Class 11B.  Every creditor in Class 11 who holds

15   an allowed claim of $11,000 or less is automatically placed in Class 11B.  Any creditor who holds

16   an allowed claim of $11,000 or more may elect to be treated in Class 11B.

17       Class 11B shall receive a payment of 50% of the allowed amount on the Effective Date.

18   There will be no second payment to holders of claims in Class 11B.

19       Class 11A claims will be paid pro rata with Classes 4-8, under the settlement at Exhibit C

20   after the Administrator has paid Classes 1-3, Class 11 B and all reserved for or paid all non

21   classified or administrative claims, including the wages and tenant deposits.  Class 11A will share

22   in the upside if sufficient assets result to make a distribution greater than 50%, but will share in the

23   downside if the value of assets provides for a distribution of less than 50%.

24       **4.    Class of Subordinated Claims**

25       The IRS has a claim for penalties asserted against Raffone with respect to payment of her

26   FICA and income taxes for years 2006-2010, identified on Claim No. 1 on the claims docket in the

27   Raffone case.  The New York State Department of Taxation and Finance may hold penalty claims

28   against Raffone the Property relating to unpaid income and FICA real estate taxes.  The Florida

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   ~~Probate Court has a claim for contempt penalties asserted against Raffone with respect to her~~

2   ~~failure to abide by court orders with respect to the transfer of her interest in the Property to~~

3   ~~Campbell~~.  All such claims shall be subordinated and treated in Class ~~14~~12.  Class 12 shall be paid

4   after all classes with a higher priority are paid in full, excepting only Class 11A which shall be

5   fixed at 50% of the allowed amount.

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| ~~14~~12 | Penalty Claims asserted by ~~all governmental taxing agencies against Raffone, estimated at $157,480.51 and Contempt charges asserted by~~ the ~~Florida Probate Court, estimated at $540,000, and Any other penalty type claims relating to tax payments not timely made, including interest thereon, and asserted against Raffone.~~State of New York otherwise part of Class 1. | Yes | Pymt interval = Single. Payment amt/interval = If funds remain after payment of all Class 1~~B, 1C, 8, 9 and 13~~ 11 claims in the amounts allowed, then payment of all remaining amounts. Interest rate:  None. Total estimated payout = $0.00 |

### 5.   Class~~(es)~~ of Interest Holders.

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the

Debtor.  For the Debtor which is a corporation, entities holding preferred or common stock in the

Debtor are interest holders.  For the debtor that is an individual, the Raffone estate is the interest

holder.  The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| ~~15~~13 | Interest holder of the Debtor – deemed to be solely Claudia Raffone _and excluding Henry Douglas Campbell who shall accept his Class 4 treatment if votes in favor of Plan.  With a current bankruptcy case pending for Raffone, the Debtor's membership interest is currently property of the Raffone's estate. | No  The Plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest. | Unimpaired |

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 16 | Claudia Raffone | No | Unimpaired |

### D.    Quarterly Fees

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) prior to the date of confirmation shall be paid to the United States Trustee on or before the Effective Date of the Plan.  Madison's cash collateral that has accrued and is held by Minuit and or the state court receiver, Kahn or his managing agent, New York City Management LLC ("NYC Management"), shall be used for such purposes.

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid by the Administrator to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.  Such payments shall be made from the proceeds of the sale of assets, or from the cash collateral.  If advanced by Madison, then Madison shall be entitled to add such amounts to its Class 2 secured claim.

### E.    Mutual General Releases

*Excepting only (i) the litigation between Campbell and Raffone with respect to matters other than the sale of the property of the Debtor's estate, (ii) litigation that may be brought by the IRS against Raffone, (iii) rights of creditors who hold claims against the Raffone estate, all of which are preserved to the extent not paid in full in this Plan, and (iv) the rights of creditors to object to administrative fees of the prepetition and post petition estates,* as part of this Plan, all participating parties, including the Debtor's estate, shall release the others and agree to cease all litigation and not to commence new litigation.  Except with respect to the obligations created by or arising out of this Plan, and except as set forth in the first sentence of this paragraph, Debtor, the Debtor's estate and each creditor, for themselves and their legal successors, heirs and assigns do hereby release and absolve and forever discharge each of the others and their respective past, present and future legal successors, heirs, assigns, attorneys, principals, members, shareholders,

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    subsidiaries, parents, affiliates, sureties, insurers, officers, directors, agents, employees and other

2    representatives, of and from any and all claims, demands, damages, debts, liabilities, accounts,

3    obligations, costs, expenses, liens, actions and causes of action of every kind and nature whatever,

4    whether now known or unknown, suspected or unsuspected, which any parties now has, own or

5    hold, or at any time previously had, owned or held, or could, shall or may later have, own, or hold

6    against any other party, based upon, related to or by reason of any matter, cause, fact, act or

7    omission related to or by reason of any contract (express, implied in fact or implied by law), tort,

8    lien, liability, matter, cause, fact, thing, act or omission whatever, occurring or existing at any time

9    up to and including the date of this Plan (all of which are referred to as "Released Matters").

10         Included in the term Released Matters shall be a full release of any lawyer or law firm

11    whose claim is treated in this Plan that was previously employed by the Debtor is released from all

12    future representation of same as if terminated and has no further obligation to the Debtor.

13         Except as specifically carved out above, it is the intention of the parties in jointly

14    formulating and voting for this Plan, and in paying and receiving the consideration called for by

15    this Plan, that this Plan and the general release by the all affected parties shall be effective as a full

16    and final accord and satisfaction and general release of and from any claims, damages, debts,

17    liabilities, accounts, obligations, costs, expenses, liens, accounts, and causes of action of every

18    kind and nature whatever, whether now known or unknown, suspected or unsuspected, specified

19    herein as "Released Matters."

20         **~~D.~~F.    Means of Effectuating the Plan.**

21              ~~1.    Secured Creditors' Alternative~~

22    ~~Creditors in Classes 4-7 are united in their belief that a more appropriate plan of~~

23    ~~reorganization would be the follow the line of cases that forces the capital gains tax liability to fall~~

24    ~~uniquely to Raffone. They prefer a plan that does not impose any requirement upon the Debtor's~~

25    ~~estate to pay the capital gains tax associated with the sale of the Property. Under their proposal,~~

26    ~~they believe that, because Raffone is the owner of 100% of the interests in the Debtor and is its~~

27    ~~sole member, *none* of the tax should be borne ahead of the payment of creditor claims, but should~~

28

1  pass through from the Debtor's estate to the Raffone estate. While none of these creditors in

2  Classes 4-7 have filed their own plan, they propose an alternate plan would be as follows:

3      Claudia Raffone is the owner of 100% of the member interests in the
       Debtor and its sole member. There is currently an all cash offer of
4      $18,000,000 for the Property. The Property will be sold by the
       Administrator for no less than $18,000,000, resulting in a taxable
5      capital gain of a currently undeterminable amount. The sale will
       occur no later than the end of the first quarter of 2011. However, a
6      the Debtor is a "pass through" entity and taxed as a partnership for
       federal and state income tax purposes, under the authority of In re
7      KRSM Properties, LLV. V. Speier, 318 B.R. 712 (9th Cir. Bankr.
       2004), the actual capital gain tax generated by the sale is payable by
8      Raffone individually. Accordingly, out of the sales proceeds, the
       payments could be made in the following order:

9
       (i) Closing costs (broker's commission, title insurance, transfer
10     taxes (if any);

11     (ii) Unpaid real estate taxes

12     (iii) Mortgage debt of Madison Capital Realty;

13     (iv) Mechanic lien by Ponichtera Contracting

14     (v) Henry Douglas Campbell

15     (vi) Attorney claimants due to Beys Stein, Casey Ciklin, Jay
       Jacknin, Fox Rothschild, Vernon & Ginsburg and Michael DiMatti

16     (vii) Minuit Partners

17     (viii) David and Vjollca Lumaj

18     (ix) Castle Oil Corporation

19     (x) Fred Smith Plumbing

20     (xi) PS Marcato Elevator Corporation

21     (xii) Tenant security deposits

22     The remaining net proceeds will be used by the administrator to pay
       administrative expenses of the Debtor's bankruptcy after appropriate
23     application and court approval. Upon the entry of a final decree, all
       remaining funds shall be utilized by the Administrator in the
24     individual bankruptcy of Raffone.

25     The proponents of this revised structure fail to explain how their payment priority is

26  aligned with the requirements of the Code or what amounts would be paid to each creditor. In

27  addition, under the proposal of the Classes 4-7 to cause a "pass through" of the capital gains tax

28

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  liability to Raffone, they are suggesting that all the assets of the Debtor and Raffone can be taken

2  from them, but none of the tax obligation paid, leaving Raffone with zero assets and significant

3  non-dischargeable debt.  Madison believes such proposal would not withstand a challenge under

4  11 U.S.C. §1129.[8]  Additionally, under this proposal, litigation by Raffone, Campbell and others

5  would not cease, resulting in a continued drain on all assets and possible delays in payments to

6  creditors.  In addition, under this proposal, the option to pursue fraudulent transfer and preference

7  actions against creditors holding claims in Classes 4-7 would be lost, and the unsecured creditors

8  could receive little or nothing.  Under this plan, if the asserted security interests of holders of

9  Class 4-7 claims are found to be invalid against the Property, the distribution to the general

10  unsecured class could be significant.  Finally, under this proposal, assets and liabilities of the two

11  estates re inextricably intertwined, yet the two estates have not been substantively consolidated.

12  For all these reasons, Madison did not support the efforts of creditors in Classes 4-7 to achieve

13  such a result.

14  **1.    Debtor's Alternative**

15  The Debtor believes that a more appropriate plan of reorganization would be that a more

16  appropriate plan would be to develop the Property into condominiums, provide Raffone with a life

17  estate to the penthouse at no charge and pay her a monthly stipend of $4,000.  Creditors of the

18  Debtor rejected this approach.

19  **2.    Funding for the Plan.**

20  The Plan will be funded by the following:  (1) turnover of cash from ~~Gerald~~ Kahn

21  ~~("Kahn")~~ the duly appointed state court receiver, including any tenant deposits he may be holding

22  at the time of confirmation, (2) turnover of tenant deposits in possession of Minuit, Bank of

23  America, N.A., Campbell and/or Raffone, ~~(3) cash gifted from Madison to the Raffone estate to~~

24

25

26  ~~[8]    On December 29, 2010, Raffone sought permission of the District Court of Appeal for the State of
Florida to relinquish its jurisdiction for thirty days so that she can attempt to purge her contempt in the~~

27  ~~State of Florida.  In January 2011, Raffone has threatened to turn the tables on Campbell and stipulate to
dismissal of her appeal so as to cause him to become the sole member of the Debtor and allow the capital~~

28  ~~gains tax fall 100% to him.  This *tit for tat* is precisely what Madison hopes to end.~~

1    pay for the administrative costs of the United States Trustee if any, and the Clerk's Office, and

2    (4(3) sale of assets of the estates Property.

### 3.    **Requirement of Tax Election**

4    Under this Plan, for taxable year 2010 2011, the Debtor is a disregarded entity and no

5    separate taxable estate is created under 26 U.S.C. § 1399.  The Administrator will file the required

6    information return reporting the taxable income for the owner of the Debtor's interests, the

7    Raffone bankruptcy estate.  The Bankruptcy Court has previously ordered that the owner of all

8    membership interests in the Debtor is the estate of Raffone, and thus the Raffone estate shall be

9    liable for any 2010 2011 post petition administrative taxes.  26 U.S.C. § 1399; In re KRSM

10   Properties, LLC, 318 B.R. 712, 719 (9th Cir. Bankr. 2004) (*citing* 26 C.F.R. § 301.7701-3(a)).

11   The Administrator, as the declared owner of the 100% membership interest in Nevada Star,

12   LLC, will make the election for the Debtor to be taxes as a separate entity (i.e., a C-corporation)

13   beginning January 1, 2011.  Any election made by the Administrator for the Debtor to be taxes as

14   a separate entity during calendar year 2011 shall be deemed to have been made on January 1,

15   2011.  Thereafter the Administrator shall file the required tax returns, and any tax liability shall be

16   a liability of the Debtor's estate under 26 U.S.C. § 1398.

### 4.    **Post Confirmation Authority of Administrator**

18   The Plan provides for the appointment of a post confirmation Administrator, David

19   Gould Samuel Biggs.  The Administrator's employment shall be governed by the terms of this

20   Plan.

21   Upon entry of the Confirmation Order, the administratively consolidated chapter 11 estates

22   estate shall be deemed to continue unabated until entry of a final decree.  The post-confirmation

23   estates shall be vested with title to all assets of the estates, whether or not disclosed, including but

24   not limited to, all assets listed on the Debtor's and Raffone's schedules, any and all causes of

25   action belonging to the estate and all cash on hand in the Debtor's and Raffone's accounts, and all

26   other assets that may be located by the Administrator.

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

FIRST SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1    Post confirmation, the Administrator shall maintain insurance on the Property at all times,

2  listing Madison as mortgagee and loss payee on the property insurance and as mortgagee and

3  additional insured on the liability insurance until paid.

4    Post confirmation and after the Administrator requests Raffone to vacate the Beverly Hills

5  property and she has done so, the Administrator shall maintain insurance on the Beverly Hills

6  property at all times, listing Links Capital as mortgagee and loss payee on the property insurance

7  and as mortgagee and additional insured on the liability insurance.  For avoidance of any doubt,

8  the Beverly Hills property must be insured at all times, and in the event the insurance placed by

9  Raffone expires, the Administrator shall place insurance at a time to avoid any lapse in coverage.

10    Post confirmation and after the Administrator requests Raffone to vacate the Florida

11  property and she has done so, the Administrator shall maintain insurance on the Florida property

12  at all times, listing J.P. Morgan Chase as mortgagee and loss payee on the property insurance and

13  as mortgagee and additional insured on the liability insurance

14    Post confirmation, the Administrator shall be the sole owner of the Property in the hands of

15  the Reorganized Debtors and the sole owner of the assets of the Raffone estate, including the

16  Beverly Hills and Florida properties.  Raffone shall no longernot be considered the owner of the

17  Property or the Beverly Hills and Florida properties for any purpose, under any applicable non

18  bankruptcy law.  Nothing in this paragraph shall prevent Raffone from receivingretaining her

19  interest as a member of Classes 15 and 16,Class 13, however, there can be no distribution of cash

20  to Raffone until *after* satisfaction of all claims under this Plan, including, but not limited to,

21  payment in full of Classes 1-1412.  At all times prior to the satisfaction of all claims under this

22  Plan, Raffone shall not be the owner of the Property or the Beverly Hills and Florida properties.

23    Immediately upon his appointment, the Administrator shall be entitled to, but not required

24  to, retain one or more competentEastern Consolidated as the estate's broker(s) and list proceed to

25  close the Debtor's real property for sale.  ***The Administrator shall sell the*** pursuant to the

26  proposed Purchase and Sale Contract ("Contract") attached as Exhibit E, as may be amended by

27  the Court.

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    a.    Sale of Property ~~by a date prior~~

2    Subject to the *~~foreclosure sale by Madison in the Supreme Court for the State of New~~*

3    *~~York, New York County~~*.  ~~Absent an extension of time by order of the Bankruptcy Court for good~~

4    ~~cause shown,~~ *~~the Administrator shall sell the Beverly Hills house by a date prior to October 31,~~*

5    *~~2011~~*.  ~~With respect to the Property, the Administrator shall make inquiries into the belief of~~

6    ~~creditors in Classes 5-7 that they have identified a cash buyer for $18 million for the Property who~~

7    ~~will close in an acceptable time frame with no broker's fee (the "Prospective Buyer").  The~~

8    ~~Administrator may accept the Prospective Buyer as a stalking horse buyer upon terms reasonable~~

9    ~~and acceptable to the Administrator.  If the Administrator feels prudent, he shall be entitled to~~

10    ~~carve out of any broker compensation agreement such Prospective Buyer and provide for payment~~

11    ~~of a commission to a retained broker only upon closing of a sale for an amount sufficient to cause~~

12    ~~a greater benefit to the estate than the sale to the Prospective Buyer, taking into consideration that~~

13    ~~there would be no broker's fee for the sale to the Prospective Buyer, along with all other~~ terms and

14    conditions of ~~sale~~the Contract attached hereto at Exhibit E, the Administrator shall on the Closing

15    Date as defined below, sell, transfer, convey, and assign all right title and interest, and deliver

16    good and marketable title, free and clear of any and all liens, claims and encumbrances, including

17    but not limited to any claim by or on behalf of Campbell, the land and the improvements and

18    commonly known as 114 West 86th Street, New York City, New York.

19    ~~Once a stalking horse bidder for any parcel of real estate~~ The Administrator shall make a

20    good faith effort to locate all pre-petition information, data, reports, schedules, books and records

21    of the Debtor in any format whatsoever, and transfer it to Bernstein Real Estate, a New York

22    corporation ("Buyer") or such other overbidder as the Court may approve ("Qualified

23    Overbidder").  Buyer shall take reasonable steps to protect and keep private the information of the

24    Debtor and or tenants included in the purchased assets. The Administrator shall continue to have

25    access to all books, records and information as is ~~identified in the discretion of the Administrator,~~

26    ~~an overbid auction will be scheduled before the Court, and a sale to the highest bidder will be~~

27    ~~closed by the Administrator.~~ reasonable and necessary, after the Closing.

28

1        Buyer shall deposit with the Seller's selected escrow agent (i) the earnest money deposit in

2   the sum of One Million Dollars ($1,000,000) to be made by Buyer, together with all accrued

3   interest thereon, and (ii) Buyer's executed counterpart of the Contract to the selected escrow agent

4   no later than two (2) days after the entry of the Sale Order and the Plan Confirmation Order by the

5   Bankruptcy Court.  Buyer shall be required to deposit with Seller written evidence of its ability to

6   fund the purchase of the Property on an all-cash basis, at least two (2) days before the hearing date

7   set to consider the Sale Order and Plan Confirmation Order.

8        The balance of the final approved purchase price shall be paid at the Closing as defined

9   below, by wire transfer or by the delivery to Seller of cash, a Cashier's Check, or other similar

10  cash equivalent.

11          **b.**     **Overbid Procedures and Break Up Fee**

12       Buyer understands that the Contract is subject to approval by the Bankruptcy Court.  Buyer

13  understands that the Bankruptcy Court may or may not approve the following bidding procedures.

14  Madison agrees that it will use its best efforts to obtain Bankruptcy Court approval of the bidding

15  procedures that will be binding on the estate.  The following bidding procedures are proposed:

16       a)     An unconditional requirement that any competing bidder agree to sign and actually

17  sign the same form of Purchase and Sale Contract as executed by Buyer herein, save and except

18  for the identification of the competing bidder and a clear and unconditional statement of the higher

19  and better bid.  Buyer shall be promptly provided with a copy of any higher and better offers

20  received.

21       b)     That (a) a higher and better bid shall be defined as 101% of the Purchase Price (the

22  "Initial Overbid") and all further incremental overbids after the Initial Overbid shall be in the

23  amount of Twenty-Five Thousand Dollars ($25,000), (b) any party placing an overbid shall be

24  unconditionally required to purchase the Property on an all-cash basis within twenty-one (21) days

25  after entry of a Bankruptcy Court order authorizing the sale of the Property on the terms of the

26  Contract (excepting the Purchase Price, which shall be the overbid amount), (c) the deposit must

27  be made in immediately available funds (certified check or funds wired to the account of Seller's

28  selected escrow agent), (d) any party placing an overbid must provide the Bankruptcy Court with

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

71

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   written evidence of its ability to fund the purchase of the Property on an all-cash basis and (e) any

2   party placing an overbid must disclose the identity of any real estate broker representing such

3   party who will be entitled to the shared payment of a brokerage commission upon the sale.

4           c)       Buyer shall be obligated to participate in any overbid process by submitting a

5   revised offer in accordance with the overbid requirements in response to any overbids received

6   from third parties, except that if any third party submits an offer equal to or in excess of Eighteen

7   Million Two Hundred Fifty Thousand Dollars ($18,250,000), Buyer shall no longer be obligated

8   (but shall be entitled) to participate in the overbid process.  If the successful Overbidder fails to

9   close the purchase of the Property within the time required in the Contract, and if the Contract is

10   subsequently terminated as a result of such failure, Buyer's latest overbid or the next highest

11   overbid shall be considered the backup overbid and Buyer or the next highest Overbidder shall

12   close the sale in accordance with the terms of this Contract, except that the Purchase Price shall be

13   Buyer's or the next highest Overbidder's last overbid amount and the Closing Date shall be

14   twenty-one (21) days after Buyer or the next highest Overbidder, as the case may be, is notified

15   that the backup overbid has been accepted.  .

16           d)       Seller shall not be permitted to accept or otherwise entertain bids for any portion of

17   the Property, or in lots or parts of the Property.  Seller shall only sell the Property as a whole.

18           e)       Any potential bidder who wishes to participate in the bidding process must deliver

19   to Madison at least two (2) days before the hearing date set to consider the Sale Order and Plan

20   Confirmation Order (i) evidence of its financial wherewithal to complete the transaction, including

21   without limitation financial statements, financing commitment letters or other satisfactory

22   evidence which the Administrator determines, in his sole discretion, is necessary to demonstrate

23   the Potential Bidder's ability to perform if its bid is accepted; (ii) a written bid in the form of the

24   proposed Contract at Exhibit E, as provided above, with no contingencies, no additional

25   representations and warranties and no changes in timing.  Madison will circulate the materials

26   received under this subparagraph to (v) Fox Rothschild, (w) counsel David Neale for the junior

27   secured creditors, (x) Committee counsel, (y) Campbell's counsel, and (z) the IRS's counsel, each

28   of who will have an opportunity to review such materials and request orally that the Bankruptcy

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  Court designate those potential bidders that meet the various requirements, in the Court's sole

2  discretion, as "Qualified Bidders."  Any Qualified Bidder must appear at the hearing date set to

3  consider the Sale Order and Plan Confirmation Order.

4        f)    Furthermore, it is agreed that any competing qualified bidder, as herein provided,

5  must provide to the Administrator, not later than 1:00 P.M. (PST) on the second (2nd) day

6  immediately following the hearing date set to consider the Sale Order and Plan Confirmation

7  Order, or such other time as the Court may set, with a non-refundable good faith deposit in the

8  amount of $1,000,000 U. S. (One Million Dollars U.S.) in order to be eligible to close.

9       g)    It is expressly agreed that Buyer shall not be excluded at any time from the auction

10  process.

11       h)    Any objection to the hearing date set to consider the Sale Order and Plan

12  Confirmation Order must be in writing, with an original and one (1) copy filed and served on the

13  interested parties and Buyer as required by applicable Court order.

14       i)    It is understood and agreed that Madison will seek to retain a broker on shortened

15  time on behalf of the Debtor's estate, who will continue to solicit interest in the Property and

16  provide information to prospective potential bidders who have executed a non disclosure

17  agreement in form and substance satisfactory to Madison.

18       j)    Only Buyer and Qualified Bidders shall be entitled to participate in the auction

19  sale.  If Madison does not receive at least one Qualified Bid prior to or at the hearing date set to

20  consider the Sale Order and Plan Confirmation Order and provides Buyer with a copy thereof,

21  then no auction sale shall be conducted and the sale hearing as part of the hearing date set to

22  consider the Sale Order and Plan Confirmation Order shall proceed with the sale to the Buyer as

23  the successful bidder.

24       k)    Buyer shall be paid a break up fee of Two Hundred Fifty Thousand Dollars U.S.

25  ($250,000 U.S.) from the sale proceeds of the successful bidder if an only if the total bid is

26  $18,250,000 or higher.

27

28

SM01DOCS\829745.2

~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

l)       Notwithstanding any other provision in the Contract to the contrary, it is expressly understood and agreed that Buyer and Overbidder shall not assume any liability or obligation of Seller.

### c.       Sale Order

A Court Order of the Bankruptcy Court pursuant to Section 363, and, if necessary, Section 365, of the United States Bankruptcy Code as to Buyer, or the qualified and successful bidder ("Sale Order"), is a condition precedent to the Closing.  It hereby agreed that said the Sale Order sought by Madison, even if contained within the provisions of the confirmation of the Plan, shall provide that such sale was:

a)       Properly noticed to creditors and all other parties entitled to notice.

b)       For a fair price for the Property.

c)       Non collusive and conducted between Buyer and Seller at arms length.

d)       Final for all purpose contemplated under Section 363 (m) of the Bankruptcy Code.

e)       Properly consummated as to Bankruptcy Code Section 365 with regard to any assumed obligations (leases or licenses or sublicenses coincident to the Property).

### d.       Closing

The closing terms that shall be applicable to both Buyer and Seller are as follows:

a)        The Closing shall be held on the Closing Date, as defined in the Contract attached at Exhibit E, at the offices of Seller's selected escrow agent, or such other place in the City and State of New York as Seller shall designate to Buyer, provided that there is no stay of any sale order in effect or Notice of Appeal threatened or filed.  Subject to the provisions of the Contract, the closing date is expected to be not later than twenty-one (21) days after the entry by the Bankruptcy Court of the Sale Order and Plan Confirmation Order.

b)       The Closing shall take place at a mutually agreeable time.

c)       All Closing related proceedings shall occur simultaneously, and no delivery shall be considered to have been made until all aspects of the Closing have been completed.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**e.    Auction and Other Conditions**

Absent the express written consent of Madison, the Administrator shall not be entitled to sell the Debtor's Property if the Supreme Court for the State of New York, New York County has entered a final judgment of foreclosure and sale in the action known as Index No. 103172/10, *Madison Realty Capital, L.P.. v. Nevada Star, LLC, et al.* ("Foreclosure Litigation"). Madison agrees that it will not seek entry of a final judgment in the Foreclosure Litigation prior to May 31, 2011. The Administrator shall exercise his best efforts to complete a sale of the Debtor's Property at the highest and best price before ~~the end of the second quarter of~~ May 31, 2011, but not later than June 30, 2011. The sale shall be free and clear of all Raffone's and Campbell's asserted rights as owner and all claims. ~~The Administrator shall exercise his best efforts to negotiate fair and reasonable employment terms for the selected broker and shall present his application to the Court with notice and opportunity to be heard by all creditors. The only bases for any objection to the employment of any broker shall be an unwaivable conflict or a finding by the Court that employment of the selected broker would be otherwise unfair or prejudicial to the creditors of these administratively consolidated estates or that the sale to the Prospective Buyer is a near certainty of closing and would render a significantly greater benefit to the Reorganized Debtor's estate.~~ Any sale of real property of either estate shall be free of transfer tax in accordance with 11 U.S.C. ~~§~~ § 1146(a).

At the close of escrow for the Property, the Administrator shall be entitled to set aside ~~$450,000~~funds for the payment of the pre-petition administrative claims and ~~thereafter~~$35,000.00 for his post confirmation administrative claims and expenses, including the Administrator's accountants, attorneys, and other professionals (excepting administrative tax claims and costs to operate the Property prior to Closing) and all other claims in accordance with the terms and intent of the Plan. Any post-confirmation administrative claims and expenses (excepting administrative tax claims) exceeding $35,000.00 shall require consent of the creditors in classes 4, 5, 6, 7, and 8 or approval of the Court.

The Administrator shall be entitled to retain an accountant of his choice to file ~~all gift and income tax returns for~~ the ~~Debtor and Raffone (but not for Traute Raffone), and the~~

SM01DOCS\829745.2

75

~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  estates'estate's final tax returns.  The Administrator shall exercise best efforts to determine the

2  amount of capital gains tax that is owed to taxing entities, but shall only be required to pay the

3  sums set forth in this Plan.  The Tax Fund must be reserved from the sales proceeds and available

4  to tender to the tax creditors upon the filing of the tax returns, subject to a potential supplemental

5  payment to the tax creditors from remaining funds set aside for administrative expenses.  The

6  Administrator shall exercise his best efforts to negotiate fair and reasonable employment terms for

7  the proposed accountant and shall present his application to the Court with notice and opportunity

8  to be heard by all creditors.

9       Raffone, Minuit, Kahn, Bank of America, N.A., and the debtors' counsel shall have the

10  duty to turn over all books and records and assets to the Administrator.  Raffone shall have a duty

11  to cooperate with the Administrator whenever asked to do so on reasonable terms, including the

12  obligation to provide confidential, financial and potentially privileged information to allow the

13  Administrator to fulfill his duties under this Plan.  Raffone shall fully and completely respond to

14  all inquiries of the Administrator and his staff and professionals.  Assets shall be turned over to the

15  Administrator subject to secured liens and claims.  The Administrator shall have the authority to

16  seek Court orders to enforce this provision.  The Administrator shall not be entitled to insist upon

17  a waiver of the attorney client privilege of Raffone, but he may obtain information that is

18  otherwise protected by the accounting, tax, financial or other banking privileges that would

19  otherwise protect Raffone's privacy.

20       The Administrator shall have the authority, but not the obligation, to retain other

21  professionals and experts, including attorneys, to assist him in fulfilling his obligations under this

22  Plan, which are to liquidate such assets as are necessary to permit all creditors of each estate to be

23  paid on their allowed claims in full, first from the security property attributed to each creditor, and

24  only if required thereafter, from the proceeds of the sale of real and personal property of Raffone.

25  Absent express written consent from such secured creditor or as set forth in this Plan, no secured

26  creditor can be compelled to permit its collateral to be used to pay the Administrator or his

27  professionals, any administrative expenses, income taxes upon sale of the Property, or any priority

28

SM01DOCS\829745.2

76

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1 or general unsecured creditors, and in lieu thereof, accept payment from assets that are not part of

2 its security prior to the liquidation of its collateral.

3     The Administrator shall be expressly permitted to retain as his own counsel the attorney

4 who was counsel for the Committee.  The Administrator can elect to retain post confirmation

5 counsel to assist him in fulfilling his obligations as the Administrator under this Plan and the

6 Order confirming this Plan.  All parties waive any right to contest the Administrator's retention of

7 the Committee's former counsel on any grounds, excepting only hourly rate and fees to be

8 charged.  No objections on the grounds of lack of disinterestedness shall be permitted.  Nothing in

9 this paragraph shall be deemed to waive any party's right to be heard at the time of any application

10 for allowance and payment of fees or expenses by any party or entity.

11     The Administrator shall exercise his best efforts to negotiate fair and reasonable

12 employment terms for his choice of counsel and shall present his application to the Court with

13 notice and opportunity to be heard by all creditors.  Once invoices from post petition professionals

14 are received, if the Administrator has either approved the invoice or taken no action within

15 20 days after submission of the invoice, the invoice shall be deemed approved and the

16 Administrator may pay such invoice from the post-confirmation estate.  If an objection is raised to

17 the invoice, which the parties are unable to resolve, the affected professional may submit a fee

18 application to the Court pursuant to the Local Rules, except that no 45 day notice of a fee hearing

19 for all professionals shall be required and notice need only be given electronically to parties

20 registered with the Court's Electronic Case Filing system.

21 ~~The Administrator shall be entitled to retain eviction counsel in New York to assist him in~~

22 ~~his management and operation of the Property prior to sale.  The Administrator shall exercise his~~

23 ~~best efforts to negotiate fair and reasonable employment terms for such eviction counsel but shall~~

24 ~~not be required to present any application to the Court with notice and opportunity to be heard by~~

25 ~~all creditors, and such eviction counsel shall be considered to be employed in the ordinary course~~

26 ~~of business.~~

27     The Administrator shall be entitled to locate and take possession, custody and control over

28 any property of the Debtor's estate, including the real property and personal property assets listed

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    on the Debtor's schedules, or any other asset of the Debtor's estate that he may locate.  Raffone

2    shall cooperate in the transfer of physical possession and title to the Administrator as reasonably

3    requested by him.  Raffone shall permit the Administrator to inspect any and all assets or the

4    Debtor in her possession, custody or control, including all personal property assets that she asserts

5    would be exempt under Schedule C.  Raffone shall vacate every property and immediately turn

6    over all keys, remotes, garage door openers and all other fixtures and furnishings to the extent

7    provided in this Plan.  Raffone shall cooperate with the Administrator and provide him access to

8    books and records as requested, and all information that might lead to the discovery of additional

9    assets.  For avoidance of any doubt, Raffone shall surrender all her non-exempt assets and in

10   exchange take only the $30,000 settlement payment and her exempt personal belongings in

11   exchange for a full walk away by all creditors.  Raffone's failure to cooperate with the provisions

12   of this Plan shall be grounds for the denial of discharge upon request of the Administrator by

13   motion to the Bankruptcy Court, and upon a showing of good cause that she has willfully failed

14   and refused to cooperate with the terms and conditions herein.

15         Except as waived in the Plan or previously ordered by the Court, the Administrator, the

16   Committee and any creditor or interested party (except the Debtor) shall be entitled to assert

17   avoidance powers under the Bankruptcy Code against holders of claims in Classes 4-7.  In

18   addition, the Administrator shall be entitled to bring on litigation to recover assets from third

19   parties or the Debtor, and subsequently market and liquidate such assets as necessary to fulfill his

20   duties under the Plan.  The Administrator shall not file any avoidance power actions against

21   creditors in Classes 2-7, 8 and 11.

22         In the event that the Administrator can reach an agreeable compromise between the estate

23   and a third party with respect to an asset of the Debtor's estate, the Administrator shall have sole

24   discretion to compromise the estate's claims, rights and obligations with respect to the assets of

25   the Debtor's estate upon the giving of a 10 day written notice to other parties or the Court.  So

26   long as his discretion is exercised reasonably, and no objection to the compromise is filed, then the

27   compromise shall take effect without a Court order or hearing.  Any party who contests the

28   reasonableness of the Administrator's decisions shall, before the expiration of the ten days, seek a

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   hearing on proper notice before the Court, in which case the Administrator's compromise shall not

2   be effective until approved by the Court.

3        Under this Plan, Minuit, Kahn, Bank of America, N.A., and Campbell, shall be required by

4   Court order to turn over the security deposits originally held in the name of Raffone (or any other

5   name, including if held in the name of the individual tenants), relating to the real property of the

6   Debtor's estate, to the Administrator for handling and treatment under this Plan, if any are in their

7   possession.  The Administrator shall be authorized to take such action as is necessary to compel

8   any of Minuit, Kahn, Bank of America, N.A., or Campbell to release the tenant security deposits

9   to him.  The Order confirming this Plan shall provide for turnover ~~over~~of the tenant deposits to the

10  Administrator who will ~~hold~~tender them ~~in compliance~~to the buyer of the Property, or provide the

11  buyer with ~~all applicable New York state laws~~an appropriate credit.

12       Under this Plan, Minuit and Kahn shall be required by Court order to turn over all cash or

13  cash collateral relating to the real property of the Debtor's estate to the Administrator for handling

14  and treatment under this Plan.  The Administrator shall be authorized to take such action as is

15  necessary to compel Minuit and Kahn to release all cash to him.  The Order confirming this Plan

16  shall provide for turnover ~~over~~ of cash on hand to the Administrator.  Nothing in this paragraph

17  shall prevent the Administrator from determining whether to keep Minuit, Kahn or any other

18  person employed as the on-site manager for the Property prior to sale or abandonment of the

19  Property, and to permitting Minuit, Kahn or such other selected person or entity to hold cash

20  collateral as the agent of the Administrator.

21       The Administrator shall be entitled to employ a manager to operate the Property prior to its

22  liquidation.  The Administrator may elect to continue to use Minuit, Kahn, or may use the services

23  of any other qualified manager.  The decision of who to use to manage the Property shall be within

24  the sole discretion of the Administrator.  The Administrator shall exercise his best efforts to

25  negotiate fair and reasonable employment terms for such manager but shall not be required to

26  present any application to the Court with notice and opportunity to be heard by all creditors, and

27  such manager shall be considered to be employed in the ordinary course of business.

28

SM01DOCS\829745.2

79

~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

### 5.    Payment of Creditors

Allowed priority, secured, unsecured and allowed pre-petition administrative claims (to the extent finally allowed and approved for payment) shall be paid in full from the funds held by the Administrator after the ~~escrows have~~escrow for the sale of the Property has closed and the final claim amounts are determined with sufficient precision to permit the payments to be made. Proceeds shall be distributed by the Administrator as soon as practicable to all allowed claims.

Under the Plan, ~~the sum of $450,000 shall~~as long as the payment of Class 2 is not impaired, funds may be set aside from the sale of the Property for the payment of (i)~~)~~ first pre-petition approved administrative expenses of the Committee counsel and the debtors' counsel on final fee applications, and (ii) second to fund post petition administrative fees, costs and expenses incurred by the Administrator and his professionals in ~~excess of the amounts gifted by Madison as set forth in the Plan (exclusive of tax claims), in~~administering the Reorganized Debtor's estate. ~~Administrative expenses and costs incurred in the post petition Reorganized Raffone estate shall be paid from the balance of proceeds available after payment of secured creditor claims encumbering assets in the Raffone estate.~~

The Administrator shall give not less than ten (10) calendar days notice of his intent to draw his own post confirmation fees and expenses (whether to him or his professionals) to all parties in interest by first class mail.  Any party who objects to the payment of such noticed amounts must provide a written objection, stating the reasons therefore to the Administrator at least two (2) court days prior to the noticed date and request a hearing thereon.  Madison~~,~~ and Campbell~~, Raffone and Raffone's counsel~~ shall not be permitted to object to payment of any noticed post confirmation fees and expenses.

### 6.    Use of Cash Collateral

The Administrator shall be permitted to use cash collateral of Madison during the post confirmation pre-closing period so long as such cash is only used in accordance with the categories previously approved by Madison in the cash collateral budgets [Docket Nos. 31, 45 and 76], or in accordance with the express terms of this Plan, or with express written consent of Madison.  Without leave of Court, and without notice to creditors, Madison and the Administrator

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  may consent in writing to any additional use of cash collateral that the Administrator feels is in the

2  best interests of all creditors and to assist in the consummation of this Plan.

3  **7.    Post-Confirmation Management.**

4  Post-confirmation management will be vested in the Administrator, who shall be ~~David~~

5  ~~Gould~~Samuel Biggs, A Professional Corporation, with an office address located at ~~23801~~

6  ~~Calabasas Road~~2800 28th Street, Suite ~~2032, Calabasas, CA 91302~~300, Santa Monica, California,

7  90405.  A copy of ~~Gould's~~Bigg's CV is attached hereto as Exhibit "1."

8  **8.    Disbursing Agent.**

9  The Administrator shall act as the disbursing agent for the purpose of making all

10  distributions provided for under the Plan.  The Administrator shall serve without bond and shall

11  receive his hourly compensation and reimbursement of actual out of pocket expenses for services

12  rendered and expenses incurred pursuant to the Plan.  Any dispute that arises with respect to the

13  Administrator's fees and expenses shall be determined by the Court, which shall retain jurisdiction

14  to determine such disputes.

15  ~~9.    Tender of Possession, or Warrant of Eviction and Judgment of~~

16  ~~Possession Against Raffone.~~

17  ~~If no settlement is approved prior to the confirmation of this Plan providing for the relief~~

18  ~~set forth in this paragraph, then Raffone shall vacate and tender possession of the Penthouse, Unit~~

19  ~~4C and all public areas in the Property, including the parking and/or storage spaces she occupies in~~

20  ~~the garage, the electrical room and all other locations at the Property where her personal property~~

21  ~~is located, within twenty (20) calendar days of entry of the confirmation order.  All rights of setoff,~~

22  ~~counterclaims, defenses or other rights that may be asserted against the issuance of a warrant of~~

23  ~~eviction and judgment of possession are deemed waived.~~

24  ~~Raffone shall vacate and tender possession of the Beverly Hills house and the Florida~~

25  ~~house upon request of the Administrator, who shall provide Raffone with a request upon thirty~~

26  ~~(30) calendar days notice.  Such tender of possession shall be free and clear of all her personal~~

27  ~~belongings that would be listed on Schedule C, but shall leave intact all personal property that~~

28  ~~would not be exempt and will be liquidated by the Administrator.  All rights of setoff,~~

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    ~~counterclaims, defenses or other rights that may be asserted against the issuance of a warrant of~~

2    ~~eviction and judgment of possession for each of the Property, the Beverly Hills property and the~~

3    ~~Florida property are deemed waived.~~

4    ~~The Administrator shall be entitled to the immediate entry of a warrant of eviction and~~

5    ~~judgment of possession against Raffone, to be entered by this Court upon confirmation.  In the~~

6    ~~event that Raffone has not vacated the Property, removed her personal property, and tendered~~

7    ~~possession within the time frames set forth in this Plan, then the Administrator shall be entitled to~~

8    ~~enforce the warrant of eviction and judgment of possession.~~

9    **~~10.~~9.    Entry of the Confirmation Order**

10   The Debtor, as a debtor in possession, ~~Raffone as a debtor in possession,~~ and Committee

11   will terminate upon entry of the confirmation order.

12   **~~11.~~10.  Entry of Final Decree**

13   Upon payment in full of all allowed claims, the Administrator's duties shall conclude and

14   the estates' assets, if any remaining, shall re-vest in the Debtor ~~and Raffone~~.  The Administrator

15   shall thereafter file a final report and account and seek entry of a final decree.

16   **~~E.~~G.    Risk Factors.**

17   ~~The~~This proposed Plan has the following risks:  The primary Plan risk ~~for the Debtor~~ is the

18   inability to close a sale ~~of the Property~~ for an amount sufficient to pay ~~the reduced amount of the~~

19   ~~compromised claims of~~all creditors ~~as set forth in~~proposed.  However, the Plan~~.  The risks for the~~

20   ~~Debtor and Raffone estates also include the costs of administration and the willingness of tax~~

21   ~~creditors to accept the discounted payments and conditions imposed upon them if there is a sale of~~

22   ~~the Property~~ takes this into account by ~~the Administrator.  If the Administrator commences~~

23   ~~litigation, there is an~~ providing for a sharing of the additional ~~risk that the litigation can become~~

24   ~~too expensive or take too long to be justified~~liabilities as set forth on Exhibit C to this Plan.

25

26

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

## IV.    OTHER PROVISIONS OF THE PLAN.

### A.    Executory Contracts and Unexpired Leases.

#### 1.    Assumptions.

Exhibit ~~E to the Plan~~D sets forth the unexpired leases and executory contracts that any buyer may elect to be assumed as obligations of the Reorganized Debtor under this Plan (*see* Exhibit ~~E to the Plan~~D for more detailed information on unexpired leases to be assumed and executory contracts to be assumed).

~~On~~ At the sole election of the buyer of the Property, on the Effective Date, each of the unexpired leases and executory contracts listed on Exhibit ~~E to the Plan~~D shall be assumed as obligations of the Reorganized Debtor ~~to be operated by.~~  In the ~~Administrator.  The~~ event the buyer elects to assume such contracts, the Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above.  If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.  *See* the Disclosure Statement describing this Plan for the specific date.

#### 2.    Rejections.

On the Effective Date, the following executory contracts and unexpired leases will be rejected:  Any lease or contract the buyer does not wish to assume and any lease or right of possession or occupancy given by Raffone with respect to her real or personal property.

The order confirming the Plan shall constitute an order approving the rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.  *See* Disclosure Statement for the specific date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS ~~JUNE 30~~MAY 31, 2011.

Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

**B.    Changes in Rates Subject to Regulatory Commission Approval.**

This Debtor and Raffone are not subject to governmental regulatory commission approval of its rates.  The Debtor is subject to New York rent control statutes.

**C.    Dismissal of Litigation.**

If the Plan is accepted by creditors, confirmed by the Bankruptcy Court and consummated by the Administrator, then each of the Probate Litigation, the Fraudulent Transfer Litigation, the Florida Civil Litigation, the Discharge Litigation, the Tenant Litigation, and the New York Sale Litigation with respect to the Debtor's estate will be resolved by the Plan.  The Administrator shall be entitled, but not required, to file requests with each respective court for dismissal of the Debtor in such litigation **with prejudice** upon substantial consummation of the Plan and at or about the time the Administrator seeks the entry of  a final decree from this Court.  This paragraph shall apply to any other litigation discovered by the Administrator that may not be disclosed in this Disclosure Statement, but the significance of which is fully resolved by this Plan.

**D.    Retention of Jurisdiction.**

The Court will retain jurisdiction to the extent provided by law or as provided by this Plan.

**E.    Tax Consequences of Plan.**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor and Raffone.  The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences which the Plan will have on the Debtor's and Raffone's tax liability:  It is highly likely there will be tax consequences to the Plan.  A capital gains tax owed to the IRS and to the State of New York will be due if the Property is sold for a value greater than the basis applicable to Raffone the Debtor at the time she it acquired title to the

SM01DOCS\829745.2

84

FIRST SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRST SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  Property.  It is believed that Raffone may have filed a gift tax return on the Property, albeit late,

2  and may or may not have paid any of the gift taxes then due.  ~~While this Plan has sought to~~

3  ~~estimate such amounts, it is possible that the taxes will be higher or lower than the estimates set~~

4  ~~forth in this Plan.~~  Notwithstanding whatever the actual amounts of the tax claim are, the IRS has

5  agreed to accept the amounts set forth in ~~Sections II.B.1. and II.C.3.~~this Plan, subject to final

6  approval by the Department of ~~this Plan~~Justice of the settlement terms, as full satisfaction of its

7  litigation rights, but not of the payments due from ~~the Debtor,~~Raffone, and ~~their~~her post

8  confirmation estate~~s.  The~~.  Certain creditors, including the State of New York may or may not

9  agree to accept the treatment set forth in this Plan, and if ~~it does not unequivocally consent in~~

10  ~~writing, prior to~~ the ~~time~~sale of the Property ~~is sold~~becomes unfeasible, the Administrator may not

11  sell the Property and may abandon it, leaving it to the secured creditors to resolve in state court.

12  **V.    CONFIRMATION REQUIREMENTS AND PROCEDURES**

13           PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN

14  SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

15  CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following

16  discussion is intended solely for the purpose of alerting readers about basic confirmation issues,

17  which they may wish to consider, as well as certain deadlines for filing claims.  The Proponent

18  CANNOT and DOES NOT represent that the discussion contained below is a complete summary

19  of the law on this topic.

20           Many requirements must be met before the Court can confirm a Plan.  Some of the

21  requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether

22  the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and

23  whether the Plan is feasible.  These requirements are not the only requirements for confirmation.

24      **A.    Discharge**

25           This Plan provides that upon confirmation, the Debtor shall not receive a discharge of

26  liability.

27  ~~This Plan provides that upon confirmation, Raffone shall be discharged of liability for~~

28  ~~payment of debts incurred before confirmation of the Plan, to the extent specified in~~

1  11 U.S.C.§ 1141.  However, any liability imposed by the Plan upon Raffone or her assets will not

2  be discharged, including liability for return of tenant deposits spent by Raffone, if any.  In

3  addition, the discharge of Raffone may be revoked under this Plan if Raffone fails or refuses to

4  cooperate in her obligations under this Plan and the Court determines that such failure was willful

5  and intentional and resulted in harm to creditors.

6       Campbell has objected to the dischargeability of the Campbell claims against Raffone.  If

7  Campbell votes for the Plan or if the Plan is confirmed over his objection, the complaint to

8  determine dischargeability of his debt against Raffone under 11 U.S.C. § 523 will be dismissed

9  with prejudice and the Plan will fix finally the availability of a discharge to her.

10      **B.    Revesting of Property in the Debtor ~~and Raffone~~**

11      Except as provided in Section IV.D., and except as provided elsewhere in the Plan, the

12  confirmation of the Plan vests all of the property of the Debtor's estate in the Reorganized Debtor

13  under the sole control of the Administrator up to such date on which entry of a final judgment in

14  the Foreclosure Litigation occurs, after which the Foreclosure Litigation judgment shall control

15  over the rights of the Administrator under this Plan.  The Debtor's Property shall either be sold by

16  the Administrator pursuant to this Plan, or shall be adjudicated by the Supreme Court of the State

17  of New York in the Foreclosure Litigation, or sold at a judicial or nonjudicial foreclosure sale by a

18  secured creditor other than Madison if it has not already foreclosed on the Property, whichever

19  occurs first.

20      Except as provided in Section IV.E., and except as provided elsewhere in the Plan, the

21  confirmation of the Plan vests all of the property of Raffone's estate in the Reorganized Raffone

22  under the sole control of the Administrator, until such time as the Administrator either

23  (1) abandons any property to Raffone, or (2) determines he has completed his liquidation of

24  property of the estates for the benefit of holders of allowed claims against Raffone and seeks the

25  entry of an order directing the entry of a final decree and the closing of the jointly administered

26  cases based upon his substantial or complete consummation of the Plan.  The Administrator shall

27  have the right to exercise his reasonable discretion to abandon any asset of the Raffone estate at

28  any time.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

## C.    Modification of Plan

The Proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan if proponent modifies the Plan before confirmation.

The Proponent of the Plan, the Administrator, the City of New York, any holder of an administrative claim, the United States Trustee, or any ~~unsecured~~ creditor may also seek to modify the Plan at any time after confirmation so long as (1) the Plan has not been substantially consummated, and (2) if the Court authorizes the proposed modifications after notice and a hearing.

## D.    Post-Confirmation Status Report

Within 120 days of the entry of the order confirming the Plan, the Administrator shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed consolidated Plan.  The status report shall be served on the United States Trustee, all secured creditors, the twenty largest unsecured creditors, and those parties who have requested special notice.  Further status reports shall be filed every 120 days and served on the same entities.

## E.    Quarterly Fees ~~of the Respective Estates~~

### ~~1.    Quarterly Fees of the Debtor~~

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) prior to the date of confirmation shall be paid to the United States Trustee on or before the Effective Date of the Plan.  Madison's cash collateral that has accrued and is held by Minuit and or the state court receiver, Gerald Kahn, of Smith Buss & Jacobs LLP ("Kahn") or his managing agent, New York City Management LLC ("NYC Management"), shall be used for such purposes. ~~In the event there are insufficient funds to pay all quarterly fees that accrued prior the Effective Date of the Plan, Madison shall advance such cash necessary to pay the fees in full on the Effective Date of the Plan and shall be entitled to add such amounts to its Class 2 secured claim.~~

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid by the Administrator to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.  Such

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  payments shall be made from the proceeds of the sale of assets, ~~and only~~ or from the cash

2  collateral ~~in the event that the Property will not be sold prior to the close of the second quarter of~~

3  ~~2011.~~  If ~~paid from the cash collateral of~~advanced by Madison, then Madison shall be entitled to

4  add such amounts to its Class 2 secured claim.

5  ~~2.    Quarterly Fees of Raffone~~

6  ~~Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) prior to the date of confirmation~~

7  ~~shall be paid to the United States Trustee by Madison as a gift to the Raffone estate on or before~~

8  ~~the Effective Date of the Plan.  Madison shall not add such amounts to its Class 2 secured claim.~~

9  ~~Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to~~

10  ~~the United States Trustee by the Administrator in accordance with 28 U.S.C. § 1930(a)(6) until~~

11  ~~entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.  Such~~

12  ~~payments shall be made from the proceeds of the sale of Raffone's assets, and only from the cash~~

13  ~~collateral arising out of the Debtor's Property in the event that the Property will not be sold prior~~

14  ~~to the close of the second quarter of 2011.  If paid from cash advanced by Madison at its sole~~

15  ~~discretion, then Madison shall be entitled to add such amounts to its Class 2 secured claim.~~

16  **F.    Post-Confirmation Conversion/Dismissal**

17  This Plan is self executing.  A failure to close a sale to the Buyer or a foreclosure sale shall

18  not be grounds for any creditor or party in interest ~~may~~ to bring a motion to convert or dismiss the

19  cases under § 1112(b~~), after~~).  After the Plan is confirmed, ~~if there is a~~ all parties shall have their

20  rights as set forth in the Plan, including their rights to seek default ~~in performing the Plan.~~

21  remedies.

22  If the Court orders the cases converted to Chapter 7 after the Plan is confirmed, then all

23  property that had been property of the Chapter 11 estate~~s~~, and that has not been disbursed pursuant

24  to the Plan, will revest in the Chapter 7 estate~~s~~, and the automatic stay will be reimposed upon the

25  revested property ~~only to the extent that relief from stay was not previously granted by the Court~~

26  ~~during these cases.~~

27

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**G.**     **Revocation of Plan Confirmation Order**

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**H.**     **Who May Vote or Object.**

    **1.**     **Who May Object to Confirmation of the Plan.**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

    **2.**     **Who May Vote to Accept/Reject the Plan.**

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

        **a.**     **What Is an Allowed Claim/Interest.**

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM <u>IN THE DEBTOR'S CASE</u> WAS ***AUGUST 20, 2010***.

~~THE PROPONENT HAS ASKED THE COURT TO SET A BAR DATE~~ ~~IN THE RAFFONE CASE OF~~ ~~***APRIL 30, 2011***~~~~.~~

THE PROPONENT HAS ASKED THE COURT TO SET A BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT OF ~~JUNE 30~~<u>MAY 31</u>, 2011.

SM01DOCS\829745.2

89

~~FIRST~~<u>SECOND</u> AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~<u>SECOND</u> AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

1    A creditor or interest holder may have an allowed claim or interest even if a proof of claim

2  or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's

3  or Raffone's schedules and such claim is not scheduled as disputed, contingent, or unliquidated;

4  (2) no party in interest has objected to the claim; or (3) the Plan proposes to treat the claim as

5  timely.  An interest is deemed allowed if it is scheduled and no party in interest has objected to the

6  interest.

7                    **b.        What Is an Impaired Claim/Interest.**

8    As noted above, an allowed claim or interest only has the right to vote if it is in a class that

9  is impaired under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual

10  rights of the members of that class. For example, a class comprised of general unsecured claims is

11  impaired if the Plan fails to pay the members of that class 100% of what they are owed.

12    In this case, the Proponent believes that every Class, excepting Classes 15 and 16Class 13,

13  is impaired because no creditor will be paid in full on the Effective Date.  Interest holders in

14  Classes 15 and 16 are Class 13 is not impaired because (i) Campbell is deemed not to be an

15  interest holder, and (ii) Raffone will receive everything to which she is entitled.  Thus, all creditors

16  are entitled to vote to accept or reject the Plan.  Interest holders will not be permitted to vote.

17  Nothing prevents an interest holder or creditor in objecting to confirmation of the Plan, even if

18  such party is not permitted to, or fails to vote.  Parties who dispute the Proponent's

19  characterization of their claim or interest as being impaired or unimpaired may file an objection to

20  the Plan contending that the Proponent has incorrectly characterized the class.

21                    **3.        Who is Not Entitled to Vote.**

22    The following four types of claims are not entitled to vote: (i) claims that have been

23  disallowed; (ii) claims in unimpaired classes; (iii) claims entitled to priority pursuant to Code

24  sections 507(a)(1), (a)(2), and (a)(8); and (iv) claims in classes that do not receive or retain any

25  value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes

26  are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Code sections

27  507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes

28  and they are required to receive certain treatment specified by the Code. Claims in classes that do

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1  not receive or retain any value under the Plan do not vote because such classes are deemed to have

2  rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU

3  MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

4  **4.**  **Who Can Vote in More Than One Class.**

5  A creditor whose claim has been allowed in part as a secured claim and in part as an

6  unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the

7  secured part of the claim and another ballot for the unsecured claim.

8  **5.**  **Votes Necessary to Confirm the Plan.**

9  If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired

10  class has accepted the Plan without counting the votes of any insiders within that class, and (2) all

11  impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a

12  cram down on non-accepting classes, as discussed later in Section IV(~~A~~H)(8).

13  **6.**  **Votes Necessary for a Class to Accept the Plan.**

14  A class of claims is considered to have accepted the Plan when more than one-half (1/2) in

15  number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in

16  favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-

17  thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept

18  the Plan.

19  **7.**  **Treatment of Nonaccepting Classes.**

20  As noted above, even if all impaired classes do not accept the proposed Plan, the Court

21  may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by

22  the Code.  The process by which nonaccepting classes are forced to be bound by the terms of the

23  Plan is commonly referred to as a cram down.  The Code allows the Plan to be crammed down on

24  nonaccepting classes of claims or interests if it meets all consensual requirements except the

25  voting requirements of 1129(a)(8) and if the Plan does not discriminate unfairly and is fair and

26  equitable toward each impaired class that has not voted to accept the Plan as referred to in

27  11 U.S.C. § 1129(b) and applicable case law.

28

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1    **8.    Request for Confirmation Despite Nonacceptance by Impaired**

2    **Class(es).**

3    The party proposing this Plan will ask the Court to confirm this Plan by cram down if

4    sufficient votes are not received to confirm the plan under section 1129(a).

5    **I.    Liquidation Analysis.**

6    Another confirmation requirement is the "Best Interest Test", which requires a liquidation

7    analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and

8    that claimant or interest holder does not vote to accept the Plan, then that claimant or interest

9    holder must receive or retain under the Plan property of a value not less than the amount that such

10   holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy

11   Code.

12   In a Chapter 7 case, the Debtor's ~~and Raffone's~~ assets are usually sold by a Chapter 7

13   trustee.  Secured creditors are paid first from the sales proceeds of properties on which the secured

14   creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from

15   any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the

16   same priority share in proportion to the amount of their allowed claim in relationship to the

17   amount of total allowed unsecured claims. Finally, interest holders receive the balance that

18   remains after all creditors are paid, if any.

19   For the Court to be able to confirm this Plan, the Court must find that all creditors and

20   interest holders who do not accept the Plan will receive at least as much under the Plan as such

21   holders would receive under a Chapter 7 liquidation.  The Plan Proponent maintains that this

22   requirement is met here for the following reasons:  the Plan ~~pays allowed claimants in full~~proposes

23   an agreed upon settlement between creditors in Classes 2-8 and 11, which allows creditors to

24   avoid a situation where(i)  the property is ~~necessarily~~sold and there are insufficient funds to pay

25   the capital gains tax arising out of the sale, or (ii) litigation continues to the point that Madison's

26   interest and other charges impair the ability of junior secured creditors to be paid in full, making a

27   sale nearly impossible with agreements to short payoffs.  As a result, creditors believe that they

28   will receive at least as much as such creditors would receive under chapter 7.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation. This information is provided by the Plan Proponent based on the Debtor's ~~and Raffone's~~ schedules, MORs and predictions of value of the Property. This value used for the Property comes from ~~an all-cash~~the stalking horse buyer's offer ~~that Minuit received~~ for the Property ~~in November 2010~~on March 30, 2011.

**NEVADA STAR LIQUIDATION ANALYSIS**

**Assumes No Preference or Avoidance Actions are Filed**

**ASSETS VALUE AT LIQUIDATION VALUES:**

CURRENT ASSETS

| | | |
|---|---|---|
| a. | Cash on hand (general, tax and payroll escrow accounts) | ~~$183,865.15~~$275,000.00 |
| b. | Accounts receivable | $96,239.86[9] |
| c. | Retainer from Law Offices of Michael Berger | $0.00 |
| | TOTAL CURRENT ASSETS | ~~$280,105.01~~$371,239.86 |

FIXED ASSETS

| | | |
|---|---|---|
| a. | Office furniture & equipment (Computer and equip. at Property) | $1,500.00 |
| b. | Machinery & equipment (Tools and supplies at Property) | $800.00 |
| c. | Automobiles | $0.00 |
| d. | Property in New York | $18,~~000~~250,000.00 |
| | TOTAL FIXED ASSETS | $18,~~002~~252,300.00 |

**TOTAL ASSETS AT LIQUIDATION VALUE**  ~~$18,282,405.01~~ **$18,623,539.86**
==========

---

[9]    Unpaid rent of $88,522.50 for Unit 11B, and withheld deposits for illegal rent stabilized tenant of $7,717.36 for Unit 7B. These numbers will likely be higher at the time of confirmation.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

**Less:**
Secured creditor's recovery

|  |  |
|---|---|
| a) New York City Department of Finance (as of Nov 8, 2010) | $~~530~~1,029,437.00 |
| b) Madison Realty Capital, L.P. (estimate 3.31.11) | $10,750,~~000.00~~ |
| c) Ponichtera Contracting | ~~$10,566,063~~ |
| d) Henry Douglas Campbell | $~~32,017.29~~766 |
| e) Christiansen & Jacknin | ~~$2,160,229~~ |
| f) Casey Ciklin Lubitz Martens O'Connell | ~~$50,482~~ |
| g) Beys Stein & Mobargha LLP | ~~$308,452~~ |

**Less:**
Plan Administrator's carve out for fees and expenses ............ ~~$214,292~~

**Less:**
Chapter 11 administrative expenses ............ $~~450~~3,817,386.00

**Less:**
Priority claims (~~IRS taxes~~) ~~(refunded by Raffone estate later)~~ ............ $76,851.23
~~Priority claims (NY State FICA and income) (refunded by Raffone estate~~Class 9) ............ $493,477.10

Priority claims (Class 10) ............ $300,~~000.00~~

~~Priority claims (Class 11)~~ ............ ~~$153,450~~

**Less:**
Debtor's claimed exemptions ............ ~~$53,351~~

**Less:**
Costs of Sale for Property(est. at 8%) ............ $~~10~~35,000

............ ~~$81,603~~

............ ~~$58,611~~

Total Chapter 11 Claims (before payment of tax admin and unsecured claims) ............ ~~$130,650~~

(1)    Balance of funds available in Nevada Star ............ $36,601.36
............ ~~$79,167.05~~

(2)    Carve out for ~~unsecured claims~~payment of ~~Nevada Star~~capital gains (disputed) ............ $0.00

**Payment to unsecured creditors in chapter 11:** ............ $~~1,440,000~~396,950.00

**Payment to unsecured creditors in chapter 7:** ............ ===========
(Assumes no reduction in rights of administrative tax creditors, prepetition administrative creditors and secured lien creditors, also presumes addition of chapter 7 trustee fees in excess of $35,000) ............ $~~16,106,299.00~~

............ $~~2~~17,176,~~106~~587.03

............ $1,446,002.83

............ $5,200,000.00

............ **$0.00**

............ $21,761.06

............ **$21,761.06**

............ $0.00

## % OF THEIR CLAIMS WHICH NEVADA STAR'S UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION: = 0%

~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

**% OF THEIR CLAIMS WHICH NEVADA STAR'S UNSECURED CREDITORS WOULD RECEIVE OR RETAIN UNDER THIS PLAN: = ~~2.3% - 10%~~75-90%** ~~In addition to~~

Under the proposed Plan there is availability of a ~~small guaranteed~~significant amount of cash to pay unsecured creditors, ~~it is possible that~~. Under the ~~Administrator will cause the Property to be sold without a broker's commission, which would reduce the costs of sale from an estimated $1,440,000 to $360,000. That savings would allow an additional $1,080,000 to flow down to the Tax Fund, making a total of $3,256,106 available to~~Plan, the IRS ~~and State of New York Department of Finance. Assuming the purchase price for the building also exceeds $19.1 million, then these increased funds would then cause the tax creditors to fund the Debtor's Fund with a minimum of 10% of the total allowed claims, which is expected to be $93,208. If the purchase price is below $19.1 million, then the amount paid into the Debtor's Fund will remain at 1%, for an approximate 2.5% distribution to general unsecured creditors. If the capital gains cannot be reduced to~~ has agreed to a settlement of its litigation rights which will provide some benefit to unsecured creditors~~, because the State of New York Department of Finance refuses to consent to the Plan, then the Administrator will not be required to sell the Property~~.

### 1.    Benefits of Chapter 11 Plan

Under the Plan, creditors of the Debtor other than just secured creditors will be paid, including past due pre- and post- petition real estate taxes to New York, all secured creditors, all pre-petition administrative creditors of the bankruptcy case, all post petition expenses of the reorganized debtor, and all capital gains ~~and gift~~ taxes on the sale of the Property, which ~~were not paid by Raffone at the time of transfer in 2003~~the IRS has agreed to accept its treatment under the Plan as full payment. Thus the benefits to the Plan are real and not illusory, including to the Debtor's sole member, and the creditors of the Raffone estate. The alternative of foreclosure by the Plan Proponent or conversion to Chapter 7 and the inherent risks that the appointed trustee might abandon the Property back to the Debtor, continuing the decade long war between Raffone and Campbell, is less appealing.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

2.    **Detail on Projected Zero Distribution in Chapter 7 Estate**

Madison estimates that the distribution in a Chapter 7 case would be zero because the trustee would evaluate the likelihood of a significant administrative tax liability, and determine that the sale of the Property in a chapter 7 sale under 11 U.S.C. § 363 sale would not render any benefit to unsecured creditors.  In a chapter 7 sale, the transfer taxes would not be avoided, and that would impose an additional $500,000 burden on the chapter 7 estate, rendering the Property worth less than the value of secured claims, unless the chapter 7 trustee pursued litigation to render those claims unsecured.  Accordingly, such a trustee, without a compromise offered by the IRS and the secured creditors in this Chapter 11 Plan, would likely abandon the Property to the secured lenders and allow Madison's any party's foreclosure to take place.

**NEVADA STAR LIQUIDATION ANALYSIS**

**Assumes Chapter 7 Trustee is Appointed**

**ASSETS VALUE AT LIQUIDATION VALUES:**

CURRENT ASSETS
a.    Cash on hand (general, tax and payroll escrow accounts)                $183,865.15
b.    Accounts receivable                                                    $96,239.86[10]
c.    Retainer from Law Offices of Michael Berger                            $0.00
        TOTAL CURRENT ASSETS                                                 $280,105.01
FIXED ASSETS
a.    Office furniture & equipment (Computer and equip. at Property)         $1,500.00
b.    Machinery & equipment (Tools and supplies at Property)                 $800.00
c.    Automobiles                                                            $0.00
d.    Property in New York                                                   $18,000,000.00

        TOTAL FIXED ASSETS                                                   $18,002,300.00

**TOTAL ASSETS AT LIQUIDATION VALUE                                          $18,282,405.01**

Less:
Secured creditor's recovery
        a) New York City Department of Finance (as of Nov 8, 2010)           $530,000
        b) Madison Realty Capital, L.P. (estimate 3.31.11)                   $10,566,063
        c) Ponichtera Contracting                                           $29,766
        d) Henry Douglas Campbell                                            $2,160,229
        e) Christiansen & Jacknin                                           $50,482
        f) Casey Ciklin Lubitz Martens O'Connell                            $308,452

[10]    Unpaid rent of $88,522.50 for Unit 11B, and withheld deposits for illegal rent stabilized tenant of $7,717.36 for Unit 7B.  These numbers will likely be higher at the time of confirmation.

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| | | |
|---|---|---|
| g)  Beys Stein & Mobargha LLP | | $214,292 |
| Less: | | |
| Chapter 7 administrative expenses | | $153,450 |
| Less: | | |
| Priority claims (IRS taxes) (refunded by Raffone estate later) | | $53,351 |
| Priority claims (NY State FICA and income) (refunded by Raffone estate) | | $81,603 |
| Priority claims (Class 10) | | $10,000 |
| Priority claims (Class 11) | | $58,611 |
| Less: | | |
| Debtor's claimed exemptions | | $0.00 |
| Less: | | |
| Costs of Sale for Property(est. at 8%) | | $1,440,000.00 |
| | | ========== |
| Total Chapter 7 Claims (before payment of tax admin and unsecured claims) | | $15,656,299.00 |
| Balance of funds available in Nevada Star | | $2,626,106.00 |
| Amount due for Capital Gains Tax (est.): | | $5,700,000.00 |
| Payment to unsecured creditors in chapter 7: | | $0.00 |

3.   **Projected Distribution if Avoidance Power Actions are Successful**

In the event that avoidance power actions are filed against creditors holding claims in any of the Classes 4-7, then the distribution to unsecured creditors may be much higher.  Below is a demonstration, in balance sheet format, of how such a distribution would work, presuming the avoidance power complaints are successful and lead to judgment reducing those creditors into Class 12.

**NEVADA STAR LIQUIDATION ANALYSIS**

**Assumes Successful Avoidance Actions to Judgment**

**ASSETS VALUE AT LIQUIDATION VALUES:**
**CURRENT ASSETS**

| | | |
|---|---|---|
| a.    Cash on hand (general, tax and payroll escrow accounts) | | $183,865.15 |
| b.    Accounts receivable | | $96,239.86[11] |
| c.    Retainer from Law Offices of Michael Berger | | $0.00 |
| TOTAL CURRENT ASSETS | | $280,105.01 |
| **FIXED ASSETS** | | |
| a.    Office furniture & equipment (Computer and equip. at Property) | | $1,500.00 |
| b.    Machinery & equipment (Tools and supplies at Property) | | $800.00 |
| c.    Automobiles | | $0.00 |
| d.    Property in New York | | $18,000,000.00 |

_____

[11]    Unpaid rent of $88,522.50 for Unit 11B, and withheld deposits for illegal rent stabilized tenant of $7,717.36 for Unit 7B.  These numbers will likely be higher at the time of confirmation.

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| | |
|---|---|
| TOTAL FIXED ASSETS | $18,002,300.00 |
| **TOTAL ASSETS AT LIQUIDATION VALUE** | **$18,282,405.01** |

Less:
Secured creditor's recovery
   a)  New York City Department of Finance (as of Nov 8, 2010)    $530,000
   b)  Madison Realty Capital, L.P. (estimate 3.31.11)    $10,566,063
   c)  Ponichtera Contracting    $29,766
Less:
Plan Administrator's carve out for fees and expenses    $750,000
Less:
Chapter 11 administrative expenses    $153,450
Less:
Priority claims (IRS taxes) (refunded by Raffone estate later)    $53,351
Priority claims (NY State FICA and income) (refunded by Raffone estate)    $81,603
Priority claims (Class 10)    $10,000
Priority claims (Class 11)    $58,611
Less:
Debtor's claimed exemptions    $0.00
Less:
Costs of Sale for Property(est. at 8%)    $1,440,000.00

Total Chapter 11 Claims (before payment of tax admin and unsecured claims)    $13,672,844.00

   (1)    Balance of funds available in Nevada Star    $4,609,561.00

   (2)    Carve out for unsecured claims of Nevada Star    $46,095.61

**Payment to unsecured creditors in chapter 11:**    **$46,095.61**

**Payment to unsecured creditors in chapter 7:**    $0.00
(Assumes no reduction in rights of administrative tax creditors, prepetition administrative creditors and secured lien creditors, addition of chapter 7 trustee fees)

**% OF THEIR CLAIMS WHICH NEVADA STAR'S UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION: = 0%**

**% OF THEIR CLAIMS WHICH NEVADA STAR'S UNSECURED CREDITORS WOULD RECEIVE OR RETAIN UNDER THIS PLAN: = 1.69% to 10%**

The reason that the distribution in a case where avoidance actions are brought returns less to creditors is because the amounts proposed to be paid to Classes 4-7 ($2,733,455) is added to general unsecured claims of $932,073, making the Class 12 claims surge to $3,665,528.  However, the amount of cash available only increases from $21,761 to $46,096, as the vast majority of the

SM01DOCS\829745.2

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

1   increase goes to the taxing creditors who are expected to hold claims exceeding $5.5 million.[12]

2   Even with their consent to accept reduced payments, they would only receive roughly $4.55

3   million and general unsecured creditor recovery would drop from 2.3% to 1.6%.  The only time

4   the Carve Out Ceiling would apply is if the Property sells for in excess of $19.1 million.  The

5   offsetting cost of several hundred thousand in litigation expenses does not appear likely to put

6   more money in the hands of unsecured creditors.

7        Below is a demonstration, in balance sheet format, that all creditors and interest holders in

8   the Raffone case will receive at least as much under the Plan as such creditor or interest holder

9   would receive under a Chapter 7 liquidation.

10                    **CLAUDIA RAFFONE LIQUIDATION ANALYSIS**

11   **ASSETS VALUE AT LIQUIDATION VALUES:**
     **CURRENT ASSETS**

12   a.      Cash on hand (only to extent non-exempt)                              $0.00
     b.      Horses                                                             $unknown

13           TOTAL CURRENT ASSETS                                                  $0.00
     **FIXED ASSETS**

14   a.      Office furniture & equipment (presumed exempt)                        $0.00

15   b.      Machinery & equipment                                                 $0.00

16   c.      Automobiles (Mercedes, truck, trailer, Maybach (no value est.))  $78,300.00

16   d.      SFR Beverly Hills CA                                           $1,175,000.00

17   e.      SFR Loxahatchee FL                                              $600,000.00

17   f.      Membership interest in Debtor (disputed by Campbell)[13]             $0.00

18           TOTAL FIXED ASSETS                                            $1,853,300.00

19   **TOTAL ASSETS AT LIQUIDATION VALUE**                             **$1,853,300.00**
                                                                       ===========

20   **Less:**
     Secured creditor's recovery

21           a) State of California, County of Los Angeles                    $2,000.00
             b) Florida Loxahatchee County                                    $7,737.52

22           c) Links Capital Partners, LLC, et al.; DB Pension Plan Trust  $350,000.00
             d) J.P. Morgan Chase                                          $250,000.00

23   **Less:**

24   [12]     In the event that the Property has a basis of $1,899,610, then the maximum recovery by the IRS
     and State of NY may be only $4,398,117 ($18 million less $1,440,000 costs of sale, less basis of

25   $1,899,610, multiplied by .30), which would leave $211,444 for the benefit of Class 12, resulting in a 5.8%
     recovery ($211,444 divided by $3,655,528).

26   [13]     Not only does Campbell argue he may be the true owner of the membership interest in the Debtor,

27   depending on anticipated appeal of prior court rulings, he also argues that if Raffone remains the member
     of the Debtor holding the membership interests that he holds a security interest against her property right to

28   the extent of at least $4 million.

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| | |
|---|---|
| Plan Administrator's anticipated fees and expenses | $150,000.00 |
| Less: | |
| Chapter 11 administrative expenses | $46,500.00 |
| Less: | |
| Priority claims (IRS taxes) (refunded by Raffone estate later) | $53,351 |
| Priority claims (NY State FICA and income) (refunded by Raffone estate) | $81,603 |
| Less: | |
| Debtor's claimed exemptions (presumed all household goods and furnishings, all personal clothing) | $0.00 |
| Less: | |
| Costs of Sale for SFR properties | $142,000.00 |
| | =========== |
| Total Chapter 11 Claims (before payment of unsecured claims) | $1,083,191.52 |
| (1)   Balance available for unsecured claims of Claudia Raffone | $770,108.48 |
| (2)   Total amt of unsecured claims for Raffone | $2,110,239.21 |
| **Payment to unsecured creditors in chapter 11:** | $770,108.48 |
| **Payment to unsecured creditors in chapter 7:** | $0.00 |

(Offset chapter 7 trustee with Administrator, presume on going litigation with Raffone to vacate properties at est. cost of $200,000, presume Campbell retains claim for $600,000 secured claim on FL property)

**% OF THEIR CLAIMS WHICH RAFFONE'S UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION: =0.0%**

**% OF THEIR CLAIMS WHICH RAFFONE'S UNSECURED CREDITORS WOULD RECEIVE OR RETAIN UNDER THIS PLAN: = 36.5%**

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Pre-Petition Administrative Claims | 93% | 0.00% |
| Priority Tax Claims | 100% | 0.00% |
| Classes 1-2 – Secured Claims | 100% (slightly less for Madison) | 100% |
| Class 3 | 93% | 0.00% |
| Class 4 | 93% of reduced claim 54% of claimed $4 million | 0.00% |
| Classes 5 to 7 – Secured Claims | 93% | 0.00% |
| Classes 10-11 – Priority Unsecured Claims | 100% | 0.00% |

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Classes 12 and 13 – General Unsecured Claims | Class 12 between 2.3% and 10% Class 13 – 36.5% | 0.00% |
| Class 14 – Subordinated General Unsecured Claims | 0.00% | 0.00% |
| Classes 15 and 16 – Interests | Unimpaired | Unimpaired |

**J.    Feasibility.**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or ~~Raffone or~~ any successor to the Debtor ~~or Raffone~~ under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis.  The first aspect considers whether the Debtor ~~and Raffone~~ will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.  The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

Cash ~~both debtors will have~~ on hand by Effective Date:                ~~$183,865.15~~$275,000.00

**To Pay:**  Administrative claims (UST, Clerk, and ~~half~~ allowed fees)       ~~Est. at  -$50-75,000.00~~$130,650.00

**To Pay:**  Statutory costs & charges                                                     -$0.00

**To Pay:**      Other Plan Payments due                                                 -$0.00
on Effective Date (priority and unsecured creditors)

Balance (due) after paying these amounts.................................................  ~~$108,865.15~~$144,350.00

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are~~:~~ cash in New York escrow account of Receiver Kahn.

~~$141,865.15    Cash in New York Escrow Account now~~

~~$40,000.00    Additional cash that will accumulate from net earnings between now and Effective Date~~

~~$0.00    Borrowing~~

~~$2,000.00    Gift from Madison (to cover Raffone admin exp. to UST)~~

1      **$183,865.15    Total**

2          The second aspect considers whether the Proponent will have enough cash over the life of

3    the Plan to make the required Plan payments.  The Plan is consummated in the ~~months~~weeks

4    following  the Effective Date, but in light of the projected value of the Property, and the purpose

5    of the Plan to liquidate all assets, prospective payments are not believed to be material to

6    performance under the Plan.

7          YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL

8    ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL

9    STATEMENTS.

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

~~FIRST~~SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
~~FIRST~~SECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

**K.**    **Final Decree.**

Once the estates have been fully administered as referred to in Bankruptcy Rule 3022, the Administrator or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the cases.

/s/ Brian Shatz
Signature of Plan Proponent
Managing member of Madison Realty Capital GP, LLC, the general partner of Madison Realty Capital, L.P.


/s/ Katherine M. Windler
Signature of Attorney for Plan Proponent
Katherine M. Windler of Bryan Cave LLP

BRYAN CAVE LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401-2386

FIRSTSECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING
FIRSTSECOND AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**120 Broadway, Suite 300, Santa Monica, CA 90401**

A true and correct copy of the foregoing document described as ***NOTICE OF REDLINE OF SECOND AMENDED CONSOLIDATED DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED CONSOLIDATED CHAPTER 11 PLAN OF LIQUIDATION FOR NEVADA STAR LLC*** will be served or was served in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***March 30, 2011***, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ***March 30, 2011,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
**BY OVERNIGHT MAIL**

| | | |
|---|---|---|
| Honorable Peter Carroll | United States Trustee (LA) | **Debtor** |
| United States Bankruptcy Court | Attention: Russell Clementson | Nevada Star, LLC |
| 255 E Temple Street, Courtroom 1539 | 725 S. Figueroa St. 26th Floor | c/o Claudia Raffone |
| Los Angeles, CA 90012 | Los Angeles, CA 90017 | 1401 Claridge Drive |
| | | Beverly Hills, CA 90210 |

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***Fill in Date Document is Filed,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
**BY EMAIL**

| | |
|---|---|
| Catherine A. Grad - cgrad@grad-weinraub.com | Attorney for Tenants of 114 West 86thSt. |
| Andrew S. Hersch - ahirsch@BernsteinRE.com | Potential Buyer |

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| March 30, 2011 | Michael M. Mason | /s/ Michael M. Mason |
| *Date* | *Type Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

## Additional Service Information
## VIA NOTICE OF ELECTRONIC FILING (NEF)

Michael Jay Berger on behalf of Debtor Claudia Raffone (michael.berger@bankruptcypower.com);
Russell Clementson on behalf of U.S. Trustee United States Trustee (LA) (russell.clementson@usdoj.gov);
United States Trustee (LA) (ustpregion16.la.ecf@usdoj.gov.)
Lewis R Landau on behalf of Creditor Committee Creditors Committee of Nevada Star, LLC (lew@landaunet.com),
R G Pagter on behalf of Creditor Henry Campbell (gibson@pagterandmiller.com, pandm@pagterandmiller.com;
Thomas M. Geher (tmg@jmbm.com)
Brett A. Axelrod on behalf of Fox Rothschild LLP (baxelrod@foxrothschild.com, mrustia@foxrothschild.com)
David L. Neale on behalf of Creditor Beys , Stein & Mobargha LLP (dln@lnbrb.com, kjm@lnbrb.com)
Sandor T. Boxer on behalf of Creditor Castle Oil Corporation (tedb@tedboxer.com)
Michael W. Tan on behalf of Creditor United States of America, IRS (michael.w.tan@irscounsel.treas.gov)

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*
819927.3

**F 9013-3.1.PROOF.SERVICE**